# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al.*,[1] | Case No.: 18-12012 (___) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING PAYMENT OF LIMITED PREPETITION EMPLOYEE BENEFITS AND CONFIRMING RIGHT TO CONTINUE EMPLOYEE BENEFITS ON POSTPETITION BASIS, (II) AUTHORIZING PAYMENT OF REIMBURSEMENT FOR PREPETITION EXPENSES, (III) AUTHORIZING PAYMENT OF WITHHOLDING AND PAYROLL-RELATED TAXES, (IV) AUTHORIZING BANKS TO HONOR PREPETITION CHECKS AND FUND TRANSFERS FOR AUTHORIZED PAYMENTS, AND (V) SCHEDULING FINAL HEARING

Open Road Films, LLC ("Open Road Films") and its affiliated debtors and debtors in

possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases") hereby move

the Court (the "Motion") for entry of interim and final orders substantially in the form attached

hereto as **Exhibit A** (the "Proposed Interim Order") and **Exhibit B** (the "Proposed Final Order"

and together with the Proposed Interim Order, the "Proposed Orders"), pursuant to sections

105(a), 363(b), and 507(a) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the

"Bankruptcy Code"), and Rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure

of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"),

(i) authorizing, but not directing, the Debtors: (a) to honor limited prepetition obligations in

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.). The Debtors' address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067. Additional affiliated entities, including, but not limited to, IM Global LLC, Global Road Entertainment Television LLC (f/k/a IM Global TV LLC), Tang Media Partners LLC, and Global Road Entertainment LLC, are not debtors in these Cases and have not commenced chapter 11 cases.

respect of, and to continue honoring in the ordinary course of business until further notice (but not assume), certain of the Debtors' paid time off, leave of absence, workers' compensation, and employee and retiree benefit plans and policies, as described below; (b) to reimburse employees for prepetition expenses incurred on behalf of the Debtors in the ordinary course of business; and (c) to deduct and/or remit postpetition payroll taxes and other deductions in the ordinary course of business; (ii) authorizing banks and other financial institutions (the "Banks") to honor and process check and electronic transfer requests related to the foregoing; and (iii) scheduling a final hearing.  In support of the Motion, the Debtors rely on the *Declaration of Amir Agam in Support of First Day Motions* (the "First Day Declaration") filed substantially concurrently herewith.  In further support of the Motion, the Debtors respectfully represent as follows:

## I.  JURISDICTION

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      The statutory and legal predicates for the relief requested herein are sections 105(a), 363(b), and 507(a) of the Bankruptcy Code and Local Rule 9013-1.

## II. BACKGROUND

4.      On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

5.      The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been requested or appointed in these Cases and no committee has been appointed yet by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").

6.      The Debtors distribute motion pictures in the United States and license motion pictures in ancillary markets, principally to home entertainment, pay television, subscription, and transactional video-on-demand, free television, and other non-theatrical entertainment distribution markets.  The Debtors' films have generated over $1.3 billion in worldwide theatrical box office receipts, have been nominated for 49 Academy Awards, and have won 13 Academy Awards.

7.      The Debtors intend to utilize the bankruptcy process to continue and conclude their robust marketing and sale process.  They believe that doing so will ensure that the value of their assets are maximized for the benefit of all stakeholders.

8.      The detailed factual background relating to the Debtors and the commencement of these Cases is set forth in the First Day Declaration.

## III. RELIEF REQUESTED

9.      By this Motion, the Debtors request that the Court enter the Proposed Orders authorizing, but not directing, the Debtors, in their sole discretion: (a) to honor limited prepetition obligations in respect of, and to continue honoring in the ordinary course of business until further notice (but not assume), certain of the Debtors' paid time off, leave of absence,

workers' compensation, employee and retiree benefit plans and policies, as described below; (b) to reimburse employees for prepetition expenses incurred on behalf of the Debtors in the ordinary course of business; and (c) to deduct and/or remit all related postpetition payroll taxes and other deductions in the ordinary course.

10.     The Debtors also request that the Proposed Orders authorize the Banks to honor and process check and electronic transfer requests related to the foregoing and schedule a hearing to consider approval of the Motion on a final basis.

## A.     The Debtors' Workforce and Ordinary Course Compensation

### 1.     Overview of the Debtors' Current Workforce

11.     As described in greater detail in the First Day Declaration, on August 4, 2017, the equity membership interests in Open Road Releasing, LLC were sold to non-debtor Tang Media Partners Holdings LLC, part of a media enterprise owned by non-debtor Tang Media Partners Limited.   At the time, the intention was to combine (i) the Debtors and (ii) certain assets of non-debtor IM Global LLC ("IM Global"), into a newly-formed non-debtor entity, Global Road Entertainment, LLC ("Global Road").  During much of the past year, preparations were made for that combination, including efforts to begin consolidating and streamlining the overlapping activities of the entities and their related expenses.  As a result, many of the Debtors' expenses, including employee benefit contracts, are actually direct contractual obligations of non-debtor affiliates.  Likewise, many employees, whether formally employed by a Debtor or a non-debtor, currently allocate their time between one or more entities.  There is currently a cost-sharing understanding among the entities as to the portion of each employee's costs that is funded by the

Debtors, based on the percentage of time that it is estimated that such employee devotes to the business of the Debtors and the non-debtor affiliates, respectively.[2]

12.     Employees that are formally employed by a Debtor entity and are allocated, in whole or in part, to render services to the Debtors are referred to herein as "Employees," whereas employees that are formally employed by an affiliated non-debtor entity and are allocated, in whole or in part, to render services to the Debtors are referred to herein as "Shared Employees." There are also a small number employees that are formally employed by a Debtor entity but are allocated to render services exclusively to non-debtor entities, which employees are referred to herein as the "Excluded Employees."  Prior to the Petition Date, the Debtors undertook a reduction in force pursuant to which approximately 37 former Employees and Shared Employees were terminated in the aggregate.[3]

13.     As of the Petition Date, there are approximately 36 full-time salaried and hourly Employees and Shared Employees (collectively, the "Full Time Employees"), and 3 part-time hourly Employees and Shared Employees ("Part Time Employees"), for a total of 39 Employees and Shared Employees that render services to, and are paid by, in each case in whole or in part, the Debtors.[4]  Of this remaining total workforce, 9 Employees are formally employed by Debtor Open Road Films, 19 Shared Employees are formally employed by non-debtor Global Road, 9 Shared Employees are formally employed by non-debtor Tang Media Partners LLC ("TMP"),

---

[2]     Because certain members of the Debtors' workforce perform some duties or functions for non-debtor affiliates of the Debtors, the cost sharing understanding provides that the Debtors do not fund the payroll for the portion of each such employee's time that is allocated to non-debtor entities.

[3]     In addition, on August 28, 2018, the Debtors ceased funding an allocable share of the costs of approximately 13 former Employees and/or Shared Employees.  Certain non-debtor affiliates of the Debtors have currently retained a portion of the Debtors' former workforce.

[4]     For the avoidance of doubt, the Excluded Employees are not included within the 39 total Employees and Shared Employees.  As noted above, the Debtors are not seeking to pay any amounts to the Excluding Employees; rather, the Excluded Employees will be compensated by the non-debtor affiliates to which the Excluded Employees render services.

and 2 Shared Employees are formally employed by non-debtor IM Global.  Global Road, TMP, and IM Global are referred to herein as the "Non-Debtor Employers."

14.     With respect to Employees and Shared Employees, the Debtors are seeking authority herein to honor and/or pay the Debtors' allocable share of wages and benefits as they come due in the ordinary course of business during the pendency of these Cases (including via postpetition payments to non-debtor affiliates in accordance with the above described cost-sharing) and are seeking authority, but not direction, to honor and/or pay the Debtors' allocable share of certain *limited* prepetition obligations for (i) expenses incurred by Employees and Shared Employees on behalf of the Debtors prior to the Petition Date and for (ii) unused vacation and other paid time off accrued by the Employees and Shared Employees prior to the Petition Date.  The Debtors are *not* seeking to honor or pay any wages or benefits to the Excluded Employees, irrespective of whether such payments or benefits accrued before or after the Petition Date.

### 2.     Ordinary Course Compensation

15.     All 39 Employees and Shared Employees are paid (the "Employee Compensation") bi-weekly on Fridays for the prior two weeks ending on the Friday prior to the pay date.  Debtor Open Road Films funds a lump sum for the Debtors' allocable share of the costs of Employees and Shared Employees to non-debtor Global Road.  Other non-debtor affiliates also fund certain payroll to Global Road.  Global Road then funds payroll in gross for the Employees and Shared Employees to Automated Data Processing ("ADP") approximately two business days before each pay date.  ADP is responsible for distributing net pay to the Employees and Shared Employees from its own accounts.  The Debtors' allocable share of payroll (excluding amounts for taxes and fringe benefits) to be funded to ADP through Global

Road for each postpetition two-week period going forward is projected to be in the range of approximately $160,000 to $300,000.

16.     The most recent prepetition payroll date was August 24, 2018.  It covered the pay period from August 4, 2018 through August 17, 2018.  The total amount of the August 24, 2018 payroll (excluding amounts for taxes and fringe benefits) that was estimated by the Debtors to be their allocable share of payroll for the Employees and Shared Employees was approximately $603,808.[5]  The next two scheduled payroll dates are September 7, 2018 (which will cover the pay period from August 18, 2018 through August 31, 2018) and September 21, 2018 (which will cover the pay period from September 1, 2018 through September 14, 2018).  Prior to the Petition Date, the Debtors funded their estimated allocable share of payroll for the Employees and the Shared Employees in respect of the period from August 18, 2018 through September 7, 2018 to Global Road, and it is anticipated that Global Road will in turn fund payroll to ADP in the ordinary course of business.  Accordingly, the Debtors believe that there will be no unpaid prepetition amounts owing to Employees or Shared Employees on account of the September 7, 2018 payroll (all of which is in respect of the prepetition period) or the September 21, 2018 payroll (a portion of which is in respect of the prepetition period).  The Debtors are therefore ***not*** seeking authority to pay any prepetition wages and salaries whatsoever.

17.     In addition, the Debtors rely on the services of one additional worker leased from a temporary placement agency (the "Temporary Worker").  The Temporary Worker is compensated outside of the Debtors' payroll system and receives approximately $6,600 per week, all of which is allocable to the Debtors (the "Temporary Worker Compensation").  The

---

[5]     The Debtors' allocable share of the August 24, 2018 payroll was considerably larger that the Debtors' estimated allocable share of payroll going forward because of the above described prepetition reduction in force.

Debtors believe that no prepetition amounts are owing to the Temporary Worker and the Debtors are therefore **not** seeking authority to pay any prepetition amounts to the Temporary Worker.

18. The Debtors' ability to preserve the value of their assets and successfully prosecute these Cases for the benefit of their estates and creditors depends on the expertise and service of the Debtors' workforce, including the Shared Employees. Accordingly, the Debtors seek authority to continue to pay their allocable share of postpetition wages and salaries to Employees and Shared Employees and to pay the postpetition costs of the Temporary Worker in the ordinary course during the pendency of these Cases.

**B. Employee Benefits**

**1. Paid Time Off**

19. *Vacation Time.* Employees and Shared Employees accrue vacation time ("Vacation") on a pro rata basis throughout the year beginning on their first day of employment. Employees and Shared Employees accrue two weeks (80 hours) of Vacation for twelve months of service, up to a maximum accrual of three weeks (120 hours). Once an Employee or Shared Employee reaches the maximum unused Vacation accrual, that Employee or Shared Employee may not accrue any additional Vacation until the Employee or Shared Employee uses Vacation to reduce the amount of accrued unused Vacation below the maximum threshold. Vacation pay is calculated based on the applicable hourly pay or base salary. At separation of employment, Employees and Shared Employees do receive payment for accrued unused Vacation.[6]

20. At any point in time, Vacation is accruing or being used, making it difficult to quantify the cost of accrued Vacation as of the Petition Date. However, prior to the Petition

---

[6] Other than upon termination of employment, Employees and Shared Employees do not receive cash payments on account of Vacation unless the Employee or Shared Employee has deferred his or her Vacation at the Debtors' written request.

Date, the Debtors estimate that the Debtors' allocable share of accrued unused Vacation for the Employees and Shared Employees is in the range of approximately $20,000 to $25,000 in the aggregate. The Debtors seek authorization to continue the Vacation policy during the pendency of these Cases and to honor, in the ordinary course of business, all unused Vacation accrued by Employees and Shared Employees prior to the Petition Date.

21.     *Holiday Time*. The Debtors provide paid holiday time ("Holiday Time") for several holidays and also provide two paid floating holiday days to be used with prior supervisor approval.[7] Holiday Time does not carry over year to year and is never paid out upon separation of employment. The Debtors therefore do not make any cash payments on account of the Holiday Time policy. The Debtors seek authorization to continue the Holiday Time policy during the pendency of these Cases and to honor, in the ordinary course of business, all unused Holiday Time accrued by Employees and Shared Employees prior to the Petition Date.

22.     *Sick Leave.* The Debtors provide paid sick time ("Sick Leave") to all Full Time Employees and Part Time Employees. All non-executive Employees and Shared Employees are issued six days (48 hours) of Sick Leave on January 1 of each year, none of which carries over to subsequent years. Eligible Employees and Shared Employees are not paid for accrued unused Sick Leave upon separation of employment, and the Debtors therefore do not make any cash payments on account of the Sick Leave policy. Executive Employees and Shared Employees may use personal time off for sick leave with the approval of their respective manager. The Debtors seek authorization to continue the Sick Leave policy during the pendency of these Cases

---

[7]     Holiday Time includes the following holidays: Martin Luther King Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Friday after Thanksgiving, and December 24 through New Year's Day. If any individual holiday(s) occurs on a weekend, the Debtors adjust the Holiday Time schedule to provide a total of seven days of paid Holiday Time in addition to December 24 through New Year's Day.

and to honor, in the ordinary course of business, all unused Sick Leave accrued by Employees and Shared Employees prior to the Petition Date.

23. *Other Paid Time Off.* The Debtors offer Employees and Shared Employees leaves of absence as required by law for the purposes of fulfilling any required legal or military obligation (*e.g.*, jury duty, appearance as a witness in a legal proceeding, military reserve duty, appearance at school by a parent when requested pursuant to the Education Code, or performance of emergency duty by a volunteer firefighter). Compensation during such a leave will be offset by any amounts received as jury or witness fees or as military pay, as applicable. The Debtors also offer Employees and Shared Employees up to five consecutive days off for bereavement leave in the event of the death of a spouse, domestic partner, child, parent, grandparent, sibling, aunt, uncle, cousin, or in-law. Employees and Shared Employees who have been employed for at least 90 days are entitled to paid leaves of absence for up to 30 business days in any twelve month period for the purposes of donating an organ, or for up to five business days in any twelve month period for the purposes of donating bone marrow where there is medical necessity for the donation. Employees and Shared Employees who have been employed for at least twelve months and have actually worked at least 1,250 hours during the twelve month period preceding leave may be eligible for unpaid medical or family care leaves of absence for up to twelve weeks in a twelve month period.[8] For pregnancy related disabilities, Employees and Shared Employees may be eligible for medical leaves of absence up to four months for each pregnancy. The Debtors seek authorization to continue these other paid time off policies for Employees and Shared Employees in the ordinary course during the pendency of these Cases.

---

[8] Currently, the Debtors are paying, in whole or in part, maternity/paternity leave pay for 3 Shared Employees and the Debtors anticipate that 2 Employees will soon commence maternity/paternity leave. The Debtors' allocable share of payroll for these 5 Employees and Shared Employees is projected to be in the range of approximately $3,000 to $12,000 per two-week payroll period going forward.

24.     By this Motion, the Debtors seek authority to honor all prepetition liabilities to Employees and Shared Employees with respect to the Vacation, Holiday Time, Sick Leave, and other paid-time-off policies described above in the ordinary course of business.[9]  The Debtors anticipate that Employees and Shared Employees will utilize any accrued Vacation and any Holiday Time, Sick Leave, or other paid time off in the ordinary course of business during the pendency of these Cases without resulting in any material cash payments beyond the Debtors' normal payroll obligations, other than for Employees and Shared Employees who are terminated postpetition and who will receive cash payment of accrued, unused Vacation upon separation. Use of Vacation, Holiday Time, Sick Leave, and other paid time off policies remains subject to ordinary course restrictions.

### 2.     Employee Benefit Plans

25.     Prior to the Petition Date, Full Time Employees enjoyed various standard employee benefits (the "Benefit Programs") including, without limitation, (a) medical care, (b) dental and vision insurance, (c) life and disability insurance plans, and (d) COBRA coverage. Benefit Programs are maintained by the Debtors or the Non-Debtor Employers and the costs of the Benefit Programs will be allocated accordingly on a postpetition basis.  The amounts set forth below reflect the Debtors' projected allocable share of the approximate going forward cost of such Benefit Programs, which the Debtors seek to honor in the ordinary course of business for eligible Employees and Shared Employees during the pendency of these Cases.

26.     Prior to the Petition Date, the Debtors funded to non-debtor affiliates the Debtors' estimated allocable share of costs for all of the Benefit Programs in respect of the period from August 18, 2018 through September 7, 2018.  It is anticipated that these non-debtor affiliates

---

[9]     The vacation, holiday, sick leave, and other paid time off policies of the Debtors' non-debtor affiliates match those of the Debtors as described herein.

have or will fund disbursements to the appropriate entities in respect of each Benefit Program in the ordinary course of business. Accordingly, the Debtors believe that as of the Petition Date no prepetition amounts are owing in respect of the Benefit Programs and the Debtors are ***not*** seeking authorization to pay any prepetition amounts in respect of the Benefit Programs.

27.     *Medical Insurance Program.* Full Time Employees enjoy a medical and prescription drug program (the "Medical Plan") from Blue Shield. Premiums under the Medical Plan are paid in part by the Debtors and Non-Debtor Employers and in part by the Full Time Employees through paycheck withholding. The Debtors' allocable share of the monthly cost (excluding amounts paid through paycheck deductions) of maintaining the Medical Plan for Employees and Shared Employees is projected to be in the range of approximately $20,000 to $40,000 in the aggregate per month. The Debtors seek authority to pay their allocable share of postpetition costs of the Medical Plan for Employees and Shared Employees in the ordinary course of business during the pendency of these Cases.

28.     *Dental & Vision Insurance Program.* Full Time Employees enjoy a dental and vision program (the "Dental & Vision Plan") from MetLife. Premiums under the Dental & Vision Plan are paid in part by the Debtors and Non-Debtor Employers and in part by the Full Time Employees through paycheck withholding. The Debtors' allocable share of the monthly cost (excluding amounts paid through paycheck deductions) of maintaining the Dental & Vision Plan for Employees and Shared Employees is projected to be in the range of approximately $1,000 to $5,000 in the aggregate per month. The Debtors seek authority to pay their allocable share of postpetition costs of the Dental & Vision Plan for Employees and Shared Employees in the ordinary course of business during the pendency of these Cases.

29.     *Basic Life Insurance.*  Full Time Employees enjoy basic life insurance (the "Basic Life Plan") from MetLife.  Premiums under the Basic Life Plan are 100% paid by the Debtors and Non-Debtor Employers.  The Debtors' allocable share of the monthly cost of maintaining the Basic Life Plan for Employees and Shared Employees is projected to be in the range of approximately $1,000 to $5,000 in the aggregate per month.  The Debtors seek authority to pay their allocable share of postpetition costs of the Basic Life Plan for Employees and Shared Employees in the ordinary course of business during the pendency of these Cases.

30.     *Voluntary Life Insurance, Disability, and Employee Assistance Program.*  Full Time Employees enjoy voluntary life insurance and short term and long term disability insurance (the "Voluntary Life & Disability Plans") and an employee assistance program (the "EAP") from MetLife.  Premiums under the Voluntary Life & Disability Plans and costs of the EAP are paid in part by the Debtors and Non-Debtor Employers and in part by the Full Time Employees through paycheck withholding.  The Debtors' allocable share of the monthly cost of maintaining the Voluntary Life & Disability Plans and the EAP for Employees and Shared Employees is projected to be in the range of approximately $1,000 to $5,000 in the aggregate per month.  The Debtors seek authority to pay their allocable share of postpetition costs of the Voluntary Life & Disability Plans and the EAP for Employees and Shared Employees in the ordinary course of business during the pendency of these Cases.

31.     *COBRA.*  Historically, the Debtors and the Non-Debtor Employers have also paid for between one month and one year of coverage for former Employees and Shared Employees under Section 4980B of the Internal Revenue Code to administer Continuation Health Coverage (26 U.S.C. § 4980B) ("COBRA").  Due to a lack of funds, the Debtors were not able to offer to pay for any time period of COBRA coverage for former Employees and Shared Employees who

were terminated in the prepetition reduction in force; however, former Employees and Shared Employees can still participate in COBRA at their own expense.

32.    *Continuation of Benefit Programs Postpetition*.  With respect to postpetition amounts only, the Debtors request confirmation of their right to perform their obligations and pay their allocable share of costs of these Benefit Programs for Employees and Shared Employees during the duration of these Cases.  The Benefit Programs are an important component of the total compensation offered to the Employees and Shared Employees, and are essential to the Debtors' efforts to maintain morale and minimize attrition.  The Debtors believe that their allocable share of expenses associated with the Benefit Programs for Employees and Shared Employees are reasonable and necessary in light of the potential attrition, loss of morale, and loss of productivity that would result if the Benefit Programs were discontinued.

### 3.    Workers' Compensation Program

33.    Under the laws of various states, the Employees and Shared Employees are entitled to workers' compensation coverage for injury claims arising from or related to their employment.  Employees and Shared Employees enjoy a workers' compensation benefits program (the "WC Program") from Federal Insurance Company.  The WC Program provides benefits to all Employees and Shared Employees for claims arising from or related to employment.  As of the Petition Date, the Debtors believe that there are no prepetition amounts under the WC Program for which the Debtors may be liable to Federal Insurance Company, and the Debtors are ***not*** seeking authorization to pay any prepetition amounts in respect of the WC Program to Federal Insurance Company or otherwise.  The Debtors seek authorization to pay their allocable share of postpetition costs of the WC Program for Employees and Shared Employees in the ordinary course of business during the pendency of these Cases.

**4.     Retirement Savings Program**

34.     Employees and Shared Employees enjoy a 401(k) retirement savings plan (the "Retirement Plan"), administered by Fidelity Investments, through which qualified and participating Employees and Shared Employees may defer a portion of their salary to help meet their financial goals and accumulate savings for their future.  The Retirement Plan is funded by employee contributions and discretionary employer matching contributions of 100% of the employee contribution for Employees and Shared Employees with more than one year of employment.  The Debtors believe that the Retirement Plan is important to maintaining morale.

35.     The Debtors believe that no amounts are owing in respect of accrued unfunded prepetition matching contributions under the Retirement Plan, and the Debtors are ***not*** seeking authorization to pay any prepetition amounts in respect of the Retirement Plan.  The Debtors seek authorization to pay their allocable share of postpetition costs of the Retirement Pan, including their allocable share of matching costs to Employees and Shared Employees, in the ordinary course of business during the pendency of these Cases.

**C.     Employee Expenses**

36.     Prior to the Petition Date, the Debtors directly or indirectly reimbursed Employees and Shared Employees for certain expenses incurred on behalf of the Debtors in the scope of their employment (the "Employee Expenses").  The Employee Expenses are incurred in the ordinary course of the Debtors' business operations and include, without limitation, expenses for meals, travel, and other business-related expenses.  The Debtors' allocable share of Employee Expenses going forward is projected to be in the range of approximately $1,000 to $25,000 in the aggregate each month.  Because a delay often occurs between the time such expenses are incurred and the time an expense reimbursement request is submitted, it is difficult to determine with precision the aggregate amount of outstanding Employee Expenses.  However, the Debtors

estimate that, as of the Petition Date, the Debtors' allocable share of accrued unpaid Employee Expenses for Employees and Shared Employees is in the range of approximately $10,000 to $25,000 in the aggregate.

37.     Absent authority to pay the Employee Expenses incurred by Employees and Shared Employees prepetition, those individuals could be obligated, in some cases, to pay such amounts out of their personal funds, which would be unfair and would hurt morale.  The Debtors therefore seek authority to pay the Debtors' allocable share of all outstanding prepetition Employee Expenses with respect to which the Employees and Shared Employees are potentially personally liable in an amount not to exceed $25,000 in the aggregate, and to continue to reimburse Employees and Shared Employees for the Debtors' allocable share of postpetition Employee Expenses in the ordinary course of business during the pendency of these Cases.

**D.     Employee Withholdings**

38.     Certain amounts are routinely deducted from the compensation paid to Employees and Shared Employees on account of earnings that judicial or government authorities or the Employees or Shared Employees have designated for deduction, including, for example, various federal, state, and local income, Federal Insurance Contribution Act ("FICA"), and other taxes; support payments; tax levies; savings programs contributions; benefit plans; health and wellness programs; commuting programs; insurance programs; and other similar programs (collectively, the "Employee Withholdings").  In addition, the Debtors and Non-Debtor Employers are responsible for remitting, for their own account, various taxes and fees associated with payroll pursuant to the FICA and federal and state laws regarding unemployment and disability taxes ("Payroll Taxes").  The Debtors project that their allocable share of employer-obligated Payroll Taxes will be in the range of approximately $30,000 to $40,000  in the aggregate each month.

39.     Because the Debtors funded prepetition payroll amounts prior to the Petition Date, as described above, the Debtors believe that all prepetition amounts in respect of Employee Withholdings and Payroll Taxes have already been deducted and/or remitted.  The Debtors seek authority to deduct and remit the Debtors' allocable share of Employee Withholdings and to remit the Debtors' allocable share of Payroll Taxes, in each case on account of Employees and Shared Employees, in the ordinary course of business during the pendency of these Cases.

**E.     Authorization to Banks**

40.     Finally, the Debtors seek an order authorizing the Debtors' banks to receive, process, honor, and pay all of the Debtors' prepetition checks and electronic transfers on account of any of the obligations described in this Motion.  The Debtors also seek an order authorizing them to issue new postpetition checks or effect new postpetition fund transfers on account of the obligations described in this Motion to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

## IV.  BASIS FOR RELIEF

**A.     The Proposed Payments Are Accorded Priority Under Bankruptcy Code Section 507**

41.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code require that certain claims for prepetition wages, salaries, commissions, vacation, sick leave, and employee benefit contributions be accorded priority in payment in an amount not to exceed $12,850 in the aggregate for each employee (to the extent such amounts accrued within 180 days of the Petition Date).  Here, the Debtors have prefunded prepetition salaries and wages, such that any remaining amounts that may be owed to Employees are likely not in excess of the statutory caps of Bankruptcy Code sections 507(a)(4) and 507(a)(5).  For the avoidance of doubt, the prepetition obligations that the Debtors are seeking to honor and/or pay in this Motion are limited to

Employee Expenses incurred by Employees and Shared Employees on behalf of the Debtors prior to the Petition Date and unused Vacation, Holiday Time, Sick Leave, and other paid-time-off accrued by the Employees and Shared Employees prior to the Petition Date.

**B.      Payment of Certain Employee Obligations Is Appropriate Under Section 541 of the Bankruptcy Code**

42.      The Debtors also seek authority to deduct and/or remit certain deductions, withholdings, and payroll taxes to the appropriate entities.  These amounts principally represent employee earnings that governments, employees, and judicial authorities have designated for deduction from employees' paychecks.  Indeed, certain deductions, including contributions to various Benefit Programs and child support and alimony payments, are not property of the Debtors' estates because they have been withheld from employees' paychecks on another party's behalf.  *See* 11 U.S.C. § 541(b); *cf. Old Republic Nat'l Title Ins. Co. v. Tyler (In re Demeron)*, 155 F.3d 718, 721–22 (4th Cir. 1998) (holding funds from various lenders held by closing agent in trust for designated third parties were not property of the debtor's estate); *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104–05 (Bankr. E.D. Pa. 1987) (explaining that funds held by the debtor to be paid for federal taxes are held in trust and are not property of the estate).

43.      Further, federal and state laws require the Debtors and their officers to make certain tax payments that have been withheld from their employees' paychecks.  *See* 26 U.S.C. § 6672 and 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *DuCharmes & Co., Inc. v. United States (In re DuCharmes & Co.)*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).

44. Because the Debtors funded prepetition payroll amounts prior to the Petition Date, as described above, the Debtors believe that all prepetition amounts in respect of Employee Withholdings and Payroll Taxes have already been deducted and/or remitted. The Debtors seek authority to deduct and remit the Debtors' allocable share of Employee Withholdings and to remit the Debtors' allocable share of Payroll Taxes, in each case on account of Employees and Shared Employees, in the ordinary course of business during the pendency of these Cases.

**C.     The Proposed Payments Are Appropriate Under Sections 105(a) and 363 of the Bankruptcy Code, and the Doctrine of Necessity**

45. Courts generally acknowledge that it is appropriate to authorize the payment of prepetition obligations when necessary to protect and preserve the estate. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (authority to pay prepetition claims of suppliers).

**1.     The Court May Authorize Payment of Employee Obligations Under Section 363 of the Bankruptcy Code**

46. Under section 363(b) of the Bankruptcy Code, after notice and a hearing, a bankruptcy court may authorize a debtor to use property of the estate other than in the ordinary course of business. Under the same section, a court should authorize non-ordinary course business transactions when the debtor has articulated a valid business justification for the requested use of estate assets. *See Ionosphere Clubs*, 98 B.R. at 175 (section 363(b) gives the court "broad flexibility" to make payments outside of ordinary course of business as long as the debtor articulates a business justification); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions.");

*In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business"); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2003 WL 22316543, at *30 (Bankr. S.D.N.Y. Mar. 4, 2003); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983).

47.     Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

48.     The Debtors have satisfied the business judgment standard here.  Payment of the limited prepetition obligations described herein serves the sound business purpose of preserving the value of the Debtors' estates.  Without the relief requested in this Motion being granted, there is a risk that the individuals required to preserve the value of the Debtors' assets and successfully complete the Debtors' planned sale process will seek alternative opportunities.  Such a development would deplete the Debtors' workforce, thereby hindering the Debtors' ability to successfully conduct these Cases.  Moreover, the prepetition obligations that the Debtors are seeking to honor and/or pay in this Motion are limited to Employee Expenses incurred by Employees and Shared Employees on behalf of the Debtors prior to the Petition Date and unused Vacation, Holiday Time, Sick Leave, and other paid-time-off accrued by the Employees and

Shared Employees prior to the Petition Date. Accordingly, this Court should grant the requested relief under Bankruptcy Code section 363(b).

49. In addition, the Debtors submit that Court approval to continue their existing policies, programs, and related payments postpetition is not necessary, because of the authority granted by section 363(c) of the Bankruptcy Code. Nonetheless, for the avoidance of doubt, the Debtors request that the Court grant the relief requested herein and enter an order permitting the Debtors, in their discretion, to honor on a postpetition basis their practices, programs, policies, and plans for their Employees and Shared Employees as those practices, programs, policies, and plans were in effect as of the Petition Date, as such may be modified, terminated, amended, or supplemented from time to time in the Debtors' sole discretion.

### 2. Proper Application of the Doctrine of Necessity

50. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A Bankruptcy Court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175. Moreover, "[u]nder Section 105, the court can permit preplan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177). The authority to pay such prepetition obligations is known as the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *Ionosphere Clubs*, 98 B.R. at 176.

51. The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh and New England Railway Co.*, 657 F.2d 570, 581 (3d Cir. 1981). The doctrine of necessity "recognizes the existence of the judicial power to

authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176; *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

52.     Moreover, courts have recognized the applicability of the doctrine of necessity with respect to the payment of prepetition employee compensation and benefits. *See, e.g.*, *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–89 (S.D.N.Y. 1987) (under "necessity of payment" doctrine, it is appropriate for bankruptcy court to defer to Debtors' business judgment in permitting payment of certain workers' compensation claims); *Ionosphere Clubs*, 98 B.R. at 176 ("This rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor.").

53.     Accordingly, the doctrine of necessity similarly justifies the relief requested herein.  Paying the limited prepetition obligations described herein will benefit the Debtors' estates and their creditors by allowing the Debtors to conduct these Cases effectively and thereby preserve value for their estates and creditors.  Therefore, the relief requested represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under the applicable authority.  Courts in this and other districts routinely approve the payment of prepetition claims and expense

reimbursements similar to those described herein.  Accordingly, for all of the foregoing reasons, the Debtors submit that cause exists for granting the relief requested herein.

## V.  RESERVATION OF RIGHTS

54.     Nothing contained herein is intended or should be construed as an admission as to the characterization of the Employees, the Shared Employees, the Excluded Employees, and the Temporary Worker, the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to dispute any claim asserted by any party under applicable non-bankruptcy law.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## VI.  IMMEDIATE RELIEF IS NECESSARY

55.     Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.  The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

## VII.  WAIVER OF ANY APPLICABLE STAY

56.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without

interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## VIII.  NOTICE

57.     The Debtors will provide notice of this Motion to: (i) the U.S. Trustee; (ii) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (iii) the Agent (as defined in the First Day Declaration); (iv) the Office of the United States Attorney for the District of Delaware; (v) the Internal Revenue Service; (vi) the Banks; and (vii) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

## IX.  CONCLUSION

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the

Debtors respectfully request that this Court enter the Proposed Orders, granting the relief

requested in the Motion and such other and further relief as is just and proper.


Dated:  September 6, 2018

*/s/ Robert F. Poppiti, Jr.*

Michael R. Nestor, Esq. (Bar No. 3526)
Sean M. Beach, Esq. (Bar No. 4070)
Robert F. Poppiti, Jr., Esq. (Bar No. 5052)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:     (302) 571-6600
Fax:     (302) 571-1253

and

Michael L. Tuchin, Esq.
Jonathan M. Weiss, Esq.
Sasha M. Gurvitz, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN  LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:     (310) 407-4000
Fax:     (310) 407-9090

*Proposed Counsel to Debtors and
Debtors in Possession*

# EXHIBIT A

## Proposed Interim Order

In re

OPEN ROAD FILMS, LLC, a Delaware
limited liability company, *et al.*,[1]

                 Debtors.

Chapter 11

Case No.:  18-12012 (\_\_\_)

(Jointly Administered)

**Re Docket No.**

### INTERIM ORDER (I) AUTHORIZING PAYMENT OF LIMITED PREPETITION EMPLOYEE BENEFITS AND CONFIRMING RIGHT TO CONTINUE EMPLOYEE BENEFITS ON POSTPETITION BASIS, (II) AUTHORIZING PAYMENT OF REIMBURSEMENT FOR PREPETITION EXPENSES, (III) AUTHORIZING PAYMENT OF WITHHOLDING AND PAYROLL-RELATED TAXES, AND (IV) AUTHORIZING BANKS TO HONOR PREPETITION CHECKS AND <u>FUND TRANSFERS FOR AUTHORIZED PAYMENTS</u>

Upon the motion (the "<u>Motion</u>")[2] of Open Road Films, LLC and its affiliated debtors and

debtors in possession (the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Cases</u>") for

entry of interim and final orders, pursuant to sections 105(a), 363(b), and 507(a) of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>"), Rules 6003 and 6004 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 9013-1 of the Local Rules for the

United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), (i) authorizing,

but not directing, the Debtors: (a) to honor limited prepetition obligations in respect of, and to

continue honoring in the ordinary course of business until further notice (but not assume), certain

of the Debtors' paid time off, leave of absence, workers' compensation, and employee and

retiree benefit plans and programs, as described in the Motion; (b) to reimburse employees for

---

[1]    The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.).  The Debtors' address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

prepetition expenses incurred on behalf of the Debtors in the ordinary course of business; and (c) to deduct and/or remit all related postpetition payroll taxes and other deductions; (ii) authorizing banks and other financial institutions (collectively, the "Banks") to honor and process check and electronic transfer requests related to the foregoing; and (iii) scheduling a final hearing; and upon consideration of the First Day Declaration and the entire record of these Cases; and it appearing that the Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that the Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue of these cases and of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that due and adequate notice of the Motion has been given under the circumstances, and that no other or further notice need be given; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation, and good and sufficient cause appearing for the relief set forth in this Order, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      A final hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") on the Motion is scheduled for _____, 2018 at _____.m. (prevailing Eastern time) before the Court.  Any objections or responses to entry of the Final Order shall be filed on or before 4:00 p.m. (prevailing Eastern time) on _____, 2018 and shall be served upon (i) proposed counsel to the Debtors, (a) Klee, Tuchin, Bogdanoff & Stern LLP, 1999

Avenue of the Stars, 39th Floor, Los Angeles, California 90067, Attn: Michael L. Tuchin, Esq. and Jonathan M. Weiss, Esq., and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Michael R. Nestor, Esq. and Robert F. Poppiti, Jr. Esq.; (ii) counsel to the Agent, Paul Hastings LLP (a) 1999 Avenue of the Stars, 27th Floor, Los Angeles, California 90067, Attn: Susan Williams and (b) 200 Park Avenue, New York, New York 10166, Attn: Andrew V. Tenzer; (iii) counsel to any statutory committee appointed in these chapter 11 Cases; and (iv) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Linda Richenderfer, Esq.  If no objections to entry of the Final Order are timely received, the Court may enter the Final Order without further notice or hearing.

      3.       The Debtors are authorized, but not directed, (i) to reimburse unpaid prepetition Employee Expenses to Employees and Shared Employees in an amount not exceed $25,000 in the aggregate and (ii) to honor all accrued unused prepetition Vacation, Holiday Time, Sick Leave, and other paid time off and leave of absence policies for Employees and Shared Employees in the ordinary course of business.

      4.       The Debtors are authorized, but not directed, in the ordinary course of business on a postpetition basis and in accordance with the budget under any agreed use of cash collateral, to compensate the Employees and the Shared Employees with respect to Employee Compensation and to compensate the Temporary Worker with respect to Temporary Worker Compensation; *provided* that absent further order of this Court, the Debtors shall not make any payments on account of prepetition Employee Compensation or Temporary Worker Compensation.

      5.       Other than as expressly set forth herein, the Debtors are authorized, but not directed, to honor and continue, in the ordinary course of business on a postpetition basis with

respect to Employees and Shared Employees and in accordance with the budget under any agreed use of cash collateral, the Debtors existing policies, plans, and programs with respect to (i) Vacation, Holiday Time, Sick Leave, and other paid time off and leave of absence policies, (ii) Benefit Programs, including the Medical Plan, the Dental & Vision Plan, the Basic Life Plan, the Voluntary Life & Disability Plans, the EAP, and COBRA, (iii) the WC Program, (iv) the Retirement Plan, and (v) the Employee Expenses; *provided* that such relief shall not constitute or be deemed an assumption or an authorization to assume any such policies, plans, or programs under section 365(a) of the Bankruptcy Code

6.      Nothing herein shall be deemed to authorize the payment of any amounts in satisfaction of severance obligations or bonus obligations, or which are subject to section 503(c) of the Bankruptcy Code.

7.      The Debtors' banks shall be and hereby are authorized to receive, process, honor, and pay all prepetition and postpetition checks and fund transfers on account of the obligations authorized to be paid herein that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments. The Debtors shall be and hereby are authorized to issue new postpetition checks or effect new postpetition fund transfers on account of the obligations approved herein to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

8.      Notwithstanding any other provision of this Order, any Bank may rely on the representations of the Debtors with respect to whether any check, draft, wire, or other  transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and any Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (i) at the direction of the Debtors, (ii) in a good-faith

belief that the Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, shall neither be deemed to be in violation of this Order nor be liable to the Debtors or their estates on their account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order.

9.      The Debtors may pay any and all Payroll Taxes and any and all withholding amounts, including social security, FICA, federal and state income taxes, garnishments, health care payments, retirement fund withholding, and other types of Employee Withholding.

10.     Any party receiving payment from the Debtors is authorized and directed to rely upon the representations of the Debtors as to which payments are authorized by this Order.

11.     Nothing in the Motion or this Order or the interim relief granted herein (including any actions taken or payments made by the Debtors pursuant to the relief) shall (i) be construed as a request for authority to assume any executory contract under Bankruptcy Code section 365 or as an admission as to the characterization of the Employees, Shared Employees, Excluded Employees, or Temporary Worker; (ii) waive, affect or impair any of the Debtors' rights, claims or defenses, including, but not limited to, those arising from section 365 of the Bankruptcy Code, other applicable law and any agreement; (iii) grant third-party beneficiary status or bestow any additional rights on any third party; or (iv) be otherwise enforceable by any third party.

12.     Notwithstanding anything to the contrary contained herein, any payment made or to be made under this Order, any authorization contained in this Order, or any claim for which payment is authorized hereunder, shall be subject to the requirements imposed on the Debtors under any orders of this Court approving any use of cash collateral by the Debtors and any budget in connection therewith.

13. Bankruptcy Rule 6003(b) has been satisfied. Notwithstanding any provision in the Bankruptcy Rules to the contrary: (i) this Order shall be effective immediately and enforceable upon its entry; (ii) the Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this order; and (iii) the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action necessary or appropriate to implement this Order.

14. The Court retains jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated:  Wilmington, Delaware
               _____, 2018

                                                _____
                                                Honorable
                                                United States Bankruptcy Judge

**EXHIBIT B**

**Proposed Final Order**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al.*,[1] | Case No.: 18-12012 (___) |
|  | (Jointly Administered) |
| Debtors. | **Re Docket Nos.** |

**FINAL ORDER (I) AUTHORIZING PAYMENT OF LIMITED PREPETITION EMPLOYEE BENEFITS AND CONFIRMING RIGHT TO CONTINUE EMPLOYEE BENEFITS ON POSTPETITION BASIS, (II) AUTHORIZING PAYMENT OF REIMBURSEMENT FOR PREPETITION EXPENSES, (III) AUTHORIZING PAYMENT OF WITHHOLDING AND PAYROLL-RELATED TAXES, AND (IV) AUTHORIZING BANKS TO HONOR PREPETITION CHECKS AND FUND TRANSFERS FOR AUTHORIZED PAYMENTS**

Upon the motion (the "Motion")[2] of Open Road Films, LLC and its affiliated debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases") for entry of interim and final orders, pursuant to sections 105(a), 363(b), and 507(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing, but not directing, the Debtors: (a) to honor limited prepetition obligations in respect of, and to continue honoring in the ordinary course of business until further notice (but not assume), certain of the Debtors' paid time off, leave of absence, workers' compensation, and employee and retiree benefit plans and programs, as described in the Motion; (b) to reimburse employees for

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.). The Debtors' address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

prepetition expenses incurred on behalf of the Debtors in the ordinary course of business; and (c) to deduct and/or remit all related postpetition payroll taxes and other deductions; (ii) authorizing banks and other financial institutions (collectively, the "Banks") to honor and process check and electronic transfer requests related to the foregoing; and (iii) scheduling a final hearing; and upon consideration of the First Day Declaration and the entire record of these Cases; and it appearing that the Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that the Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue of these cases and of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that due and adequate notice of the Motion has been given under the circumstances, and that no other or further notice need be given; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED on a final basis, as set forth herein.

2.      The Debtors are authorized, but not directed, (i) to reimburse unpaid prepetition Employee Expenses to Employees and Shared Employees in an amount not exceed $25,000 in the aggregate and (ii) to honor all accrued unused prepetition Vacation, Holiday Time, Sick Leave, and other paid time off and leave of absence policies for Employees and Shared Employees in the ordinary course of business.

3.      The Debtors are authorized, but not directed, in the ordinary course of business on a postpetition basis and in accordance with the budget under any agreed use of cash collateral, to compensate the Employees and the Shared Employees with respect to Employee Compensation and to compensate the Temporary Worker with respect to Temporary Worker Compensation; *provided* that absent further order of this Court, the Debtors shall not make any payments on account of prepetition Employee Compensation or Temporary Worker Compensation.

4.      Other than as expressly set forth herein, the Debtors are authorized, but not directed, to honor and continue, in the ordinary course of business on a postpetition basis with respect to Employees and Shared Employees and in accordance with the budget under any agreed use of cash collateral, the Debtors existing policies, plans, and programs with respect to (i) Vacation, Holiday Time, Sick Leave, and other paid time off and leave of absence policies, (ii) Benefit Programs, including the Medical Plan, the Dental & Vision Plan, the Basic Life Plan, the Voluntary Life & Disability Plans, the EAP, and COBRA, (iii) the WC Program, (iv) the Retirement Plan, and (v) the Employee Expenses; *provided* that such relief shall not constitute or be deemed an assumption or an authorization to assume any such policies, plans, or programs under section 365(a) of the Bankruptcy Code

5.      Nothing herein shall be deemed to authorize the payment of any amounts in satisfaction of severance obligations or bonus obligations, or which are subject to section 503(c) of the Bankruptcy Code.

6.      The Debtors' banks shall be and hereby are authorized to receive, process, honor, and pay all prepetition and postpetition checks and fund transfers on account of the obligations authorized to be paid herein that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments. The

Debtors shall be and hereby are authorized to issue new postpetition checks or effect new postpetition fund transfers on account of the obligations approved herein to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

7.      Notwithstanding any other provision of this Order, any Bank may rely on the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and any Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (i) at the direction of the Debtors, (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, shall neither be deemed to be in violation of this Order nor be liable to the Debtors or their estates on their account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order.

8.      The Debtors may pay any and all Payroll Taxes and any and all withholding amounts, including social security, FICA, federal and state income taxes, garnishments, health care payments, retirement fund withholding, and other types of Employee Withholding.

9.      Any party receiving payment from the Debtors is authorized and directed to rely upon the representations of the Debtors as to which payments are authorized by this Order.

10.      Nothing in the Motion or this Order or the relief granted herein (including any actions taken or payments made by the Debtors pursuant to the relief) shall (i) be construed as a request for authority to assume any executory contract under Bankruptcy Code section 365 or as an admission as to the characterization of the Employees, Shared Employees, Excluded Employees, or Temporary Worker; (ii) waive, affect or impair any of the Debtors' rights, claims

or defenses, including, but not limited to, those arising from section 365 of the Bankruptcy Code, other applicable law and any agreement; (iii) grant third-party beneficiary status or bestow any additional rights on any third party; or (iv) be otherwise enforceable by any third party.

11.     Notwithstanding anything to the contrary contained herein, any payment made or to be made under this Order, any authorization contained in this Order, or any claim for which payment is authorized hereunder, shall be subject to the requirements imposed on the Debtors under any orders of this Court approving any use of cash collateral by the Debtors and any budget in connection therewith.

12.     Bankruptcy Rule 6003(b) has been satisfied.  Notwithstanding any provision in the Bankruptcy Rules to the contrary: (i) this Order shall be effective immediately and enforceable upon its entry; (ii) the Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this order; and (iii) the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action necessary or appropriate to implement this Order.

13.     The Court retains jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Order.


Dated:  Wilmington, Delaware
            _____, 2018


                                                    _____
                                                    Honorable
                                                    United States Bankruptcy Judge