# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re

OPEN ROAD FILMS, LLC, a Delaware
limited liability company, *et al.*,[1]

                Debtors.

Chapter 11

Case No.: 18-12012 (___)

(Joint Administration Requested)

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING CONTINUED USE OF CASH MANAGEMENT SYSTEM, (II) AUTHORIZING THE CONTINUATION OF INTERCOMPANY AND AFFILIATE TRANSACTIONS, (III) GRANTING ADMINISTRATIVE PRIORITY STATUS TO POSTPETITION INTERCOMPANY AND AFFILIATE CLAIMS, (IV) AUTHORIZING USE OF PREPETITION BANK ACCOUNTS, ACCOUNT CONTROL AGREEMENTS, AND PAYMENT METHODS, (V) EXTENDING TIME TO COMPLY WITH <u>REQUIREMENTS OF 11 U.S.C. § 345(b), AND (VI) SCHEDULING FINAL HEARING</u>

Open Road Films, LLC ("<u>Open Road Films</u>") and its affiliated debtors and debtors in

possession (the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Cases</u>") hereby move

the Court (the "<u>Motion</u>") for entry of interim and final orders, substantially in the forms attached

hereto as **Exhibit A** (the "<u>Proposed Interim Order</u>") and **Exhibit D** ("<u>Proposed Final Order</u>" and

together with the Proposed Interim Order, the "<u>Proposed Orders</u>"), pursuant to sections 105, 345,

363, 364(b), and 503(b) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the

"<u>Bankruptcy Code</u>"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy

Rules</u>"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), (i) authorizing the

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.). The Debtors' address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067. Additional affiliated entities, including, but not limited to, IM Global LLC, Global Road Entertainment Television LLC (f/k/a IM Global TV LLC), Tang Media Partners LLC, and Global Road Entertainment LLC, are <u>not</u> debtors in these Cases and have <u>not</u> commenced chapter 11 cases.

Debtors' continued use of their existing cash management system, (ii) authorizing the continuation of intercompany and affiliate transactions, (iii) granting administrative priority status to postpetition intercompany and affiliate claims, (iv) authorizing the Debtors to continue using prepetition bank accounts and account control agreements, and using debit, wire, check, and ACH payment methods, (v) granting the Debtors a thirty (30) day extension of time to comply with the requirements of section 345(b) of the Bankruptcy Code, without prejudice to the right to seek a further extension, and (vi) scheduling a final hearing. In support of the Motion, the Debtors rely on the *Declaration of Amir Agam in Support of First Day Motions* (the "First Day Declaration") filed substantially concurrently herewith. In further support of the Motion, the Debtors respectfully represent as follows:

## I. JURISDICTION

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      The statutory and legal predicates for the relief requested herein are sections 105, 345, 363, 364(b), and 503(b) of the Bankruptcy Code, Bankruptcy Rule 6004, and Local Rule 2015-2.

## II. BACKGROUND

**A.     General Background**

4.     On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

5.     The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been requested or appointed in these Cases and no statutory committee has been appointed yet by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").

6.     The Debtors distribute motion pictures in the United States and license motion pictures in ancillary markets, principally to home entertainment, pay television, subscription, and transactional video-on-demand, free television, and other non-theatrical entertainment distribution markets. The Debtors' films have generated over $1.3 billion in worldwide theatrical box office receipts, have been nominated for 49 Academy Awards, and have won 13 Academy Awards.

7.     The Debtors intend to utilize the bankruptcy process to continue and conclude their robust marketing and sale process. They believe that doing so will ensure that the value of their assets are maximized for the benefit of all stakeholders.

8.     The detailed factual background relating to the Debtors and the commencement of these Cases is set forth in the First Day Declaration.

**B.     Cash Management System**

9.     In the ordinary course of their business, the Debtors maintain a complex cash management system (the "Cash Management System"), which includes all activities necessary and pertinent to collecting and disbursing the Debtors' cash assets. The Cash Management

System allows the Debtors to efficiently identify the Debtors' cash requirements and transfer cash as needed to respond to these requirements. The Cash Management System is important to the efficient execution and achievement of the Debtors' objectives, and, ultimately, to maximizing the value of the Debtors' estates.

10. The Cash Management System generally operates similarly to the centralized cash management systems used by other companies to manage the cash of numerous operating units in a cost-effective, efficient manner. A chart depicting the flow of funds in the Cash Management System is attached hereto as **Exhibit B**.

11. The Cash Management System consists of bank accounts (the "<u>Bank Accounts</u>"), all of which are maintained at Bank of America, except for one which is maintained at CIT Bank, N.A. **Exhibit C** lists all of the Debtors' Bank Accounts.

12. Receipts from the Debtors' operations are all deposited directly into a main collections account (account number ending 7030) maintained by Open Road Films at Bank of America (the "<u>Collections Account</u>"). Funds on deposit in the Collections Account are manually transferred to a main disbursement account (account number ending 5975) maintained by Open Road Films at Bank of America (the "<u>Disbursement Account</u>"). The Debtors make most disbursements, including to fund payroll, residual and participation payments, and other general operating expenses from the Disbursement Account.[2]

13. In addition to the Collections Account, the Debtors also maintain four ancillary collections accounts (account numbers ending 1547, 1180, 1185, and 5985) at Bank of America (the "<u>Segregated Collections Accounts</u>"). The Segregated Collections Accounts are maintained

---

[2] The Debtors formerly used another intermediary disbursement account (account number ending 9652) maintained by Open Road Films at Bank of America (the "<u>Sweep Account</u>"), which funded the Disbursement Account; however, the Sweep Account now maintains a zero balance and is no longer in use in the Debtors' Cash Management System.

by Debtors OR Productions LLC, Open Road International LLC, and Open Road Films. The Segregated Collections Accounts are dedicated collections accounts for domestic and/or international receipts on account of specific film titles. Disbursements from the Segregated Collections Accounts are made from those accounts to the Disbursement Account, and then from the Disbursement Account to third parties connected with the applicable film title. One of the Segregated Collections Accounts (account number ending 1547) may also be used for other production projects going forward, as the holder of that account (OR Productions LLC) is a signatory to union contracts with certain industry guilds.

14. In addition to the Disbursement Account, the Debtors also maintain eight ancillary disbursement accounts at Bank of America, seven of which (account numbers ending 6710, 3833, 9701, 9017, 6056, 0888, and 0179) are maintained by Debtor Open Road Films (the "P&A Accounts") and one of which (account number ending 7073) is maintained by Debtor Open Road Releasing LLC (the "ORR Account"). The P&A Accounts are dedicated disbursement accounts from which the Debtors make prints and advertising ("P&A") expenditures on account of specific film titles from funds deposited into the P&A Accounts directly by third parties connected with the applicable film title (*i.e.*, producers). In some instances, expenditures related to a specific film title for which the Debtors maintain a dedicated P&A Account are sometimes disbursed from the Disbursement Account, in which case the Debtors reconcile the charges and make corresponding transfers from the applicable P&A Account to the Collections Account to true up the accounts. Once P&A activity relating to the film title associated with the particular P&A Account ceases, any remaining funds are refunded back to the appropriate third parties connected with the film title. The ORR Account maintains a

small cash balance and is used to fund tax filing fees and similar minor expenditures for Open Road Releasing, LLC.

15.     The Debtors have one additional account (account number ending 7035) maintained by Debtor Open Road Film at Bank of America, however, this account has a zero balance and is not currently in use for any purpose.  Finally, the Debtors have one account (account number ending 0445) maintained by Debtor Open Road Films at CIT Bank, N.A., however, this account is likewise not currently in use for any purpose.

16.     Several of the Debtors' accounts are subject to certain Deposit Account Control Agreements between Open Road Films and Bank of America (as amended, the "<u>Deposit Account Control Agreements</u>").  The Debtors intend to maintain the Deposit Account Control Agreements in the ordinary course of their business during the pendency of these Cases and intend that these agreements should govern the postpetition cash management relationship between the Debtors and the banks party thereto.

17.     Prior to the Petition Date, the Debtors charged certain expenditures pursuant to a commercial card program between Open Road Films and Bank of America, however, the Debtors terminated that program and the associated credit cards prior to the commencement of these Cases.  As of the Petition Date, the Debtors estimate that there is approximately $8,200 in unpaid charges in connection with the final month these credit cards were used.  In the ordinary course of business, the Debtors also utilize various payment methods that are customary for businesses of this size, including debit, wire, check, and ACH payment methods.

18.     The Debtors seek authority to continue using the Cash Management System, including the maintenance of the Bank Accounts described above and listed on **<u>Exhibit B</u>** and **<u>Exhibit C</u>**, and to continue using customary payment methods during the pendency of these

Cases, subject to the Debtors' right to close Bank Accounts in their discretion and in accordance with the terms of any Court approved use of cash collateral.

**C.      Intercompany and Affiliate Transactions**

19.      Prior to the Petition Date, the Debtors engaged in certain intercompany transactions with each other in the ordinary course of business (collectively, the "Intercompany Transactions").  As is described in the First Day Declaration, in the ordinary course of business, the Debtors also rely on employees and services and incur expenses that are shared among the Debtors and certain non-debtor affiliates, including Tang Media Partners Limited and its direct or indirect subsidiaries.  In addition to shared employees and employee related services, the shared services and expenses include, among other things, communications and utility services (including for internet), coverage under insurance plans, and marketing and branding services.[3] These costs (the "Affiliate Transactions") are currently to be allocated among the various Debtor and non-debtor entities based on an allocation methodology that is intended to approximate each applicable entity's use of or benefit from such employees, services, and expenditures.

20.      As such, the Intercompany Transactions and Affiliate Transactions create intercompany receivables and payables (respectively, the "Intercompany Claims" and "Affiliate Claims").  As set forth in the First Day Declaration, the Intercompany Claims and Affiliate Claims are not always settled by actual transfers of cash.

21.      To ensure that each individual Debtor entity will not be disadvantaged by funding costs that are fairly allocable to another Debtor or non-debtor entity, the Debtors request that,

---

[3] The shared employees and related services (*i.e.*, health and benefit plans) are also described in greater detail in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Payment of Limited Prepetition Employee Benefits and Confirming Right to Continue Employee Benefits on Postpetition Basis, (II) Authorizing Payment of Reimbursement for Prepetition Expenses, (III) Authorizing Payment of Withholding and Payroll-Related Taxes, (IV) Authorizing Banks to Honor Prepetition Checks and Fund Transfers for Authorized Payments, and (V) Scheduling Final Hearing* filed substantially concurrently herewith.

pursuant to Bankruptcy Code section 503(b)(1) and 364(b), the Court grant administrative expense status to all Intercompany Claims and Affiliate Claims that arise postpetition as a result of the Intercompany Transactions and the Affiliate Transactions. For the avoidance of doubt, the Debtors are not seeking authority to pay any non-debtor affiliates on account of prepetition Affiliate Claims and will not make any such payment without Court approval. The Debtors also seek the authority to continue these Intercompany Transactions and Affiliate Transaction in the ordinary course of business during the pendency of these Cases, in a manner consistent the terms of any order of this Court related to the use of cash collateral. If the Intercompany Transactions and Affiliate Transactions were to be discontinued, the Cash Management System, the Debtors' operations, and the prosecution of these Cases would be disrupted, to the detriment of the Debtors, their creditors, and the Debtors' estates.

**D.      Business Forms**

22.      In the ordinary course of business, the Debtors utilize a variety of business forms, including, *inter alia*, checks, invoices, and letterhead (the "Business Forms"). To minimize expenses, the Debtors seek authority to continue to use all Business Forms in substantially the form used immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession. The Debtors will communicate with the various vendors and counterparties with which the Debtors conduct business in order to notify them of the commencement of these Cases, and believe that such communications will provide adequate notice of the Debtors' status as debtors in possession. In accordance with Local Rule 2015-2(a), to the extent that the Debtors exhaust their existing supply of checks during these Cases and require new checks, the Debtors will reorder checks with a notation indicating the designation "Debtor in Possession" and the lead case number in these Cases.

## III.  RELIEF REQUESTED

23.    By this Motion, the Debtors request that the Court enter the Proposed Orders,

(ii) authorizing the continuation of Intercompany Transactions and Affiliate Transactions,

(iii) granting administrative priority status to postpetition Intercompany Claims and Affiliate

Claims, (iv) authorizing the Debtors to continue using the Bank Accounts and Deposit Account

Control Agreements, and using debit, wire, check, and ACH payment methods, (v) granting the

Debtors a thirty (30) day extension of time to comply with the requirements of section 345(b) of

the Bankruptcy Code, without prejudice to the right to seek a further extension, and

(vi) scheduling a final hearing to consider approval of the Motion on a final basis.

## IV.  BASIS FOR RELIEF

**A.    Maintaining the Existing Cash Management System Is Important to the Debtors'
Ongoing Operations and Successful Prosecution of These Cases.**

24.    In light of the size and complexity of the Debtors' operations, the maintenance of

the Debtors' current Cash Management System is important for the successful prosecution of

these Cases, as well as for the preservation of the value of the Debtors' assets for the benefit of

the Debtors' creditors and their estates.

25.    The Debtors' request for authorization to continue to use the Cash Management

System is consistent with section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in

possession to "use property of the estate in the ordinary course of business, without notice or a

hearing."  11 U.S.C. § 363(c)(1).  Section 363(c)(1) is intended to provide a debtor in possession

with the flexibility to engage in the ordinary transactions required to operate its business.  *See,*

*e.g.*, *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("The framework of section 363 is

designed to allow a trustee (or debtor-in-possession) the flexibility to engage in ordinary

transactions without unnecessary creditor and bankruptcy court oversight, while protecting

creditors by giving them an opportunity to be heard when transactions are not ordinary."); *see*

*also In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) ("If the Court

determines that a transaction is in the ordinary course of a debtor's business, the Court will not

entertain an objection, provided that the conduct involves a business judgement made in good

faith upon a reasonable basis and within the scope of authority under the Bankruptcy Code.").

Included within the purview of section 363(c) is a debtor's ability to continue the routine

transactions necessitated by its cash management system. *See Amdura Nat'l Distrib. Co. v.*

*Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996) (approving "routine

transactions necessitated by the cash management system the [debtors] had adopted").

Nevertheless, the Debtors bring this Motion out of an abundance of caution, to the extent any

aspect of the Cash Management System could be considered as outside the ordinary course of

business for purposes of section 363(c).

      26.    Courts in this and other districts have noted that an integrated cash management

system "allows efficient utilization of cash resources and recognizes the impracticalities of

maintaining separate cash accounts for the many different purposes that require cash." *In re*

*Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *rev'd on other grounds*,

997 F.2d 1039 (3d Cir. 1993); *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49

F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer

more efficiently and effectively its financial operations and assets"). The United States Court of

Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain

separate accounts "would be a huge administrative burden and economically inefficient." *In re*

*Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1061 (3d Cir. 1993). For these reasons, the Debtors

should be permitted to continue their Cash Management System.

**B.** **The Court Should Authorize the Debtors to Maintain Existing Bank Accounts and Continue to Use Their Existing Check Stock.**

27. The United States Trustee for the District of Delaware has set forth certain operating and reporting requirements for chapter 11 cases (the "U.S. Trustee Guidelines") that require debtors in possession to, among other things: (i) establish one debtor in possession bank account for all estate monies required for the payment of taxes, including payroll taxes; (ii) close all existing bank accounts and open new debtor in possession accounts; (iii) maintain a separate debtor in possession account for cash collateral; and (iv) obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and type of account on such checks. These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, and to help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

28. Enforcement of the U.S. Trustee Guidelines during these Cases would disrupt the Debtors' ordinary financial operations. Accordingly, the Debtors respectfully request that the Court allow them to operate each of the Bank Accounts as such accounts were maintained in the ordinary course of business before the Petition Date.

29. In addition, the Debtors have concurrently filed motions seeking authorization to pay limited prepetition obligations in the ordinary course of business. If the Debtors were required to open new accounts, they would likely be unable to timely implement the relief sought in those motions. The Debtors have the ability to monitor disbursements from their Bank Accounts to ensure that only prepetition obligations expressly approved by this Court are paid.

30. In the ordinary course of their business, the Debtors use certain pre-printed check stock. To avoid disruption of the Cash Management System and unnecessary expense, pursuant

to Local Rule 2015-2(a), the Debtors request that they be authorized to continue to use their existing check stock, without reference to their status as debtors in possession. The Debtors submit that parties in interest will not be prejudiced if the Debtors are authorized to continue to use their existing checks. The Debtors will be sending a notice of commencement of these Cases to all creditors. Most parties interacting with the Debtors will be aware of their status as debtors in possession; thus, changing checks immediately is unnecessary and unduly burdensome.

31.     Courts in this district have granted similar relief in other chapter 11 cases. Similar authorization is likewise appropriate in these Cases.

**C.     The Court Should Authorize the Debtors to Continue the Intercompany Transactions and Affiliate Transaction and Grant Administrative Expense Status to Intercompany Claims and Affiliate Claims**

32.     Under Bankruptcy Code section 363(c)(1), a debtor in possession "may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business … and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Under Bankruptcy Code section 503(b)(1), after notice and a hearing "there shall be allowed, administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate …." 11 U.S.C. §503(b)(1)(A).

33.     The Debtors respectfully submit that, pursuant to Bankruptcy Code section 363(c)(1), the Debtors' continuation of the Intercompany Transaction and Affiliate Transactions in the ordinary course of business in these Cases likely does not require Court approval. In an abundance of caution, the Debtors nevertheless request authority to continue the Intercompany Transactions and Affiliate Transactions in order to provide needed certainty that the Debtors can continue to engage in these transactions, which are crucial to the Debtors' operations and the success of these Cases. If the Intercompany Transactions and Affiliate Transactions were to be discontinued, the Cash Management System and the Debtors' operations would be disrupted to

the detriment of the Debtors and their estates.  To ensure that each individual Debtor will not disadvantage its estate and creditors by funding the operations of another entity, the Debtors also request that, pursuant to Bankruptcy Code section 503(b)(1) and 364(b), the Court grant administrative expense status to all Intercompany Claims and Affiliate Claims that arise postpetition as a result of the Intercompany Transactions and Affiliate Transactions.  Affording such postpetition claims administrative expense status will ensure that each Debtor entity using the Cash Management System and each entity engaging in Intercompany Transactions or Affiliate Transactions, as applicable, will bear its fair allocable share of the ultimate cost burden of its ordinary course transactions with other Debtors and affiliated non-debtors.  The Debtors submit that the continuation of Intercompany Transactions and Affiliate Transactions constitutes a sound exercise of the Debtors' business judgment and will provide a fair and appropriate allocation of costs among the various Debtor and non-debtor entities.  Furthermore, the Debtors are not seeking authority in this Motion to pay any non-debtor affiliates on account of prepetition Affiliate Claims, as the relief requested herein only applies to ordinary course postpetition Affiliate Transactions and ordinary course postpetition Affiliate Claims.

34.     Administrative expense treatment for postpetition claims arising from intercompany transactions has been granted in other comparable chapter 11 cases in this district and the Debtors submit that similar relief is appropriate in these Cases.

**D.     The Court Should Authorize the Debtors to Continue Using Debit, Wire, Check, and ACH Payments as Warranted.**

35.     The Debtors request that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check.  In particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement.  As

discussed above, in the ordinary course of business, the Debtors conduct transactions through ACH payments and other similar methods. If the Debtors' ability to conduct transactions by debit, wire, check, ACH payment or other similar methods is impaired, the Debtors may be unable to perform under certain contracts, their business operations may be unnecessarily disrupted and their estates will incur additional costs. As such, the Debtors should be permitted to continue using debit, wire, check, and ACH payments.

**E.      The Court Should Authorize the Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course of Business**

36.      The Debtors respectfully request that the Court authorize the banks and financial institutions (the "Banks") at which the Bank Accounts are maintained to continue to maintain, service, and administer the Bank Accounts as accounts of debtors in possession, without interruption and in the ordinary course of business. In this regard, the Banks should be authorized and directed to receive, process, honor, and pay any and all checks, ACH payments and other instructions, and drafts payable through, drawn, or directed on the Bank Accounts after the Petition Date as instructed by the Debtors.

37.      The Debtors further request that the Court authorize the Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH payments should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH payments are dated before or after the Petition Date. The Debtors also request that, to the extent a Bank honors a prepetition check or other item drawn on any account either (i) at the direction of the Debtors; (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) as a result of an innocent mistake made despite the above-described protective measures, such Bank shall not be deemed to be liable to the Debtors or their estates on account of such prepetition check or other

item honored postpetition. The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise. The Debtors further request that the Banks be authorized to (i) honor the Debtors' directions with respect to the opening and closing of any Bank Account, and (ii) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions, provided in each case that the Banks shall not have any liability to any party for relying on such representations.

38. Moreover, the Debtors request that the Court authorize (i) the Banks to charge, and the Debtors to pay or honor, both prepetition and postpetition service and other fees, costs, charges, and expenses to which the Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtors, and (ii) charge back returned items to the Bank Accounts, whether such items are dated before, on or after the Petition Date, in the ordinary course of business during the pendency of these Cases.

**F.      Cause Exists for an Extension of Time to Comply with the Deposit and Investment Guidelines Under Section 345 of the Bankruptcy Code.**

39. Section 345(a) of the Bankruptcy Code authorizes deposit or investment of the money of the estate, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). Although section 345(a) generally requires that, with respect to deposits and investments that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," the estate must require a bond in favor of the United States secured by the undertaking of a U.S. Trustee approved corporate surety, the court is permitted to dispense with this undertaking "for cause." 11 U.S.C. § 345(b).

40.     The Court's ability to excuse strict performance of the requirements of section

345(b) of the Bankruptcy Code "for cause" arises from the 1994 amendments to the Bankruptcy

Code.  The legislative history of those amendments provides, in pertinent part, as follows:

> Section 345 of the Code governs investments of the funds of
> bankruptcy estates.  The purpose[] is to make sure that funds of a
> bankrupt that are obliged to creditors are invested prudently and
> safely with the eventual goal of being able to satisfy all claims
> against the bankruptcy estate.  Under current law, all investments
> are required to be FDIC insured, collateralized or bonded.  While
> this requirement is wise in the case of a smaller debtor with limited
> funds that cannot afford a risky investment to be lost, *it can work
> to needlessly handcuff larger, more sophisticated debtors*.  This
> section would amend the Code to allow the courts to approve
> investments other than those permitted by section 345(b) for just
> cause, thereby overruling *In re Columbia Gas Systems, Inc.*, 33
> F.3d 294 (3d Cir. 1994).

*In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (quoting H.R. REP. NO.

103-835, at 46-47 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3355).

41.     In determining whether the "cause" standard under section 345(b) of the

Bankruptcy Code has been met, courts consider a "totality of the circumstances analysis,"

utilizing the following factors: (i) the sophistication of the debtors' business; (ii) the size of the

debtors' business operations; (iii) the amount of the funds involved; (iv) the bank ratings

(Moody's and Standard and Poor) of the financial institutions where the debtor in possession

funds are held; (v) the complexity of the case; (vi) the safeguards in place within the debtor's

own business of insuring the safety of the funds; (vii) the debtor's ability to successfully

prosecute these Cases in the face of a failure of one or more of the financial institutions; (viii) the

benefit to the debtor; (ix) the harm, if any, to the estate; and (x) the reasonableness of the

debtor's request for relief from the section 345(b) requirements in light of the overall

circumstances of the case.  *Serv. Merch.*, 240 B.R. at 896.

42.    The Debtors believe they are in compliance with the requirements of section 345(a) because the Bank Accounts are maintained at U.S. Trustee-approved depository institutions.  Nevertheless, out of abundance of caution, the Debtors request (i) a thirty (30) day extension of time to comply with the deposit and investment requirements of section 345(b) of the Bankruptcy Code to the extent that such requirements are inconsistent with the Debtors' current practices, without prejudice to the right to seek a further extension, (ii) that applicable institutions be authorized and directed to accept and hold or invest such funds at the Debtors' direction, and (iii) that applicable institutions be authorized and directed to honor the Debtors' directions with respect to the opening and closing of any Bank Account.

43.    Even if the Debtors' current deposit and investment practices do not strictly comply with the approved guidelines identified in section 345 of the Bankruptcy Code, the practices nevertheless are prudent and designed to yield the maximum reasonable net return on the funds invested, taking into account the safety of such deposits.

44.    In light of the foregoing, the Debtors submit that cause exists for an extension of time to comply with the requirements of Bankruptcy Code section 345(b) to the extent that those requirements are inconsistent with the Debtors' current deposit and investment practices.  In accordance with Local Rule 2015-2, the Debtors request a thirty (30) day extension of time to comply with the section 345 requirements.

## V.  IMMEDIATE RELIEF IS NECESSARY

45.    Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.  To the extent that Bankruptcy Rule 6003 is applicable to the relief requested herein, the Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

## VI. WAIVER OF ANY APPLICABLE STAY

46.     The Debtors also request that the Court waive any stay imposed by Bankruptcy Rule 6004(h), to the extent applicable, which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive any fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable, as the exigent nature of the relief sought herein justifies immediate relief.

## VII. NOTICE

47.     The Debtors will provide notice of this Motion to: (i) the U.S. Trustee; (ii) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (iii) the Agent (as defined in the First Day Declaration); (iv) the Office of the United States Attorney for the District of Delaware; (v) the Internal Revenue Service; (vi) the Banks; and (vii) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank.]*

## VIII. CONCLUSION

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the

Debtors respectfully request that this Court enter the Proposed Orders, granting the relief

requested in the Motion and such other and further relief as is just and proper.

Dated: September 6, 2018

*/s/ Robert F. Poppiti, Jr.*

Michael R. Nestor, Esq. (Bar No. 3526)
Sean M. Beach, Esq. (Bar No. 4070)
Robert F. Poppiti, Jr., Esq. (Bar No. 5052)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:     (302) 571-6600
Fax:     (302) 571-1253

and

Michael L. Tuchin, Esq.
Jonathan M. Weiss, Esq.
Sasha M. Gurvitz, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:     (310) 407-4000
Fax:     (310) 407-9090

*Proposed Counsel to Debtors and
Debtors in Possession*

# EXHIBIT A

**Proposed Interim Order**

01:23594757.2

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re

OPEN ROAD FILMS, LLC, a Delaware
limited liability company, *et al.*,[1]

               Debtors.

Chapter 11

Case No.:  18-12012 (___)

(Jointly Administered)

**Re Docket No.**

**INTERIM ORDER (I) AUTHORIZING CONTINUED USE OF CASH MANAGEMENT SYSTEM, (II) AUTHORIZING THE CONTINUATION OF INTERCOMPANY TRANSACTIONS, (III) GRANTING ADMINISTRATIVE PRIORITY STATUS TO POSTPETITION INTERCOMPANY TRANSACTIONS, (IV) AUTHORIZING USE OF PREPETITION BANK ACCOUNTS, ACCOUNT CONTROL AGREEMENT, AND CERTAIN PAYMENT METHODS, (V) EXTENDING TIME TO COMPLY WITH <u>REQUIREMENTS OF 11 U.S.C. § 345(b), AND (VI) SCHEDULING FINAL HEARING</u>**

Upon the motion (the "<u>Motion</u>")[2] of Open Road Films, LLC and its affiliated debtors and

debtors in possession (the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Cases</u>") for

entry of interim and final orders, pursuant to sections 105, 345, 363, 364(b), and 503(b) of title

11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "<u>Bankruptcy Code</u>"), Rule 6004 of the

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 2015-2 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "<u>Local Rules</u>"), (i) authorizing the Debtors' continued use of their

existing cash management system, (ii) authorizing the continuation of Intercompany

Transactions and Affiliate Transactions, (iii) granting administrative priority status to

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.).  The Debtors' address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

postpetition Intercompany Claims and Affiliate Claims, (iv) authorizing the Debtors to continue using prepetition bank accounts and account control agreements and using debit, wire, check, and ACH payments, (v) granting the Debtors a thirty (30) day extension of time to comply with the requirements of Bankruptcy Code section 345(b), without prejudice to the right to seek a further extension, and (vi) scheduling final hearing; and upon consideration of the First Day Declaration and the record of these Cases; and it appearing that the Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and it appearing that the Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue of these Cases and of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that due and adequate notice of the Motion has been given under the circumstances, and that no other or further notice need be given; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation, and good and sufficient cause appearing for the relief set forth in this Order, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.       The Motion is GRANTED on an interim basis, as set forth herein.

2.       A final hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") on the Motion is scheduled for _____, 2018 at _____.m. (prevailing Eastern time) before the Court.  Any objections or responses to entry of the Final Order shall be filed on or before 4:00 p.m. (prevailing Eastern time) on _____, 2018 and shall be served upon (i) proposed counsel to the Debtors, (a) Klee, Tuchin, Bogdanoff & Stern LLP, 1999

Avenue of the Stars, 39th Floor, Los Angeles, California 90067, Attn: Michael L. Tuchin, Esq. and Jonathan M. Weiss, Esq., and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Michael R. Nestor, Esq. and Robert F. Poppiti, Jr. Esq.; (ii) counsel to the Agent, Paul Hastings LLP (a) 1999 Avenue of the Stars, 27th Floor, Los Angeles, California 90067, Attn: Susan Williams and (b) 200 Park Avenue, New York, New York 10166, Attn: Andrew V. Tenzer; (iii) counsel to any statutory committee appointed in these Cases; and (iv) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Linda Richenderfer, Esq. If no objections to entry of the Final Order are timely received, the Court may enter the Final Order without further notice or hearing.

3. The Debtors are authorized, in their sole discretion, to continue operating the Cash Management System in the ordinary course of business postpetition, except as otherwise set forth herein.

4. The Debtors are authorized, in their sole discretion, to continue to engage in the Intercompany Transactions and Affiliate Transaction and to continue to incur Intercompany Claims and Affiliate Claims in the ordinary course of business postpetition. The Debtors shall maintain accurate and detailed records in the ordinary course of business reflecting transfers of cash, if any, including for Intercompany Transactions and Affiliate Transactions. Unless otherwise ordered by the Court, all Intercompany Claims and Affiliate Claims arising after the Petition Date shall be accorded administrative expense priority in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code. The Debtors shall not pay any non-debtor affiliates on account of prepetition Affiliate Claims.

5.     The Debtors are further authorized, in their sole discretion, to: (i) continue to use, with the same account numbers, all of the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit B** and **Exhibit C** to the Motion; (ii) use, in their present form, all Business Forms related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; (iii) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession; (iv) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH payments, and other debits; and (v) pay any ordinary course prepetition or postpetition bank fees incurred in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts.

6.     All Banks at which the Bank Accounts are maintained are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of debtors in possession, without interruption and in the ordinary course of business.  In this regard, the Banks are authorized to receive, process, honor, and pay any and all checks, ACH payments, and other instructions, and drafts payable through, drawn, or directed on the Bank Accounts after the Petition Date as instructed by the Debtors.

7.     All Banks provided with notice of this Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

8.     The Deposit Account Control Agreements shall be maintained and shall continue to govern the postpetition cash management relationship between the Debtors and the banks party thereto, and all of the provisions of such agreements, including, without limitation, the

termination and fee provisions, shall remain in full force and effect, and the Debtors, the secured parties thereto, or the banks party thereto may, without further Order of this Court, implement changes to the cash management systems and procedures in the ordinary course of business pursuant to terms of those certain existing Deposit Account Control Agreements, including, without limitation, the opening and closing of bank accounts; *provided, however*, that nothing contained herein shall constitute an assumption of the Deposit Account Control Agreements pursuant to section 365 of the Bankruptcy Code.

9.      For any accounts that are not subject to a Deposit Account Control Agreement, those certain existing deposit agreements between the Debtors and the depository and disbursement banks party thereto shall continue to govern the postpetition cash management relationship between the Debtors and the bank party thereto, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.  Either the Debtors or the banks party thereto may, without further order of the Court, implement changes to the cash management systems and procedures in the ordinary course of business pursuant to the terms of those certain existing deposit agreements, including, without limitation, the opening and closing of bank accounts.

10.      In the course of providing cash management services to the Debtors, any Bank, without further order of this Court, is authorized to charge, and the Debtors are authorized to pay or honor, both prepetition and postpetition service and other fees, costs, charges, and expenses to which the Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtors.

11.      Notwithstanding any other provision of this Order, any Bank may rely on the representations of the Debtors with respect to whether any check, draft, wire, or other  transfer

drawn or issued by the Debtors before the Petition Date should be honored pursuant to any order of this Court, and any Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (i) at the direction of the Debtors, (ii) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, shall neither be deemed to be in violation of this Order nor be liable to the Debtors or their estates on their account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order. Such Banks shall not have any liability to any party for relying on such representations by the Debtors.

12.     Any Banks are further authorized to (i) honor the Debtors' directions with respect to the opening and closing of any Bank Account, and (ii) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; provided, in each case, that the Debtors' Banks shall not have any liability to any party for relying on such representations.

13.     For banks at which the Debtors hold bank accounts that are party to a Uniform Depository agreement with the Office of the United States Trustee for the District of Delaware, within fifteen (15) days of the date of entry of this Order the Debtors shall (i) contact each bank, (ii) provide the bank with each of the Debtors' employer identification numbers, and (iii) identify each of their bank accounts held at such banks as being held by a debtor in possession in a bankruptcy case.

14.     For banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, the Debtors shall use their good-faith efforts to cause the banks to execute a Uniform Depository Agreement in a form prescribed by the Office of the United States Trustee within thirty (30) days

of the date of this Order. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

15.     The Debtors are authorized to use their existing check stock; *provided, however*, provided that once the Debtors' existing checks have been used, if the Debtors require additional checks, the Debtors shall, when reordering such checks, require the designation "Debtor in Possession" and the corresponding lead bankruptcy case number on all checks; *provided further, however*, that with respect to any checks which the Debtors or their agents print themselves, within ten (10) days of the date of entry of this Order, the Debtors shall begin printing on such checks the designation "Debtor in Possession" and the corresponding lead bankruptcy case number.

16.     The Debtors shall have a thirty (30) day extension of time from the date of this Order to comply with the requirements of section 345 of the Bankruptcy Code, to the extent applicable, without prejudice to the Debtors' rights to seek a further extension of time or to seek to deviate from the requirements of section 345 of the Bankruptcy Code on a final basis.

17.     Notwithstanding anything contained herein, despite the Debtors' use of a consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements attributable to each Debtor, even if one Debtor pays certain disbursements on behalf of the other Debtors.

18.     Each of the Debtors' Banks is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items

deposited in one of Debtors' accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

19.    Nothing contained herein shall prevent the Debtors from closing any Bank Account(s) or opening any additional bank accounts, as they may deem necessary and appropriate; provided, that any such additional bank accounts may be opened only with banks that are party to a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such agreement. Any relevant bank is authorized to honor the Debtors' requests to close or open such Bank Accounts or additional bank accounts, as the case may be; provided, that, notice of the opening or closure of any account shall be given to the U.S. Trustee and any statutory committee appointed in these Cases within fifteen (15) days.

20.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtors or a waiver of the Debtors' rights to dispute any claim or lien, a promise to pay any claim, or the assumption of any agreement pursuant to section 365 of the Bankruptcy Code.

21.    Bankruptcy Rule 6003(b) has been satisfied. The requirements of Bankruptcy Rule 6004(a), to the extent applicable, are waived under the circumstances.

22.    Notwithstanding any provision in the Bankruptcy Rules to the contrary: (i) this Order shall be effective immediately and enforceable upon its entry; (ii) the Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this

order; and (iii) the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action necessary or appropriate to implement this Order.

23.     Within three (3) business days from the date of entry of this Order, the Debtors will serve a copy of this Order to the Banks at which the Bank Accounts are maintained and will request that each Bank internally code each of the Bank Accounts as "debtor in possession" accounts.

24.     The Court retains jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated:   Wilmington, Delaware
         _____, 2018

                                        _____
                                        Honorable
                                        United States Bankruptcy Judge

**EXHIBIT B**

**Funds Flow Chart**

**Exhibit B**
**Funds Flow Chart**

Open Road Films, LLC
Not in Use
xxxxxx7035

Open Road Films, LLC
Not in Use
xxxxxx0445

Open Road Films, LLC
Main Collections Account
xxxxxx7030

Open Road Releasing, LLC
ORR Account
xxxxxx7073

Open Road Films, LLC
Not in Use
xxxxxx9652

Open Road Films, LLC
Main Disbursement Account
xxxxxx5975

**P&A Accounts**

Open Road Films, LLC
xxxxxx6710

Open Road Films, LLC
xxxxxx3833

**Segregated Collections Accounts**

OR Productions, LLC
xxxxxx1547

Open Road International, LLC
xxxxxx1180

Open Road Films, LLC
xxxxxx9701

Open Road Films, LLC
xxxxxx9017

Open Road Films, LLC
xxxxxx5985

Open Road International, LLC
xxxxxx1185

Open Road Films, LLC
xxxxxx6056

Open Road Films, LLC
xxxxxx0888

Cash sent to the Disbursement Account to make payments on behalf of the Segregated Collections Accounts.

Open Road Films, LLC
xxxxxx0179

Reconciliation if Disbursement Account makes expenditures on behalf of P&A Accounts

**EXHIBIT C**

**List of Bank Accounts**

| Account Holder | Last 4 Digits of Account # | Bank Name | Account Type |
|---|---|---|---|
| Open Road Films, LLC | 7030 | Bank of America | Collection Account (Open Road Main) |
| Open Road Films, LLC | 9652 | Bank of America | Sweep Account (Not In Use) |
| Open Road Films, LLC | 5975 | Bank of America | Disbursement Account |
| OR Productions LLC | 1547 | Bank of America | Open Road Productions Collection Account |
| Open Road International LLC | 1180 | Bank of America | Open Road International Collection Account (Show Dogs International) |
| Open Road International LLC | 1185 | Bank of America | Open Road International Collection Account (A.X.L. International) |
| Open Road Films, LLC | 5985 | Bank of America | Open Road Films Collection Account (A.X.L. Domestic) |
| Open Road Films, LLC | 6710 | Bank of America | Service Deal P&A Account |
| Open Road Films, LLC | 3833 | Bank of America | Service Deal P&A Account |
| Open Road Films, LLC | 9701 | Bank of America | Service Deal P&A Account |
| Open Road Films, LLC | 9017 | Bank of America | Service Deal P&A Account |
| Open Road Films, LLC | 6056 | Bank of America | Service Deal P&A Account |
| Open Road Films, LLC | 0888 | Bank of America | Service Deal P&A Account |
| Open Road Films, LLC | 0179 | Bank of America | Service Deal P&A Account |
| Open Road Films, LLC | 7035 | Bank of America | Not In Use |
| Open Road Releasing, LLC | 7073 | Bank of America | OR Releasing Operating Account |
| Open Road Films, LLC | 0445 | CIT Bank, N.A. | Not In Use |

# EXHIBIT D

## Proposed Final Order

| | |
|---|---|
| In re | Chapter 11 |
| OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al*.,[1] | Case No.:  18-12012 (___) |
| Debtors. | (Jointly Administered) |
| | **Re Docket Nos.** |

**FINAL ORDER (I) AUTHORIZING CONTINUED USE OF CASH MANAGEMENT
SYSTEM, (II) AUTHORIZING THE CONTINUATION OF INTERCOMPANY
TRANSACTIONS, (III) GRANTING ADMINISTRATIVE PRIORITY STATUS TO
POSTPETITION INTERCOMPANY TRANSACTIONS, (IV) AUTHORIZING USE OF
PREPETITION BANK ACCOUNTS, ACCOUNT CONTROL AGREEMENT,
AND CERTAIN PAYMENT METHODS, AND (V) EXTENDING TIME
TO COMPLY WITH REQUIREMENTS OF 11 U.S.C. § 345(b)**

Upon the motion (the "Motion")[2] of Open Road Films, LLC and its affiliated debtors and

debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases") for

entry of interim and final orders, pursuant to sections 105, 345, 363, 364(b), and 503(b) of title

11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), Rule 6004 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2015-2 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"), (i) authorizing the Debtors' continued use of their

existing cash management system, (ii) authorizing the continuation of Intercompany

Transactions and Affiliate Transactions, (iii) granting administrative priority status to

---

[1]     The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.).  The Debtors' address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067.

[2]     Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

postpetition Intercompany Claims and Affiliate Claims, (iv) authorizing the Debtors to continue

using prepetition bank accounts and account control agreements and using debit, wire, check,

and ACH payments, (v) granting the Debtors a thirty (30) day extension of time to comply with

the requirements of Bankruptcy Code section 345(b), without prejudice to the right to seek a

further extension, and (vi) scheduling final hearing; and upon consideration of the First Day

Declaration and the record of these Cases; and it appearing that the Court has jurisdiction to

consider the Motion pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of*

*Reference* from the United States District Court for the District of Delaware dated February 29,

2012; and it appearing that the Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2) and that

the Court may enter a final order consistent with Article III of the United States Constitution; and

it appearing that venue of these Cases and of the Motion is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and it appearing that due and adequate notice of the Motion has been given under the

circumstances, and that no other or further notice need be given; and it appearing that the relief

requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other

parties in interest; and after due deliberation, and  good and sufficient cause appearing for the

relief set forth in this Order, it is hereby

       **ORDERED, ADJUDGED, AND DECREED THAT:**

       1.     The Motion is GRANTED on a final basis, as set forth herein.

       2.     The Debtors are authorized, in their sole discretion, to continue operating the

Cash Management System in the ordinary course of business postpetition, except as otherwise

set forth herein.

       3.     The Debtors are authorized, in their sole discretion, to continue to engage in the

Intercompany Transactions and Affiliate Transaction and to continue to incur Intercompany

Claims and Affiliate Claims in the ordinary course of business postpetition. The Debtors shall maintain accurate and detailed records in the ordinary course of business reflecting transfers of cash, if any, including for Intercompany Transactions and Affiliate Transactions. Unless otherwise ordered by the Court, all Intercompany Claims and Affiliate Claims arising after the Petition Date shall be accorded administrative expense priority in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code. The Debtors shall not pay any non-debtor affiliates on account of prepetition Affiliate Claims.

4.     The Debtors are further authorized, in their sole discretion, to: (i) continue to use, with the same account numbers, all of the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit B** and **Exhibit C** to the Motion; (ii) use, in their present form, all Business Forms related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; (iii) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession; (iv) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH payments, and other debits; and (v) pay any ordinary course prepetition or postpetition bank fees incurred in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts.

5.     All Banks at which the Bank Accounts are maintained are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of debtors in possession, without interruption and in the ordinary course of business. In this regard, the Banks are authorized to receive, process, honor, and pay any and all checks, ACH payments, and other instructions, and drafts payable through, drawn, or directed on the Bank Accounts after the Petition Date as instructed by the Debtors.

6.　　　All Banks provided with notice of this Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

7.　　　The Deposit Account Control Agreements shall be maintained and shall continue to govern the postpetition cash management relationship between the Debtors and the banks party thereto, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect, and the Debtors, the secured parties thereto, or the banks party thereto may, without further Order of this Court, implement changes to the cash management systems and procedures in the ordinary course of business pursuant to terms of those certain existing Deposit Account Control Agreements, including, without limitation, the opening and closing of bank accounts; *provided, however*, that nothing contained herein shall constitute an assumption of the Deposit Account Control Agreements pursuant to section 365 of the Bankruptcy Code.

8.　　　For any accounts that are not subject to a Deposit Account Control Agreement, those certain existing deposit agreements between the Debtors and the depository and disbursement banks party thereto shall continue to govern the postpetition cash management relationship between the Debtors and the bank party thereto, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.  Either the Debtors or the banks party thereto may, without further order of the Court, implement changes to the cash management systems and procedures in the ordinary course of business pursuant to the terms of those certain existing deposit agreements, including, without limitation, the opening and closing of bank accounts.

9. In the course of providing cash management services to the Debtors, any Bank, without further order of this Court, is authorized to charge, and the Debtors are authorized to pay or honor, both prepetition and postpetition service and other fees, costs, charges, and expenses to which the Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtors.

10. Notwithstanding any other provision of this Order, any Bank may rely on the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors before the Petition Date should be honored pursuant to any order of this Court, and any Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (i) at the direction of the Debtors, (ii) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, shall neither be deemed to be in violation of this Order nor be liable to the Debtors or their estates on their account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order. Such Banks shall not have any liability to any party for relying on such representations by the Debtors.

11. Any Banks are further authorized to (i) honor the Debtors' directions with respect to the opening and closing of any Bank Account, and (ii) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; provided, in each case, that the Debtors' Banks shall not have any liability to any party for relying on such representations.

12. For banks at which the Debtors hold bank accounts that are party to a Uniform Depository agreement with the Office of the United States Trustee for the District of Delaware, within fifteen (15) days of the date of entry of this Order the Debtors shall (i) contact each bank,

(ii) provide the bank with each of the Debtors' employer identification numbers, and (iii) identify each of their bank accounts held at such banks as being held by a debtor in possession in a bankruptcy case.

13.     For banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, the Debtors shall use their good-faith efforts to cause the banks to execute a Uniform Depository Agreement in a form prescribed by the Office of the United States Trustee within thirty (30) days of the date of this Order.  The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

14.     The Debtors are authorized to use their existing check stock; *provided, however*, provided that once the Debtors' existing checks have been used, if the Debtors require additional checks, the Debtors shall, when reordering such checks, require the designation "Debtor in Possession" and the corresponding lead bankruptcy case number on all checks; *provided further, however*, that with respect to any checks which the Debtors or their agents print themselves, within ten (10) days of the date of entry of this Order, the Debtors shall begin printing on such checks the designation "Debtor in Possession" and the corresponding lead bankruptcy case number.

15.     The Debtors shall have a thirty (30) day extension of time from entry of the interim order on the Motion to comply with the requirements of section 345 of the Bankruptcy Code, to the extent applicable, without prejudice to the Debtors' rights to seek a further extension of time or to seek to deviate from the requirements of section 345 of the Bankruptcy Code on a final basis.

16.     Notwithstanding anything contained herein, despite the Debtors' use of a consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements attributable to each Debtor, even if one Debtor pays certain disbursements on behalf of the other Debtors.

17.     Each of the Debtors' Banks is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of Debtors' accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

18.     Nothing contained herein shall prevent the Debtors from closing any Bank Account(s) or opening any additional bank accounts, as they may deem necessary and appropriate; provided, that any such additional bank accounts may be opened only with banks that are party to a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such agreement.  Any relevant bank is authorized to honor the Debtors' requests to close or open such Bank Accounts or additional bank accounts, as the case may be; provided, that, notice of the opening or closure of any account shall be given to the U.S. Trustee and any statutory committee appointed in these Cases within fifteen (15) days.

19.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Order shall constitute, nor is it intended to constitute, an

admission as to the validity or priority of any claim or lien against the Debtors or a waiver of the Debtors' rights to dispute any claim or lien, a promise to pay any claim, or the assumption of any agreement pursuant to section 365 of the Bankruptcy Code.

20.    Bankruptcy Rule 6003(b) has been satisfied.  The requirements of Bankruptcy Rule 6004(a), to the extent applicable, are waived under the circumstances.

21.    Notwithstanding any provision in the Bankruptcy Rules to the contrary: (i) this Order shall be effective immediately and enforceable upon its entry; (ii) the Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this order; and (iii) the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action necessary or appropriate to implement this Order.

22.    Within three (3) business days from the date of entry of this Order, the Debtors will serve a copy of this Order to the Banks at which the Bank Accounts are maintained and will request that each Bank internally code each of the Bank Accounts as "debtor in possession" accounts.

23.    The Court retains jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Order.


Dated:   Wilmington, Delaware
            _____, 2018

                                        _____
                                        Honorable
                                        United States Bankruptcy Judge