## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al.*,[1] | Case No.:  18-12012 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS,
PURSUANT TO SECTIONS 105(a), 361, 362, 363(c), 503(b), AND 507(b)
OF THE BANKRUPTCY CODE, (I) AUTHORIZING DEBTORS TO USE
CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION,
(III) SETTING FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

Open Road Films, LLC ("Open Road Films") and its affiliated debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases") hereby move the Court (the "Motion") for entry of an interim order (the "Interim Order" and, together with the Final Order, the "Proposed Orders"), substantially in the form attached hereto as **Exhibit A**, and following a final hearing to be set by the Court (the "Final Hearing"), entry of a final order (the "Final Order"), pursuant to sections 105, 361, 362, 363, 503, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-2, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the use of cash collateral, granting adequate protection to the Agent and the Prepetition Secured

---

[1]    The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.).  The Debtors' address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067.  Additional affiliated entities, including, but not limited to, IM Global LLC, Global Road Entertainment Television LLC (f/k/a IM Global TV LLC), Tang Media Partners LLC, and Global Road Entertainment LLC, are not debtors in these Cases and have not commenced chapter 11 cases.

Lenders (each as defined below) as set forth therein, modifying the automatic stay as set forth therein, and granting related relief. ***The Debtors understand that the Agent and the Prepetition Secured Lenders will consent to entry of the Interim Order.***

In support of the Motion, the Debtors rely on the *Declaration of Amir Agam in Support of First Day Motions* (the "First Day Declaration") filed substantially concurrently herewith.  In further support of the Motion, the Debtors respectfully represent as follows:

## I. JURISDICTION

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      The statutory and legal predicates for the relief requested herein are sections 105, 361, 362, 363, 503, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rules 2002-1, 4001-2, and 9013-1.

## II. BACKGROUND

### A.      General Background

4.      On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

5.      The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been requested or appointed in these Cases and no statutory committee has been appointed yet by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").

6.      The Debtors distribute motion pictures in the United States and license motion pictures in ancillary markets, principally to home entertainment, pay television, subscription, and transactional video-on-demand, free television, and other non-theatrical entertainment distribution markets.  The Debtors' films have generated over $1.3 billion in worldwide theatrical box office receipts, have been nominated for 49 Academy Awards, and have won 13 Academy Awards.

7.      The Debtors intend to utilize the bankruptcy process to continue and conclude their robust marketing and sale process.  They believe that doing so will ensure that the value of their assets are maximized for the benefit of all stakeholders.

8.      The detailed factual background relating to the Debtors and the commencement of these Cases is set forth in the First Day Declaration.

**B.      Prepetition Secured Indebtedness**

9.      Open Road Films, as borrower, Open Road Releasing, LLC ("Holdings"), as a Pledgor, the guarantors referred to therein[2] (the "Guarantors" and, together with the Borrower and Holdings, "the "Prepetition Obligors"), Bank of America, N.A., as lender and L/C Issuer and each of the lenders party thereto (together, the "Prepetition Secured Lenders"), and Bank of America, N.A., as administrative agent (in such capacity the "Agent" and, together with the

---

[2]      Specifically, the Debtor Guarantors are Briarcliff LLC, Empire Productions LLC, Open Road International LLC, and OR Productions LLC.

Prepetition Secured Lenders, the "Prepetition Secured Parties"), are party to that certain *Second Amended and Restated Credit, Security, Guaranty and Pledge Agreement*, dated as of April 8, 2015 (as the same has been and may be amended, restated, amended and restated, refinanced, replaced, supplemented, or otherwise modified prior to the Petition Date, the "Senior Secured Credit Agreement" and, together with all other Loan Documents (as defined therein), the "Senior Secured Loan Documents").

10.    As of the Petition Date, the outstanding aggregate principal amount owing under the Senior Secured Credit Agreement was $90,750,000.00 (together with all other outstanding amounts due under the Senior Secured Credit Agreement, including interest, fees, premiums and expenses, the "Senior Secured Indebtedness").  The Senior Secured Indebtedness is secured by first-priority (subject only to any valid, binding, and perfected Specified Permitted Encumbrances (as defined in the Senior Secured Credit Agreement)) security interests in and liens on substantially all of the Debtors' property, including their cash.

11.    The Debtors are unaware of any party other than the Agent and the Prepetition Secured Lenders that has a lien or other interest in respect of any of the Cash Collateral.

### III.  RELIEF REQUESTED

12.    By this Motion, the Debtors request that the Court schedule the Final Hearing and enter the Proposed Orders authorizing use of cash collateral, as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), provision of adequate protection for the Agent and the Prepetition Secured Lenders, and modifications of the automatic stay.

13.    As more fully set forth in the First Day Declaration, the Debtors have an urgent and immediate need for the use of Cash Collateral.  The Debtors have not obtained postpetition financing and, without the use of Cash Collateral, the Debtors will not be able to fund, among

other things, payroll for their current employees and other expenses during the transition into

bankruptcy that are necessary to preserve value for creditors.

14.     The Debtors are informed that the Agent and the Prepetition Secured Lenders will

consent to entry of the Interim Order based on the forms of adequate protection set forth therein.

As such, the use of Cash Collateral will be consensual and is authorized pursuant to section

363(c)(2)(A) of the Bankruptcy Code.

### IV. SUMMARY OF PROPOSED ORDERS[3]

15.     In accordance with Bankruptcy Rules 4001(b) and (d) and Local Rule 4001-

2(a)(ii), below is a summary of the terms of the proposed use of Cash Collateral:

a.    <u>Amount of Cash Collateral to Be Used</u>.  (Interim Order ¶¶ 2 & 3).  The Debtors seek authority to use Cash Collateral in an amount consistent with the expenditures described in a 13-week cash collateral budget, the initial form of which is attached to the proposed Interim Order as **<u>Exhibit 1</u>** (the "<u>Approved Budget</u>").

b.    <u>Parties with an Interest in Cash Collateral</u>.  The principal party with an interest in the Cash Collateral is the Agent, acting on behalf of the Prepetition Secured Lenders under the Senior Secured Loan Documents.

c.    <u>Use of Cash Collateral</u>.  (Interim Order ¶¶ 2 & 3).  The Debtors seek authority to use Cash Collateral, wherever such Cash Collateral may be located, in accordance with the terms of the Interim Order for working capital and other general corporate purposes and the costs and expenses of administering their estates during the Cases, *provided* that the Debtors' use of Cash Collateral shall be in accordance with the Approved Budget, subject to the Permitted Variances set forth in the Interim Order.

d.    <u>Termination Date</u>.  (Interim Order ¶ 8).  The ability to use Cash Collateral pursuant to the Interim Order shall end on the earliest to occur of 23 events detailed in paragraph 8 of the Interim Order, subject to the possibility of a "Cash Collateral Reinstatement" to occur regarding certain of those events as more fully set forth in the Interim Order.

---

[3]    The summary of the Interim Order and the terms and conditions for the use of Cash Collateral set forth in this Motion is intended solely for informational purposes to provide the Court and parties in interest with an overview of the significant terms thereof.  The summary is qualified in its entirety by the Interim Order.  In the event there is any conflict between this Motion and the Interim Order, the Interim Order will control in all respects.

e.   <u>Adequate Protection</u>.  (Interim Order ¶ 4).  Subject to the Carve Out and the terms of the Interim Order, and solely to the extent of any decrease in the value of their respective interests in the Prepetition Collateral (including the Cash Collateral) resulting from the use of Cash Collateral, the use, sale, or lease of other Prepetition Collateral, or the imposition of the automatic stay, the Prepetition Secured Parties are granted liens on (a) all property of the Debtors or their respective estates, now existing or hereinafter acquired, and the proceeds thereof (the foregoing collateral the "<u>Adequate Protection Collateral</u>" and the foregoing adequate protection the "<u>Adequate Protection Liens</u>").  The Adequate Protection Liens shall be junior only to (a) valid, binding and perfected Specified Permitted Encumbrances, (b) valid liens in existence as of the Petition Date that are perfected subsequent to such date as permitted by section 546(b) of the Bankruptcy Code, and (c) payment of the Carve Out.  Subject to the entry of a Final Order, the Adequate Protection Liens will attach to any proceeds of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar federal, state, local or foreign law (the "<u>Avoidance Actions</u>").  In addition to the Adequate Protection Liens, the proposed adequate protection package includes superpriority claims for and certain payments to the Prepetition Secured Parties, all as more fully set forth in paragraph 4 of the proposed Interim Order and projected in the Approved Budget.

f.   <u>Automatic Perfection</u>.  (Interim Order ¶ 6).  The Adequate Protection Liens shall be automatically perfected postpetition security interest and liens without the necessity of the execution by the Debtors (or recordation or other filing) of financing statements, intellectual property filings, mortgages, notices of lien or similar instruments

g.   <u>Carve Out</u>.  (Interim Order ¶ 10).  The Secured Indebtedness, Senior Secured Liens, Diminution Claim, Adequate Protection Liens, and Adequate Protection Superpriority Claims shall be subordinate to a carve out (the "<u>Carve Out</u>") which shall be comprised of the five categories set forth in paragraph 10 of the Interim Order, which include fees and expenses payable to the Court and the U.S. Trustee, certain pre- and post-termination professional fees, and certain employee-related obligations, in each case on the specific terms and conditions more fully detailed in paragraph 10.

h.   <u>Events of Default</u>.  (Interim Order ¶ 8).  The Debtors' right to use Cash Collateral may be limited if one or more of 23 potential Events of Default (including events related to breach of an agreed timeline for completing a sale process) occur, all as more fully set forth in paragraph 8.

i.   <u>Releases</u>.  (Interim Order ¶ E).  Subject to the challenge provisions described in paragraph 11 of the Interim Order, each Debtor and its estate unconditionally, irrevocably, and fully releases, waives, and discharges the Prepetition Secured Parties, together with their respective affiliates, agents, attorneys, financial advisors, consultants, shareholders, managers, owners, partners, members,

officers, directors, and employees, and predecessors and successors in interest, of and from any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff, recoupment, damages, injuries, and allegations, whether known or unknown, whether arising at law or in equity, with respect to the Senior Secured Loan Documents and any document related thereto or the transactions contemplated thereunder; *provided, however,* that nothing in the Proposed Orders shall operate as a release or waiver of any claims or causes of action solely on account of any act taken after the Petition Date.

## V.  DISCLOSURES

16.     Pursuant to Bankruptcy Rule 4001(c) and Local Rule 4001-2(a)(i), a debtor in possession seeking authority to use cash collateral or to obtain financing must disclose the presence and location of certain provisions contained in the documentation evidencing the cash collateral usage or financing.  The debtor in possession must also justify the inclusion of such provisions.  Set forth below are the disclosures required in accordance with such rules:

a.      Local Rule 4001-2(a)(i)(A) requires a debtor to disclose whether it has granted cross-collateralization to prepetition secured creditors in connection with the debtor's cash collateral usage or additional financing.  **The proposed Interim Order and Final Order will not provide for cross-collateralization protection except through the grant of Adequate Protection Liens to the extent of any diminution in the Prepetition Secured Parties' interests in the Debtors' assets.**

b.      Local Rule 4001-2(a)(i)(B) and Bankruptcy Rule 4001(c)(1)(B)(iii) require the disclosure of provisions or findings of fact that (i) bind the estate or other parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or (ii) involve the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and a creditors' committee at least sixty (60) days from the date of its formation to investigate such matters.  **The proposed Interim Order and Final Order will (i) contain stipulations relating to the validity, perfection, enforceability, and amount of the Senior Secured Liens and Senior Secured Indebtedness. and (ii) waive claims against the Prepetition Secured Parties  However, all such stipulations and waivers are expressly subject to challenge by parties in interest within the time frames provided by the Local Rules.** *See* **¶¶ D, E & 11.**

c.      Local Rule 4001-2(a)(i)(C) and Bankruptcy Rule 4001(c)(1)(B)(x) require the disclosure of provisions that seek to waive a debtor's rights without notice under section 506(c) of the Bankruptcy Code.  **The proposed Interim Order will provide for a waiver of rights under section 506(c) of the Bankruptcy Code,**

**subject to entry of the Final Order.** *See* ¶ **15.  Hence, adequate notice will be provided before any surcharge waiver goes into effect.**

d.    Local Rule 4001-2(a)(i)(D) and Bankruptcy Rule 4001(c)(1)(B)(xi) require disclosure of provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under sections 544, 545, 547, 548 and 549 of the Bankruptcy Code.  **The proposed Interim Order will provide for the Adequate Protection Liens to attach to the proceeds of Avoidance Actions, subject to entry of the Final Order.** *See* ¶ **4(i).  Hence, adequate notice will be provided before such liens go into effect.**

e.    Local Rule 4001-2(a)(i)(E) requires disclosure of provisions that deem prepetition secured debt be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor' prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code).  **The proposed Interim Order and Final Order will not contain provisions that deem prepetition secured debt to be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code).**

f.    Local Rule 4001-2(a)(i)(F) requires disclosure of provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out.  **Although different amounts are budgeted for each professional, the proposed Interim Order and Final Order will otherwise provide for identical Carve Outs for Committee Professionals and the Debtors' Professionals.** *See* ¶ **10.**

g.    Local Rule 4001-2(a)(i)(G) requires disclosure of provisions that provide for the priming of any secured lien without the consent of that lienholder.  **The proposed Interim Order and Final Order will not provide for the priming of any secured lien without the consent of that lienholder.**

h.    Local Rule 4001-2(a)(i)(H) requires disclosure of provisions that seek to affect the Court's power to consider equities of the case under section 552(b)(1) of the Bankruptcy Code.  **The proposed Interim Order will provide for a waiver of the "equities of the case" exception, subject to entry of the Final Order.** *See* ¶ **15.  Hence, adequate notice will be provided before this waiver goes into effect.**

i.    Bankruptcy Rule 4001(c)(1)(B)(ii) requires disclosure of the provision of adequate protection or priority for claims arising prior to the commencement of the case.  **The proposed Interim Order and Final Order will describe the specific forms of adequate protection provided to the Agent and the Prepetition Secured Lenders.** *See* ¶ **4.**

j.     Bankruptcy Rule 4001(c)(1)(B)(iv) requires disclosure of provisions that constitute a waiver or modification of the automatic stay.  **The proposed Interim Order and Final Order will describe the modification of the automatic stay to the extent necessary to implement those orders.**  *See* ¶ 9.

k.     Bankruptcy Rule 4001(c)(1)(B)(vii) requires disclosure of provisions that waive or modify the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate.  **The proposed Interim Order and Final Order will include provisions that provide for the automatic perfection and validity of the Adequate Protection Liens without the necessity of any further filing or recording under the laws of any jurisdiction.**  *See* ¶ 6.

## VI.  BASIS FOR RELIEF

17.    Without immediate access to Cash Collateral, the Debtors will be unable to continue operations and the value of their assets will undoubtedly decline rapidly, to the detriment of all stakeholders.  The Debtors need access to Cash Collateral to fund, among other things, payroll for their current employees and expenses of continuing operations during the transition into bankruptcy, as well as to otherwise fulfill their obligations and pay their debts in the ordinary course of business.

18.    As detailed more fully below, if the Motion is not approved, the Debtors' only alternative would be a rapid and disorderly liquidation or conversion to chapter 7, as the Debtors would be unable to sustain operations or preserve the value of their assets during the pendency of the Cases.  In this regard, the relief sought in this Motion should be granted.

## A.    The Debtors Have an Immediate Need to Use Cash Collateral

19.    Bankruptcy Rule 4001(b) permits the Court to approve a debtor's request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization to use cash collateral "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  Bankruptcy Rule 4001(b)(2).  In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions.  *See, e.g.*, *In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Colo.

1985); *In re Ames Dep't Stores Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990).  *See also In re Am. Safety Razor Co., LLC*, No. 10-12351 (MFW), 2010 Bankr. LEXIS 5994, at *37–38 (Bankr. D. Del. July 30, 2010) (approving interim use of cash collateral pursuant to Bankruptcy Rule 4001(b)(2) upon a finding that the proposed use "reflect[s] the Debtors' exercise of prudent business judgment"); *In re Centaur, LLC*, No. 10-10799 (KJC), 2010 Bankr. LEXIS 5795, at *22, 25 (Bankr. D. Del. March 11, 2010) (same); *In re Penn Traffic Co.*, No. 09-14078 (PJW), 2009 Bankr. LEXIS 5422, at *16-18 (Bankr. D. Del. Nov. 19, 2009) (same).

20.     After the 14-day period, the request for use of cash collateral is not limited to those amounts necessary to prevent harm to the debtor's business.

21.     As previously noted, in order to address working capital needs and fund other costs and expenses associated with their efforts to preserve value, the Debtors require access to Cash Collateral.  The use of Cash Collateral will provide the Debtors with the necessary capital with which to continue operating while continuing to search for a buyer, including funding the Debtors' obligations to their employees.

22.     Cash is necessary for working capital and capital expenditures, and for other costs and expenses incurred during these Cases.  The Debtors do not have any available sources of working capital or financing to fund their business through the conclusion of their sale process without the use of Cash Collateral.  The Debtors' ability to preserve the value of their estates is dependent on their ability to continue to proceed in an orderly fashion post-bankruptcy, and the Debtors cannot proceed in that fashion unless they can fund payments for postpetition goods, services, and other operating expenses.  Use of the Cash Collateral thus is essential to the viability of the sale process and the preservation of the value of the Debtors' assets; indeed, if

interim relief is not obtained, the Debtors' assets will be immediately and irreparably

jeopardized, to the detriment of their estates, their creditors, and other parties in interest.

23.     Further, the alternative in these Cases is "to force the debtors to close down their

operations and thus doom any effort at reorganization which will hopefully extract the maximum

value of the assets involved to the benefit of *all* classes of creditors and other constituencies

involved in this case."  *In re Dynaco Corp.,* 162 B.R. 389, 396 (Bankr. D.N.H. 1993).  Because

this result would be at fundamental odds to the rehabilitative purposes of chapter 11, the relief

requested by the Motion is warranted.  *Id.* at 394 (noting that "'it is apparent that the Congress

intended business under reorganization to proceed in as normal a fashion as possible'" (quoting

*In re Prime, Inc.*, 15 B.R. 216, 219 (Bankr. W.D. Mo. 1981))).

24.     Simply put, the Debtors submit that, for the reasons set forth herein, immediate

use of Cash Collateral in accordance with the Approved Budget upon entry of the Interim Order

is necessary to avert immediate and irreparable harm.

**B.      Section 363 of the Bankruptcy Code Authorizes the Use of Cash Collateral**

25.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor in possession

may not use cash collateral unless (i) each entity that has an interest in such cash collateral

provides its consent, or (ii) the Court approves the use of cash collateral after notice and a

hearing.  *See* 11 U.S.C. § 363(c)(2).  Section 363(e) of the Bankruptcy Code provides that, "on

request of an entity that has an interest in property used . . . or proposed to be used . . . by the

[debtor in possession], the court . . . shall prohibit or condition such use . . . as is necessary to

provide adequate protection of such interest."  11 U.S.C. § 363(e).

26.     Here, ***the Debtors understand that the Agent and the Prepetition Secured***

***Lenders will consent to entry of the Interim Order***, thereby allowing the use of Cash Collateral

pursuant to section 363(c)(2)(A) of the Bankruptcy Code.

27.     Furthermore, the Debtors have proposed appropriate forms of adequate protection.  Section 361 of the Bankruptcy Code authorizes a debtor to provide adequate protection by granting replacement liens, making periodic cash payments, or granting such other relief "as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."  *See* 11 U.S.C. § 361.  Although section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis.  *E.g.*, *Resolution Trust Corp. v. Swedeland Dev. Grp. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Dynaco Corp.*, 162 B.R. at 394 (citing 2 COLLIER ON BANKRUPTCY ¶ 361.01[1] at 361–66 (15th ed. 1993) for proposition that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding").

28.     The Debtors believe that the proposed adequate protection components described above are fair and reasonable.  Indeed, the terms and conditions on which the Debtors may use Cash Collateral have been carefully designed to meet the dual goals of sections 361 and 363 of the Bankruptcy Code.  If the Interim Order is entered, the Debtors will have working capital to fund the Debtors' sale process, and thereby provide an opportunity to maximize value for the benefit of all stakeholders.  At the same time, the Agent and the Prepetition Secured Lenders will be adequately protected in a manner that they have negotiated in exchange for consenting to the use of Cash Collateral.  Given the significant value that the Debtors stand to lose in the event

they are denied access to continued use of Cash Collateral, such protections are wholly appropriate and justified under the circumstances.

## VII.  INTERIM ORDER AND FINAL HEARING

29.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date for the initial hearing that is as soon as practicable, and fix the time and date prior to the Final Hearing for parties to object to the Motion being granted on a final basis.

30.     The urgent need to preserve the Debtors' business, and avoid immediate and irreparable harm to their estates, makes it imperative that the Debtors be authorized to use the Cash Collateral as of the Petition Date, pending the Final Hearing, in order to continue orderly operations and administer the Cases.  Without the ability to use Cash Collateral, the Debtors will be unable to meet postpetition obligations and will be unable to fund working capital needs, thus causing irreparable harm to the value of their assets and ending the Debtors' orderly sale efforts. Accordingly, the Debtors respectfully request that, pending the hearing on a Final Order, the Interim Order be approved in all respects and that the terms and provisions of the Interim Order be implemented and be deemed binding and that, after the Final Hearing, the Final Order be approved in all respects and the terms and provisions of the Final Order be implemented and be deemed binding.

## VIII.  NOTICE

31.     The Debtors will provide notice of this Motion to: (i) the U.S. Trustee; (ii) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (iii) the Agent (as defined in the First Day Declaration); (iv) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002; (v) the Office of the United States Attorney for the District of Delaware; (vi) the Internal Revenue Service; (vii) all parties known to the Debtors to have filed UCC-1 financing statements against the

Debtors; and (viii) One Hundred Towers L.L.C. (collectively, the "Notice Parties").  As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## IX.  NOTICE REGARDING THE FINAL HEARING

32.    No trustee, examiner, or statutory committee has been appointed in these Cases. Pursuant to Bankruptcy Rule 4001, the Debtors respectfully request that they be authorized to provide notice of the Final Hearing by serving, or causing to be served, by first class mail or other appropriate method of service, a copy of the Interim Order on the Notice Parties.  The Debtors respectfully request that such notice is sufficient and request that this Court find that no further notice of the Final Hearing and Final Order is required.

[*Remainder of page intentionally left blank.*]

## X.  CONCLUSION

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the

Debtors respectfully request entry of the Interim Order, and following the Final Hearing, entry of

the Final Order, granting the relief requested herein and such other and further relief as the Court

may deem just and appropriate.

Dated:  September 6, 2018

*/s/ Robert F. Poppiti, Jr.*

Michael R. Nestor, Esq. (Bar No. 3526)
Sean M. Beach, Esq. (Bar No. 4070)
Robert F. Poppiti, Jr., Esq. (Bar No. 5052)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:    (302) 571-1253

and

Michael L. Tuchin, Esq.
Jonathan M. Weiss, Esq.
Sasha M. Gurvitz, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:    (310) 407-4000
Fax:    (310) 407-9090

*Proposed Counsel to Debtors and
Debtors in Possession*

## EXHIBIT A

**Proposed Interim Order**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al.*,[1] | Case No.:  18-12012 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. _____** |

### INTERIM ORDER, PURSUANT TO SECTIONS 105(a), 361, 362, 363(c), 503(b), AND 507(b) OF THE BANKRUPTCY CODE, (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) SETTING FINAL HEARING, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Cash Collateral Motion")[2] of Open Road Films, LLC ("Open Road Films") and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), for entry of this interim order (the "Interim Order") pursuant to sections 105, 361, 362, 363, 503, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rules 2002-1, 4001-2, and 9013-1, among other things: (i) authorizing the Debtors' use of the Prepetition Collateral, including Cash Collateral (each as defined below), subject to and pursuant to the terms and conditions set forth in this Interim Order; (ii) granting certain prepetition secured parties adequate protection; (iii) approving certain stipulations by the Debtors; (iv) subject to the entry of the Final Order (as defined below), waiving the Debtors' right to surcharge the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code, the "equity of the case"

---

[1]    The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.).  The Debtors' address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings given to those terms in the Cash Collateral Motion.

exception pursuant to section 552(b) of the Bankruptcy Code, or the equitable doctrine of marshaling or any other similar doctrine with respect to any of the Prepetition Collateral; (v) vacating and modifying the automatic stay to the extent set forth herein; and (vi) scheduling a final hearing on the Cash Collateral Motion to consider entry of a final order (the "Final Order") granting the relief requested in the Cash Collateral Motion on a final basis; and the Court having reviewed the Cash Collateral Motion and the First Day Declaration and all exhibits thereto; and the Court having reviewed any objections to the Cash Collateral Motion; and the Court having held an interim hearing pursuant to Bankruptcy Rule 4001(b)(2) (the "Interim Hearing") to consider the relief requested in the Cash Collateral Motion; and upon the record of the Interim Hearing; and upon due deliberation and consideration and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**[3]

A.    **Petition Date**:  On September 6, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No official committee of unsecured creditors (upon any appointment thereof, the "Committee") as provided for under section 1102 of the Bankruptcy Code has been appointed.

B.    **Jurisdiction**.  This Court has core jurisdiction over these Cases, the Cash Collateral Motion, and the parties and property affected hereby under 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the Cash Collateral Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     **Notice**.  The notice given by the Debtors of the Cash Collateral Motion and the Interim Hearing was proper, timely, and adequate and sufficient notice under the circumstances and complies with Bankruptcy Rule 4001(b).

D.     **Debtors' Stipulations**.  Without prejudice to the rights of any other party in interest (but subject to the limitations thereon contained in paragraph 11 below) the Debtors admit, stipulate and agree that:

(i)     Senior Secured Credit Agreement.  Open Road Films, as borrower, Open Road Releasing, LLC ("Holdings"), as a Pledgor, the guarantors referred to therein (the "Guarantors" and, together with the Borrower and Holdings, "the Prepetition Obligors"), Bank of America, N.A., as lender and L/C Issuer and each of the lenders party thereto (together, the "Prepetition Secured Lenders"), and Bank of America, N.A., as administrative agent (in such capacity the "Agent" and, together with the Prepetition Secured Lenders, the "Prepetition Secured Parties"), are party to that certain *Second Amended and Restated Credit, Security, Guaranty and Pledge Agreement*, dated as of April 8, 2015 (as the same has been and may be amended, restated, amended and restated, refinanced, replaced, supplemented, or otherwise modified prior to the Petition Date, the "Senior Secured Credit Agreement" and, together with all other Loan Documents (as defined therein), the "Senior Secured Loan Documents").

(ii)     Senior Secured Indebtedness.  As of the Petition Date, the outstanding aggregate principal amount owing under the Senior Secured Credit Agreement was $90,750,000.00 USD (together with all other outstanding amounts due under the Senior Secured Credit Agreement, including interest, fees, premiums, and expenses, the "Senior Secured Indebtedness").

3

(iii)    Prepetition Collateral.  The Senior Secured Indebtedness is secured by valid, binding, perfected first-priority (subject only to any valid, binding and perfected Specified Permitted Encumbrances[4]) security interests and liens (the "Senior Secured Liens") on all Collateral of the Prepetition Secured Parties, including: with respect to Holdings, all of the issued and outstanding capital stock, partnership interests, membership interests, beneficial interests or other Equity Interests of or in Open Road Films (the "Pledged Borrower Securities") and the proceeds, including cash proceeds, of the Pledged Borrower Securities (the "Pledged Borrower Collateral"); and, with respect to Open Road Films and the Guarantors (each, together with Holdings, a "Loan Party"), all of such Loan Party's right, title and interest in and to all real and personal property, tangible and intangible, wherever located or situated and whether now owned, presently existing or hereafter acquired or created, including, but not limited to, all goods, accounts, instruments, inter-company obligations, contract rights, partnership and joint venture interests, documents, chattel paper, general intangibles, goodwill, equipment, machinery, fixtures, fee and leasehold interests in real property, inventory, investment property, copyrights, trademarks, trade names, insurance policies (including any key man policies), insurance proceeds, cash, deposit accounts, securities accounts, letter-of-credit rights, supporting obligations, the Pledged Subsidiary Collateral and other securities, all amounts on deposit in the Collection Accounts and in the other Collateral Accounts and any proceeds of any thereof, products of any thereof or income from any thereof, further including but not limited to, all of such Loan Party's right, title and interest in and to each and every Picture, the scenario, screenplay or script upon which a Picture is based, all of the properties thereof, tangible and intangible, and all domestic and foreign copyrights and all other rights therein and thereto, of

---

[4]    Unless otherwise defined herein, capitalized terms used in this paragraph (D)(iii) shall have the meanings ascribed to them in the Senior Secured Credit Agreement.

every kind and character, whether now in existence or hereafter to be made or produced, and whether or not in possession of such Loan Party, including with respect to each and every Picture and without limiting the foregoing language, each and all of the following particular rights and properties (in each case to the extent they are now owned or hereafter created or acquired by such Loan Party):

  i.  all scenarios, screenplays, teleplays and/or scripts at every stage thereof;

  ii.  all common law and/or statutory copyright and other rights in all literary and other properties (hereinafter called "said literary properties") that form the basis of such Picture and/or that are or will be incorporated into such Picture, all component parts of such Picture consisting of said literary properties, all motion picture, television program or other rights in and to the story, all treatments of said story and said literary properties, together with all preliminary and final screenplays used and to be used in connection with such Picture, and all other literary material upon which such Picture is based or from which it is adapted;

  iii.  all rights for all media in and to all music and musical compositions used and to be used in such Picture, if any, including, each without limitation, all rights to record, re-record, produce, reproduce or synchronize all of said music and musical compositions, including, without limitation, reuse fees, royalties and all other amounts payable with respect to said music and musical compositions;

  iv.  all tangible personal property relating to such Picture, including, without limitation, all exposed film, developed film, positives, negatives, prints, positive prints, answer prints, magnetic tapes and other digital or electronic storage media, special effects, preparing materials (including interpositives, duplicate negatives, internegatives, color reversals, intermediates, lavenders, fine grain master prints and matrices, and all other forms of pre-print elements), sound tracks, cutouts, trims and any and all other physical properties of every kind and nature relating to such Picture whether in completed form or in some state of completion, and all masters, duplicates, drafts, versions, variations and copies of each thereof, in all formats whether on film, videotape, disk or otherwise and all music sheets and promotional materials relating to such Picture (collectively, the "<u>Physical Materials</u>");

  v.  all collateral, allied, subsidiary and merchandising rights appurtenant or related to such Picture including, without limitation, the following rights: all rights to produce remakes, spin-offs, sequels or prequels to such Picture based upon such Picture, said literary properties or the theme of such Picture

and/or the text or any part of said literary properties; all rights throughout the world to broadcast, transmit and/or reproduce by means of television (including commercially sponsored, sustaining and subscription or "pay" television) or by any process analogous thereto, now known or hereafter devised, such Picture or any remake, spin-off, sequel or prequel to the Picture; all rights to produce primarily for television or similar use, a motion picture or series of motion pictures, or other Picture by use of film or any other recording device or medium now known or hereafter devised, based upon such Picture, said literary properties or any part thereof, including, without limitation, based upon any script, scenario or the like used in such Picture; all merchandising rights including, without limitation, all rights to use, exploit and license others to use and exploit any and all commercial tie-ups of any kind arising out of or connected with said literary properties, such Picture, the title or titles of such Picture, the characters of such Picture and/or said literary properties and/or the names or characteristics of said characters and including further, without limitation, any and all commercial exploitation in connection with or related to such Picture, any remake, spin-off, sequel or prequel thereof and/or said literary properties;

vi.     all statutory copyrights, domestic and foreign, obtained or to be obtained on such Picture, together with any and all copyrights obtained or to be obtained in connection with such Picture or any underlying or component elements of such Picture, including, in each case without limitation, all copyrights on the property described in subparagraphs "i." through "v." inclusive, of this definition, together with the right to copyright (and all rights to renew or extend such copyrights, if applicable) and the right to sue in the name of any such Loan Party for past, present and future infringements of copyright;

vii.    all insurance policies connected with such Picture and all proceeds that may be derived therefrom;

viii.   all rights to distribute, sell, rent, license the exhibition of and otherwise exploit and turn to account such Picture in all media (whether now known or hereafter developed), the Physical Materials, the motion picture, television program or other rights in and to the story and/or other literary material upon which such Picture is based or from which it is adapted, and the music and musical compositions used or to be used in such Picture;

ix.     any and all sums, claims, proceeds, money, products, profits or increases, including money profits or increases (as those terms are used in the UCC or otherwise) or other property obtained or to be obtained from the distribution, exhibition, sale or other uses or dispositions of such Picture or any part of such Picture in all media (whether now known or hereafter developed), including, without limitation, all sums, claims, proceeds, profits, products and increases, whether in money or otherwise, from a sale and leaseback or other sale, rental or licensing of such Picture and/or any of the elements of

6

such Picture including, without limitation, from collateral, allied, subsidiary and merchandising rights, and further including, without limitation, all monies held in any Collection Account;

x.      the dramatic, nondramatic, stage, television, radio and publishing rights, title and interest in and to such Picture, and the right to obtain copyrights and renewals of copyrights therein, if applicable;

xi.     the name or title of such Picture and all rights of such Loan Party to the use thereof, including, without limitation, rights protected pursuant to trademark, service mark, unfair competition and/or any other applicable statutes, common law, or other rule or principle of law;

xii.    any and all contract rights and/or chattel paper that may arise in connection with such Picture;

xiii.   all accounts and/or other rights to payment that such Loan Party presently owns or that may arise in favor of such Loan Party in the future, including, without limitation any and all refunds in connection with any VAT or value added tax, all accounts and/or rights to payment due from Persons in connection with the distribution of such Picture, or from the exploitation of any and all of the collateral, allied, subsidiary, merchandising and other rights in connection with such Picture;

xiv.    any and all "general intangibles" (as that term is defined in Section 9-102(42) of the UCC) not elsewhere included in this definition, including, without limitation, any and all general intangibles consisting of any right to payment that may arise in connection with the distribution or exploitation of any of the rights set out herein, and any and all general intangible rights in favor of such Loan Party for services or other performances by any third parties, including actors, writers, directors, individual producers and/or any and all other performing or nonperforming artists in any way connected with such Picture, any and all general intangible rights in favor of such Loan Party relating to licenses of sound or other equipment, or licenses for any photograph or photographic or other processes, and any and all general intangibles related to the distribution or exploitation of such Picture including general intangibles related to or that grow out of the exhibition of such Picture and the exploitation of any and all other rights in such Picture set out in this definition;

xv.     any and all "goods" (as defined in Section 9-102(44) of the UCC) including, without limitation, "inventory" (as defined in Section 9-102(48) of the UCC) that may arise in connection with the creation, production or delivery of such Picture, which goods are owned by such Loan Party pursuant to any Rights Acquisition Agreement or Distribution Agreement or otherwise;

7

xvi. all and each of the rights, regardless of denomination, that arise in connection with the acquisition, delivery, distribution, or other exploitation of such Picture;

xvii. any and all documents issued by any pledgeholder or bailee with respect to such Picture or any Physical Materials (whether or not in completed form) with respect thereto;

xviii. any and all rights of such Loan Party under any Distribution Agreements relating to such Picture, including, without limitation, all rights to payment thereunder;

xix. any and all rights of such Loan Party under contracts relating to the production or acquisition of such Picture or otherwise, including, but not limited to, all such contracts that have been delivered to the Administrative Agent pursuant to this Agreement;

xx. any rebates, credits, grants or other similar benefits relating to any Picture (including any Approved Tax Credit);

xxi. any and all Production Accounts or other deposit or securities accounts established by any Loan Party with respect to a Picture; and

xxii. all products and proceeds of the foregoing (collectively, the "Prepetition Collateral").

(iv)    Validity of Senior Secured Indebtedness and Senior Secured Liens.

(a)    The Senior Secured Indebtedness constitutes the legal, valid and binding obligations of the Prepetition Obligors, enforceable against them respectively in accordance with the terms of the Senior Secured Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Senior Secured Indebtedness (including payments made to the Prepetition Secured Parties or applied to or paid on account of the Senior Secured Indebtedness prior to the Petition Date) is subject to avoidance, recharacterization, recovery, reduction, disgorgement, or subordination or any other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law.  The Senior Secured Indebtedness constitutes allowed claims against each of the applicable Debtors' estates.

(b)      The Senior Secured Liens: (i) secure the Senior Secured Indebtedness; (ii) are valid, binding, perfected and enforceable liens on and security interests in the Prepetition Collateral, including the Cash Collateral (as defined herein); (iii) are not subject to avoidance, recharacterization, recovery, reduction, disgorgement, or subordination or any other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (iv) are subject and subordinate only to (1) valid, binding, and perfected Specified Permitted Encumbrances (as defined in the Senior Secured Credit Agreement) and (2) from and after the entry of this Interim Order, the Carve Out (as defined herein).

E.      **Releases by the Debtors**.  Without prejudice to the rights of any other party in interest (but subject to the limitations thereon contained in paragraph 11 below), each Debtor and its estate unconditionally, irrevocably, and fully releases, waives, and discharges the Prepetition Secured Parties, together with their respective affiliates, agents, attorneys, financial advisors, consultants, shareholders, managers, owners, partners, members, officers, directors, and employees, and predecessors and successors in interest, of and from any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff, recoupment, damages, injuries, and allegations, whether known or unknown, whether arising at law or in equity, with respect to the Senior Secured Loan Documents and any document related thereto or the transactions contemplated thereunder, including, without limitation, (a) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code, or under any other similar provisions of applicable state or federal law, (b) any so-called "lender liability" or equitable subordination claims or defenses, and (c) any right or basis to challenge or object to the amount, validity, enforceability, priority, perfection or non-avoidability of the liens or claims of the Prepetition Secured Parties;

9

*provided, however*, that nothing herein shall operate as a release or waiver of any claims or causes of action solely on account of any act taken after the Petition Date. The Debtors' acknowledgments, stipulations, and releases set forth in paragraphs D and E of this Interim Order shall be binding on the Debtors and their respective representatives, successors and assigns, and on each of the Debtors' estates, and, subject to the challenge provisions contained in paragraph 11 herein, all creditors thereof and holders of interests therein and each of their respective representatives, successors and assigns, including, without limitation, any Committee or any trustee or other representative appointed in these Cases, whether such trustee or representative is appointed in chapter 11 or chapter 7.

F.    **Cash Collateral**. All cash and cash equivalents of the Debtors, including, without limitation, all proceeds of any Prepetition Collateral, whenever and wherever acquired shall constitute cash collateral as contemplated by section 363 of the Bankruptcy Code (the "Cash Collateral").

G.    **Need to Use Prepetition Collateral and Cash Collateral**. The Debtors have an immediate need to use certain of the Prepetition Collateral, including the Cash Collateral, for, among other things, working capital and other general corporate purposes and the costs and expenses of administering their estates during the Cases. The Debtors' access to sufficient working capital and liquidity through the use of Prepetition Collateral, including the Cash Collateral, is of vital importance to, and in the best interests of, the Debtors and their estates and creditors, and will allow for the continued operation of the Debtors' businesses and enhance the Debtors' prospects for a successful reorganization.

H.    **Good Faith.** This Interim Order has been the subject of negotiations conducted in good faith and at arm's length between the Debtors, the Agent, and the other Prepetition

Secured Parties.  Any financial accommodations made to the Debtor by the Agent and the other Prepetition Secured Parties pursuant to this Interim Order shall be deemed to have been extended by the Agent and the other Prepetition Secured Parties in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and the Agent and the other Prepetition Secured Parties shall be entitled to all protections and benefits afforded thereby.

**I.      Consent to Use of Cash Collateral; Adequate Protection; Business Judgment**. The Prepetition Secured Parties have consented, conditioned on the entry of this Interim Order, to the Debtors' proposed use of the Prepetition Collateral, including the Cash Collateral, solely on the terms and conditions set forth herein.  The terms on which the Prepetition Secured Parties have agreed to the Debtors' use of the Prepetition Collateral, including the Cash Collateral, are fair and reasonable and constitute reasonably equivalent value and fair consideration, and the adequate protection arrangements included in such terms are appropriate pursuant to sections 361, 362, and 363 of the Bankruptcy Code.  The Debtors' agreement to such terms reflects the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

Based on the foregoing findings, acknowledgements, and conclusions, and upon the record made before the Court at the Interim Hearing, and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**1.      Approval of Cash Collateral Motion**.  The Cash Collateral Motion is granted on an interim basis on the terms and conditions set forth in this Interim Order.  Any objections or responses to the relief requested in the Cash Collateral Motion that have not been previously resolved or withdrawn, waived or settled are hereby overruled on the merits and denied with prejudice or, to the extent applicable, deferred until the Final Hearing.  The rights of all parties-

in-interest to object to entry of a final order are reserved. This Interim Order shall become effective immediately upon its entry.

2.      **Authorization to use Prepetition Collateral, including Cash Collateral.** The Debtors are hereby authorized to continue to use the Prepetition Collateral, including Cash Collateral, for working capital and other general corporate purposes and the costs and expenses of administering their estates during the Cases, *provided* that the Debtors' use of Cash Collateral shall be in accordance with the Approved Budget, subject to the Permitted Variances (each as defined below); *provided, further*, that the Debtors shall not be permitted to use Prepetition Collateral, including Cash Collateral, other than in accordance with the terms of this or any other order of this Court.

3.      **Approved Budget**.   Attached as **<u>Exhibit 1</u>** to this Interim Order is a 13-week cash flow forecast (as updated every two Periods (each "Period" reflecting the Period end date shown on the Approved Budget) by a 13-week cash flow forecast through the same period as the Approved Budget and acceptable to the Prepetition Secured Parties in their sole and absolute discretion, the "<u>Approved Budget</u>") setting forth all projected cash receipts and cash disbursements by Period.  A budget update that is submitted to the Prepetition Secured Parties will be deemed to amend the Approved Budget if approved by the Required Lenders, *provided* that such update will be deemed approved if the Debtors do not receive notice of disapproval thereof from the Agent within three (3) business days of submission.  The Debtors' use of the Prepetition Collateral, including the Cash Collateral, is subject to and governed by the terms of the Approved Budget and this paragraph 3, and the Prepetition Secured Parties shall have no obligation to permit the use of any of the Prepetition Collateral, including the Cash Collateral,

other than in accordance with the terms of the Approved Budget as set forth in this Interim Order.

(i)    Permitted Variances.   By not later than noon Pacific time on the third business day after the end of the week following the Petition Date, and not later than noon Pacific time on the third business day after the close of each Period thereafter, the Debtors shall deliver a variance report in the form agreed between FTI Consulting, Inc. ("FTI"), on behalf of the Debtors, and Berkeley Research Group, LLC ("BRG"), as financial advisor to the Agent (an "Approved Variance Report") showing comparisons of actual results for each line item against such line item in the Approved Budget for the Period just completed and for all Periods since the Petition Date (i.e., a cumulative variance).   Each Approved Variance Report shall indicate whether there are any adverse variances that exceed the "Permitted Variances", which means up to 10% on the following line items, in each case measured on a cumulative basis:

   i.    Total Receipts;
   ii.   Total Distribution Outflows;
   iii.  Minimum Guarantees;
   iv.   Total Participation Outflows;
   v.    Total Personnel & Operating Outflows; and
   vi.   Restructuring (excluding the Prepetition Secured Parties' professionals).

The Debtors and the Agent may modify the limitations set forth in this paragraph 3 by written agreement and on notice to any Committee, without the need for further notice to or action of the Court or any other party.

4.    **Adequate Protection**.   The Prepetition Secured Parties are entitled, until the indefeasible repayment of the Senior Secured Indebtedness in full, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including Cash Collateral, for any diminution in the value of their interests in the Prepetition Collateral and solely to the extent of any decrease in such value, including, without

13

limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value or actual consumption) of Cash Collateral and any other Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (each, a "Diminution Claim").  As adequate protection for such Diminution Claims and solely to the extent of any decrease in the value of their respective interests in the Prepetition Collateral (including the Cash Collateral) resulting from the use of Cash Collateral or the use, sale, lease of all other Prepetition Collateral, the Prepetition Secured Parties are granted, *nunc pro tunc* as of the Petition Date, the following adequate protection (collectively, the "Adequate Protection Provisions"):

(i)     Adequate Protection Liens.  The Prepetition Secured Parties are granted liens on (a) all property of the Debtors or their respective estates, now existing or hereinafter acquired, and the proceeds thereof and (b) subject to the entry of a Final Order, any proceeds of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar federal, state, local or foreign law (the "Avoidance Actions") (the foregoing collateral the "Adequate Protection Collateral" and the foregoing adequate protection the "Adequate Protection Liens").  The Adequate Protection Liens shall be junior only to (a) valid, binding and perfected Specified Permitted Encumbrances, (b) valid liens in existence as of the Petition Date that are perfected subsequent to such date as permitted by section 546(b) of the Bankruptcy Code, and (c) payment of the Carve Out.

(ii)     Adequate Protection Superpriority Claims.  The Prepetition Secured Parties are granted allowed claims pursuant to section 507(b) of the Bankruptcy Code against the Debtors with priority over any and all administrative expenses, adequate protection claims and

14

all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "Adequate Protection Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their estates and all proceeds thereof, subject only to the payment of the Carve Out.

(iii)    Interest, Fees and Expenses.  Without further application to this Court, the Debtors are authorized and directed to pay forthwith in cash: (1) all accrued and unpaid interest through the Petition Date owed under the Senior Secured Credit Agreement, including, without limitation, payment of all outstanding default interest; (2) all accrued and unpaid fees and disbursements owed to the Prepetition Secured Parties, including all reasonable and documented out-of-pocket fees and expenses of counsel and other professionals of the Prepetition Secured Parties, as provided under the Senior Secured Loan Documents incurred prior, on or after the Petition Date; and (3) current monthly payment of all fees, costs, expenses, and interest (at the default rate in effect under the Senior Secured Credit Agreement immediately prior to the Petition Date) arising or accruing after the Petition Date with respect to outstanding Senior Secured Indebtedness.

(iv)    Payment of Prepetition Secured Parties' Professional Fees and Expenses. The Debtors shall pay the reasonable and documented professional fees and expenses of counsel to (including Paul Hastings LLP and Ashby & Geddes, P.A.), and BRG, as financial advisor to,

the Prepetition Secured Parties within ten (10) business' days (if no written objection is received within such ten (10) business day period) after such professional has delivered an invoice, substantially in the form provided to the Debtors to date, describing such fees and expenses; *provided*, *however*, that any such invoice may be redacted to protect privileged, confidential or proprietary information, with a copy of such invoices to the U.S. Trustee and any Committee. Written objections to payment of such fees and expenses, which may be asserted only by the Debtors, the U.S. Trustee and any Committee, must contain a specific basis for the objection and quantification of the undisputed amount of the fees and expenses invoiced; failure to object with specificity or to quantify the undisputed amount of the invoice subject to such objection will constitute a waiver of any objection to such invoice.  None of such fees and expenses shall be subject to the Approved Budget or Court approval or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; *provided, however*, that if an objection to a professional's invoice is timely received, the Debtors shall be required to pay only the undisputed amount of the invoice and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

(v)    <u>Nature of Payments</u>.  All amounts paid as adequate protection are deemed permitted uses of Cash Collateral.  Neither the Debtors nor the Prepetition Secured Parties waive any rights regarding the characterization or application of any payment made in connection with the Adequate Protection Provisions and this Interim Order.

**5.    Reporting; Access to Records**.  The Debtors shall comply with the reporting requirements set forth in the Senior Secured Loan Documents and any related documents; *provided, however*, that, except as set forth in the immediately following proviso,  the deadline

16

for submitting any materials that would otherwise be due under the Senior Secured Loan Documents on or before October 5, 2018, is extended through and including October 5, 2018; *provided, further*, that the Borrowing Base Certificate and other information required to be delivered under Section 6.02(h) of the Senior Secured Credit Agreement shall be delivered on or before September 17, 2018.  In addition to, and without limiting, whatever rights to access the Prepetition Secured Parties have under such documents: (i) upon reasonable notice, at reasonable times, and for a reasonable number of times during normal business hours, the Debtors shall permit representatives, agents and employees of the Prepetition Secured Parties to (a) have access to and inspect the Debtors' properties, (b) examine the Debtors' books and records, and (c) discuss the Debtors' affairs, finances and condition with the Debtors' officers and financial advisors; and (ii) the Debtors shall provide the Prepetition Secured Parties with (a) reasonable access to and cooperation from the CRO (as defined herein) and FTI and (b) evidence reasonably satisfactory to the Agent that, subject to the approval of their respective boards of directors, the CRO has control over the Debtors' cash to ensure that the Debtors comply with their obligations under this Interim Order.

6.     **Automatic Perfection of Adequate Protection Liens**.  The Prepetition Secured Parties are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the Prepetition Secured Parties choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be

17

deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination immediately upon entry of this Interim Order, but subject in all respects to the provisions of this Interim Order.

7.     **Right to Seek Additional Adequate Protection**.  Under the circumstances, the Court finds that the Adequate Protection Provisions provided herein protect the interests of the Prepetition Secured Parties.  The grant of the Adequate Protection Provisions described herein is without prejudice to the right of any of the Prepetition Secured Parties to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest such modification.

8.     **Events of Default; Termination of Authorization to Use Cash Collateral**.  In the absence of a further order of this Court, and notwithstanding anything herein to the contrary, and after delivery (including delivery by electronic mail or facsimile) of notice of the occurrence of an Event of Default (as defined herein) by the Agent to the Debtors, any Committee, and the U.S. Trustee, the Debtors shall no longer be authorized pursuant to this Interim Order to use Cash Collateral other than with respect to the Carve Out and such Cash Collateral use shall automatically terminate on the date upon which any of the following events occurs (such date being referred to herein as the "Termination Date," and each of the following events, an "Event of Default"), *provided* that if any of the following are no longer continuing after five (5) days of notice of the occurrence of an Event of Default, the Debtors shall be able to use Cash Collateral as if the Event of Default had never occurred (a "Cash Collateral Reinstatement"), *provided further* that any breach of the covenant contained in clauses (i), (v), (vii)-(x) or (xv)-(xxiii) below or paragraph 14 hereof shall not be subject to any Cash Collateral Reinstatement:

(i)    Entry by the Court of any Order, or the filing by the Debtors, without consent of the Prepetition Secured Parties, of any motion seeking an order, amending, supplementing, extending, or otherwise modifying this Interim Order or any of its provisions;

(ii)    The Final Order is not entered by the Court within thirty (30) days after the Petition Date;

(iii)    Delivery of a Carve Out Trigger Notice;

(iv)    Failure of the Debtors to comply with any of the terms or provisions of this Interim Order;

(v)    Payment by the Debtors of any expenses other than in accordance with the Approved Budget (including the Permitted Variances);

(vi)    The Debtors shall exceed any of the Permitted Variances listed in paragraph 3 of this Interim Order;

(vii)    Entry by the Court, or the filing by any Debtor of a motion seeking entry, of any order permitting, surcharge of or recovery from any portion of the Prepetition Collateral (or from the Prepetition Secured Parties directly) any costs or expenses of preserving or disposing of the Prepetition Collateral under section 506(c) or section 552(b) of the Bankruptcy Code (or otherwise);

(viii)    Entry by the Court of any order invalidating, disallowing, or limiting in any respect, as applicable, the Senior Secured Indebtedness or the Senior Secured Liens;

(ix)    Any of the Adequate Protection Liens shall cease to be valid, binding, and perfected liens with the priority and to the extent provided in this Interim Order;

(x)    Entry by the Court, or the filing by the Debtors of any motion seeking entry, of any order, whether in connection with a request for approval of postpetition debtor-in-

possession financing under section 364(c) or (d) of the Bankruptcy Code or otherwise, (a) granting priority to any lien or other encumbrance senior to or pari passu with any Adequate Protection Lien or the Senior Secured Liens or (b) granting priority to any claim or administrative expense senior to or pari passu with any Adequate Protection Superpriority Claim or the Senior Secured Indebtedness;

(xi)    Entry by the Court of any order granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code with respect to any property of the Debtors with an aggregate value in excess of $200,000, but excluding any such relief consented to by the Prepetition Secured Parties;

(xii)    Reversal, vacatur, or modification of this Interim Order;

(xiii)    Entry by the Court, or the filing by the Debtors of any motion seeking entry, of an order dismissing any of the Cases, converting any of the Cases to cases under chapter 7 of the Bankruptcy Code, or appointing a trustee or examiner pursuant to section 1104 of the Bankruptcy Code in any of the Cases;

(xiv)    Failure of the Debtors to make any payment provided for under this Interim Order within five business days of the date such payment is due;

(xv)    Failure of the Debtors to file, within two (2) days of the Petition Date, a motion, in form and substance reasonably satisfactory to the Agent, seeking approval of bidding procedures for the sale of all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code (the "Bidding Procedures Motion");

(xvi)    Failure of the Debtors to obtain entry of an order of the Court, in form and substance reasonably satisfactory to the Agent, approving the Bidding Procedures Motion (the "Bidding Procedures Order") within thirty (30) days after the Petition Date;

20

(xvii)   Establishment of a deadline for the receipt of bids for a Sale (as defined below) that is more than fifty-eight (58) days after the Petition Date;

(xviii)  Establishment of a date for commencement of an auction with respect to a Sale that is more than sixty-three (63) days after the Petition Date;

(xix)    Failure to obtain entry of an order, in form and substance reasonably satisfactory to the Agent, of the Court approving the sale of all or substantially all of the Debtors' assets (the "Sale") within sixty-five (65) days after the Petition Date;

(xx)     Failure to close on the Sale within seventy-two (72) days after the Petition Date;

(xxi)    Either (A) the Debtors shall not shall continuously retain Amir Agam of FTI, or such other person reasonably acceptable to the Prepetition Secured Parties, as Chief Restructuring Officer on terms and scope of authority reasonably acceptable to the Prepetition Secured Parties (the "CRO"), (B) the CRO shall not have full control over the Approved Budget contemplated by paragraph 3 of this Interim Order or the Approved Variance Report contemplated by paragraph 3 of this Interim Order, (C) the Prepetition Secured Parties shall not have reasonable access to and cooperation from the CRO and FTI as contemplated by paragraph 5 of this Interim Order, (D) the CRO shall not have control over the Debtors' cash to ensure that the Debtors comply with their obligations under this Interim Order as contemplated by paragraph 5 of this Interim Order, or (E) FTI, or such other person reasonably acceptable to the Prepetition Secured Parties, shall not have full control over the marketing and sales process described in the Bidding Procedures Motion;

(xxii) Any Debtor seeks approval, or publicly announces that it will seek approval, of a plan of reorganization that is not supported by the Prepetition Secured Parties and that does not satisfy the Senior Secured Indebtedness in full and in cash on its effective date; or

(xxiii) Occurrence of the effective date of a plan of reorganization, or the consummation of a sale of all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code.

9.     **Rights and Remedies Upon Event of Default; Modification of Automatic Stay**.  Upon the occurrence of the Termination Date, (a) the Debtors' authorization to use Cash Collateral shall terminate, (b) the Adequate Protection Superpriority Claims (if any) shall become due and payable, and (c) and the Prepetition Secured Parties may, upon five business days' written notice to counsel to the Debtors, the U.S. Trustee, and any Committee, (i) set off amounts in any account of the Debtors maintained with the Prepetition Secured Parties or with respect to which the Prepetition Secured Parties exercise control pursuant to a deposit account control agreement to the extent necessary for payment of the Debtors' obligations under this Interim Order and/or (ii) exercise any other rights and remedies available under the Senior Secured Loan Documents.  Remedies shall be cumulative and nonexclusive.  The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit such action upon the occurrence of the Termination Date and pursuant to the terms set forth herein.  Notwithstanding anything to the contrary herein or the occurrence of the Termination Date, all of the rights, remedies, benefits and protections provided to the Prepetition Secured Parties under this Interim Order shall survive the occurrence of the Termination Date. The Debtors and all parties in interest shall be entitled to seek an emergency hearing before this Court, including to contest whether the Termination Date has occurred under paragraph 8 of this

22

Interim Order and at which hearing the Debtors shall reserve the right to seek Court approval of a new order approving the use of Cash Collateral and to seek other relief from the Court.

10.    **Carve Out**.  For purposes hereof, the "<u>Carve Out</u>" means the sum of (a) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (b) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (c) to the extent allowed at any time, whether by interim order, procedural, order, or otherwise, but subject in all respects to the terms of this Interim Order, all allowed and unpaid professional fees, expenses and disbursements (the "<u>Allowed Professional Fees</u>") incurred or accrued by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and the Committee, if any, pursuant to section 328 or 1103 of the Bankruptcy Code (the "<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Professional Persons</u>") at any time before or on the first business day following delivery by the Prepetition Secured Parties of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice, in each case up to the amount provided for such Professional Persons in the accrual portion of the Approved Budget for the entire period before and inclusive of the date of delivery of a Carve Out Trigger Notice; *provided* that any unused amounts in the "ORF Counsel" line item shall be available for the "ORF Local Counsel" line item, and vice versa; *provided*, *further*, that (x) the aggregate amount available to all Professional Persons in the accrual portion of the Approved Budget for the entire period before and inclusive of the date of delivery of a Carve Out Trigger Notice, regardless of whether such amounts are allowed, minus all amounts that have been actually paid, shall be reduced by (y) the amount of the Payroll Carve Out; (d) Allowed

Professional Fees of Professional Persons in an aggregate amount not to exceed $250,000 incurred after the first business day following delivery by the Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (d) being the "Post-Carve Out Trigger Notice Cap") and (e) the expenses of paying all of the Debtors' obligations to or on account of their employees or their shared employees for payroll, benefits, vacation pay, and any taxes associated therewith, but only to the extent that such obligations (i) accrue on or before the first business day following delivery by the Prepetition Secured Parties of a Carve Out Trigger Notice and (ii) do not exceed the amounts contained in the Approved Budget for such obligations (the "Payroll Carve Out").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to any Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default, stating that the Post-Carve Out Trigger Notice Cap has been invoked.  For the avoidance of doubt and notwithstanding anything to the contrary herein, the Carve Out shall be senior to the Senior Secured Indebtedness, Senior Secured Liens, Diminution Claims, Adequate Protection Liens, Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing or relating to the Senior Secured Indebtedness.

(i)    No Direct Obligation To Pay Allowed Professional Fees.  The Prepetition Secured Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any successor Cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate

the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(ii)    <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>.  Any payment or reimbursement made prior to the date on which a Carve Out Trigger Notice is delivered to the Debtors (and to counsel to any Committee) in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(iii)    <u>Payment of Carve Out On or After the Termination Declaration Date</u>. Any payment or reimbursement made on or after the date on which a Carve Out Trigger Notice is delivered to the Debtors (and to counsel to any Committee) (x) in respect of any Allowed Professional Fees incurred or accrued after such date shall permanently reduce the Post-Carve Out Trigger Notice Cap on a dollar-for-dollar basis and (y) in respect of any Allowed Professional Fees incurred or accrued before such date shall permanently reduce the Carve Out for the period before such date on a dollar-for-dollar basis.

**11.    Effect of Stipulations on Third Parties**.  The stipulations and admissions contained in paragraph D and the release in paragraph E of this Interim Order shall be binding on the Debtors, all parties-in-interest, including, without limitation, the Debtors and any Committee, unless, and solely to the extent that an adversary proceeding or other contested matter has been commenced by a party in interest (other than the Debtors) with the requisite standing and authority, against a Prepetition Secured Party in connection with any matter related to the Senior Secured Credit Agreement, in each case by no later than seventy-five (75) days after the date of entry of this Interim Order or, in the case of the Committee (if appointed), the earlier of such date or the date that is sixty (60) days from its formation (the "<u>Challenge Deadline</u>").  The Challenge

Deadline may be extended in writing from time to time in the sole discretion of the Prepetition Secured Parties or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline.  If no such adversary proceeding or contested matter is filed by the Challenge Deadline, then the (w) stipulations and admission contained in paragraph D and the release in paragraph E of this Interim Order shall become binding on all parties-in-interest, including, for the avoidance of doubt, any Committee appointed in the Case, (x) Senior Secured Indebtedness shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (y) Senior Secured Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph D, not subject to defense, counterclaim, recharacterization, subordination or avoidance, and (z) Senior Secured Indebtedness and the Senior Secured Liens shall not be subject to any other or further challenge by the Debtors, any Committee, or any other party in interest, each of whom shall be enjoined from seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors with respect thereto).  If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraph D and the release in paragraph E of this Interim Order shall nonetheless remain binding and preclusive on the Debtors, any Committee, and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged in such timely filed adversary proceeding or contested matter.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee or any

other official committee that may be appointed in these Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, claims and defenses with respect to the Senior Secured Indebtedness or the Senior Secured Liens.

12. **Limitation on Use of Cash Collateral**. Notwithstanding anything herein or in any other order by this Court to the contrary, without the prior written consent of the Prepetition Secured Parties, none of the Cash Collateral or the Carve Out may be used for the following purposes: (i) to object to or contest the validity or enforceability of the Interim Order or Final Order or any obligations outstanding under the Senior Secured Loan Documents; *provided*, *however*, that the Committee may expend up to $25,000 (the "Investigation Budget") for the fees and expenses incurred in connection with the investigation of, but not litigation, objection or any challenge to, the stipulations and admissions contained in paragraph D and the release in paragraph E; *provided*, *further*, *however*, any fees, expenses or costs incurred by a Committee or its professionals in excess of the Investigation Budget or in excess of the amount budgeted for the Committee's professionals set forth in the Approved Budget shall not constitute an allowable administrative expense claim, including for purposes of section 1129(a)(9)(A) of the Bankruptcy Code; (ii) to assert or prosecute any claim or cause of action against the Prepetition Secured Parties; (iii) to seek to modify any of the rights granted under the Interim Order or Final Order to the Prepetition Secured Parties; (iv) to make any payment in settlement or satisfaction of any prepetition or administrative claim, unless in compliance with the covenants related to the Approved Budget  and, with respect to the payment of any prepetition claim or non-ordinary course administrative claim, separately approved by this Court; (v) to object to, contest, delay, prevent or interfere in any way with the exercise of rights and remedies by the Prepetition

Secured Parties once an Event of Default has occurred and any applicable notice period has expired (except that Debtors may contest or dispute whether an Event of Default has occurred and the Debtors shall be entitled to any notice provisions provided in the Interim Order or in the Final Order); or (vi) except as provided or permitted under the Approved Budget, to make any payment or distribution to any non-Debtor affiliate, equity holder, or insider of any Debtor outside of the ordinary course of business.

13.     **Proofs of Claim**.  The Prepetition Secured Parties shall not be required to file proofs of claim or requests for payment of administrative expenses for any claims arising under or in connection with the Senior Secured Loan Documents or the Adequate Protection Provisions.  The Debtors' admissions, and acknowledgements and the provisions of this Interim Order shall be deemed to constitute a timely filed proof of claim for the Prepetition Secured Parties.  Notwithstanding the foregoing, the Prepetition Secured Parties (or their agent) are authorized and entitled, but are not required, to file (and amend and/or supplement, as each sees fit) a proof of claim and/or proofs of claim and/or requests for payment of administrative expenses for any claim or administrative expense described herein.  The failure to file any such proof of claim or request for payment of an administrative expense shall not affect the validity or enforceability of any of the Senior Secured Indebtedness or this Interim Order.

14.     **Restrictions on Granting Post-Petition Claims and Liens**.  It shall be an event of default with respect to the consensual use of Cash Collateral for the Debtors to offer or grant to any person other than the Prepetition Secured Parties any claim or lien that is *pari passu* with or senior to the claims and liens of any of the Prepetition Secured Parties under this Interim Order, including the Adequate Protection Liens and the Adequate Protection Superpriority

Claims, and the Debtors' right to use Cash Collateral under the terms of this Interim Order shall terminate without further order of the Court immediately upon such event of default.

15. **Limitation on Charging Expenses Against Prepetition Collateral**. As a further condition of the Prepetition Secured Parties' consent to the Debtors' use of the Prepetition Collateral, including the Cash Collateral, and to the payment of the Carve Out, and subject to and effective only upon entry of the Final Order, and except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including a case under chapter 7 of the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral pursuant to (a) section 506(c) of the Bankruptcy Code, (b) the enhancement of collateral provisions of section 552 of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment), or (c) any similar principle of law, without the prior written consent of the Prepetition Secured Parties, and no consent shall be implied from any action, inaction or acquiescence by the Prepetition Secured Parties. Subject to and effective only upon entry of the Final Order, in no event shall the Prepetition Secured Parties be subject to (a) the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code or (b) the equitable doctrine of "marshaling," or any other similar doctrine with respect to the Prepetition Collateral or the Adequate Protection Collateral.

16. **Disposition of Collateral**. Except as expressly permitted in this Interim Order or as contemplated by the Bidding Procedures Motion or to the extent the Senior Secured Indebtedness would be satisfied in full and in cash as a result thereof and, to the extent required by the Bankruptcy Code, as approved by the Court, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Prepetition Collateral or the Adequate

Protection Collateral without the prior written consent of the Agent and no such consent shall be implied from any action or inaction by the Agent or any order of this Court.

17.     **Credit Bid**.  The Prepetition Secured Parties shall have the right to credit bid subject to section 363(k) of the Bankruptcy Code all of their respective claims in connection with any sale (including a Sale) of the Debtors' assets under section 363 of the Bankruptcy Code or under a plan of reorganization.

18.     **Preservation of Rights Granted Under the Interim Order**.  Except with respect to the Carve Out or as expressly provided herein, no claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order shall be granted or allowed while any portion of the Diminution Claims remain outstanding and the Adequate Protection Liens shall not be subject to or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or, unless consented to by the Prepetition Secured Parties, subordinate to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

19.     **Effect of Reversal, Etc.**  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of the Adequate Protection Provisions incurred prior to the actual receipt of written notice by the Prepetition Secured Parties of the effective date of such reversal, stay, modification, or vacatur or (ii) the validity, priority or enforceability of the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification, or vacatur, any use of Cash Collateral prior to the actual receipt of written notice by the Prepetition Secured Parties of such reversal, stay, modification, or vacatur shall be governed in all respects by the original provisions of this Interim Order and the Prepetition

Secured Parties shall be entitled to all of the rights, remedies, privileges, and benefits granted in section 363(m) of the Bankruptcy Code and this Interim Order with respect to all uses of Cash Collateral and all Adequate Protection Provisions.

20.     **Survival of Rights**.  Except as expressly provided in this Interim Order, the Adequate Protection Provisions and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired, or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases, or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases.  The terms and provisions of this Interim Order shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Provisions and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Interim Order shall continue in full force and effect until all Diminution Claims and all allowed claims payable in cash arising from the Adequate Protection Provisions are indefeasibly paid in full in cash.

21.     **Reservation of Rights of Prepetition Secured Parties**.  Notwithstanding anything herein to the contrary, this Interim Order is without prejudice to, and does not constitute a waiver of, any of the Prepetition Secured Parties' rights with respect to any person or entity other than the Debtors or with respect to any other collateral owned or held by any person or entity other than the Debtors.  The rights of the Prepetition Secured Parties are expressly reserved and entry of this Interim Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of the following: (a) the Prepetition Secured Parties' rights under the Senior Secured Loan Documents; (b) the Prepetition Secured Parties' rights to seek any other

31

or supplemental relief in respect of the Debtors; (c) any of the Prepetition Secured Parties' rights under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay, (ii) request dismissal of these Cases, conversion of any of these Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with extended powers, and (iii) propose, subject to section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (d) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the Prepetition Secured Parties.

**22. Binding Effect; Successors and Assigns; No Third Party Rights**. The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the Prepetition Secured Parties, any Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Secured Parties and the Debtors and their respective successors and assigns. In consenting to the use of the Prepetition Collateral, including Cash Collateral, on the terms described herein, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. § 9601 et seq., as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to any of the Debtors, their creditors or estates.

23. **Effectiveness**.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Interim Order.

24. **Amendments**.  No waiver, modification, or amendment of any of the provisions of this Interim Order shall be effective, unless set forth in writing, signed by on behalf of all the Debtors, the Prepetition Secured Parties and, except as provided herein, approved by this Court after notice; *provided, however*, that the Debtors and the Prepetition Secured Parties are hereby authorized to implement any non-material modifications without further notice to or action of this Court or any other party and without further Order of this Court.

25. **Final Hearing**.  The Final Hearing is scheduled for _____, **2018 at** _____ **(ET)** before this Court.  The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, to any other party that has filed a request for notices with this Court, and to the Committee after the same has been appointed, or Committee counsel, if the same shall have been retained.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served no later than _____, **2018 at 4:00 p.m. (ET)** upon the Debtors and their counsel, counsel to the Agent, the Committee after the same has been appointed, or Committee counsel, if the same shall have been retained, and the U.S. Trustee.

26.     **Retention of Jurisdiction**.  The Court has and will retain jurisdiction and power to enforce this Interim Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order.

Dated:    September ___, 2018
          Wilmington, Delaware

_____
HONORABLE _____
UNITED STATES BANKRUPTCY JUDGE

## <u>Exhibit 1</u>

**Approved Budget**

Exhibit 1

## BUDGET - OPEN ROAD FILMS - CASH FLOW  (Period from Filing through November 30, 2018)

Draft Subject to Further Review

| $ in '000s | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Period #** | | BK | BK | BK | BK | BK | BK | BK | BK | BK | BK | BK | BK | BK |
| **BK Status** | (1,2,3) | P/E 9/7 | P/E 9/14 | P/E 9/21 | P/E 9/30 | P/E 10/5 | P/E 10/12 | P/E 10/19 | P/E 10/31 | P/E 11/9 | P/E 11/16 | P/E 11/23 | P/E 11/30 | Total |
| | | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| **Total Receipts** | (4) | $32 | $511 | $307 | $1,060 | $4,231 | $136 | $867 | $1,139 | $5 | $4,545 | $5 | $215 | $13,053 |
| Total Distribution Outflows | | (50) | (132) | (50) | (132) | (88) | (429) | (75) | (80) | (80) | (50) | (50) | (50) | (1,267) |
| Minimum Guarantees | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Participation Outflows | (5) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Personnel & Other Operating Outflows | (6) | - | (105) | (312) | (93) | (395) | (85) | (258) | (94) | (378) | (217) | (51) | (264) | (2,251) |
| ***Net Inflows/(Outflows) from Operations*** | | *($18)* | *$273* | *($55)* | *$835* | *$3,748* | *($379)* | *$535* | *$965* | *($453)* | *$4,278* | *($96)* | *($99)* | *$9,535* |
| Total Banking Outflows | (7) | (161) | (161) | (161) | (207) | (115) | (161) | (161) | (276) | (207) | (161) | (161) | (161) | (2,093) |
| Net Credit Facility Inflows/(Outflows) | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Restructuring Outflows** | | | | | | | | | | | | | | |
| Total Professional Fees | | - | - | - | (511) | (153) | (717) | (142) | (642) | (130) | (874) | (535) | (103) | (3,807) |
| Employee Termination Costs | (8) | - | - | (1) | - | - | - | - | - | - | - | - | - | (1) |
| Other Costs | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Restructuring Outflows | | - | - | ($1) | ($511) | ($153) | ($717) | ($142) | ($642) | ($130) | ($874) | ($535) | ($103) | ($3,807) |
| Total Exit/Admin & Wind Down Fees | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| ***Net Inflows/(Outflows)*** | | *($179)* | *$112* | *($217)* | *$117* | *$3,481* | *($1,257)* | *$232* | *$47* | *($789)* | *$3,243* | *($792)* | *($363)* | *$3,635* |
| **Opening Cash Balance** | (9) | $2,977 | $2,799 | $2,911 | $2,694 | $2,811 | $6,292 | $5,035 | $5,266 | $5,313 | $4,524 | $7,767 | $6,975 | $2,977 |
| ***Ending Cash Balance*** | | *$2,799* | *$2,911* | *$2,694* | *$2,811* | *$6,292* | *$5,035* | *$5,266* | *$5,313* | *$4,524* | *$7,767* | *$6,975* | *$6,612* | *$6,612* |

### Footnotes

*(1) The Company's forecasting methodology uses a 4-week month to reconcile with month-end close; as a result, the number of days in a period can vary from 7 days*

*(2) Does not show amounts that are offsetting receipts and disbursements occurring in the same period*

*(3) Period 1 only includes post-petition disbursements*

*(4) Cash received for Physical and EST/VOD receipts is shown net of Home Entertainment Distribution Costs*

*(5) This budget assumes that all participations and residuals will be reviewed during the Budget period and are not shown as paid (with the exception of pass-throughs/offsets)*

*(6) Debtor share of employee payroll is pre-paid through 9/7 prior to the petition date*

*(7) Interest expense is shown paid each period; actual timing TBD*

*(8) Employee termination costs consist of accrued vacation payout at time of termination*

*(9) The Opening Cash Balance has been updated as of the expected petition date*

Exhibit 1

## OPEN ROAD FILMS - PROFESSIONAL FEES

| Period # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $ in '000s | P/E 9/7 | P/E 9/14 | P/E 9/21 | P/E 9/30 | P/E 10/5 | P/E 10/12 | P/E 10/19 | P/E 10/31 | P/E 11/9 | P/E 11/16 | P/E 11/23 | P/E 11/30 |
|  | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| **Professional Fees - Accruals** | | | | | | | | | | | | |
| ORF Counsel (Klee Tuchin) | ($100) | ($100) | ($100) | ($100) | ($100) | ($100) | ($100) | ($100) | ($100) | ($100) | ($100) | ($100) |
| ORF (FTI Consulting) | (200) | (155) | (155) | (153) | (142) | (142) | (135) | (130) | (103) | (103) | (103) | (103) |
| ORF Local Counsel (Young Conaway) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) |
| Claims and Noticing Agent (Donlin Recano) | (13) | (13) | (13) | (13) | (13) | (13) | (13) | (13) | (13) | (13) | (13) | (13) |
| Secured Lender Counsel (Paul Hastings) | (63) | (63) | (63) | (63) | (63) | (63) | (63) | (63) | (63) | (63) | (63) | (63) |
| Secured Lender BAML Financial Advisor (BRG) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) |
| Individual Lender Counsels (TBD) | (31) | (31) | (31) | (31) | (31) | (31) | (31) | (31) | (31) | (31) | (31) | (31) |
| Secured Lender Local Counsel | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) |
| UCC Counsel | - | - | - | (75) | (75) | (75) | (50) | (50) | (50) | (25) | (25) | (25) |
| UCC Financial Advisor | - | - | - | (75) | (75) | (50) | (50) | (50) | (50) | (25) | (25) | (25) |
| US Trustee | - | (5) | (11) | (58) | (24) | (17) | (11) | (26) | (10) | (20) | (10) | (13) |
| **Total Professional Fees - Accruals** | **($500)** | **($460)** | **($466)** | **($660)** | **($616)** | **($559)** | **($545)** | **($555)** | **($462)** | **($472)** | **($462)** | **($465)** |
| **Cumulative Accruals** | **($500)** | **($960)** | **($1,426)** | **($2,087)** | **($2,702)** | **($3,261)** | **($3,806)** | **($4,361)** | **($4,823)** | **($5,296)** | **($5,758)** | **($6,223)** |
| **Professional Fees Timing of Payments** | | | | | | | | | | | | |
| ORF Counsel (Klee Tuchin) | | | | | | | | ($320) | | | ($320) | |
| ORF (FTI Consulting) | | | | (511) | (153) | (142) | (142) | (135) | (130) | (103) | (103) | (103) |
| ORF Local Counsel (Young Conaway) | | | | | | | | (112) | | | (112) | |
| Claims and Noticing Agent (Donlin Recano) | | | | | | | | | | (50) | | |
| Secured Lender Counsel (Paul Hastings) | | | | | | (250) | | | | (250) | | |
| Secured Lender BAML Financial Advisor (BRG) | | | | | | (200) | | | | (200) | | |
| Individual Lender Counsels (TBD) | | | | | | (125) | | | | (125) | | |
| Secured Lender Local Counsel | | | | | | | | | | (26) | | |
| UCC Counsel | | | | | | | | | | (60) | | |
| UCC Financial Advisor | | | | | | | | | | (60) | | |
| US Trustee | | | | | | | | (75) | | | | |
| **Total Professional Fees Timing of Payments** | **$0** | **$0** | **$0** | **($511)** | **($153)** | **($717)** | **($142)** | **($642)** | **($130)** | **($874)** | **($535)** | **($103)** |
| **Cumulative Payments** | **$0** | **$0** | **$0** | **($511)** | **($664)** | **($1,381)** | **($1,523)** | **($2,165)** | **($2,295)** | **($3,169)** | **($3,704)** | **($3,807)** |
| **Professional Fees - Accrued and Not Paid** | | | | | | | | | | | | |
| ORF Counsel (Klee Tuchin) | ($100) | ($200) | ($300) | ($400) | ($500) | ($600) | ($700) | ($480) | ($580) | ($680) | ($460) | ($560) |
| ORF (FTI Consulting) | (200) | (356) | (511) | (153) | (142) | (142) | (135) | (130) | (103) | (103) | (103) | (103) |
| ORF Local Counsel (Young Conaway) | (35) | (70) | (105) | (140) | (175) | (210) | (245) | (168) | (203) | (238) | (161) | (196) |
| Claims and Noticing Agent (Donlin Recano) | (13) | (25) | (38) | (50) | (63) | (75) | (88) | (100) | (113) | (75) | (88) | (100) |
| Secured Lender Counsel (Paul Hastings) | (63) | (125) | (188) | (250) | (313) | (125) | (188) | (250) | (313) | (125) | (188) | (250) |
| Secured Lender BAML Financial Advisor (BRG) | (50) | (100) | (150) | (200) | (250) | (100) | (150) | (200) | (250) | (100) | (150) | (200) |
| Individual Lender Counsels (TBD) | (31) | (63) | (94) | (125) | (156) | (63) | (94) | (125) | (156) | (63) | (94) | (125) |
| Secured Lender Local Counsel | (8) | (17) | (25) | (33) | (41) | (50) | (58) | (66) | (74) | (56) | (64) | (73) |
| UCC Counsel | - | - | - | (75) | (150) | (200) | (250) | (300) | (325) | (290) | (315) | (340) |
| UCC Financial Advisor | - | - | - | (75) | (150) | (200) | (250) | (300) | (325) | (290) | (315) | (340) |
| US Trustee | - | (5) | (17) | (75) | (99) | (116) | (127) | (77) | (87) | (107) | (117) | (129) |
| **Total Professional Fees - Accrued and Not Paid** | **($500)** | **($960)** | **($1,426)** | **($1,576)** | **($2,039)** | **($1,880)** | **($2,283)** | **($2,196)** | **($2,529)** | **($2,126)** | **($2,054)** | **($2,416)** |

## OPEN ROAD FILMS - PAYROLL CARVE-OUT

| Period # | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $ in '000s | | P/E 9/7 | P/E 9/14 | P/E 9/21 | P/E 9/30 | P/E 10/5 | P/E 10/12 | P/E 10/19 | P/E 10/31 | P/E 11/9 | P/E 11/16 | P/E 11/23 | P/E 11/30 |
|  | | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
|  | | Payroll Week | | Payroll Week | | Payroll Week | | Payroll Week | | Payroll Week | Payroll Week | | Payroll Week |
| **Payroll - Accrued and Not Paid** | | | | | | | | | | | | | |
| Payroll and Associated Benefits | (1,2,3) | $0 | ($139) | ($385) | ($257) | ($285) | ($190) | ($319) | ($212) | ($319) | ($286) | ($214) | ($321) |
| Accrued Postpetition Paid Time Off | | | (1) | (2) | (3) | (4) | (5) | (6) | (8) | (8) | (9) | (10) | (11) |
| Medical Benefits | | | (27) | (27) | (27) | (27) | (27) | (27) | (27) | (27) | (27) | (27) | (27) |
| **Total Payroll - Accrued and Not Paid** | | **$0** | **($167)** | **($413)** | **($286)** | **($316)** | **($222)** | **($351)** | **($247)** | **($354)** | **($321)** | **($251)** | **($359)** |

Notes:
(1) No accrual is included prior to the P/E 9/7 payroll because payroll through 9/7 is pre-funded
(2) Payroll is paid bi-weekly one week in arrears
(3) Each period assumes the payroll is accrued through to the end of the Period with no payment