## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al.*,[1] | Case No.:  18-12012 (___) |
| Debtors. | (Joint Administration Requested) |
| | **Bid Procedures Objection Deadline: To be determined**<br>**Bid Procedures Hearing Date: To be determined** |

**DEBTORS' MOTION FOR ORDERS:  (A) (I) ESTABLISHING BID AND SALE PROCEDURES RELATING TO THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (II) AUTHORIZING THE DEBTORS TO ENTER INTO AN ASSET PURCHASE AGREEMENT WITH STALKING HORSE BIDDER, (III) ESTABLISHING AND APPROVING PROCEDURES RELATING TO THE ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS AND (IV) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE AND (B)(I) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (II) AUTHORIZING THE ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING CERTAIN RELATED RELIEF**

Open Road Films, LLC and its affiliated debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases") hereby move the Court (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit I** (the "Bid Procedures Order"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedures for the United States Bankruptcy Court for the District of

---

[1]    The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.).  The Debtors' address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067.

Delaware (the "Local Rules"), (i) approving the proposed auction and bid procedures (the "Bid Procedures") for the sale of substantially all of the Debtors' assets (the "Purchased Assets"), (ii) authorizing, but not directing, the Debtors to enter into an asset purchase agreement with a stalking horse bidder subject to Court approval of any stalking horse protections, (iii) establishing procedures for the assumption, assignment and sale of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"), (iv) approving the form and manner of notice of all sale procedures, protections, schedules and agreement, and (v) scheduling an auction (the "Auction") and hearing (the "Sale Hearing") to approve the sale of the Purchased Assets (the "Sale Transaction").  The Debtors also hereby move the Court, pursuant to Bankruptcy Code sections 105, 363 and 365, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 2002-1 and 6004-1, for the entry of an order (the "Sale Order"), substantially in the form that the Debtors will attach hereto as **Exhibit II**, (i) authorizing the sale of the Purchased Assets free and clear of all liens, claims, interests and encumbrances, (ii) authorizing the assumption, assignment and sale of certain executory contracts and unexpired leases as set forth in any Proposed APA (as defined herein), and (iii) granting related relief.  The Debtors will attach as **Exhibit III** hereto the Debtors' form asset purchase agreement ("Form APA"), which Form APA may be a Stalking Horse Agreement (as defined below) in the event the Debtors enter into a Stalking Horse Agreement in advance of the hearing on the Bid Procedures.  In support of the Motion, the Debtors rely on the *Declaration of Amir Agam in Support of First Day Motions* (the "First Day Declaration") filed substantially concurrently herewith.  In further support of the Motion, the Debtors respectfully represent as follows:

01:23603141.1

## I. JURISDICTION

1.       The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the

*Amended Standing Order of Reference* from the United States District Court for the District of

Delaware dated as of February 29, 2012.  This is a core proceeding within the meaning of

28 U.S.C. § 157(b)(2).  Venue of these Cases and the Motion in this district is proper under

28 U.S.C. §§ 1408 and 1409.

2.       Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of

a final judgment or order with respect to the Motion if it is determined that the Court, absent

consent of the parties, cannot enter final orders or judgments consistent with Article III of the

United States Constitution.

3.       The statutory and legal predicates for the relief requested herein are Bankruptcy

Code sections 105, 363, and 365, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules

2002-1 and 6004-1.

## II. BACKGROUND

4.       On the date hereof (the "Petition Date"), each of the Debtors commenced a

voluntary case under chapter 11 of the Bankruptcy Code.

5.       The Debtors are authorized to continue to operate their business and manage their

property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

No trustee or examiner has been requested or appointed in these Cases and no statutory

committee has been appointed yet by the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee").

6.       The Debtors distribute motion pictures in the United States and license motion

01:23603141.1

pictures in ancillary markets, principally to home entertainment, pay television, subscription, and transactional video-on-demand, free television, and other non-theatrical entertainment distribution markets. The Debtors' films have generated over $1.3 billion in worldwide theatrical box office receipts, have been nominated for 49 Academy Awards, and have won 13 Academy Awards.

7.      In 2015, the Debtors, Bank of America, N.A., as lender and L/C Issuer and each of the lenders party thereto (together, the "Prepetition Lenders"), and Bank of America, N.A., as administrative agent (in such capacity the "Agent" and, together with the Prepetition Lenders, the "Prepetition Secured Parties"), entered into that certain *Second Amended and Restated Credit, Security, Guaranty and Pledge Agreement*, dated as of April 8, 2015 (as has been and may be amended, restated, amended and restated, refinanced, replaced, supplemented, or otherwise modified prior to the Petition Date, the "Prepetition Credit Agreement").

8.      Due to certain challenges described in detail in the First Day Declaration, in August 2018 the Debtors retained FTI Consulting, Inc. ("FTI") to provide a Chief Restructuring Officer and supporting staff to explore strategic alternatives. FTI and the Debtors, working with the Debtors' management and the Prepetition Secured Parties, determined that the most likely and feasible alternative was an orderly bankruptcy sale, which would allow the Debtors to maximize value by enabling a sale of the Debtors' valuable assets free and clear of liens, claims, encumbrances and other interests.

9.      Since its engagement, FTI has begun to diligently and aggressively market the Debtors' assets through a comprehensive sale and marketing process. FTI has developed a thorough list of potential buyers—both strategic and financial—based on management discussions and FTI's industry experience and relationships. To date, FTI has identified

approximately 40 potential buyers.  As of September 1, 2018, 27 of these potential buyers have

signed non-disclosure agreements and 11 have submitted indications of interest for the Debtors'

assets.

10.     The Debtors intend to utilize the bankruptcy process to continue and conclude

their robust marketing and sale process.  They believe that doing so will ensure that the value of

their assets are maximized for the benefit of all stakeholders.

11.     The detailed factual background relating to the Debtors and the commencement of

these Cases is set forth in the First Day Declaration.

### III.  RELIEF REQUESTED

12.     First, the Debtors seek entry of the Bid Procedures Order, (i) approving the Bid

Procedures set forth therein in connection with the Sale Transaction, (ii) approving certain notice

procedures with respect to the Sale Transaction, (iii) establishing the Assumption and

Assignment Procedures for executory contracts and unexpired leases to which the Debtors are

parties (collectively, "Contracts"), (iv) authorizing, but not directing, the Debtors to enter into an

asset purchase agreement with a stalking horse bidder subject to Court approval of any stalking

horse protections ("Bid Protections"),[2] and (v) scheduling the Sale Hearing.

13.     Second, the Debtors seek entry of a Sale Order, (i) authorizing the sale of the

Purchased Assets free and clear of all liens, claims, interests and encumbrances, (ii) authorizing

the assumption, assignment and sale of certain executory contracts and unexpired leases as set

forth in any Proposed APA (as defined herein), and (iii) granting related relief.

---

[2]     To the extent that the Debtors seek approval of any Bid Protections, the Debtors intend to seek such approval at
the hearing on the Bid Procedures in the event the Debtors enter into a Stalking Horse Agreement in advance of
such hearing or on shortened notice thereafter.

01:23603141.1

# IV.  THE PROPOSED BID PROCEDURES ORDER

14.     The Bid Procedures are designed to maximize value for the Debtors' estates, while ensuring an orderly sale process.  The Bid Procedures describe, among other things, the procedures for parties to access due diligence, the manner in which bidders and bids become "qualified," the receipt and negotiation of bids received, the conduct of any auction, the selection and approval of any ultimately successful bidders, and the deadlines with respect to the foregoing (the "Bidding Process").  The Debtors submit that the Bidding Process affords the Debtors a sufficient opportunity to pursue a sale process that will maximize the value of their estates.

## A.     Bid Procedures

15.     Certain of the key terms of the Bid Procedures are highlighted as follows pursuant to Local Rule 6004-1(c):[3]

> **Access to Diligence Materials**:  Any prospective bidder (each, a "Potential Bidder") identified by the Debtors' Chief Restructuring Officer (the "CRO") as reasonably likely to be a Qualified Bidder (as defined below) that wishes to conduct due diligence on the Debtors or their assets with respect to a potential bid shall be granted access to all material information regarding the Debtors upon execution of a confidentiality agreement reasonably acceptable to the Debtors, provided, that if any Potential Bidder is a competitor or an affiliate thereof, such confidentiality agreement may contain provisions reasonably acceptable to the Debtors (in consultation with the Consultation Parties) that such competitor or affiliate use such information solely in connection with a potential Sale.

> **Bid Deadline**:  Any Potential Bidder that wishes to participate in the bidding process for the Purchased Assets must submit their bid to the Debtors, through their counsel (i) Klee, Tuchin, Bogdanoff & Stern LLP, Attn: Michael L. Tuchin, Esq. and Jonathan M. Weiss, Esq., email: mtuchin@ktbslaw.com and jweiss@ktbslaw.com, and (ii) Young Conaway Stargatt & Taylor, LLP, Attn: Michael R. Nestor, Esq. and Robert F. Poppiti, Jr., Esq., email: mnestor@ycst.com and rpoppiti@ycst.com, with copies to (i) the Debtors'

---

[3]     The brief description of the Bid Procedures provided for herein is for the convenience of the Court and parties in interest.  The full copy of the Bid Procedures should be reviewed in its entirety and will control in the event of any inconsistency or ambiguity in any descriptions of them herein.  Capitalized terms used in this summary and not otherwise defined herein will have the meanings given to them in the Bid Procedures Order.

01:23603141.1

proposed Chief Restructuring Officer, Amir Agam, email:
amir.agam@fticonsulting.com, (ii) counsel for the official committee of
unsecured creditors, if any (the "Committee"), and (iii) counsel for the Agent,
Paul Hastings LLP, Attn: Andrew Tenzer, Esq., email:
andrewtenzer@paulhastings.com and Susan Williams, Esq., email:
susanwilliams@paulhastings.com, and Ashby & Geddes, P.A., Attn: Bill
Bowden, Esq., email: wbowden@ashbygeddes.com,  no later than November 2,
2018, at 5:00 p.m. (Eastern Time) (the "Bid Deadline").

**Auction Qualification Process**:  To be eligible to participate in the Auction, each
Potential Bidder, must be determined by the Debtors to satisfy each of the
conditions set forth below:

Proposed APA:  Each Potential Bidder must submit to the Debtors an
irrevocable offer in the form of an executed asset purchase agreement (the
"Proposed APA"), including (A) all exhibits and schedules contemplated
thereby (other than exhibits and schedules that by their nature must be
prepared by the Debtors) and (B) a list of Contracts that the Potential
Bidder proposes to be assumed, assigned, and sold in connection with the
Sale Transaction (the "Purchased Contracts") and without financing,
internal approval or due diligence contingencies.

Form APA: Attached hereto as **Exhibit III** is the Debtors' Form APA,
which shall serve as the basis for any Proposed APA.  The Debtors reserve
the right to file a Stalking Horse Agreement as the Form APA, in the event
that a Stalking Horse Agreement is reached prior to the hearing on the Bid
Procedures.  Potential Bidders shall submit a "blacklined" or otherwise
marked copy of the Proposed APA reflecting the differences between the
Proposed APA and the Form APA.  The Proposed APA (i) must propose
an acquisition of (A) all or substantially all of the Purchased Assets or
(B) such other group of assets reasonably acceptable to the CRO in
consultation with the Consultation Parties, (ii) must contain an
acknowledgement that the Potential Bidder has relied upon its own
independent review, investigation and/or inspection of any document
and/or Assets in making its bid, and (iii) must include a commitment to
close by no later than November 16, 2018.  The Proposed APA may be
subject to the accuracy, in all material respects, of specified
representations and warranties at or before closing, or the satisfaction at
the closing of specified conditions.

Credit Bid:  Any Qualified Bidder who has a valid and perfected lien on
assets of the Debtors' estates (a "Secured Creditor") shall have the right to
credit bid all or a portion of such Secured Creditor's secured claims to the
extent permitted under section 363(k) of the Bankruptcy Code (the "Credit
Bid Right"); *provided* that a Secured Creditor shall have the right to credit
bid its secured claim only with respect to the assets by which such Secured
Creditor is secured. For the avoidance of doubt, every dollar of a credit bid

shall be treated the same as a dollar from a cash bid.  The Agent and the Prepetition Secured Parties have a Credit Bid Right up to the entire outstanding amount of their claims, subject to section 363(k) of the Bankruptcy Code.

Good Faith Deposit:  Make a good faith deposit in an amount not less than 10% of the purchase price (the "Bid Deposit") in the form of a cashier's check or wire transfer into an escrow account (the "Segregated Account") that shall be opened or made available by the Debtors for this purpose. The Agent and the Prepetition Secured Parties shall not be required to make any Bid Deposit in connection with any Proposed APA.

Proof of Financial Ability to Perform:  Each Potential Bidder must provide written evidence reasonably satisfactory to the CRO in consultation with the Consultation Parties of (i) the identification of the Potential Bidder, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction, (ii) the Potential Bidder's corporate or other authority to enter into the contemplated transaction, and (iii) the Potential Bidder's financial ability to (A) fully and timely perform all obligations under the Proposed APA if it is declared to be the Winning Bidder, and (B) provide adequate assurance of future performance under all Contracts to be assigned and sold to it, which may include, but is not limited to, the following (provided, however, that the CRO in consultation with the Consultation Parties shall determine whether the written evidence of adequate assurance of future performance is acceptable):  (i) the Potential Bidder's current financial statements (audited if they exist); (ii) contact names and numbers for verification of financing sources; (iii) evidence of the Potential Bidder's resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction and to provide adequate assurance of future performance to the non-Debtor parties to Purchased Contracts; and (iv) any such other form of financial disclosure or credit-quality support information or enhancement acceptable to the CRO in consultation with the Consultation Parties demonstrating that such Potential Bidder has the ability to close the contemplated transaction.

Disclosures:  Each Potential Bidder must disclose any connections or agreements with the Debtors, any other known Potential Bidder or Qualified Bidder, and/or any officer, director or direct or indirect equity security holder of the Debtors.

**Qualified Bidder**:  If a Potential Bidder delivers all of the materials described in the aforementioned summary, (including the Bid Deposit) by the Bid Deadline, the CRO, in consultation with the Committee and the Agent (the "Consultation Parties," provided, however, that the Agent shall cease to be a Consultation Party at any time after the Agent or the Prepetition Secured Parties have submitted a Proposed APA, unless such Proposed APA has been withdrawn)), will determine

01:23603141.1

whether the Potential Bidder (i) has demonstrated the financial ability to consummate the purchase of the Purchased Assets, (ii) is reasonably likely to be able to and willing to consummate the contemplated transactions and (iii) has otherwise satisfied all of the requirements described above.  If so, the Debtors shall designate the Potential Bidder as a "Qualified Bidder" and such bid as a "Qualified Bid."  The Debtors shall promptly notify all Qualified Bidders of the identity of any other Qualified Bidders.

**Potential Stalking Horse Bid**:  The Debtors may enter into a stalking horse agreement (the "Stalking Horse Agreement") for the sale of the Purchased Assets. If the Debtors enter into an agreement with a stalking horse entity (the "Stalking Horse Purchaser"), the Debtors shall file and serve notice of the proposed Stalking Horse Agreement on all interested parties no later than two (2) business days after execution of the Stalking Horse Agreement.  The notice will include the type and amount of bid protections, if any, any necessary modifications or amendments to these Bid Procedures, as well as a copy of the Stalking Horse Agreement.  The Debtors shall request that the Court set a hearing (which may be the hearing on the Bid Procedures, if the Debtors enter into a Stalking Horse Agreement prior to the hearing on the Bid Procedures) to approve the Debtors' entry into the Stalking Horse Agreement and consider approval of any associated bid protections, no later than the later of (i) the hearing on the Bid Procedures and (ii) five (5) business days after execution of the Stalking Horse Agreement.  The Stalking Horse Purchaser shall be deemed to be a Qualified Bidder and the Stalking Horse Purchaser's bid shall be deemed a Qualified Bid.

**Auction, Auction Procedures and Overbids**:  If the Debtors receive at least two (2) Qualified Bids prior to the Bid Deadline, then the Debtors shall notify each Qualified Bidder that the Debtors intend to conduct an auction (the "Auction") to consider all Qualified Bids, subject to reasonable rules and regulations as may be established by the Debtors, in consultation with the Consultation Parties.  The Auction to determine the successful bidder for the Purchased Assets shall be held on November 7, 2018 at 10:00 a.m. (Local Time) at a location to be identified in advance of the Auction.  Each bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.  Except as expressly provided herein, the Auction will be conducted openly and will be transcribed.  The Debtors shall file a notice announcing the results of the Auction and the identity of the Winning Bidder(s) and the Back-Up Bidder on the Court's docket as soon as practicable after conclusion of the Auction.  All creditors of the Debtors are permitted to attend the Auction provided that they give one (1) business day's advance written notice to counsel for the Debtors.

Only the Qualified Bidders may bid at the Auction.  To the extent the Proposed APAs submitted by Qualified Bidders differ in any material respect, the CRO, in consultation with the Consultation Parties, may assign relative values to such differences, taking into account the relative burdens and benefits resulting from such differences, and shall afford a Qualified Bidder the opportunity to further

modify such Proposed APA to reduce or eliminate any deduction in value assigned to such Proposed APA.  At the commencement of the Auction, and following the processes described in the preceding sentence, the Debtors shall identify the bid that they have determined to be the highest and best offer and shall permit the Qualified Bidders to submit higher and better bids.  Each subsequent bid must exceed the amount of the preceding bid by not less than $1,000,000 and shall not be modified in a manner that causes it no longer to be a Qualified Bid.

The CRO shall supervise the bidding process and conduct the Auction in such a manner as to provide the Qualified Bidders a full, fair, and equal opportunity to participate in the Auction.  The CRO, in consultation with the Consultation Parties, shall determine which bid is to be recommended to the Court for approval.  The Debtors shall request at the Sale Hearing that the Court authorize the Debtors to consummate the Sale Transaction to the Winning Bidder.  All Qualified Bidders at the Auction shall be deemed to have consented to the exclusive jurisdiction of the Bankruptcy Court.  If the Agent is declared the Winning Bidder, such Winning Bidder shall pay cash in the amount of such bid, less any amount of the Agent's Credit Bid Right.

**Modification of Bid Procedures and Auction Procedures**:  The CRO may modify the bid procedures set forth in this Order in any nonmaterial respect, at any time prior to or during the Auction if the CRO determines, in consultation with the Consultation Parties, that such modifications will better promote the goals of the auction process and are in the best interest of the bankruptcy estates and the creditors thereof.

**Closing with Alternative Backup Bidders**:  If bids have been submitted by more than one (1) Qualified Bidder, the Qualified Bidder that makes the next-highest and best bid to that of the Winning Bidder shall become the back-up bidder (the "Back-Up Bidder") and such Back-Up Bidder's final and highest and best bid (the "Back-Up Bid") shall, subject to the terms of the applicable Proposed APA, remain open pending the closing of the Winning Bid (the "Closing Date").  If the Winning Bid does not close by the outside closing date specified in the Winning Bidder's Proposed APA, the Back-Up Bid, as selected by the CRO (after consultation with the Consultation Parties) at the Auction and approved as the Back-Up Bid by the Court at the Sale Hearing, shall upon notice by the Debtors to the Back-Up Bidder, be deemed the Winning Bid without further order of the Court, and the Back-Up Bidder shall be required to consummate the transaction in accordance with the Proposed APA.  If the Winning Bidder breaches any of its obligations under the Proposed APA, it shall forfeit the Bid Deposit in accordance with the Proposed APA without regard to the Debtors' ultimate damages occasioned by such breach, and the Bid Deposit shall be applied to the Debtors' damages, if any, and shall constitute liquidated damages, and the Debtors and the bankruptcy estates shall not retain any other rights, remedies, claims, counterclaims, and defenses against the Winning Bidder or any of its affiliates.

**Sale Transaction and Auction Objection Deadline**:  Objections to the (i) Sale Transaction, if any (the "Sale Objections") and (ii) results of the Auction, if any (the "Auction Objections") shall be in writing and shall be filed and served so as to be actually received by the Court and the following parties (the "Objection Recipients") in the case of the Sale Objections **on or before November 2, 2018 at 4:00 p.m. (Eastern Time)** (the "Sale Objection Deadline") and, in the case of the Auction Objections, **on or before 8:30 a.m. (Eastern Time) on the day of the Sale Hearing** (the "Auction Objection Deadline"):

a.      Open Road Films, LLC, *et al*., 2049 Century Park East, 4th Floor, Los Angeles, CA 90067, Attn: James Ellis, Email: jellis@tangmp.com;

b.      co-counsel for the Debtors, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067, Attn: Michael L. Tuchin, Esq. and Jonathan M. Weiss, Esq., Email: mtuchin@ktbslaw.com and jweiss@ktbslaw.com;

c.      co-counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Michael Nestor, Esq. and Robert F. Poppiti, Jr., Esq., Email: mnestor@ycst.com and rpoppiti@ycst.com;

d.      counsel for the Committee;

e.      counsel for the Agent, Paul Hastings LLP, 200 Park Avenue, New York, New York 10166, Attn: Andrew Tenzer, Esq., email: andrewtenzer@paulhastings.com and Susan Williams, Esq., email: susanwilliams@paulhastings.com, and Ashby & Geddes, P.A., Attn: Bill Bowden, Esq., email: wbowden@ashbygeddes.com;

f.      counsel for the Stalking Horse Purchaser (if any); and

g.      the U.S. Trustee.

**B.      Assumption and Assignment Procedures**

16.      The Debtors propose the following procedures for notifying counterparties to executory contracts and unexpired leases of potential cure amounts in the event the Debtors decide to assume such contracts or leases:

**Notice of Assumption and Assignment**:  On or before October 9, 2018, the Debtors shall file with the Court and serve via first class mail on each counterparty to a Contract a notice of assumption, assignment and sale substantially in the form of the Notice of Assumption and Assignment attached to the Bid Procedures Order as Exhibit B.

01:23603141.1

The Notice of Assumption and Assignment shall include the Debtors' calculation of the amount necessary to cure, pursuant to section 365 of the Bankruptcy Code, all monetary defaults (the "Cure Amount") for each such Contract.  The Debtors reserve the right to supplement the list of Contracts and provide additional Notices of Assumption and Assignment for omitted contracts prior to the closing of the Winning Bid, and to remove a Contract from the list of Purchased Contracts at any time prior to the closing of the Winning Bid.  Each Notice of Assumption and Assignment that identifies a Contract that was not previously designated to be assumed, assigned and sold or that reduces the Debtors' calculation of the Cure Amount shall provide a deadline of not less than seven (7) days from the date of service of such Notice of Assumption and Assignment by which the counterparty to any such added Contract may object to (a) its listing as a Contract, and (b) the Debtors' calculation of the Cure Amount for such Contract.  The inclusion of a Contract on the Notice of Assumption and Assignment shall not obligate the Winning Bidder to take assignment of such Contract.  Only those Contracts that constitute Purchased Contracts pursuant to the Winning Bidder's Proposed APA will be assumed, assigned and sold to the Winning Bidder.  The inclusion of a contract, lease or other agreement on the Notice of Assumption and Assignment shall not constitute or be deemed a determination or admission by the Debtors and their estates or any other party in interest that such contract, lease or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of the Debtors and their estates with respect thereto shall be reserved.

**Objections to Assumption and Assignment**:  Any counterparty to a Contract shall file and serve on the Objection Recipients any objections to (a) the proposed assumption, assignment and sale to the Winning Bidder (and must state in its objection, with specificity, the legal and factual basis of its objection) and (b) if applicable, the proposed Cure Amount (and must state in its objection, with specificity, what Cure Amount is required with appropriate documentation in support thereof), **no later than October 30 2018 at 4:00 p.m. (Eastern Time)**.  If no objection is timely filed and served, (x) the counterparty to a Contract shall be deemed to have consented to the assumption, assignment and sale of the Contract to the Winning Bidder(s) pursuant to sections 363 and 365 of the Bankruptcy Code if such Contract is designated by the Winning Bidder(s) as a Purchased Contract and shall be forever barred from asserting any objection with regard to such assumption, assignment and sale, except with respect to the adequate assurance of future performance by the Winning Bidder(s), and (y) the Cure Amount set forth in the Notice of Assumption and Assignment shall be controlling pursuant to section 365 of the Bankruptcy Code, notwithstanding anything to the contrary in any Contract, or any other document, and the counterparty to the Contract shall be deemed to have consented to the Cure Amount pursuant to section 365 of the Bankruptcy Code and shall be forever barred from asserting any other claims related to such Contract against the Debtors or the Winning Bidder(s), or the property of any of them except with

respect to the adequate assurance of future performance by the Winning Bidder(s).

No later than **November 5, 2018**, the Debtors shall file with the Bankruptcy Court and serve via overnight mail on each counterparty (and its counsel, if known) to a Contract each Qualified Bidder's proposed adequate assurance of future performance as set forth in Sections 365(b)(1)(C) and 365(b)(3) of the Bankruptcy Code. Any objection by a counterparty solely to the proposed adequate assurance of future performance by the Qualified Bidder must be filed and served on the Objection Recipients **no later than November 7, 2018 at 4:00 p.m. (Eastern Time)**. If no objection is timely filed and served, the counterparty to a Contract shall be deemed to have consented to the Qualified Bidder's adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code and shall be forever barred from asserting any objection with regard to such adequate assurance of future performance should the Qualified Bidder become the Winning Bidder or Back-Up Bidder.

**C.    Sale Notice Procedures**

17.    Within three business days after entry of the Bid Procedures Order, the Debtors (or their agents) shall:

(i)    provide notice (in substantially the form of the Sale Notice attached to the Bid Procedures Order as <u>Exhibit A</u>) of the Bid Procedures Order, the Motion, the Auction, the Objection Deadlines, and the Sale Hearing by first-class mail (a) all Persons known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to the Purchased Assets during the past six (6) months; (b) all entities known by the Debtors to have asserted any Lien or interest in the Purchased Assets; (c) all non-Debtor parties to the Contracts; (d) the U.S. Trustee; (e) the Committee and its counsel; (f) any Governmental Body known to have a claim in the Chapter 11 Cases; (g) all other known creditors and equity security holders of the Debtors; (h) all Persons that have requested special notice in the Chapter 11 Cases; and (i) all other Persons as directed by the Court; and

(ii)    cause the Sale Notice, as may be conformed for publication, to be published on one occasion in the national edition of the *USA Today* and such local newspapers or trade journals as the Debtors deem appropriate on or before October 16, 2018.

18.    The Debtors submit that the proposed Sale Notice, and providing notice of this Motion, the Auction and the Sale Hearing as described herein, complies fully with Bankruptcy Rule 2002 and Local Bankruptcy Rule 2002-1 and constitutes good and adequate notice of the Sale Transaction and the proceedings with respect thereto. Therefore, the Debtors respectfully

request that this Court approve the form of the Sale Notice and the notice procedures proposed above.

**D.      Certain Sale Provisions**

19.      In accordance with Local Rule 6004-1(b), the Debtors highlight the following additional provisions of the sale process and the Sale Transaction:

> **Credit Bid**:  Any Secured Creditor shall have the right to credit bid all or a portion of such Secured Creditor's secured claims to the extent permitted under section 363(k) of the Bankruptcy Code (the "Credit Bid Right"); *provided* that a Secured Creditor shall have the right to credit bid its secured claim only with respect to the assets by which such Secured Creditor is secured.  For the avoidance of doubt, every dollar of a credit bid shall be treated the same as a dollar from a cash bid.  The Agent and the Prepetition Secured Parties have a Credit Bid Right up to the entire outstanding amount of their claims, subject to section 363(k) of the Bankruptcy Code.

> **Relief from Bankruptcy Rules 6004(h) and 6006(d)**:  As set forth more fully below, the Debtors intend to seek relief from the fourteen-day stays imposed by Bankruptcy Rules 6004(h) and 6006(d).

**E.      Summary of Timeline for Sale Process**

20.      The following is a summary of the key dates for the sale process proposed herein:

| Date | Deadline |
| --- | --- |
| October 9, 2018 | Deadline to Service Notice of Assumption and Assignment |
| October 30, 2018 | Deadline to Object to Assumption and Assignment (Other Than Regarding Adequate Assurance of Future Performance) |
| November 2, 2018 | Bid Deadline |
| November 2, 2018 | Sale Transaction Objection Deadline |
| November 7, 2018 | Auction |
| November 7, 2018 | Deadline to Object to Assumption and Assignment Solely Regarding Adequate Assurance of Future Performance |
| November 9, 2018 | Auction Objection Deadline |

01:23603141.1

14

| November 9, 2018 | Sale Hearing |
| November 16, 2018 | Deadline to Close Sale Transaction |

## V.  BASIS FOR RELIEF

### A.      The Bid Procedures Are Fair and Are Designed to Maximize the Value Received for the Assets

21.      Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  The Debtors submit that the Bid Procedures are appropriate under Bankruptcy Code sections 105 and 363 to ensure that the bidding process is fair and reasonable and are designed to yield the maximum value for their estates and creditors under the circumstances.  The Bid Procedures proposed herein are designed to maximize the value received for the Purchased Assets by facilitating a competitive bidding process in which all potential bidders are encouraged to participate and submit competing bids.  The Bid Procedures provide potential bidders with sufficient notice and an opportunity to acquire information necessary to submit a timely and informed bid.  Thus, the Debtors and all parties in interest can be assured that the consideration for the Purchased Assets will be fair and reasonable under the circumstances.  At the same time, the Bid Procedures provide the Debtors with the opportunity to consider all competing offers and to select, in their reasonable business judgment, the highest and best offer for the Purchased Assets.  Accordingly, the Debtors submit that the Court should approve the Bid Procedures.

### B.      Approval of the Sale Is Warranted Under Section 363 of the Bankruptcy Code.

22.      Section 363(b) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  A debtor must demonstrate a sound business justification for a sale

or use of assets outside the ordinary course of business.  *See, e.g.*, *In re Martin*, 91 F.3d 389 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513 (7th Cir. 1991)); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983).

23.     Courts typically consider the following factors in determining whether a proposed sale meets this standard: (i) whether a sound business justification exists for the sale; (ii) whether adequate and reasonable notice of the sale was given to interested parties; (iii) whether the sale will produce a fair and reasonable price for the property; and (iv) whether the parties have acted in good faith.  *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

24.     As set forth in the First Day Declaration, the Debtors possess ample and sound business reasons for selling the Purchased Assets at this time.  After considering potential alternatives, the Debtors have determined that a sale of the Purchased Assets is the best course to preserve and maximize value.  Any extended delay in selling the Purchased Assets could have a detrimental effect on the Debtors' ability to continue operations and preserve value to the fullest extent possible.

25.     The Debtors also meet the additional requirements necessary to approve a sale under section 363 of the Bankruptcy Code.  As stated herein, the Debtors will provide adequate notice of the Sale Transaction to interested parties, and the Debtors submit that the aforementioned notice procedures are reasonable and adequate under the circumstances.

26.     Additionally, the Bid Procedures outlined herein will ensure that any sale of the Purchased Assets will be for a fair and adequate price, reflecting fair market value.  Indeed, the Debtors and their advisors will market the Purchased Assets up until the Bid Deadline, which is over two months from the filing of this Motion.  In this way, the Debtors intend to maximize the

number of potential purchasers who may participate at the Auction and thereby maximize and establish the fairness and adequacy of the purchase price.  Under these circumstances, the purchase price is expected to exceed the value the Debtors would receive if the Purchased Assets were merely sold in a piecemeal liquidation to multiple purchasers or through some other process less orderly, competitive and efficient than provided for by the Bid Procedures.

27.     Finally, the Sale Transaction is being conducted in good faith.  Courts in the Third Circuit generally have considered three factors when assessing good faith in connection with the sale of a Debtors' assets pursuant to section 363 of the Bankruptcy Code:  (a) whether the sale was negotiated at arm's-length; (b) whether any officer or director holds an interest in or is otherwise related to the potential purchaser; and (c) whether fraud or collusion exists among the prospective purchaser, any other bidders or the debtor.  *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147-50 (3d Cir. 1986).

28.     In this instance, the Debtors will negotiate the sale of the Purchased Assets at arm's-length, and in accordance with the Bid Procedures.  The Debtors submit that the Winning Bidder at the conclusion of the Auction should be entitled to the protections of section 363(m) of the Bankruptcy Code.  Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

29.     As set forth above, the Bid Procedures ensure that the Sale Transaction will be conducted in good faith and, therefore, that the Winning Bidder will be a "good faith purchaser" under section 363(m) of the Bankruptcy Code and entitled to the full protection thereof.

01:23603141.1

30.     In summary, all of the factors for establishing a sound business purpose for the sale of the Assets have been satisfied, and the Court should approve the proposed Sale Procedures, as well as the Sale Transaction to the eventual Successful Bidder.

**C.     Authority to Enter Into a Stalking Horse Agreement and the Provision of Bid Protections**

31.     To the extent that the Debtors enter into an agreement with a Stalking Horse Purchaser, in certain circumstances, it may be appropriate to provide the Stalking Horse Purchaser with Bid Protections, including an expense reimbursement and break-up fee.  The Debtors will enter into a stalking horse agreement with a Stalking Horse Purchaser only if they believe that it will maximize the ultimate sale price for their Purchased Assets, and the Bid Protections will remain subject to approval by the Court.  Under Third Circuit precedent, Bid Protections constitute administrative expenses, and therefore, the payment of such fees must provide a postpetition benefit to the bankruptcy estate.  *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 533 (3d Cir. 1999).  In *O'Brien*, the Third Circuit provided two examples of a potential benefit accruing from the payment of a bid protection.  *Id.*  First, a benefit to the estate may arise if, "assurance of a breakup fee promoted [a] more competitive bidding [process], such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited."  *Id*. at 537.  Second, bid protections can encourage potential bidders to evaluate thoroughly a debtor's value, thereby "increasing the likelihood that the price at which the debtor is sold will reflect its true worth." *Id*.

32.     Courts have further recognized that bid protections may be used to protect bidders in connection with a sale of assets pursuant to section 363 of the Bankruptcy Code and that such protections can be "important tools to encourage bidding and to maximize the value of the

Debtors' assets." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). Such protections enable a debtor to assure a sale to a contractually-committed bidder at a price the debtor believes is fair and reasonable, while providing the debtor with the opportunity of obtaining even greater benefits for the estate through an auction process. *See In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (stating that bidding incentives may be "legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking" (citation omitted)).

33.     As noted above, the Debtors intend to negotiate any stalking horse agreement at arm's-length and in good faith and will enter into an agreement with a Stalking Horse Purchaser only if the Debtors believe it will maximize the return for the sale of the Purchased Assets. Thus, the authorization for the Debtors to offer Bid Protections to a Stalking Horse Purchaser Bidder is justified. To the extent that the Debtors agree to any such Bid Protections, the Debtors will seek approval of the same at the hearing on the Bid Procedures or on shortened notice at a hearing thereafter.[4]

**D.      The Proposed Sale Transaction Satisfies the Requirements of Bankruptcy Code Section 363(f) for a Sale Free and Clear.**

34.     The Debtors request approval to sell the Purchased Assets free and clear of any and all liens, claims, interests and encumbrances (except for any assumed liabilities under the Proposed APA) in accordance with section 363(f) of the Bankruptcy Code. Pursuant to section 363(f), a debtor in possession may sell estate property "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

---

[4]     To the extent the Debtors enter into a Stalking Horse Agreement prior to the hearing on the Bid Procedures, the Form APA shall be the agreed-upon Stalking Horse Agreement.

01:23603141.1

(i) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(ii) such entity consents;

(iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(iv) such interest is in bona fide dispute; or

(v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988) (because section 363(f) is written in the disjunctive, a court may approve a "free and clear" sale so long as at least one of the subsections is met).

35.    Section 363(f) is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *see In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *3, 6 (Bankr. D. Del. March 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of claims] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

36.    The Debtors submit that the Sale Transaction will satisfy the requirements of section 363(f) of the Bankruptcy Code. For example, the Debtors will provide all parties holding liens in the Purchased Assets with notice of, and an opportunity to object to, the Sale Transaction. Absent objection, each such party will be deemed to have consented to the sale of the Assets. Furthermore, the Agent has consented to the sale process and the Sale Transaction, which is contemplated by and required under the cash collateral order. In addition, the Debtors

01:23603141.1

believe that the parties holding liens in the Assets could be compelled to accept a monetary satisfaction of such interests.

37.    Accordingly, the Debtors believe that the Sale Transaction (a) will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code and (b) should be approved free and clear of all liens, claims, interests and encumbrances.

**E.    Assumption, Assignment and Sale of Executory Contracts and Unexpired Leases Should Be Authorized.**

38.    Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a). The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection. *See, e.g.*, *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that debtor's decision to assume or reject executory contract is governed by business judgment standard and can only be overturned if decision was product of bad faith, whim or caprice); *see also In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (finding that assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court").

39.    The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption] or rejection of the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987). Any more exacting scrutiny would slow the administration of the debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially. *See Richmond Leasing Co. v. Capital Bank*, 762 F.2d 1303, 1311 (5th

Cir. 1985).  Moreover, pursuant to section 365(b)(1) of the Bankruptcy Code, for a debtor to

assume an executory contract, it must "cure, or provide adequate assurance that the debtor will

promptly cure," any default, including compensation for "actual pecuniary loss" relating to such

default.  11 U.S.C. 365(b)(1).

40.    Once an executory contract is assumed, the trustee or debtor in possession may

elect to assign such contract.  *See In re Rickel Home Center, Inc.*, 209 F.3d 291, 299 (3d Cir.

2000) ("The Code generally favors free assignability as a means to maximize the value of the

debtor's estate."); *see also In re Headquarters Dodge, Inc.*, 13 F.3d 674, 682 (3d Cir. 1994)

(noting that the purpose of section 365(f) is to assist the trustee in realizing the full value of the

debtor's assets).  Section 365(f) of the Bankruptcy Code provides that the "trustee may assign an

executory contract . . . only if the trustee assumes such contract . . . and adequate assurance of

future performance is provided."  11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of

future performance" depends on the facts and circumstances of each case, but should be given a

"practical, pragmatic construction."  *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009);

*see also In re Decora Indus.*, 2002 U.S. Dist. LEXIS 27031, at *23 (D. Del. 2002) ("[A]dequate

assurance falls short of an absolute guarantee of payment.").  Adequate assurance may be

provided by demonstrating the assignee's financial health and experience in managing the type

of enterprise or property assigned.  *See, e.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr.

S.D.N.Y. 1986) (finding that adequate assurance is present when prospective assignee of lease

from debtor has financial resources and has expressed willingness to devote sufficient funding to

business to give it strong likelihood of success).

41.    To facilitate and effect the Sale Transaction, the Debtors request approval under

Bankruptcy Code section 365 of the Debtors' assumption, assignment and sale of the Purchased

Contracts the Winning Bidder.  The Debtors further request that the Sale Order provide that the

Purchased Contracts will be transferred to, and remain in full force and effect for the benefit of,

the Winning Bidder notwithstanding any provisions in the Purchased Contracts, including those

described in Bankruptcy Code sections 365(b)(2) and (f)(1) and (3) that prohibit such

assignment.

42.     The Debtors will present evidence at the Sale Hearing to show the financial

credibility, willingness, and ability of the Winning Bidder to perform under the Purchased

Contracts.  The Sale Hearing will afford the Court and other interested parties the opportunity to

evaluate the ability of the Winning Bidder to provide adequate assurance of future performance

under the Purchased Contracts, as required under Bankruptcy Code section 365(b)(1)(C).

Further, as set forth above, the Debtors will give notice to all parties to the Contracts of what the

Debtors believe are the Cure Amounts.  Accordingly, the Debtors submit that implementation of

the proposed Assumption and Assignment Procedures is appropriate in these cases.

## VI.  WAIVER OF STAY UNDER BANKRUPTCY RULES 6004(h) AND 6006(d)

43.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or

lease of property other than cash collateral is stayed until the expiration of 14 days after entry of

the order, unless the court orders otherwise."  Fed. R. Bankr. P.  6004(h).  Furthermore,

Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory

contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry

of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6006(d).

44.     As set forth throughout this Motion, any delay in the Debtors' ability to

consummate the Sale Transaction would be detrimental to the Debtors, their creditors and

estates, and would impair the Debtors' ability to take advantage of the value that can be achieved

by an expeditious closing of the Sale Transaction.  Furthermore, the cash collateral order requires the Debtors to close the Sale Transaction by November 16, 2018.

45.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen day stay imposed by Bankruptcy Rule 6004(h) and 6006(d), to the extent applicable.

## VII.  NOTICE

46.     The Debtors will provide notice of this Motion to: (a) the U.S. Trustee; (b) counsel to the Agent; (c) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; and (d) all parties that, as of the filing of this Motion, have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that, except as otherwise required by the Bid Procedures Order, no further notice of this Motion is necessary.

*Remainder of page intentionally left blank*

01:23603141.1

## VIII.  CONCLUSION

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the

Debtors respectfully request that this Court (i) enter the Bid Procedures Order, (ii) enter the Sale

Order, and (iii) grant such other and further relief as is just and proper.

Dated:  September 6, 2018

*/s/ Robert F. Poppiti, Jr.*

Michael R. Nestor, Esq. (Bar No. 3526)
Sean M. Beach, Esq. (Bar No. 4070)
Robert F. Poppiti, Jr., Esq. (Bar No. 5052)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:    (302) 571-1253

and

Michael L. Tuchin, Esq.
Jonathan M. Weiss, Esq.
Sasha M. Gurvitz, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN  LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:    (310) 407-4000
Fax:    (310) 407-9090

*Proposed Counsel to Debtors and*
*Debtors in Possession*

01:23603141.1

25

**<u>EXHIBIT I</u>**

**Proposed Bid Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re | Chapter 11 |
| OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al.*,[1] | Case No.:  18-12012 (___) |
|  | (Jointly Administered) |
| Debtors. | **Ref. Docket No. _____** |

**ORDER: (1) APPROVING BID AND SALE PROCEDURES, (2) APPROVING ASSUMPTION, ASSIGNMENT AND CURE PROCEDURES AND RELATED NOTICES, (3) ESTABLISHING DATE FOR AUCTION AND APPROVING RELATED PROCEDURES, (4) SCHEDULING THE SALE HEARING AND RELATED DEADLINES, AND (5) GRANTING RELATED RELIEF**

The Court having considered the *Motion for Orders (A)(I) Establishing Bid And Sale Procedures Relating to the Sale of Substantially All of the Debtors' Assets, (II) Authorizing the Debtors to Enter Into an Asset Purchase Agreement With Stalking Horse Bidder, (III) Establishing and Approving Procedures Relating to the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts and (IV) Scheduling a Hearing to Consider the Proposed Sale and (B)(II) Approving the Sale of Substantially All of the Debtors' Assets, (II) Authorizing the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases, and (III) Granting Certain Related Relief* (the "Motion"),[2] filed by Open Road Films, LLC and its affiliated debtors and debtors in possession (the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), any responsive pleadings filed in connection with the Motion, the record in the above-captioned

---

[1]    The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.).  The Debtors' address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067.

[2]    Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

01:23603148.1

cases, and the representations of counsel at the hearing on the Motion (the "Hearing"); and the Court having determined that notice of the Motion was adequate and sufficient; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.      The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).  The statutory predicates for the relief sought herein are sections 105, 363, 364, 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9008, 9014 and 9019.  Venue of these Chapter 11 Cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The relief granted herein is in the best interests of the Debtors, their estates, their stakeholders, and other parties in interest.

C.      The notice of the Motion, the Hearing, and the proposed entry of this Order was adequate and sufficient under the circumstances of these Cases, and such notice complied with all applicable requirements of Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court District of Delaware (the "Local Rules").  Accordingly, except as otherwise set forth herein, no further notice of the Hearing or this Order and the relief provided for herein is necessary or required.

D.      All objections to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to the Court at the Hearing or by stipulation filed with the Court, are overruled except as otherwise set forth herein.

---

[3]     All findings of fact and conclusions of law announced by the Court at the Hearing are hereby incorporated herein to the extent not inconsistent herewith.

E.      The Debtors have articulated good and sufficient reasons for the Court to (i) approve the bid procedures set forth in this Order (the "Bid Procedures"), (ii) approve the form and manner of notice of the Motion, the Auction (as defined below), the Sale Hearing (as defined below), and the procedures for assumption, assignment and sale of the executory contracts and unexpired leases listed on Exhibit 1 to the Notice of Assignment and Assumption (as defined below) (the "Contracts"), (iii) authorize the Debtors to enter into an asset purchase agreement with a stalking horse bidder subject to Court approval of any bid protections; and (iv) set the date of the Auction and the Sale Hearing.

F.      The proposed *Notice of Auction and Sale Hearing*, substantially in the form attached hereto as Exhibit A (the "Sale Notice"), and the proposed notice substantially in the form attached hereto as Exhibit B to be served on counterparties to the Contracts (the "Notice of Assumption and Assignment"), are each calculated to provide adequate notice concerning the proposed sale of the Purchased Assets and the proposed assumption, assignment, and sale of the Purchased Contracts (as defined below), will provide due and adequate notice of the relief sought in the Motion, and are each hereby approved.

G.      The Bid Procedures are reasonable and appropriate, and represent a fair and appropriate method for maximizing the realizable value of the Debtors' assets.

H.      The entry of this Order is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

**THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      Any objections filed or asserted in response to the Motion and the relief granted herein, to the extent not resolved as set forth herein or on the record at the Hearing, are hereby overruled.

01:23603148.1

3.      Any prospective bidder (each, a "Potential Bidder") identified by the Debtors'

Chief Restructuring Officer (the "CRO") as reasonably likely to be a Qualified Bidder (as

defined below) that wishes to conduct due diligence on the Debtors or their assets with respect to

a potential bid shall be granted access to all material information regarding the Debtors upon

execution of a confidentiality agreement reasonably acceptable to the Debtors, *provided,* that if

any Potential Bidder is a competitor or an affiliate thereof, such confidentiality agreement may

contain provisions reasonably acceptable to the Debtors (in consultation with the Consultation

Parties) that such competitor or affiliate use such information solely in connection with a

potential Sale.

4.      Any Potential Bidder that wishes to participate in the bidding process for the

Purchased Assets must, no later than November 2, 2018 at 5:00 p.m. (Eastern Time) (the "Bid

Deadline"):

a.      Submit to the Debtors, through their counsel (i) Klee, Tuchin, Bogdanoff

& Stern LLP, Attn: Michael L. Tuchin, Esq. and Jonathan M. Weiss, Esq., email:

mtuchin@ktbslaw.com and jweiss@ktbslaw.com, and (ii) Young Conaway Stargatt & Taylor,

LLP, Attn: Michael R. Nestor, Esq. and Robert F. Poppiti, Jr., Esq., email: mnestor@ycst.com

and rpoppiti@ycst.com, with copies to (i) the Debtors' proposed Chief Restructuring Officer,

Amir Agam, email: amir.agam@fticonsulting.com, (ii) counsel for the official committee of

unsecured creditors, if any (the "Committee"), [_____], and (iii) co- counsel for the

Agent, Paul Hastings LLP, Attn: Andrew Tenzer, Esq., email: andrewtenzer@paulhastings.com

and Susan Williams, Esq., email: susanwilliams@paulhastings.com, and Ashby & Geddes, P.A.,

Attn: Bill Bowden, Esq., email: wbowden@ashbygeddes.com, an irrevocable offer in the form of

an executed asset purchase agreement (a "Proposed APA"), including (A) all exhibits and

schedules contemplated thereby (other than exhibits and schedules that by their nature must be prepared by the Debtors) and (B) a list of Contracts that the Potential Bidder proposes to be assumed, assigned and sold to it in connection with the transaction (the "Purchased Contracts"), and without financing, internal approval or due diligence contingencies.  The Potential Bidder shall also submit a "blacklined" or otherwise marked copy of the Proposed APA reflecting the differences between the Proposed APA and the form APA attached to the Motion as **Exhibit III** (the "Form APA").  The Proposed APA (i) must propose an acquisition of (A) all or substantially all of the Purchased Assets or (B) such other group of assets reasonably acceptable to the CRO in consultation with the Consultation Parties, (ii) must contain an acknowledgement that the Potential Bidder has relied upon its own independent review, investigation and/or inspection of any document and/or Assets in making its bid, and (iii) must include a commitment to close by no later than November 16, 2018.  The Proposed APA may be subject to the accuracy, in all material respects, of specified representations and warranties at or before closing, or the satisfaction at the closing of specified conditions.

   b.  Any Qualified Bidder who has a valid and perfected lien on assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of such Secured Creditor's secured claims to the extent permitted under section 363(k) of the Bankruptcy Code (the "Credit Bid Right"); *provided* that a Secured Creditor shall have the right to credit bid its secured claim only with respect to the assets by which such Secured Creditor is secured. For the avoidance of doubt, every dollar of a credit bid shall be treated the same as a dollar from a cash bid.  The Agent and the Prepetition Secured Parties have a Credit Bid Right up to the entire outstanding amount of their claims, subject to section 363(k) of the Bankruptcy Code.

01:23603148.1

      c.     Make a good faith deposit in an amount not less than 10% of the purchase price (the "Bid Deposit") in the form of a cashier's check or wire transfer into an escrow account (the "Segregated Account") that shall be opened or made available by the Debtors for this purpose.  The Agent and the Prepetition Secured Parties shall not be required to make any Bid Deposit in connection with any Proposed APA.  The Bid Deposit shall: (i) immediately become non-refundable (subject to the next sentence) and (ii) be credited toward the Purchase Price, if and when the transaction with the Potential Bidder making such deposit is approved by the Court (the "Winning Bid" and the "Winning Bidder") at the Sale Hearing.  If a Potential Bidder's bid is not designated as a Qualified Bid (as defined below), or such bid is not approved as the Winning Bid or the Back-Up Bid (as defined below) at the Sale Hearing, the Bid Deposit of such bidder will be returned to such bidder within three (3) business days after the Sale Hearing.

      d.     Provide written evidence reasonably satisfactory to the CRO in consultation with the Consultation Parties of (i) the identification of the Potential Bidder, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction, (ii) the Potential Bidder's corporate or other authority to enter into the contemplated transaction, and (iii) the Potential Bidder's financial ability to (A) fully and timely perform all obligations under the Proposed APA if it is declared to be the Winning Bidder, and (B) provide adequate assurance of future performance under all Contracts to be assigned and sold to it, which may include, but is not limited to, the following (provided, however, that the CRO in consultation with the Consultation Parties shall determine whether the written evidence of adequate assurance of future performance is acceptable):

i.        the Potential Bidder's current financial statements (audited if they exist);

ii.        contact names and numbers for verification of financing sources;

iii.        evidence of the Potential Bidder's resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction and to provide adequate assurance of future performance to the non-Debtor parties to Purchased Contracts; and

iv.        any such other form of financial disclosure or credit-quality support information or enhancement acceptable to the CRO in consultation with the Consultation Parties demonstrating that such Potential Bidder has the ability to close the contemplated transaction.

e.        Disclose any connections or agreements with the Debtors, any other known Potential Bidder or Qualified Bidder, and/or any officer, director or direct or indirect equity security holder of the Debtors.

5.        If a Potential Bidder delivers all of the materials described in paragraph 4 above, (including the Bid Deposit) by the Bid Deadline, the CRO, in consultation with the Committee and the Agent (the "Consultation Parties," provided, however, that the Agent shall cease to be a Consultation Party at any time after the Agent or the Prepetition Secured Parties have submitted a Proposed APA, unless such Proposed APA has been withdrawn), will determine whether the Potential Bidder (i) has demonstrated the financial ability to consummate the purchase of the Purchased Assets, (ii) is reasonably likely to be able to and willing to consummate the contemplated transactions and (iii) has otherwise satisfied all of the requirements described in paragraph 4 above.  If so, the Debtors shall designate the Potential Bidder as a "Qualified

Bidder" and such bid as a "Qualified Bid."  The Debtors shall promptly notify all Qualified

Bidders of the identity of any other Qualified Bidders.

6.      The Debtors may enter into a stalking horse agreement (the "Stalking Horse
Agreement") for the sale of the Purchased Assets.  If the Debtors enter into an agreement with a

stalking horse entity (the "Stalking Horse Purchaser"), the Debtors shall file and serve notice of

the proposed Stalking Horse Agreement on all interested parties no later than two (2) business

days after execution of the Stalking Horse Agreement.  The notice will include the type and

amount of bid protections, if any, any necessary modifications or amendments to these Bid

Procedures, as well as a copy of the Stalking Horse Agreement.  The Debtors shall request that

the Court set a hearing to approve the Debtors' entry into the Stalking Horse Agreement and

consider approval of any associated bid protections, no later than five (5) business days after

execution of the Stalking Horse Agreement.  The Stalking Horse Purchaser shall be deemed to be

a Qualified Bidder and the Stalking Horse Purchaser's bid shall be deemed a Qualified Bid.

7.      If the Debtors receive at least two (2) Qualified Bids prior to the Bid Deadline,

then the Debtors shall notify each Qualified Bidder that the Debtors intend to conduct an auction

(the "Auction") to consider all Qualified Bids, subject to reasonable rules and regulations as may

be established by the Debtors, in consultation with the Consultation Parties.  The Auction to

determine the successful bidder for the Purchased Assets shall be held on November 7, 2018 at

10:00 a.m. (Eastern Time) at a location to be identified in advance of the Auction.  Each bidder

participating at the Auction will be required to confirm that it has not engaged in any collusion

with respect to the bidding or the sale.  Except as expressly provided herein, the Auction will be

conducted openly and will be transcribed.  The Debtors shall file a notice announcing the results

of the Auction and the identity of the Winning Bidder(s) and the Back-Up Bidder on the Court's

docket as soon as practicable after conclusion of the Auction.  All creditors of the Debtors are permitted to attend the Auction provided that they give one (1) business day's advance written notice to counsel for the Debtors.

8.      Only the Qualified Bidders may bid at the Auction.  To the extent the Proposed APAs submitted by Qualified Bidders differ in any material respect, the CRO, in consultation with the Consultation Parties, may assign relative values to such differences, taking into account the relative burdens and benefits resulting from such differences, and shall afford a Qualified Bidder the opportunity to further modify such Proposed APA to reduce or eliminate any deduction in value assigned to such Proposed APA.  At the commencement of the Auction, and following the processes described in the preceding sentence, the Debtors shall identify the bid that they have determined to be the highest and best offer and shall permit the Qualified Bidders to submit higher and better bids.  Each subsequent bid must exceed the amount of the preceding bid by not less than $1,000,000 and shall not be modified in a manner that causes it no longer to be a Qualified Bid.

9.      The CRO shall supervise the bidding process and conduct the Auction in such a manner as to provide the Qualified Bidders a full, fair, and equal opportunity to participate in the Auction.  The CRO, in consultation with the Consultation Parties, shall determine which bid is to be recommended to the Court for approval.  The Debtors shall request at the Sale Hearing that the Court authorize the Debtors to consummate the Sale Transaction to the Winning Bidder.  All Qualified Bidders at the Auction shall be deemed to have consented to the exclusive jurisdiction of the Bankruptcy Court.  If the Agent is declared the Winning Bidder, such Winning Bidder shall pay cash in the amount of such bid, less any amount of the Agent's Credit Bid Right.

01:23603148.1

10.     If there is only one (1) Qualified Bid from a Qualified Bidder (the "Sole Qualified Bid"), then no Auction shall be conducted, and the Court at the Sale Hearing shall proceed to consider the approval of the Sole Qualifying Bid and the Debtors shall not consider any competing or alternative offers or proposals to purchase the Purchased Assets.

11.     The Court shall hold a hearing on November 9, 2018 at [10:00 a.m.] (Eastern Time) (the "Sale Hearing") to consider the approval of the Sale Transaction as set forth in the Motion, approve the Winning Bidder and the Winning Bid, approve the Back-Up Bidder and the Back-Up Bid (as defined below), if necessary, and confirm the results of the Auction, if applicable.

12.     Upon approval by the Court of the Winning Bid, the Winning Bidder's Bid Deposit shall become non-refundable if the Proposed APA is thereafter terminated as a result of a breach by the Winning Bidder.  The Bid Deposit of the Back-Up Bidder shall remain on deposit in the Segregated Account pending the Closing Date (as defined below), and such deposit shall become non-refundable if the Back-Up Bidder is declared the Winning Bidder and if the Proposed APA is thereafter terminated as a result of a breach by the Back-Up Bidder.  In the event a dispute arises over whether a Bid Deposit is refundable or non-refundable, the Bid Deposit shall remain in the Segregated Account pending a determination of the dispute by the Court or written agreement of the parties.

13.     If bids have been submitted by more than one (1) Qualified Bidder, the Qualified Bidder that makes the next-highest and best bid to that of the Winning Bidder shall become the back-up bidder (the "Back-Up Bidder") and such Back-Up Bidder's final and highest and best bid (the "Back-Up Bid") shall, subject to the terms of the applicable Proposed APA, remain open pending the closing of the Winning Bid (the "Closing Date").  If the Winning Bid does not close

by the outside closing date specified in the Winning Bidder's Proposed APA (which date shall not be later than the outside date specified in paragraph 4(a)(iii), above), the Back-Up Bid, as selected by the CRO (after consultation with the Consultation Parties) at the Auction and approved as the Back-Up Bid by the Court at the Sale Hearing, shall upon notice by the Debtors to the Back-Up Bidder, be deemed the Winning Bid without further order of the Court, and the Back-Up Bidder shall be required to consummate the transaction in accordance with the Proposed APA.  If the Winning Bidder breaches any of its obligations under the Proposed APA, it shall forfeit the Bid Deposit in accordance with the Proposed APA without regard to the Debtors' ultimate damages occasioned by such breach, and the Bid Deposit shall be applied to the Debtors' damages, if any, and shall constitute liquidated damages, and the Debtors and the bankruptcy estates shall not retain any other rights, remedies, claims, counterclaims, and defenses against the Winning Bidder or any of its affiliates.

14.    The CRO may modify the bid procedures set forth in this Order in any nonmaterial respect, at any time prior to or during the Auction if the CRO determines, in consultation with the Consultation Parties, that such modifications will better promote the goals of the auction process and are in the best interest of the bankruptcy estates and the creditors thereof.

15.    Objections to the (i) Sale Transaction, if any (the "Sale Objections") and (ii) results of the Auction, if any (the "Auction Objections") shall be in writing and shall be filed and served so as to be actually received by the Court and the following parties (the "Objection Recipients") in the case of the Sale Objections **on or before November 2, 2018 at 4:00 p.m. (Eastern Time)** (the "Sale Objection Deadline") and, in the case of the Auction Objections, **on**

**or before 8:30 a.m. (Eastern Time) on the day of the Sale Hearing** (the "<u>Auction Objection Deadline</u>"):

        a.      Open Road Films, LLC, *et al.*, 2049 Century Park East, 4th Floor, Los Angeles, CA 90067, Attn: James Ellis, Email: jellis@tangmp.com;

        b.      co-counsel for the Debtors, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067, Attn: Michael L. Tuchin, Esq. and Jonathan M. Weiss, Esq., Email: mtuchin@ktbslaw.com and jweiss@ktbslaw.com;

        c.      co-counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Michael Nestor, Esq. and Robert F. Poppiti, Jr., Esq., Email: mnestor@ycst.com and rpoppiti@ycst.com;

        d.      counsel for the Committee, [_____];

        e.      counsel for the Agent, Paul Hastings LLP, 200 Park Avenue, New York, New York 10166, Attn: Andrew Tenzer, Esq., email: andrewtenzer@paulhastings.com and Susan Williams, Esq., email: susanwilliams@paulhastings.com, and Ashby & Geddes, P.A., Attn: Bill Bowden, Esq., email: wbowden@ashbygeddes.com

        f.      counsel for the Stalking Horse Purchaser (if any); and

        g.    the U.S. Trustee.

16.    The proposed Sale Notice and the proposed Notice of Assumption and Assignment are each hereby approved

17.    Notice of (a) the Motion, (b) the Bid Procedures, (c) the Auction, (d) the Objection Deadlines, (e) the Sale Hearing, and (f) the proposed assumption, assignment and sale of Purchased Contracts to the Winning Bidder shall be good and sufficient, and no other or further notice shall be required, if given as follows:

a.      Notice of Auction and Sale Hearing: Within three (3) business days after entry of this Order, the Debtors (or their agents) shall:

i.      provide notice (in substantially the form of the Sale Notice attached hereto as Exhibit A) of this Order, the Motion, the Auction, the Objection Deadlines, and the Sale Hearing by first-class mail upon (a) all Persons known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to the Purchased Assets during the past six (6) months; (b) all entities known by the Debtors to have asserted any Lien or interest in the Purchased Assets; (c) all non-Debtor parties to the Contracts; (d) the U.S. Trustee; (e) the Committee and its counsel; (f) any Governmental Body known to have a claim in the Chapter 11 Cases; (g) all other known creditors and equity security holders of the Debtors; (h) all Persons that have requested special notice in the Chapter 11 Cases; and (i) all other Persons as directed by the Court; and

ii.      cause the Sale Notice, as may be conformed for publication, to be published on one occasion in the national edition of the *USA Today* and such local newspapers or trade journals as the Debtors deem appropriate on or before October 16, 2018.

b.      Assumption, Assignment and Cure Notice.

i.      On or before October 9, 2018, the Debtors shall file with the Court and serve via first class mail on each counterparty to a Contract (and counsel to such counterparty, if known) a notice of assumption, assignment and sale, substantially in the form of the Notice of Assumption and Assignment attached hereto as Exhibit B.  The Notice of Assumption and Assignment shall include the

01:23603148.1

13

Debtors' calculation of the amount necessary to cure, pursuant to section 365 of the Bankruptcy Code, all monetary defaults (the "Cure Amount") for each such Contract.  The Debtors reserve the right to supplement the list of Contracts and provide additional Notices of Assumption and Assignment for omitted contracts prior to the closing of the Winning Bid, and to remove a Contract from the list of Purchased Contracts at any time prior to the closing of the Winning Bid.  Each Notice of Assumption and Assignment that identifies a Contract that was not previously designated to be assumed, assigned and sold or that reduces the Debtors' calculation of the Cure Amount shall provide a deadline of not less than seven (7) days from the date of service of such Notice of Assumption and Assignment by which the counterparty to any such added Contract may object to (a) its listing as a Contract, and (b) the Debtors' calculation of the Cure Amount for such Contract.  The inclusion of a Contract on the Notice of Assumption and Assignment shall not obligate the Winning Bidder to take assignment of such Contract.  Only those Contracts that constitute Purchased Contracts pursuant to the Winning Bidder's Proposed APA will be assumed, assigned and sold to the Winning Bidder.  The inclusion of a contract, lease or other agreement on the Notice of Assumption and Assignment shall not constitute or be deemed a determination or admission by the Debtors and their estates or any other party in interest that such contract, lease or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of the Debtors and their estates with respect thereto shall be reserved.

01:23603148.1

14

ii.    Any counterparty to a Contract shall file and serve on the Objection Recipients any objections to (a) the proposed assumption, assignment and sale to the Winning Bidder (and must state in its objection, with specificity, the legal and factual basis of its objection) and (b) if applicable, the proposed Cure Amount (and must state in its objection, with specificity, what Cure Amount is required with appropriate documentation in support thereof), **no later than October 30, 2018 at 4:00 p.m. (Eastern Time)**.  If no objection is timely filed and served, (x) the counterparty to a Contract shall be deemed to have consented to the assumption, assignment and sale of the Contract to the Winning Bidder(s) pursuant to sections 363 and 365 of the Bankruptcy Code if such Contract is designated by the Winning Bidder(s) as a Purchased Contract and shall be forever barred from asserting any objection with regard to such assumption, assignment and sale, except with respect to the adequate assurance of future performance by the Winning Bidder(s), and (y) the Cure Amount set forth in the Notice of Assumption and Assignment shall be controlling pursuant to section 365 of the Bankruptcy Code, notwithstanding anything to the contrary in any Contract, or any other document, and the counterparty to the Contract shall be deemed to have consented to the Cure Amount pursuant to section 365 of the Bankruptcy Code and shall be forever barred from asserting any other claims related to such Contract against the Debtors or the Winning Bidder(s), or the property of any of them except with respect to the adequate assurance of future performance by the Winning Bidder(s).

       iii.     No later than **November 5, 2018**, the Debtors shall file with the Bankruptcy Court and serve via overnight mail on each counterparty (and its counsel, if known) to a Contract each Qualified Bidder's proposed adequate assurance of future performance as set forth in sections 365(b)(1)(C) and 365(b)(3) of the Bankruptcy Code.  Any objection by a counterparty solely to the proposed adequate assurance of future performance by the Qualified Bidder must be filed and served on the Objection Recipients **no later than November 7, 2018 at 4:00 p.m. (Eastern Time)**.  If no objection is timely filed and served, the counterparty to a Contract shall be deemed to have consented to the Qualified Bidder's adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code and shall be forever barred from asserting any objection with regard to such adequate assurance of future performance should the Qualified Bidder become the Winning Bidder or Back-Up Bidder.

18.    Notwithstanding any applicability of Bankruptcy Rules 6004(h), 7062, or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

19.    This Court shall retain jurisdiction and power to enforce and interpret the provisions of this Order.

Dated: [_____], 2018
      Wilmington, Delaware        _____

                                 UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**SALE NOTICE**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al.*,[1] | Case No.:  18-12012 (___) |
| | (Jointly Administered) |
| Debtors. | **Ref. Docket No. _____** |

<u>**NOTICE OF AUCTION AND SALE HEARING**</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On September 6, 2018, Open Road Films, LLC and its debtor affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), each filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

2.      On September 6, 2018, the Debtors filed a motion (the "<u>Bid Procedures Motion</u>"), pursuant to sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006, seeking entry of an order (the "<u>Bid Procedures Order</u>") (a) scheduling an auction (the "<u>Auction</u>") for the sale of substantially all of the Debtors' assets (the "<u>Purchased Assets</u>") for November 7, 2018 and a hearing to approve the sale of the Purchased Assets (the "<u>Sale Hearing</u>") for November 9, 2018; (b) approving procedures (the "<u>Bid Procedures</u>") for submitting competing bids for the Purchased Assets, (c) approving the form and manner of the notice of the Auction and the Sale Hearing; and (d) approving procedures for the assumption, assignment and sale of Contracts (as defined in the Bid Procedures Order) to any purchaser(s) of the Purchased Assets, and/or to resolve any objections thereto.

3.      On [_____], 2018, the United States Bankruptcy Court for the District of Delaware entered the Bid Procedures Order.  Pursuant to the Bid Procedures Order, if the Debtors receive any Qualified Bids (as defined in the Bid Procedures Order), for the Purchased Assets, the Auction shall take place on **November 7, 2018 at [10:00] a.m. (Eastern Time)** at a location to be identified in advance of the Auction.  Only parties that have submitted a Qualified Bid, as set forth in the Bid Procedures Order, by no later than **November 2, 2018 at 5:00 p.m. (Eastern Time)** (the "<u>Bid Deadline</u>") may bid at the Auction.  Any party that wishes to take part in this process and submit a bid for the Purchased Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bid Procedures.

4.      The Sale Hearing to consider approval of the sale of the Purchased Assets to the winning bidder at the Auction, free and clear of all liens, claims and encumbrances, will be

---

[1]    The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.).  The Debtors' address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067.

held before the Honorable [_____], United States Bankruptcy Judge, 824 North Market Street, Wilmington, Delaware 19801 on **November 9, 2018 at [10:00 a.m.] (Eastern Time)**, or at such other time thereafter as counsel may be heard.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or in the applicable hearing agenda.

5.      Objections to the (i) sale, if any (the "Sale Objections") and (ii) results of the Auction, if any (the "Auction Objections") must: (a) be in writing; (b) comply with the Bankruptcy Rules and Local Rules; and (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 North Market Street, Wilmington, Delaware 19801, in the case of the Sale Objections, **on or before November 2, 2018 at 4:00 p.m. (Eastern Time)** (the "Sale Objection Deadline") and, in the case of the Auction Objections, **on or before 8:30 a.m. (Eastern Time) on the day of the Sale Hearing** (the "Auction Objection Deadline") and be served upon (i) Open Road Films, LLC, 2049 Century Park East, 4th Floor, Los Angeles, CA 90067, Attn: James Ellis, Email: jellis@tangmp.com;  (ii) co-counsel for the Debtors, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067, Attn: Michael L. Tuchin, Esq. and Jonathan M. Weiss, Email: mtuchin@ktbslaw.com and jweiss@ktbslaw.com; (iii) co-counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Michael Nestor, Esq. and Robert F. Poppiti, Jr., Esq., Email: mnestor@ycst.com and rpoppiti@ycst.com; (iv) counsel for the Committee, [_____]; (v) counsel for the Agent, Paul Hastings LLP, 200 Park Avenue, New York, New York 10166, Attn: Andrew Tenzer, Esq., email: andrewtenzer@paulhastings.com and Susan Williams, Esq., email: susanwilliams@paulhastings.com, and Ashby & Geddes, P.A., Attn: Bill Bowden, Esq., email: wbowden@ashbygeddes.com; (vi) counsel for the Stalking Horse Purchaser (if any); and (vii) the U.S. Trustee.  **UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.**

6.      This Notice of Auction and Sale Hearing is subject to the fuller terms and conditions of the Bid Procedures Motion and the Bid Procedures Order, with such Bid Procedures Order controlling in the event of any conflict, and the Debtors encourage parties-in-interest to review such documents in their entirety.  Parties interested in receiving more information regarding the sale of the Purchased Assets and/or copies of any related document, including the Form APA, the Bid Procedures Motion, or the Bid Procedures Order, may make a written request to: (i) co-counsel for the Debtors, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067, Attn: Jonathan M. Weiss, Esq., Email: jweiss@ktbslaw.com; or (ii) co-counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Michael Nestor, Esq. and Robert F. Poppiti, Jr., Esq., Email: mnestor@ycst.com and rpoppiti@ycst.com.  In addition, copies of the Bid Procedures Motion, the Bid Procedures Order and this Notice are on file with the Clerk of the Bankruptcy Court, Third Floor, 824 Market Street, Wilmington, Delaware 19801.

Dated: _____, 2018

                            _____

Michael R. Nestor, Esq. (Bar No. 3526)
Sean M. Beach, Esq. (Bar No. 4070)
Robert F. Poppiti, Jr., Esq. (Bar No. 5052)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:   (302) 571-1253
Email: mnestor@ycst.com
       sbeach@ycst.com
       rpoppiti@ycst.com

and

Michael L. Tuchin, Esq.
Jonathan M. Weiss, Esq.
Sasha M. Gurvitz, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:    (310) 407-4000
Fax:   (310) 407-9090
Email: mtuchin@ktbslaw.com
       jweiss@ktbslaw.com
       sgurvitz@ktbslaw.com

*Proposed Counsel to Debtors and*
*Debtors in Possession*

01:23603148.1

**Exhibit B**

**NOTICE OF ASSUMPTION AND ASSIGNMENT**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al.*,[1] | Case No.:  18-12012 (___) |
| | (Jointly Administered) |
| Debtors. | **Ref. Docket No. _____** |

## NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT
## OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**You are receiving this** *Notice of Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases* **(the "**Notice of Assumption and Assignment**") because you may be a counterparty to a contract or lease with Open Road Films, LLC, or one or more of its above-captioned affiliated debtors.  Please read this notice carefully as your rights may be affected by the transactions described herein.**

**PLEASE TAKE NOTICE** that on [_____], 2018, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (the "Bid Procedures Order") approving the *Debtors' Motion Requesting (A) the Scheduling of an Auction and Sale Hearing in Connection with the Sale of the Debtors' Assets, (B) Approval of Bid Procedures for Such Assets, (C) Approval of Form and Scope of Notice of Auction and Sale Hearing, (D) Approval of Procedures for the Assumption, Assignment and Sale of Contracts and Leases, and (E) Granting Related Relief* (the "Bid Procedures Motion"), filed by Open Road Films, LLC and its affiliated debtors, as debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors").  The Bid Procedures Motion and Bid Procedures Order set forth certain procedures (the "Bid Procedures") in connection with the sale of substantially all of the Debtors' assets (the "Sale Transaction").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures Order, the Bankruptcy Court, among other things, approved a timeline for the marketing, auction, and sale of the assets (the "Assets") of the Debtors free and clear of all liens, claims, interests and encumbrances.  The Debtors are parties to numerous executory contracts and unexpired leases (each, a "Contract" and collectively, the "Contracts").  A list of the Debtors' Contracts is attached hereto as Exhibit 1.  The sale of the Assets (the "Sale") will include the assumption, assignment and sale by the Debtors of certain of the Contracts to the successful purchaser of the Assets.

---

[1]    The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.).  The Debtors' address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067.

**PLEASE TAKE FURTHER NOTICE** that the hearing on the sale of the Assets (the "Sale Hearing") before the Honorable [_____], United States Bankruptcy Judge, 824 North Market Street, Wilmington, Delaware 19801 has been set for **November 9, 2018 at [10:00 a.m.] (Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that Exhibit 1 attached to this notice sets forth the amounts, if any, based upon the Debtors' books and records, that the Debtors assert are owed to cure, pursuant to section 365 of the Bankruptcy Code, any defaults existing under the Contracts as of the date of filing of this notice.[2]  The inclusion of a Contract on Exhibit 1 does not mean that such Contract will be assumed or assigned in connection with the Sale or that the Debtors will make any cure payment in connection with such Contract.

**PLEASE TAKE FURTHER NOTICE** that any objections to the assumption, assignment and sale of any Contract identified in this notice (except with respect to the adequate assurance of future performance by the Qualified Bidder(s) (as defined in the Bid Procedures Order)), including to the cure amount set forth in Exhibit 1 to this notice, must be in writing, filed with the Bankruptcy Court, and be **actually received** by the Objection Notice Parties (as defined below) **no later than October 30, 2018 at 4:00 p.m. (Eastern Time)** (the "Assignment and Cure Objection Deadline").  Any such objections must set forth the specific defaults under the Contract and claim a specific monetary amount that differs from the cure amount, if any, specified by the Debtors.  Other than the cure amounts listed on Exhibit 1, the Debtors are not aware of any amounts due and owing under the Contracts listed therein.  If any party believes that any additional amounts are due and owing under any Contract included on Exhibit 1, such party must assert such claim in accordance with the procedures set forth above by the Assignment and Cure Objection Deadline or be forever barred from asserting such claim.

**PLEASE TAKE FURTHER NOTICE that each non-Debtor party to any Contract that does not timely file an objection by the Assignment and Cure Objection Deadline shall be forever barred from objecting to the assignment, assumption and sale of the Contract and/or the cure amounts set forth in Exhibit 1 (except with respect to the adequate assurance of future performance by the Qualified Bidder(s)), including, without limitation, the right to assert any additional cure or other amounts with respect to the Contract arising or relating to any period prior to such assumption.  The Debtors are not aware of any defaults under any Contract, other than defaults that will be cured by payment of cure amounts, if any, set forth on Exhibit 1 hereto.  If any non-Debtor party fails to raise a timely objection, such non-Debtor party shall be barred from raising such defaults against any person or entity and shall be deemed to have waived such default for all purposes.**

**PLEASE TAKE FURTHER NOTICE** that the Objection Notice Parties are:  (i) Open Road Films, LLC, 2049 Century Park East, 4th Floor, Los Angeles, CA 90067, Attn: James Ellis, Email: jellis@tangmp.com; (ii) co-counsel for the Debtors, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067, Attn: Michael L.

---

[2]    Your receipt of this notice does not constitute an admission by the Debtor that your agreement actually constitutes an executory contract or an unexpired lease under section 365 of the Bankruptcy Code, and the Debtors expressly reserve the right to challenge the status of any agreement up until the time of the Sale Hearing.

Tuchin, Esq. and Jonathan M, Weiss, Email: mtuchin@ktbslaw.com and jweiss@ktbslaw.com; (iii) co-counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Michael Nestor, Esq. and Robert F. Poppiti, Jr., Esq., Email: mnestor@ycst.com and rpoppiti@ycst.com; (iv) counsel for the Committee, [_____]; (v) counsel for the Agent, Paul Hastings LLP, 200 Park Avenue, New York, New York 10166, Attn: Andrew Tenzer, Esq., email: andrewtenzer@paulhastings.com and Susan Williams, Esq., email: susanwilliams@paulhastings.com, and Ashby & Geddes, P.A., Attn: Bill Bowden, Esq., email: wbowden@ashbygeddes.com; (vi) counsel for the Stalking Horse Purchaser (if any); and (vii) the U.S. Trustee.

**PLEASE TAKE FURTHER NOTICE** that, if no objections are received by the Assignment and Cure Objection Deadline, the cure amounts set forth in <u>Exhibit 1</u> shall be binding upon the non-debtor party to the Contract for all purposes, and will constitute a final determination of total cure amounts required to be paid by the Debtors in connection with the assumption and assignment of the Contract.

**PLEASE TAKE FURTHER NOTICE** that by no later than November 5, 2018, the Debtors shall file with the Bankruptcy Court and serve via overnight mail on each counterparty to a Contract each Qualified Bidder's proposed adequate assurance of future performance as set forth in sections 365(b)(1)(C) and 365(b)(3) of the Bankruptcy Code.  Any objection by a counterparty solely to the proposed adequate assurance of future performance by a Qualified Bidder (an "<u>Adequate Assurance Objection</u>") must be filed and served on the Objection Notice Parties **no later than November 7, 2018 at 4:00 p.m. (Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE that any counterparty failing to timely file an Adequate Assurance Objection shall be forever barred from objecting to the assumption of its Contract on the grounds of adequate assurance of future performance**.

**PLEASE TAKE FURTHER NOTICE** that if a timely objection is received and such objection cannot otherwise be resolved by the parties, the Bankruptcy Court may hear such objection at the Sale Hearing or at a later date set by the Court.

**PLEASE TAKE FURTHER NOTICE** that this Notice of Assumption and Assignment is subject to the fuller terms and conditions of the Bid Procedures Motion and the Bid Procedures Order, with such Bid Procedures Order controlling in the event of any conflict, and the Debtors encourage parties-in-interest to review such documents in their entirety.  Parties with questions regarding the proposed assumption, assignment and sale procedures contained herein should contact the Debtors' counsel, contact information for which is reflected herein.

01:23603148.1

Dated: _____, 2018

                              _____

Michael R. Nestor, Esq. (Bar No. 3526)
Sean M. Beach, Esq. (Bar No. 4070)
Robert F. Poppiti, Jr., Esq. (Bar No. 5052)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:   (302) 571-1253
Email: mnestor@ycst.com
       sbeach@ycst.com
       rpoppiti@ycst.com

and

Michael L. Tuchin, Esq.
Jonathan M. Weiss, Esq.
Sasha M. Gurvitz, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:    (310) 407-4000
Fax:   (310) 407-9090
Email: mtuchin@ktbslaw.com
       jweiss@ktbslaw.com
       sgurvitz@ktbslaw.com

*Proposed Counsel to Debtors and*
*Debtors in Possession*

01:23603148.1

4

**Exhibit 1**

**Contracts and Cure Amounts**

# EXHIBIT II

**Sale Order**

(To be filed)[1]

---

[1]    The Debtors anticipate filing the proposed Sale Order prior to the hearing on the Bid Procedures.

# **EXHIBIT III**

## **Form APA**

(To be filed)[1]

---

[1] The Debtors anticipate filing the proposed Form APA prior to the hearing on the Bid Procedures.