**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 18-12012 (LSS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: September 25, 2018 at 4:00 p.m. (ET)**<br>**Hearing Date: October 2, 2018 at 2:00 p.m. (ET)** |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO (I) EMPLOY AND RETAIN FTI CONSULTING, INC. TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL AND (II) DESIGNATE AMIR AGAM AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

Open Road Films, LLC and its affiliated debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases") hereby apply to the Court (the "Application") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Debtors to (i) employ and retain FTI Consulting, Inc. ("FTI") to provide the Debtors with a Chief Restructuring Officer ("CRO") and certain additional supportive staff of FTI to assist the CRO, and (ii) designate Amir Agam as CRO in the Cases *nunc pro tunc* to the Petition Date (as defined below). In support of this Application, the Debtors rely on the *Declaration of Amir Agam*, attached hereto as **Exhibit B** (the "Agam Declaration"). In further support of this Application, the Debtors respectfully represent as follows:

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.). The Debtors' address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067.

## I. JURISDICTION

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over the Cases and the Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of the Cases and the Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to the Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The statutory and other predicates for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2016-2.

## II. BACKGROUND

4. On September 6, 2018 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. On the Petition Date, the Debtors filed a motion with this Court requesting joint administration of the Debtors' Cases for procedural purposes only.

5. The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been requested or appointed in the Cases and no statutory committee

has been appointed yet by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").

6. The Debtors distribute motion pictures in the United States and license motion pictures in ancillary markets, principally to home entertainment, pay television, subscription, and transactional video-on-demand, free television, and other non-theatrical entertainment distribution markets. The Debtors' films have generated over $1.3 billion in worldwide theatrical box office receipts, have been nominated for 49 Academy Awards, and have won 13 Academy Awards.

7. The Debtors intend to utilize the bankruptcy process to continue and conclude their robust marketing and sale process. They believe that doing so will ensure that the value of their assets are maximized for the benefit of all stakeholders.

8. The detailed factual background relating to the Debtors and the commencement of the Cases is set forth in the *Declaration of Amir Agam in Support of First Day Motions* [Docket No. 7] (the "First Day Declaration") which is fully incorporated herein by reference.

### III. RELIEF REQUESTED

9. The Debtors seek entry of the Order, effective *nunc pro tunc* to the Petition Date, authorizing the Debtors to (i) employ and retain FTI to provide the Debtors with a CRO as well as additional supportive staff to assist the CRO ("Hourly Temporary Staff"), and (ii) designate Mr. Agam as the Debtors' CRO (together with the Hourly Temporary Staff, the "FTI Professionals").

### IV. RETENTION OF FTI

**A. Qualifications of FTI**

10. In consideration of the size and complexity of their business, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced

restructuring managers will substantially enhance their attempts to maximize the value of their estates. On August 3, 2018, FTI was engaged, effective as of August 1, 2018, to provide interim management services in connection with a potential restructuring. The FTI Professionals are thus intimately familiar with the Debtors' business and are well qualified to act on the Debtors' behalf given their extensive knowledge and expertise with respect to chapter 11 proceedings.

11. The FTI Professionals specialize in interim management, turnaround and restructuring services, asset sales, and business transformation. FTI's debtor advisory services have included a wide range of activities targeted toward maximizing the value of a debtor's assets and recoveries to creditors, including developing or validating forecasts, working with management on operational issues, monitoring and managing cash flow and creditor relationships, negotiating with a debtor's secured lenders on the use of cash collateral, assessing and recommending cost reduction strategies, providing transactional support to market a debtor's assets (including forecasting, creating marketing materials, contacting potential buyers, and negotiating offers for debtor owned assets), preparing a debtor for a chapter 11 filing, and designing and negotiating financial restructuring packages.

12. Further, FTI has provided similar services and personnel in recent cases in this District. *See, e.g.*, *In re Zohar III, Corp.*, Case No. 18-10512 (Bankr. D. Del. June 11, 2018); *In re SFX Entertainment, Inc.*, Case No. 16-10238 (Bankr. D. Del. Mar. 3, 2016); *In re Fresh & Easy, LLC*, Case No. 15-12220 (Bankr. D. Del. Nov. 20, 2015); *In re Corinthian Colleges, Inc.*, Case No. 15-10952 (Bankr. D. Del. May 27, 2015); *In re Mineral Park, Inc.*, Case No. 14-11996 (Bankr. D. Del. Sept. 23, 2014); *In re FCC Holdings, Inc.*, Case No. 14-11987 (Bankr. D. Del. Sept. 22, 2014); *In re Digital Domain Media Grp., Inc.*, Case No. 12-12568 (Bankr. D. Del. Oct. 31, 2012); *In re Cadence Innovation LLC*, Case No. 08-11973 (Bankr. D. Del. Sept. 18, 2008).

13. Mr. Agam has the requisite experience to serve as the Debtors' CRO. Mr. Agam has twenty years of experience in the restructuring and turnaround industry (including related non-distressed consulting), all of which are either at FTI, or, prior to its acquisition by FTI, at the Business Recovery Services practice that existed prior to 2002 at PricewaterhouseCoopers, LLC. His expertise includes serving in interim management positions as interim chief financial officer and chief restructuring officer. He served previously as chief restructuring officer to Fresh & Easy LLC, a 100 store grocery chain that filed chapter 11 cases in this District, and was the interim chief financial officer to two other companies. In addition, Mr. Agam advised (among others) Corinthian Colleges, Inc., a public for-profit education debtor; THQ Inc., a public video game production and distribution debtor; and Fleetwood Enterprises, a billion dollar public manufacturer of manufactured housing and recreational vehicles. Mr. Agam's experience includes advising on complex restructuring and turnaround situations in out-of-court restructurings and in formal bankruptcy proceedings. Specific areas of Mr. Agam's experience include business plan development and review, cash flow forecasting, cash management, identification and implementation of significant cost reductions, negotiating restructuring plans, bankruptcy planning, obtaining financing, negotiating business and asset sales, and providing related court testimony.

14. The Debtors believe that FTI has developed significant relevant experience and expertise regarding the Debtors, their operations, and the unique circumstances of the Cases. FTI is both well qualified to deal effectively and efficiently with matters that may arise in the context of the Cases. Accordingly, the Debtors submit that the retention of FTI and the designation of Mr. Agam as CRO on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

**B.     Scope of Services**

15.     Subject to approval by the Court, the Debtors propose to retain FTI on the terms and conditions set forth in the engagement letter, dated August 3, 2018, attached hereto as **Exhibit C** (the "Engagement Letter"),[2] except as otherwise explicitly set forth herein or in any order granting this Application.

16.     FTI will provide Amir Agam to serve as the Debtors' CRO. The CRO, as well as any additional Hourly Temporary Staff, shall report to and have such duties as the Board of Directors ("Board") may from time to time determine.

17.     The Hourly Temporary Staff services may be performed by FTI or by any subsidiary of FTI, as FTI shall determine. FTI may also provide Hourly Temporary Staff services through its or its subsidiaries' agents or independent contractors, in a manner reasonably acceptable to the Board.

18.     The services ("Services") to be performed by the FTI Professionals will include:

    a.     Assisting the Debtors to prepare appropriate cash and liquidity forecasts, including a rolling 13-week cash flow forecast;

    b.     Assisting the Debtors in daily cash management and in preparing, reviewing and reporting on the 13-week cash flow forecast and work with the Debtors' management to preserve and maximize cash availability while preserving value in the business;

    c.     Assisting the Debtors' management in responding to requests from, and negotiation with, lenders, other creditors and investors, and any government investigators, as requested;

    d.     Providing forecasting, valuation and transaction support ("Transaction Support") in connection with a possible merger, consolidation, joint venture, partnership, spin-off, split-off, business combination, tender or

---

[2] The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein. Capitalized terms used in such summaries but not otherwise defined herein shall have the meanings set forth in the Engagement Letter.

exchange offer, recapitalization, acquisition, sale, distribution, transfer or other disposition of assets or equity interests, or similar transaction, involving all or a substantial portion of the business, assets or equity interests of the Debtors and its subsidiaries, taken as a whole, or any right or option to acquire any of the foregoing, in each case involving a transfer of control of the Debtors, in one or more transactions (collectively referred to herein as, the "Transaction"). Transaction Support may include:

(1) Developing cash flow forecasts potentially including the Debtors' previously released filmed entertainment and related library rights (the "Library"), unreleased filmed entertainment and related rights ("Current Programs"), rent a system agreements, future going concern based upon Debtors management's business plans, inclusive of forecasted development costs ("Future Programs") and corporate and divisional operating expenses ("Operating Expenses");

(2) Presenting or communicating such forecasts to parties interested in buying all or a portion of the Debtors and/or its assets and other parties as directed by the Debtors;

(3) If requested by the Debtors, preparing a written report expressing FTI's conclusions on a range of valuation indications for each of the Library, Current Programs, Future Programs, and consolidated Debtors' operations on an enterprise basis; and

(4) Providing additional support reasonably related to the foregoing, as appropriate.

e. Running a process to consummate one or multiple Transactions. Such process will include:

(1) Advising the Debtors regarding parties that may be interested in a Transaction ("Bidders");

(2) Preparing a request for proposal which notifies Bidders that potential Transactions can include a sale of all or a portion of the Debtors and/or their assets;

(3) Providing Bidders and secured lenders access to a data room which contains adequate information needed to assess and evaluate a Transaction;

(4) Contacting and soliciting proposals regarding a Transaction;

(5) Screening, performing diligence on, ranking, and evaluating any proposals received from Bidders, and then select a Bidder to consummate Transaction with;

7

(6) Assisting the Debtors in their negotiations with Bidders;

(7) Providing timely reporting to the Debtors and the Administrative Agent for their secured lenders on the status and progress of the above no less frequently than weekly; and

(8) Assisting the Debtors on any Transaction through closing.

f. Performing such other services as may be reasonably requested by the Debtors, and are customary in this type of engagement.

19. The Services do not include audit, legal, tax, environmental, accounting, actuarial, employee benefits, insurance advice, or similar specialist and other professional services which are typically outsourced and which shall be obtained directly where required by the Debtors at Debtors' expense. Consistent with the "Jay Alix Protocol," FTI and Mr. Agam will not act as financial advisors retained under Bankruptcy Code § 327, claims agents or claims administrators appointed pursuant to 28 U.S.C. § 156(c), or investors or acquirers in the Debtors' Cases.[3]

20. Although the Engagement Letter refers only to the retention of FTI by Debtor Open Road Films, LLC, the Debtors and FTI have agreed that FTI will perform the Services for all Debtors in these Cases. Notwithstanding the references in the Engagement Letter to FTI's investment banking subsidiary, FTI Capital Advisors, LLC ("FTICA"), the Debtors and FTI have agreed that FTICA will not perform Services for the Debtors, rather, the Services will be performed by FTI and FTI employees, some of whom may also be part of the FTICA team. The Engagement Letter provides that FTI will consult with the Debtors prior to increasing the number of FTI Professionals working on the engagement. As of the Petition Date, 12 FTI Professionals were working full- or part-time on the engagement.

---

[3] A copy of the "Jay Alix Protocol" is available at https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual.

### C. FTI's Disinterestedness

21. FTI has informed the Debtors that, except as may be set forth in the Agam Declaration, FTI and its subsidiaries that may be performing Services to the Debtors (i) have no connection with the Debtors, their creditors, or other parties in interest in the Cases, (ii) do not hold any interest adverse to the Debtors' estates; and (iii) believe each of them is a "disinterested person" as defined within Section 101(14) of the Bankruptcy Code.

22. Based on the list of interested parties (the "Potentially Interested Parties"), provided by the Debtors, FTI and its subsidiaries have undertaken a customary review of records to determine any professional relationships with the Debtors and the Potentially Interested Parties. As the Debtors may be aware, the administrative agent and/or members of the lending group (or law firms of the administrative agent or the lending group members) regularly retain FTI in other matters. However, such representations are in matters unrelated to the Debtors and these Cases. Further, as the Debtors are aware, FTI has previously performed work for the Debtors, predecessor entities, or related companies.

23. From the results of such review, FTI is not aware of any conflicts of interest or additional relationships that FTI believes would preclude FTI or any of its subsidiaries from performing the Services. However, as the Debtors know, FTI is a large consulting firm with numerous offices throughout the United States. FTI is regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. FTI will not accept an engagement that directly conflicts with the Cases without the Debtors' prior written consent.

### D. Terms of Retention

24. As set forth in the Engagement Letter, the Debtors have agreed, among other things: (a) to compensate and reimburse FTI for services provided and expenses incurred by the FTI Professionals; and (b) to indemnify those persons serving as executive officers on the same

terms as provided to the Debtors' other officers and directors under the corporate bylaws and to provide such persons with insurance coverage under the Debtors' (and the Debtors' affiliates') director and officer liability insurance policies.

### 1. Compensation and Expenses

#### a. CRO

25. For the services of Amir Agam as CRO rendered in connection with the Cases during the first two (2) months after execution of the Engagement Letter, the Debtors agree to pay FTI a monthly, non-refundable advisory fee of $125,000.[4] This $125,000 advisory fee will be billed at the beginning of each month and considered earned when paid. For Mr. Agam's services as CRO rendered in connection with the Cases after the first two (2) months after execution of the Engagement Letter, the Debtors agree to pay FTI on an hourly fee basis at the rate of $935 per hour.

#### b. Hourly Temporary Staff

26. Aside from the CRO, all other FTI employees providing services to the Debtors will be Hourly Temporary Staff. The current hourly billing rates for Hourly Temporary Staff, based on the position held by such Hourly Temporary Staff at FTI, are subject to the following ranges:

|  | Per Hour (USD) |
|---|---|
| Senior Managing Directors and Senior Advisors | $840-1,075 |
| Directors / Senior Directors / Managing Directors | $630-835 |
| Consultants/Senior Consultants | $335-605 |
| Administrative / Paraprofessionals | $135-265 |

Hourly rates are generally revised periodically. FTI will notify the Debtors in writing prior to any changes in hourly rates.

---

[4] For the avoidance of doubt, the first two months of FTI's engagement were August and September 2018.

27. In addition to the foregoing fees, and as additional consideration for all of the Services, upon the closing and funding (whether partially or in full) of a Transaction, the Debtors agree to pay FTI an additional fee equal to $750,000 (the "Additional Fee"). However, so long as no more than 50% of the Debtors' secured debt is transferred from its current holders to new holders, in the event that the secured lenders to the Debtors acquire by way of a credit bid all or substantially all of the assets, then there will be no Additional Fee. If it comes due, the Additional Fee shall be paid by instructing the financier, lender, investor or other purchaser to withhold the amount of the Additional Fee from the proceeds of the Transaction and to wire transfer said fee directly to FTI upon the closing of the Transaction. In the event a transaction or series of transactions takes place that does not involve a change in control (*e.g.,* a sale of a subset of the Film Library), the Debtors and FTI agree to negotiate in good faith with respect to the additional fees to be paid to FTI in connection therewith, the terms of which will be documented in a separate agreement between the parties.

28. In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are incurred on the Debtors' behalf during the Cases. Expenses include reasonable and customary out-of-pocket expenses which are billed directly to the Cases such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by the Debtors at its regular hourly rates and reimbursed for reasonable direct expenses (including reasonable, documented fees of counsel) with respect thereto.

29. The Engagement Letter provides that FTI will receive a fee if Open Road Films, LLC or one of its subsidiaries or controlled affiliates hires an FTI employee who worked on this

engagement during the engagement and for a period of one year thereafter. The fee amount is 150% of the employee's annual compensation. However, FTI has agreed not to charge this fee during the chapter 11 Cases if its retention is approved.

30. In connection with FTI's retention and in accordance with the Engagement Letter, FTI maintains a retainer (the "Retainer") for professional services rendered or to be rendered and expenses incurred or to be incurred by FTI on behalf of the Debtors. On August 6, 2018, the Debtors paid to FTI an initial Retainer amount of $250,000. Pursuant to the Engagement Letter, FTI has periodically sent the Debtors invoices for hourly charges and out-of-pocket disbursements incurred on behalf of the Debtors. FTI applied that portion of the Retainer necessary to satisfy such invoices, with the Debtors periodically replenishing the Retainer. As of the Petition Date, the unapplied portion of the retainer was $500,000. Also as of the Petition Date, FTI believes it had approximately $374,000 in unbilled fees and approximately $28,000 in unbilled expenses. Upon entry of the Court's order approving FTI's employment, FTI will apply a portion of the retainer to these unbilled fees and expenses, leaving an estimated residual retainer balance of approximately $98,000. The dates and amounts of FTI's invoices, and the amounts paid by the Debtors to replenish the Retainer are set forth in more detail in the Agam Declaration submitted herewith.

### E. Indemnification and Liability Limitation

#### 1. Indemnification

31. As a material part of the consideration for which the FTI Professionals have agreed to provide the Services described herein, pursuant to the Engagement Letter as modified by this Application and the Proposed Order, the Debtors have agreed to indemnify and hold harmless those persons serving as executive officers (collectively "Indemnified Persons") on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws

and applicable state law, and to provide insurance coverage to such executive officers under the Debtors' or their affiliates' existing director and officer liability policies under certain circumstances. For the avoidance of doubt, the Debtors shall not indemnify the Indemnified Persons from any claim, liability, obligation, damage, cost, or expense (i) that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence, bad faith, or willful misconduct of the Indemnified Person(s) (an "Adverse Determination") or (ii) for a contractual dispute in which the Debtors allege the breach of FTI's contractual obligations if the Court determines that indemnification would not be permissible pursuant to *In re United Artists Theatre Co., et al.*, 315 F.3d 217 (3d Cir. 2003).[5]

2. **Limitation of Liability**

32. The Engagement Letter provides that no Indemnified Person shall be liable to the Debtors, or their successors, affiliates, or assigns for damages in excess of the total amount of the fees paid to FTI under the Engagement Letter and, without limiting the generality of the foregoing, that in no event shall any Indemnified Person be liable for consequential, indirect, or punitive damages, damages for lost profits or opportunities, or other like damages or claims of any kind. The Debtors and FTI have agreed that during the course of these Cases, any limitation of liability provisions in the Engagement Letter shall have no force or effect.

3. **Insurance**

33. In addition to the above indemnification and provision regarding advancement of fees/expenses, FTI employees serving as directors or officers of the Debtors or their affiliates will receive the benefit of the most favorable indemnification and advancement provisions

---

[5] The rights to indemnification shall survive the closing of the Cases or any cases into which they may be converted. The Debtors shall reimburse damages and expenses in connection with an indemnified matter, including reasonable and documented legal fees and disbursements of outside counsel, as they are incurred, *provided, however*, that FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

provided by the Debtors to their directors, officers, and any equivalently placed employees, whether under the Debtors' charter or by-laws, by contract, or otherwise. The Debtors shall specifically include and cover employees and agents serving as directors and officers of the Debtors or affiliates from time to time with direct coverage under the Debtors' or their affiliates' policies for liability insurance covering their directors, officers, and any equivalently placed employees.

34. The Debtors believe the indemnity and limitation of liability provisions are reasonable terms and conditions of FTI's engagement and were, along with all terms of the Engagement Letter, negotiated by the Debtors and FTI at arm's-length and in good faith. FTI and the Debtors believe that the indemnification and liability limitation provisions are comparable to those provisions generally obtained by crisis management firms of similar stature to FTI and for comparable engagements, both in and out of court. The Debtors respectfully submit that the indemnification and liability limitation provisions contained in the Engagement Letter, viewed in conjunction with the other terms of FTI's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors.

**F.     Fees and Reporting**

35. If the Court approves the relief requested herein, FTI will be retained to provide the Debtors with the FTI Professionals and Mr. Agam will be designated as CRO pursuant to section 363 of the Bankruptcy Code. Because FTI is not being employed as a professional under section 327 of the Code, FTI will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, FTI will file with the Court, and provide notice to the U.S. Trustee and all official committees appointed in these Cases (together with the U.S. Trustee, the "Notice Parties"), reports of compensation earned, expenses incurred, and staffing on the Cases (the "Compensation and Staffing Report") by the 30th of each month for the

previous month, which will include summary charts describing the name, hourly rate, number of hours billed, and role filled by each FTI Professional; the aggregate compensation earned by FTI; the hours worked and fees by activity category (*e.g.*, cash management, operations, transaction support, etc.); and the expenses incurred by FTI. In addition, each FTI Professional will maintain during the Cases and the Compensation and Staffing Report will include (i) detailed time entry records identifying activities or issues he or she addressed on a daily basis, grouped to the nearest one-tenth of an hour (0.1 hour) for each activity category each day and (ii) detailed expense records. The first Compensation and Staffing Report shall cover the period from the Petition Date until the end of the month in which the Proposed Order is entered and shall be submitted within thirty (30) days thereafter.

36. The Compensation and Staffing Reports will be subject to review by the Court if an objection is filed by any of the Notice Parties and served on the Debtors, the Debtors' undersigned counsel, and FTI within twenty-one (21) days after the date each Compensation and Staffing Report is filed and served (the "Objection Period"). The Debtors respectfully request that they be authorized, but not directed, to pay, in the ordinary course of business, all amounts invoiced by FTI for fees and expenses incurred in connection with FTI's retention. In the event an objection is filed and served during the Objection Period and not consensually resolved, the Debtors shall deduct an amount equal to the amount objected to from the next payment to FTI until such objection is resolved, either consensually or by Court order.

37. Given the numerous issues that the FTI Professionals may be required to address in the performance of their services, FTI's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services in engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth in the Engagement Letter are reasonable.

## V. DISPUTE RESOLUTION PROVISIONS

38. The Debtors and FTI have agreed, subject to the Court's approval of this Application, that (a) any claim, dispute or difference concerning the Engagement Letter and any matter arising from it, shall be brought in the United States District Court for the District of Delaware and the appropriate Courts of the State of Delaware, and (b) FTI and the Debtors irrevocably and unconditionally agree to waive a trial by jury in any action, proceeding or counterclaim arising out of or relating to the services or the Engagement Letter.

## VI. BASIS FOR RELIEF

### A. Employment and Retention of FTI is Justified Under Bankruptcy Code Section 363(b)

39. The Debtors seek authorization to employ and retain FTI and to appoint Mr. Agam as CRO pursuant to section 363 of the Bankruptcy Code, in each case *nunc pro tunc* to the Petition Date. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

40. Under applicable case law in this and other circuits, if a debtor's proposed use of property pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtor to show that a

16
01:23620964.1

sound business purpose justifies such actions."); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (section 363(b) gives the court "broad flexibility" to make payments outside of ordinary course of business as long as the debtor articulates a business justification); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

41. The retention of interim corporate officers and other temporary employees, therefore, is proper under section 363 of the Bankruptcy Code. This Court has authorized retention of officers utilizing this provision of the Bankruptcy Code on numerous occasions. *See, e.g., In re USA Discounters, Ltd.*, Case No. 15-11755 (CSS) (Bankr. D. Del. Sept. 17, 2015); *In re School Specialty, Inc.*, Case No. 13-10125 (KJC) (Bankr. D. Del. Feb. 25, 2013); *In re Vertis Holdings, Inc.*, Case No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012); *In re Filene's Basement, LLC*, Case No. 11-13511 (KJC) (Bankr. D. Del. Jan. 24, 2012); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. April 27, 2011); *In re Trico Marine Services, Inc.*, Case No. 10-12653 (BLS) (Bankr. D. Del. Oct, 6, 2010); *In re Orleans Homebuilders Inc.*, Case No. 10-10684 (PJW) (Bankr. D. Del. Apr. 6, 2010).

**B. Employment and Retention of FTI is Justified Under Bankruptcy Code Section 105(a)**

42. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The retention of the FTI Professionals is necessary to the Debtors' efforts to efficiently administer the

Cases. As such, the relief requested herein will allow the Debtors to maximize the value of the Debtors' estates for the benefit of all stakeholders.

43. Based upon the foregoing, the Debtors submit that retention of the FTI Professionals is a sound exercise of the Debtors' business judgment. As detailed above, Mr. Agam has extensive experience as a senior officer and as an advisor for many troubled companies. In light of the foregoing, the Debtors believe that the retention of FTI is appropriate and in the best interests of the Debtors, their estates, creditors, and other parties in interest, and should be granted in the Cases as requested herein.

## VII. NOTICE

44. The Debtors will provide notice of this Application to: (i) the U.S. Trustee; (ii) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (iii) the Agent (as defined in the First Day Declaration); and (iv) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[*Remainder of page intentionally left blank*]

## VIII.  CONCLUSION

WHEREFORE, for the reasons set forth herein, in the Agam Declaration, and in the First Day Declaration, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Application and such other and further relief as is just and proper.

Dated:  September 11, 2018                                  Respectfully submitted,

Open Road Films, LLC, *et al*.,
Debtors and Debtors in Possession

_____/s/ *James Ellis*_____
James Ellis
General Counsel