# EXHIBIT B

Blackline

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al.*,[1] | Case No.: 18-12012 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 6 and ~~————~~51** |

**~~INTERIM~~FINAL ORDER, PURSUANT TO SECTIONS 105(a), 361, 362, 363(c), 503(b), AND 507(b) OF THE BANKRUPTCY CODE, (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, ~~(III) SETTING FINAL HEARING,~~ AND (~~IV~~III) GRANTING RELATED RELIEF**

Upon the ~~motion (the~~ *Debtors' Motion for Entry of Interim and Final Orders Pursuant to Sections 105(a), 361, 362, 363(c), 503(b), and 507(b) of the Bankruptcy Code, (I) Authorizing Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Setting Final Hearing, and (IV) Granting Related Relief* [Docket No. 6] (the "Cash Collateral Motion"),[2] ~~of~~filed by Open Road Films, LLC ("Open Road Films") and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), for, among other things entry of this ~~interim~~final order (the "~~Interim~~Final Order") pursuant to sections 105, 361, 362, 363, 503, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rules 2002-1, 4001-2, and 9013-1, among other things:

(i) authorizing the Debtors'~~:~~ use of the Prepetition Collateral, including Cash Collateral (each as

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.). The Debtors'~~:~~ address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to those terms in the Cash Collateral Motion.

defined below), subject to and pursuant to the terms and conditions set forth in this ~~Interim~~Final Order; (ii) granting certain prepetition secured parties adequate protection; (iii) approving certain stipulations by the Debtors; (iv) subject to the entry of ~~the~~this Final Order ~~(as defined below)~~, waiving the Debtors~~'~~' right to surcharge the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code, the "equity of the case" exception pursuant to section 552(b) of the Bankruptcy Code, or the equitable doctrine of marshaling or any other similar doctrine with respect to any of the Prepetition Collateral; (v) vacating and modifying the automatic stay to the extent set forth ~~herein~~in the Cash Collateral Motion; and (vi) scheduling a final hearing on the Cash Collateral Motion to consider entry of a final order ~~(the "Final Order")~~ granting the relief requested in the Cash Collateral Motion on a final basis; and the Court having reviewed the Cash Collateral Motion and the First Day Declaration and all exhibits thereto; and the Court having reviewed any objections to the Cash Collateral Motion; and the Court having held an interim hearing on September 7, 2018 pursuant to Bankruptcy Rule 4001(b)(2) (the "Interim Hearing") and a final hearing on October 2, 2018 (the "Final Hearing") to consider the relief requested in the Cash Collateral Motion; and upon the record of the Interim Hearing and the Final Hearing; and upon due deliberation and consideration and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**[3]

    **A.**    **Petition Date**:  On September 6, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  ~~No~~On

---

[3]   The findings and conclusions set forth herein constitute the Court~~'~~'s findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

1:23684184.1

(i)    0

September 14, 2018, the Office of the United States Trustee appointed an official committee of unsecured creditors [Docket No. 72] (upon any appointment thereof, the "Committee") as provided for under section 1102 of the Bankruptcy Code has been appointed.

B.  **Jurisdiction**.  This Court has core jurisdiction over these Cases, the Cash Collateral Motion, and the parties and property affected hereby under 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the Cash Collateral Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.  **Notice**.  The notice given by the Debtors of the Cash Collateral Motion and of the Interim Hearing was and Final Hearing were proper, timely, and adequate and sufficient notice under the circumstances and complies with Bankruptcy Rule 4001(b).

D.  **Debtors' Stipulations**.  Without prejudice to the rights of any other party in interest (but subject to the limitations thereon contained in paragraph 11 below) the Debtors admit, stipulate and agree that:

(i)  **Senior Secured Credit Agreement**.  Open Road Films, as borrower, Open Road Releasing, LLC ("Holdings"), as a Pledgor, the guarantors referred to therein (the "Guarantors" and, together with the Borrower and Holdings, "the "Prepetition Obligors"), Bank of America, N.A., as lender and L/C Issuer and each of the lenders party thereto (together, the "Prepetition Secured Lenders"), and Bank of America, N.A., as administrative agent (in such capacity the "Agent" and, together with the Prepetition Secured Lenders, the "Prepetition Secured Parties"), are party to that certain *Second Amended and Restated Credit, Security, Guaranty and Pledge Agreement*, dated as of April 8, 2015 (as the same has been and may be amended, restated, amended and restated, refinanced, replaced, supplemented, or otherwise

modified prior to the Petition Date, the "Senior Secured Credit Agreement" and, together with all other Loan Documents (as defined therein), the "Senior Secured Loan Documents").

(ii)     Senior Secured Indebtedness.  As of the Petition Date, the outstanding aggregate principal amount owing under the Senior Secured Credit Agreement was $90,750,000.00 USD (together with all other outstanding amounts due under the Senior Secured Credit Agreement, including interest, fees, premiums, and expenses, the "Senior Secured Indebtedness").

(iii)     Prepetition Collateral.  The Senior Secured Indebtedness is secured by valid, binding, perfected first-priority (subject only to any senior valid, binding and perfected Specified Permitted Encumbrances[4]) security interests in and liens (the "Senior Secured Liens") on all Collateral of the Prepetition Secured Parties, including: with respect to Holdings, all of the issued and outstanding capital stock, partnership interests, membership interests, beneficial interests or other Equity Interests of or in Open Road Films (the "Pledged Borrower Securities") and the proceeds, including cash proceeds, of the Pledged Borrower Securities (the "Pledged Borrower Collateral"); and, with respect to Open Road Films and the Guarantors (each, together with Holdings, a "Loan Party"), all of such Loan Party's right, title and interest in and to all real and personal property, tangible and intangible, wherever located or situated and whether now owned, presently existing or hereafter acquired or created, including, but not limited to, all goods, accounts, instruments, inter-company obligations, contract rights, partnership and joint venture interests, documents, chattel paper, general intangibles, goodwill, equipment, machinery, fixtures, fee and leasehold interests in real property, inventory, investment property, copyrights, trademarks, trade names, insurance policies (including any key man policies), insurance

---

[4]     Unless otherwise defined herein, capitalized terms used in this paragraph (D)(iii) shall have the meanings ascribed to them in the Senior Secured Credit Agreement.

proceeds, cash, deposit accounts, securities accounts, letter-of-credit rights, supporting obligations, the Pledged Subsidiary Collateral and other securities, all amounts on deposit in the Collection Accounts and in the other Collateral Accounts and any proceeds of any thereof, products of any thereof or income from any thereof, further including but not limited to, all of such Loan Party's right, title and interest in and to each and every Picture, the scenario, screenplay or script upon which a Picture is based, all of the properties thereof, tangible and intangible, and all domestic and foreign copyrights and all other rights therein and thereto, of every kind and character, whether now in existence or hereafter to be made or produced, and whether or not in possession of such Loan Party, including with respect to each and every Picture and without limiting the foregoing language, each and all of the following particular rights and properties (in each case to the extent they are now owned or hereafter created or acquired by such Loan Party):

 i. all scenarios, screenplays, teleplays and/or scripts at every stage thereof;

 ii. all common law and/or statutory copyright and other rights in all literary and other properties (hereinafter called "said literary properties") that form the basis of such Picture and/or that are or will be incorporated into such Picture, all component parts of such Picture consisting of said literary properties, all motion picture, television program or other rights in and to the story, all treatments of said story and said literary properties, together with all preliminary and final screenplays used and to be used in connection with such Picture, and all other literary material upon which such Picture is based or from which it is adapted;

 iii. all rights for all media in and to all music and musical compositions used and to be used in such Picture, if any, including, each without limitation, all rights to record, re-record, produce, reproduce or synchronize all of said music and musical compositions, including, without limitation, reuse fees, royalties and all other amounts payable with respect to said music and musical compositions;

 iv. all tangible personal property relating to such Picture, including, without limitation, all exposed film, developed film, positives, negatives, prints, positive prints, answer prints, magnetic tapes and other digital or electronic

1:23684184.1

storage media, special effects, preparing materials (including interpositives, duplicate negatives, internegatives, color reversals, intermediates, lavenders, fine grain master prints and matrices, and all other forms of pre-print elements), sound tracks, cutouts, trims and any and all other physical properties of every kind and nature relating to such Picture whether in completed form or in some state of completion, and all masters, duplicates, drafts, versions, variations and copies of each thereof, in all formats whether on film, videotape, disk or otherwise and all music sheets and promotional materials relating to such Picture (collectively, the "Physical Materials");

v.    all collateral, allied, subsidiary and merchandising rights appurtenant or related to such Picture including, without limitation, the following rights: all rights to produce remakes, spin-offs, sequels or prequels to such Picture based upon such Picture, said literary properties or the theme of such Picture and/or the text or any part of said literary properties; all rights throughout the world to broadcast, transmit and/or reproduce by means of television (including commercially sponsored, sustaining and subscription or "pay" television) or by any process analogous thereto, now known or hereafter devised, such Picture or any remake, spin-off, sequel or prequel to the Picture; all rights to produce primarily for television or similar use, a motion picture or series of motion pictures, or other Picture by use of film or any other recording device or medium now known or hereafter devised, based upon such Picture, said literary properties or any part thereof, including, without limitation, based upon any script, scenario or the like used in such Picture; all merchandising rights including, without limitation, all rights to use, exploit and license others to use and exploit any and all commercial tie-ups of any kind arising out of or connected with said literary properties, such Picture, the title or titles of such Picture, the characters of such Picture and/or said literary properties and/or the names or characteristics of said characters and including further, without limitation, any and all commercial exploitation in connection with or related to such Picture, any remake, spin-off, sequel or prequel thereof and/or said literary properties;

vi.    all statutory copyrights, domestic and foreign, obtained or to be obtained on such Picture, together with any and all copyrights obtained or to be obtained in connection with such Picture or any underlying or component elements of such Picture, including, in each case without limitation, all copyrights on the property described in subparagraphs "i." through "v." inclusive, of this definition, together with the right to copyright (and all rights to renew or extend such copyrights, if applicable) and the right to sue in the name of any such Loan Party for past, present and future infringements of copyright;

vii.    all insurance policies connected with such Picture and all proceeds that may be derived therefrom;

viii.   all rights to distribute, sell, rent, license the exhibition of and otherwise exploit and turn to account such Picture in all media (whether now known or hereafter developed), the Physical Materials, the motion picture, television program or other rights in and to the story and/or other literary material upon which such Picture is based or from which it is adapted, and the music and musical compositions used or to be used in such Picture;

ix.   any and all sums, claims, proceeds, money, products, profits or increases, including money profits or increases (as those terms are used in the UCC or otherwise) or other property obtained or to be obtained from the distribution, exhibition, sale or other uses or dispositions of such Picture or any part of such Picture in all media (whether now known or hereafter developed), including, without limitation, all sums, claims, proceeds, profits, products and increases, whether in money or otherwise, from a sale and leaseback or other sale, rental or licensing of such Picture and/or any of the elements of such Picture including, without limitation, from collateral, allied, subsidiary and merchandising rights, and further including, without limitation, all monies held in any Collection Account;

x.   the dramatic, nondramatic, stage, television, radio and publishing rights, title and interest in and to such Picture, and the right to obtain copyrights and renewals of copyrights therein, if applicable;

xi.   the name or title of such Picture and all rights of such Loan Party to the use thereof, including, without limitation, rights protected pursuant to trademark, service mark, unfair competition and/or any other applicable statutes, common law, or other rule or principle of law;

xii.   any and all contract rights and/or chattel paper that may arise in connection with such Picture;

xiii.   all accounts and/or other rights to payment that such Loan Party presently owns or that may arise in favor of such Loan Party in the future, including, without limitation any and all refunds in connection with any VAT or value added tax, all accounts and/or rights to payment due from Persons in connection with the distribution of such Picture, or from the exploitation of any and all of the collateral, allied, subsidiary, merchandising and other rights in connection with such Picture;

xiv.   any and all "general intangibles" (as that term is defined in Section 9-102(42) of the UCC) not elsewhere included in this definition, including, without limitation, any and all general intangibles consisting of any right to payment that may arise in connection with the distribution or exploitation of any of the rights set out herein, and any and all general intangible rights in favor of such Loan Party for services or other performances by any third parties, including actors, writers, directors, individual producers and/or any

and all other performing or nonperforming artists in any way connected with such Picture, any and all general intangible rights in favor of such Loan Party relating to licenses of sound or other equipment, or licenses for any photograph or photographic or other processes, and any and all general intangibles related to the distribution or exploitation of such Picture including general intangibles related to or that grow out of the exhibition of such Picture and the exploitation of any and all other rights in such Picture set out in this definition;

xv.   any and all "goods" (as defined in Section 9-102(44) of the UCC) including, without limitation, "inventory" (as defined in Section 9-102(48) of the UCC) that may arise in connection with the creation, production or delivery of such Picture, which goods are owned by such Loan Party pursuant to any Rights Acquisition Agreement or Distribution Agreement or otherwise;

xvi.  all and each of the rights, regardless of denomination, that arise in connection with the acquisition, delivery, distribution, or other exploitation of such Picture;

xvii. any and all documents issued by any pledgeholder or bailee with respect to such Picture or any Physical Materials (whether or not in completed form) with respect thereto;

xviii. any and all rights of such Loan Party under any Distribution Agreements relating to such Picture, including, without limitation, all rights to payment thereunder;

xix.  any and all rights of such Loan Party under contracts relating to the production or acquisition of such Picture or otherwise, including, but not limited to, all such contracts that have been delivered to the Administrative Agent pursuant to this Agreement;

xx.   any rebates, credits, grants or other similar benefits relating to any Picture (including any Approved Tax Credit);

xxi.  any and all Production Accounts or other deposit or securities accounts established by any Loan Party with respect to a Picture; and

xxii. all products and proceeds of the foregoing (collectively, the "Prepetition Collateral").

(iv)   <u>Validity of Senior Secured Indebtedness and Senior Secured Liens.</u>

(a)   The Senior Secured Indebtedness constitutes the legal, valid and binding obligations of the Prepetition Obligors, enforceable against them respectively in

accordance with the terms of the Senior Secured Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Senior Secured Indebtedness (including payments made to the Prepetition Secured Parties or applied to or paid on account of the Senior Secured Indebtedness prior to the Petition Date) is subject to avoidance, recharacterization, recovery, reduction, disgorgement, or subordination or any other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law.  The Senior Secured Indebtedness constitutes allowed claims against each of the applicable Debtors'' estates.

(b)     The Senior Secured Liens: (i) secure the Senior Secured Indebtedness; (ii) are valid, binding, perfected and enforceable liens on and security interests in the Prepetition Collateral, including the Cash Collateral (as defined herein); (iii) are not subject to avoidance, recharacterization, recovery, reduction, disgorgement, or subordination or any other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (iv) are subject and subordinate only to (1) senior valid, binding, and perfected Specified Permitted Encumbrances (as defined in the Senior Secured Credit Agreement) and (2) from and after the entry of ~~this~~the Interim Order, the Carve Out (as defined herein).

**E.     Releases by the Debtors**.  Without prejudice to the rights of any other party in interest (but subject to the limitations thereon contained in paragraph 11 below) ~~and subject to the entry of the Final Order~~, each Debtor and its estate unconditionally, irrevocably, and fully releases, waives, and discharges the Prepetition Secured Parties, together with their respective affiliates, agents, attorneys, financial advisors, consultants, shareholders, managers, owners, partners, members, officers, directors, and employees, and predecessors and successors in interest, of and from any and all "claims" (as defined in the Bankruptcy Code), counterclaims,

causes of action, defenses, setoff, recoupment, damages, injuries, and allegations, whether known or unknown, whether arising at law or in equity, solely with respect to the Senior Secured Loan Documents and any document related thereto or the transactions contemplated thereunder, including, without limitation, (a) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code, or under any other similar provisions of applicable state or federal law, (b) any so-called "lender liability" or equitable subordination claims or defenses, and (c) any right or basis to challenge or object to the amount, validity, enforceability, priority, perfection or non-avoidability of the liens or claims of the Prepetition Secured Parties; *provided, however*, that nothing herein shall operate as a release or waiver of any claims or causes of action solely on account of any act taken after the Petition Date. The Debtors*'* acknowledgments, stipulations, and releases set forth in paragraphs D and E of this ~~Interim~~Final Order shall be binding on the Debtors and their respective representatives, successors and assigns, and on each of the Debtors*'* estates, and, subject to the challenge provisions contained in paragraph 11 herein, all creditors thereof and holders of interests therein and each of their respective representatives, successors and assigns, including, without limitation, ~~any~~the Committee or any trustee or other representative appointed in these Cases, whether such trustee or representative is appointed in chapter 11 or chapter 7.

F.  **Cash Collateral**. Subject to paragraph 11 of this ~~Interim~~Final Order, all cash and cash equivalents of the Debtors, including, without limitation, all proceeds of any Prepetition Collateral, whenever and wherever acquired shall constitute cash collateral as contemplated by section 363 of the Bankruptcy Code (the "Cash Collateral"); *provided* that proceeds from the feature film known as "*AXL*" ("AXL Proceeds") shall be treated in accordance with paragraph

1:23684184.1

(i)     0

27 of this Final Order and not included within the definition of or otherwise treated as Cash Collateral for purposes of this Final Order or otherwise.

G. **Need to Use Prepetition Collateral and Cash Collateral**. The Debtors have an immediate need to use certain of the Prepetition Collateral, including the Cash Collateral, for, among other things, working capital and other general corporate purposes and the costs and expenses of administering their estates during the Cases. The Debtors' access to sufficient working capital and liquidity through the use of Prepetition Collateral, including the Cash Collateral, is of vital importance to, and in the best interests of, the Debtors and their estates and creditors, and will allow for the continued operation of the Debtors' businesses and enhance the Debtors' prospects for a successful reorganization.

H. **Good Faith**. ~~This~~The Interim Order ~~has~~and this Final Order have each been the subject of negotiations conducted in good faith and at arm's length between the Debtors, the Agent, the Committee, and the other Prepetition Secured Parties. Any financial accommodations made to the ~~Debtor~~Debtors by the Agent and the other Prepetition Secured Parties pursuant to ~~this~~the Interim Order or this Final Order shall be deemed to have been extended by the Agent and the other Prepetition Secured Parties in good faith~~, as that term is used in section 363(m) of the Bankruptcy Code,~~ and the Agent and the other Prepetition Secured Parties shall be entitled to all protections and benefits afforded thereby.

I. **Consent to Use of Cash Collateral; Adequate Protection; Business Judgment**. The Prepetition Secured Parties have consented, conditioned on the entry of this ~~Interim~~Final Order, to the Debtors' proposed use of the Prepetition Collateral, including the Cash Collateral, solely on the terms and conditions set forth herein. The terms on which the Prepetition Secured Parties have agreed to the Debtors' use of the Prepetition Collateral, including the Cash

Collateral, are fair and reasonable and constitute reasonably equivalent value and fair consideration, and the adequate protection arrangements included in such terms are appropriate pursuant to sections 361, 362, and 363 of the Bankruptcy Code. The Debtors' agreement to such terms reflects the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

Based on the foregoing findings, acknowledgements, and conclusions, and upon the record made before the Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. **Approval of Cash Collateral Motion**. The Cash Collateral Motion is granted on ~~an interim~~a final basis on the terms and conditions set forth in this ~~Interim Order. The rights of all parties in interest to object to entry of a final order are reserved. This Interim~~Final Order. All objections to the Cash Collateral Motion, to the extent not withdrawn or resolved, are overruled. This Final Order shall become effective immediately upon its entry.

2.     **Authorization to use Prepetition Collateral, including Cash Collateral**.  The Debtors are hereby authorized to continue to use the Prepetition Collateral, including Cash Collateral, for working capital and other general corporate purposes and the costs and expenses of administering their estates during the Cases, *provided* that the Debtors²' use of Cash Collateral shall be in accordance with the Approved Budget (as described and defined herein), subject to the Permitted Variances (each as defined below); *provided, further*, that the Debtors shall not be permitted to use Prepetition Collateral, including Cash Collateral, other than in accordance with the terms of this Final Order or any other order of this Court.

3.     **Approved Budget**.   Attached as **Exhibit 1** to this ~~Interim~~Final Order is a 13-week cash flow forecast (as updated every two Periods (each "Period" reflecting the Period end date shown on the Approved Budget) by a 13-week cash flow forecast through the same period as the Approved Budget and acceptable to the Prepetition Secured Parties in their sole and absolute discretion, the "Approved Budget") setting forth all projected cash receipts and cash disbursements by Period.  A budget update that is submitted to the Prepetition Secured Parties will be deemed to amend the Approved Budget if approved by the Required Lenders (as defined in the Senior Secured Credit Agreement), *provided* that such update will be deemed approved if the Debtors do not receive notice of disapproval thereof from the Agent within three (3) business days of submission. ~~The Debtors'~~*, provided, however*, that neither the Approved Budget or any other budget governing the use of Cash Collateral in the Cases shall contain or otherwise contemplate the use of AXL Proceeds, in whole or in part, unless and until the Debtors have obtained the express written consent of Lakeshore Entertainment Productions LLC ("Lakeshore") or Court authority to use such proceeds, *provided, further, however*, that the Domestic Distribution Fees allocable to the Domestic Theatrical Proceeds (each as defined in the

AXL Interparty Agreement) are to be retained by the Debtors.  If a budget update is submitted by the Debtors to the Prepetition Secured Parties and they receive a notice of disapproval thereof from the Agent, then the previous budget shall continue to operate as the Approved Budget.  The Debtors' use of the Prepetition Collateral, including the Cash Collateral, is subject to and governed by the terms of the Approved Budget and this paragraph 3, and the Prepetition Secured Parties shall have no obligation to permit the use of any of the Prepetition Collateral, including the Cash Collateral, other than in accordance with the terms of the Approved Budget as set forth in this ~~Interim~~Final Order.

(i)     Permitted Variances.  By not later than noon Pacific time on the third business day after the end of the week following the Petition Date, and not later than noon Pacific time on the third business day after the close of each Period thereafter, the Debtors shall deliver a variance report in the form agreed between FTI Consulting, Inc. ("FTI"), on behalf of the Debtors, and Berkeley Research Group, LLC ("BRG"), as financial advisor to the Agent with a copy to the Committee (an "Approved Variance Report") showing comparisons of actual results for each line item against such line item in the Approved Budget for the Period just completed and for all Periods since the Petition Date (i.e., a cumulative variance).   Each Approved Variance Report shall indicate whether there are any adverse variances that exceed the "Permitted Variances", which means up to 10% on the following line items, in each case measured on a cumulative basis:

i.    Total Receipts;
ii.   Total Distribution Outflows;
iii.  Minimum Guarantees;
iv.   Total Participation Outflows;
v.    Total Personnel & Operating Outflows; and
vi.   Restructuring  (excluding  the  Prepetition  Secured  Parties'
      professionals).

The Debtors and the Agent may modify the limitations set forth in this paragraph ~~3~~3, except to the extent such limitations apply expressly to Lakeshore, by written agreement and on notice to ~~any~~the Committee, without the need for further notice to or action of the Court or any other party, unless the modifications are adverse to the Debtors in which case such modification shall require either the Committee's consent or an order of the Court on notice to parties in interest.

4. **Adequate Protection**. The Prepetition Secured Parties are entitled, until the indefeasible repayment of the Senior Secured Indebtedness in full, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including Cash Collateral, for any diminution in the value of their interests in the Prepetition Collateral and solely to the extent of any decrease in such value, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value or actual consumption) of Cash Collateral and any other Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (each, a "Diminution Claim"). As adequate protection for such Diminution Claims and solely to the extent of any decrease in the value of their respective interests in the Prepetition Collateral (including the Cash Collateral) resulting from the use of Cash Collateral or the use, sale, lease of all other Prepetition Collateral, the Prepetition Secured Parties are granted, *nunc pro tunc* as of the Petition Date, the following adequate protection (collectively, the "Adequate Protection Provisions"):

(i) Adequate Protection Liens. The Prepetition Secured Parties are granted liens on ~~(a)~~ all property of the Debtors or their respective estates, now existing or hereinafter acquired, and the proceeds thereof ~~and (b) subject to the entry of a Final Order, any proceeds of the Debtors'~~, but excluding (i) all of the Debtors' commercial tort claims, (ii) all of the AXL

Proceeds (subject only to the terms and conditions of the Lakeshore Agreements); (iii) all of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar federal, state, local or foreign law (the "Avoidance Actions"), and (iv) the proceeds of the claims set forth in clauses (i) and (iii) (the foregoing collateral, the "Adequate Protection Collateral" and the foregoing adequate protection the "Adequate Protection Liens"); *provided*, *however*, that with respect to the Debtors' temporary occupancy rights at One Hundred Towers L.L.C., the Adequate Protection Collateral will include only the economic value of, and any other proceeds and products of, such leasehold interests or occupancy rights, and not such interests or rights themselves. ~~The~~Without limiting the rights to adequate protection of the Participation Liens and the Guild Liens (as set forth below), the Adequate Protection Liens shall be junior only to (a) senior valid, binding and perfected Specified Permitted Encumbrances, (b) any and all rights of Lakeshore arising from or relating to the Lakeshore Agreements, (c) valid liens in existence as of the Petition Date that are perfected subsequent to such date as permitted by section 546(b) of the Bankruptcy Code, and (~~c~~d) payment of the Carve Out. For the avoidance of doubt, any claim or cause of action held by a Prepetition Secured Party against any Debtor, non-Debtor affiliate of any Debtor, or any other party is not an Avoidance Action.

(ii)     Adequate Protection Superpriority Claims. ~~The~~Without limiting the rights to adequate protection of the Participation Liens and the Guild Liens (as set forth below), the Prepetition Secured Parties are granted allowed claims pursuant to section 507(b) of the Bankruptcy Code against the Debtors with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter

arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, or 1113 or 1114 of the Bankruptcy Code (the "Adequate Protection Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their estates and all proceeds thereof, subject only to the payment of the Carve Out and any and all rights, title and interest of Lakeshore arising from or relating to any and all agreements to which any or all of the Prepetition Secured Parties and Lakeshore are a party, including but not limited to the AXL Interparty Agreement (as defined herein) (collectively, the "Lakeshore Agreements"); *provided, however,* that the Adequate Protection Superpriority Claims shall not be satisfied out of the proceeds of Avoidance Actions.

(iii)    Interest, Fees and Expenses.  Without further application to this Court, the Debtors are authorized and directed to pay forthwith in cash: (1) all accrued and unpaid interest through the Petition Date owed under the Senior Secured Credit Agreement, including, without limitation, payment of all outstanding default interest; (2) all accrued and unpaid fees and disbursements owed to the Prepetition Secured Parties, including all reasonable and documented out-of-pocket fees and expenses of counsel and other professionals of the Prepetition Secured Parties, as provided under the Senior Secured Loan Documents incurred prior, on or after the Petition Date; and (3) current monthly payment of all fees, costs, expenses, and interest (at the default rate in effect under the Senior Secured Credit Agreement immediately prior to the

Petition Date) arising or accruing after the Petition Date with respect to outstanding Senior Secured Indebtedness.

(iv) <u>Payment of Prepetition Secured Parties' Professional Fees and Expenses</u>. The Debtors shall pay the reasonable and documented professional fees and expenses of counsel to (including Paul Hastings LLP and Ashby & Geddes, P.A.), and BRG, as financial advisor to, the Prepetition Secured Parties within ten (10) business' days (if no written objection is received within such ten (10) business day period) after such professional has delivered an invoice, substantially in the form provided to the Debtors to date, describing such fees and expenses; *provided*, *however*, that any such invoice may be redacted to protect privileged, confidential or proprietary information, with a copy of such invoices to the U.S. Trustee and ~~any~~the Committee. Written objections to payment of such fees and expenses, which may be asserted only by the Debtors, the U.S. Trustee and ~~any~~the Committee, must contain a specific basis for the objection and quantification of the undisputed amount of the fees and expenses invoiced; failure to object with specificity or to quantify the undisputed amount of the invoice subject to such objection will constitute a waiver of any objection to such invoice. None of such fees and expenses shall be subject to the Approved Budget or Court approval or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; *provided, however*, that if an objection to a professional's invoice is timely received, the Debtors shall be required to pay only the undisputed amount of the invoice and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

(v)     Nature of Payments.  All amounts paid as adequate protection are deemed permitted uses of Cash Collateral.  ~~Neither~~None of the Debtors ~~nor~~, the Prepetition Secured Parties, Lakeshore, the Guilds, or the Committee waive any rights regarding the characterization or application of any payment made in connection with the Adequate Protection Provisions and ~~this~~the Interim Order or this Final Order.

**5.      Reporting; Access to Records**.  The Debtors shall comply with the reporting requirements set forth in the Senior Secured Loan Documents and any related documents; *provided, however*, that, except as set forth in the immediately following proviso,  the deadline for submitting any materials that would otherwise be due under the Senior Secured Loan Documents on or before October ~~5,~~4, 2018, is extended through and including October 5, ~~2018; *provided, further*, that the Borrowing Base Certificate and other information required to be delivered under Section 6.02(h) of the Senior Secured Credit Agreement shall be delivered on or before September 17,~~ 2018.  In addition to, and without limiting, whatever rights to access the Prepetition Secured Parties have under such documents: (i) upon reasonable notice, at reasonable times, and for a reasonable number of times during normal business hours, the Debtors shall permit representatives, agents and employees of the Prepetition Secured Parties to (a) have access to and inspect the Debtors'' properties, (b) examine the Debtors'' books and records, and (c) discuss the Debtors'' affairs, finances and condition with the Debtors'' officers and financial advisors; and (ii) the Debtors shall provide the Prepetition Secured Parties with (a) reasonable access to and cooperation from the CRO (as defined herein) and FTI and (b) evidence reasonably satisfactory to the Agent that, subject to the approval of their respective boards of directors, the CRO has control over the Debtors'' cash to ensure that the Debtors comply with their obligations under this ~~Interim~~Final Order.

6. **Automatic Perfection of Adequate Protection Liens**. The Prepetition Secured Parties are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the Prepetition Secured Parties choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination immediately upon entry of ~~this~~the Interim Order, but subject in all respects to the provisions of ~~this~~the Interim Order and this Final Order.

7. **Right to Seek Additional Adequate Protection**. Under the circumstances, the Court finds that the Adequate Protection Provisions provided herein protect the interests of the Prepetition Secured Parties. The grant of the Adequate Protection Provisions described herein is without prejudice to the right of any of the Prepetition Secured Parties to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest such modification.

8. **Events of Default; Termination of Authorization to Use Cash Collateral**. In the absence of a further order of this Court, and notwithstanding anything herein to the contrary, and after delivery (including delivery by electronic mail or facsimile) of notice of the occurrence of an Event of Default (as defined herein) by the Agent to the Debtors, ~~any~~the Committee, and the U.S. Trustee, the Debtors shall no longer be authorized pursuant to this ~~Interim~~Final Order to

use Cash Collateral other than with respect to the Carve Out and such Cash Collateral use shall automatically terminate on the date upon which any of the following events occurs (such date being referred to herein as the "Termination Date," and each of the following events, an "Event of Default"), *provided* that if any of the following are no longer continuing after five (5) days of notice of the occurrence of an Event of Default, the Debtors shall be able to use Cash Collateral as if the Event of Default had never occurred (a "Cash Collateral Reinstatement"), *provided further* that any breach of the covenant contained in clauses (i), (~~v~~iv), (~~vii~~vi)-(~~x~~ix) or (~~xv~~xiv)-(~~xxiii~~xxi) below or paragraph 14 hereof shall not be subject to any Cash Collateral Reinstatement:

(i)     ~~(i)~~ Entry by the Court of any Order, or the filing by the Debtors, without consent of the Prepetition Secured Parties, of any motion seeking an order, amending, supplementing, extending, or otherwise modifying this ~~Interim~~Final Order or any of its provisions;

~~(ii)     The Final Order is not entered by the Court within thirty (30) days after the Petition Date;~~

(ii)     ~~(iii)~~ Delivery of a Carve Out Trigger Notice;

(iii)     ~~(iv)~~ Failure of the Debtors to comply with any of the terms or provisions of this ~~Interim~~Final Order;

(iv)     ~~(v)~~ Payment by the Debtors of any expenses other than in accordance with the Approved Budget (including the Permitted Variances);

(v)     ~~(vi)~~ The Debtors shall exceed any of the Permitted Variances listed in paragraph 3 of this ~~Interim~~Final Order;

(vi) (vii) Entry by the Court, or the filing by any Debtor of a motion seeking entry, of any order permitting, surcharge of or recovery from any portion of the Prepetition Collateral (or from the Prepetition Secured Parties directly) any costs or expenses of preserving or disposing of the Prepetition Collateral under section 506(c) or section 552(b) of the Bankruptcy Code (or otherwise);

(vii) (viii) Entry by the Court of any order invalidating, disallowing, or limiting in any respect, as applicable, the Senior Secured Indebtedness or the Senior Secured Liens;

(viii) (ix) Any of the Adequate Protection Liens shall cease to be valid, binding, and perfected liens with the priority and to the extent provided in this Interim Final Order;

(ix) (x) Entry Except as may be set forth herein with respect to the Participation Liens and the Guild Liens, entry by the Court, or the filing by the Debtors of any motion seeking entry, of any order, whether in connection with a request for approval of postpetition debtor-in-possession financing under section 364(c) or (d) of the Bankruptcy Code or otherwise, (a) granting priority to any lien or other encumbrance senior to or pari passu with any Adequate Protection Lien or the Senior Secured Liens or (b) granting priority to any claim or administrative expense senior to or pari passu with any Adequate Protection Superpriority Claim or the Senior Secured Indebtedness;

(x) (xi) Entry by the Court of any order granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code with respect to any property of the Debtors with an aggregate value in excess of $200,000, but excluding any such relief consented to by the Prepetition Secured Parties;

(xi) (xii) Reversal, vacatur, or modification of this Interim Final Order;

(xii)    (xiii) Entry by the Court, or the filing by the Debtors of any motion seeking entry, of an order dismissing any of the Cases, converting any of the Cases to cases under chapter 7 of the Bankruptcy Code, or appointing a trustee or examiner pursuant to section 1104 of the Bankruptcy Code in any of the Cases;

(xiii)    (xiv) Failure of the Debtors to make any payment provided for under this InterimFinal Order within five business days of the date such payment is due;

(xiv)    (xv) Failure of the Debtors to file, within two (2) days of the Petition Date, a motion, in form and substance reasonably satisfactory to the Agent, seeking approval of bidding procedures for the sale of all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code (the "Bidding Procedures Motion");(xvi)    Failure of the Debtors to obtain entry of an order of the Court, in form and substance reasonably satisfactory to the Agent, approving the Bidding Procedures Motion (the "Bidding Procedures Order") within thirty (30) days after the Petition Date;

(xv)    Establishment of a deadline for the receipt of bids for a Sale (as defined below) that is more than fifty-eight (58) days after the Petition Date;

(xvi)    Establishment of a date for commencement of an auction with respect to a Sale that is more than sixty-three (63) days after the Petition Date;

(xvii)    Failure to obtain entry of an order, in form and substance reasonably satisfactory to the Agent, of the Court approving the sale of all or substantially all of the Debtors'' assets (the "Sale") within sixty-five (65) days after the Petition Date;

(xviii)    Failure to close on the Sale within seventy-two (72) days after the Petition Date;

(xix)     Either (A) the Debtors shall not ~~shall~~ continuously retain Amir Agam of FTI, or such other person reasonably acceptable to the Prepetition Secured Parties, as Chief Restructuring Officer on terms and scope of authority reasonably acceptable to the Prepetition Secured Parties (the "CRO"), (B) the CRO shall not have full control over the Approved Budget contemplated by paragraph 3 of this ~~Interim~~Final Order or the Approved Variance Report contemplated by paragraph 3 of this ~~Interim~~Final Order, (C) the Prepetition Secured Parties shall not have reasonable access to and cooperation from the CRO and FTI as contemplated by paragraph 5 of this ~~Interim~~Final Order, (D) the CRO shall not have control over the Debtors' cash to ensure that the Debtors comply with their obligations under this ~~Interim~~Final Order as contemplated by paragraph 5 of this ~~Interim~~Final Order, or (E) FTI, or such other person reasonably acceptable to the Prepetition Secured Parties, shall not have full control over the marketing and sales process described in the Bidding Procedures Motion;

(xx)     Any Debtor seeks approval, or publicly announces that it will seek approval, of a plan of reorganization that is not supported by the Prepetition Secured Parties and that does not satisfy the Senior Secured Indebtedness in full and in cash on its effective date; or

(xxi)     Occurrence of the effective date of a plan of reorganization, or the consummation of a sale of all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code.

**9.     Rights and Remedies Upon Event of Default; Modification of Automatic Stay**.  Upon the occurrence of the Termination Date, (a) the Debtors' authorization to use Cash Collateral shall terminate, (b) the Adequate Protection Superpriority Claims (if any) shall become due and payable, and (c) and the Prepetition Secured Parties may, upon five business days' written notice to counsel to the Debtors, the U.S. Trustee, and ~~any~~the Committee, (i) set

off amounts in any account of the Debtors maintained with the Prepetition Secured Parties or with respect to which the Prepetition Secured Parties exercise control pursuant to a deposit account control agreement to the extent necessary for payment of the Debtors' obligations under this ~~Interim~~Final Order and/or (ii) exercise any other rights and remedies available under the Senior Secured Loan Documents. Remedies shall be cumulative and nonexclusive. Except as otherwise ordered by the Court, the automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit such action upon the occurrence of the Termination Date and pursuant to the terms set forth herein. Notwithstanding anything to the contrary herein or the occurrence of the Termination Date, all of the rights, remedies, benefits and protections provided to the Prepetition Secured Parties under this ~~Interim~~Final Order shall survive the occurrence of the Termination Date. The Debtors and all parties in interest shall be entitled to seek an emergency hearing before this Court, including to contest whether the Termination Date has occurred under paragraph 8 of this ~~Interim~~Final Order and at which hearing the Debtors shall reserve the right to seek Court approval of a new order approving the use of Cash Collateral and to seek other relief from the Court.

**10. Carve Out**. For purposes hereof, the "Carve Out" means the sum of (a) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (b) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (c) to the extent allowed at any time, whether by interim order, procedural, order, or otherwise, but subject in all respects to the terms of this ~~Interim~~Final Order, all allowed and unpaid professional fees, expenses and disbursements (the "Allowed Professional Fees") incurred or accrued by persons or firms retained by the Debtors pursuant to section 327, 328, or

363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee, ~~if any,~~ pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Prepetition Secured Parties of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice, in each case up to the amount provided for such Professional Persons in the accrual portion of the Approved Budget for the entire period before and inclusive of the date of delivery of a Carve Out Trigger Notice; *provided* that any unused amounts in the "ORF Counsel" line item shall be available for the "ORF Local Counsel" line item, and vice versa~~; *provided, further, that (x) the aggregate amount available to all Professional Persons in the accrual portion of the Approved Budget for the entire period before and inclusive of the date of delivery of a Carve Out Trigger Notice, regardless of whether such amounts are allowed, minus all amounts that have been actually paid, shall be reduced by (y) the amount of the Payroll Carve Out~~; (d) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $250,000 incurred after the first business day following delivery by the Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (d) being the "Post-Carve Out Trigger Notice Cap") and (e) the expenses of paying all of the Debtors' obligations to or on account of their employees or their shared employees for payroll, benefits, vacation pay, and any taxes associated therewith, but only to the extent that such obligations (i) accrue on or before the first business day following delivery by the Prepetition Secured Parties of a Carve Out Trigger Notice and (ii) do not exceed the amounts contained in the Approved Budget for such obligations (the "Payroll Carve Out"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written

notice delivered by email (or other electronic means) by the Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to ~~any~~the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default, stating that the Post-Carve Out Trigger Notice Cap has been invoked. For the avoidance of doubt and notwithstanding anything to the contrary herein, the Carve Out shall be senior to the Senior Secured Indebtedness, Senior Secured Liens, Diminution Claims, Adequate Protection Liens, Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing or relating to the Senior Secured Indebtedness. For the further avoidance of doubt, the funds to be transferred and processed in accordance with paragraph 27 of this Final Order shall not be subject to the Carve Out, and the Carve Out shall not be senior to any such funds.

(i)     <u>No Direct Obligation To Pay Allowed Professional Fees</u>. The Prepetition Secured Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any successor Cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code. Nothing in this ~~Interim~~Final Order or otherwise shall be construed to obligate the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(ii)     <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>. Any payment or reimbursement made prior to the date on which a Carve Out Trigger Notice is delivered to the Debtors (and to counsel to ~~any~~the Committee) in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(iii)    Payment of Carve Out On or After the Termination Declaration Date. Any payment or reimbursement made on or after the date on which a Carve Out Trigger Notice is delivered to the Debtors (and to counsel to ~~any~~the Committee) (x) in respect of any Allowed Professional Fees incurred or accrued after such date shall permanently reduce the Post-Carve Out Trigger Notice Cap on a dollar-for-dollar basis and (y) in respect of any Allowed Professional Fees incurred or accrued before such date shall permanently reduce the Carve Out for the period before such date on a dollar-for-dollar basis.

**11.    Effect of Stipulations on Third Parties**.  The stipulations and admissions contained in paragraph D and the release in paragraph E of this ~~Interim~~Final Order shall be binding on the Debtors, all parties-in-interest, including, without limitation, the Debtors and ~~any~~the Committee, unless, and solely to the extent that an adversary proceeding or other contested matter has been commenced by a party in interest (other than the Debtors) with the requisite standing and authority, against a Prepetition Secured Party in connection with any matter related to the Senior Secured Credit Agreement, in each case by no later than seventy-five (75) days after the date of entry of this ~~Interim~~Final Order or, in the case of the Committee ~~(if appointed), the earlier of such date or the date that is sixty (60) days from its formation~~, November 13, 2018 (the "Challenge Deadline").  In order to facilitate completion of the Committee's investigation by the Challenge Deadline, the Prepetition Secured Parties shall promptly respond to informal discovery requests to be propounded by the Committee with respect to matters under investigation.  The Challenge Deadline may be extended in writing from time to time in the sole discretion of the Prepetition Secured Parties or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline.  If no such adversary proceeding or contested matter is filed by the

Challenge Deadline, then the (w) stipulations and admission contained in paragraph D and the release in paragraph E of this ~~Interim~~Final Order shall become binding on all parties-in-interest, including, for the avoidance of doubt, ~~any~~the Committee ~~appointed in the Case~~, (x) Senior Secured Indebtedness shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (y) Senior Secured Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph D, not subject to defense, counterclaim, recharacterization, subordination or avoidance, and (z) Senior Secured Indebtedness and the Senior Secured Liens shall not be subject to any other or further challenge by the Debtors, ~~any~~the Committee, or any other party in interest, each of whom shall be enjoined from seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors with respect thereto). If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraph D and the release in paragraph E of this ~~Interim~~Final Order shall nonetheless remain binding and preclusive on the Debtors, ~~any~~the Committee, and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged in such timely filed adversary proceeding or contested matter. Nothing in this ~~Interim~~Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee or any other official committee that may be appointed in these Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, claims and defenses with respect to the Senior Secured Indebtedness or the Senior Secured Liens.

12. **Limitation on Use of Cash Collateral**. Notwithstanding anything herein, without the prior written consent of the Prepetition Secured Parties, none of the Cash Collateral or the Carve Out may be used for the following purposes: (i) to object to or contest the validity or enforceability of the Interim Order or Final Order or any obligations outstanding under the Senior Secured Loan Documents; *provided*, *however*, that the Committee may expend up to $~~25,000~~85,000 (the "Investigation Budget") for the fees and expenses incurred in connection with the investigation of, but not litigation, objection or any challenge to, the stipulations and admissions contained in paragraph D and the release in paragraph E; (ii) to assert or prosecute any claim or cause of action against the Prepetition Secured Parties; (iii) to seek to modify any of the rights granted under the Interim Order or Final Order to the Prepetition Secured Parties; (iv) to make any payment in settlement or satisfaction of any prepetition or administrative claim, unless in compliance with the covenants related to the Approved Budget and, with respect to the payment of any prepetition claim or non-ordinary course administrative claim, separately approved by this Court; (v) to object to, contest, delay, prevent or interfere in any way with the exercise of rights and remedies by the Prepetition Secured Parties once an Event of Default has occurred and any applicable notice period has expired (except that Debtors and the Committee may contest or dispute whether an Event of Default has occurred and the Debtors shall be entitled to any notice provisions provided in the Interim Order or in the Final Order); or (vi) except as provided or permitted under the Approved Budget, to make any payment or distribution to any non-Debtor affiliate, equity holder, or insider of any Debtor outside of the ordinary course of business. For the avoidance of doubt, nothing herein shall be deemed to (a) limit the ability of the Committee's professionals to be paid from unencumbered assets for services rendered in the investigation or prosecution of claims against the Prepetition Secured

Parties; (b) preclude the Court from awarding fees and expenses sought by the Committee's professionals pursuant to section 330 of the Bankruptcy Code, or (c) relieve the Debtors or any plan proponent from paying all allowed administrative expenses in full in cash on the effective date of any plan of reorganization or liquidation.

**13.** **Proofs of Claim**. The Prepetition Secured Parties shall not be required to file proofs of claim or requests for payment of administrative expenses for any claims arising under or in connection with the Senior Secured Loan Documents ~~or the Adequate Protection Provisions,~~ but shall be required to file any Diminution Claim with sufficient supporting documentation for such claim. The Debtors~~'~~' admissions, and acknowledgements and the provisions of this ~~Interim~~Final Order shall be deemed to constitute a timely filed proof of claim for the Prepetition Secured Parties. Notwithstanding the foregoing, the Prepetition Secured Parties (or their agent) are authorized and entitled, but are not required, to file (and amend and/or supplement, as each sees fit) a proof of claim and/or proofs of claim ~~and/or requests for payment of administrative expenses for any claim or administrative expense described herein~~. The failure to file any such proof of claim ~~or request for payment of an administrative expense~~ shall not affect the validity or enforceability of any of the Senior Secured Indebtedness or this ~~Interim~~Final Order.

**14.** **Restrictions on Granting Post-Petition Claims and Liens**. ~~It~~Except as may be set forth herein with respect to the Participation Liens and the Guild Liens, it shall be an event of default with respect to the consensual use of Cash Collateral for the Debtors to offer or grant to any person other than the Prepetition Secured Parties any claim or lien that is *pari passu* with or senior to the claims and liens of any of the Prepetition Secured Parties under this ~~Interim~~Final Order, including the Adequate Protection Liens and the Adequate Protection Superpriority

Claims, and the Debtors~~'~~' right to use Cash Collateral under the terms of this ~~Interim~~Final Order shall terminate without further order of the Court immediately upon such event of default.

15.     **Limitation on Charging Expenses Against Prepetition Collateral**.  As a further condition of the Prepetition Secured Parties~~'~~' consent to the Debtors~~'~~' use of the Prepetition Collateral, including the Cash Collateral, and to the payment of the Carve Out, ~~and subject to and effective only upon entry of the Final Order,~~ and except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including a case under chapter 7 of the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral pursuant to (a) section 506(c) of the Bankruptcy Code, (b) the enhancement of collateral provisions of section 552 of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment), or (c) any similar principle of law, without the prior written consent of the Prepetition Secured Parties, and no consent shall be implied from any action, inaction or acquiescence by the Prepetition Secured Parties.  ~~Subject to and effective only upon entry of the Final Order, in~~In no event shall the Prepetition Secured Parties be subject to (a) the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code or (b) the equitable doctrine of "marshaling," or any other similar doctrine with respect to the Prepetition Collateral or the Adequate Protection Collateral.

16.     **Disposition of Collateral**.  Except as expressly permitted in this ~~Interim~~Final Order or as contemplated by the Bidding Procedures Motion or to the extent the Senior Secured Indebtedness would be satisfied in full and in cash as a result thereof and, to the extent required by the Bankruptcy Code, as approved by the Court, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Prepetition Collateral or the Adequate

Protection Collateral without the prior written consent of the Agent and no such consent shall be implied from any action or inaction by the Agent or any order of this Court.

17.      **[Credit Bid**.  Unless the Court orders otherwise, the Prepetition Secured Parties shall have the right to credit bid subject to section 363(k) of the Bankruptcy Code all of their respective claims in connection with any sale (including a Sale) of the Debtors*'* assets under section 363 of the Bankruptcy Code or under a plan of reorganization*, provided that the credit bid is made by the applicable bid deadline and satisfies (whether in cash or by agreement between the Prepetition Secured Parties and the holders of all valid and perfected secured claims senior to the Prepetition Secured Parties' claims) all valid and perfected secured claims senior to the Prepetition Secured Parties' claims.]*

18.      **Preservation of Rights Granted Under ~~the Interim~~Final Order**.  Except with respect to the Carve Out or as expressly provided herein, no claim or lien having a priority senior to or *pari passu* with those granted by this ~~Interim~~Final Order shall be granted or allowed while any portion of the Diminution Claims remain outstanding and the Adequate Protection Liens shall not be subject to or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors*'* estates under section 551 of the Bankruptcy Code or, unless consented to by the Prepetition Secured Parties, subordinate to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

19.      **Secured Guild Considerations**.  Any valid, binding and perfected liens ("Guild Liens") granted to the Directors Guild of America, Inc., Screen Actors Guild—American Federation of Television and Radio Artists, or the Writers Guild of America West, Inc., for themselves and their respective pension and health plans (collectively, the "Guilds"), in

connection with motion pictures produced or distributed by the Debtors, constitute Specified Permitted Encumbrances, each of which may be senior or junior, as applicable, to the Senior Secured Liens. Notwithstanding anything to the contrary in this Final Order, the Guilds agree to the Debtors' use of cash collateral pertaining to Guild Liens, subject to the following conditions (the "Guild Considerations"), and to equivalent application of all reservations, rights and remedies granted to the Prepetition Secured Parties under paragraphs 7, 8(viii), (ix), (x) (but only respect to collateral subject to Guild Liens), (xi), (xii), (xiii), (xx), and (xi) (collectively, the "Guild Termination Events"), 9 (as correlative with the Guild Termination Events), 14, [17], 18, 20, 21, 22, 23, and 25 (but only insofar as any waiver, modification, or amendment would affect rights of the Guilds hereunder) of this Final Order and not otherwise addressed in this paragraph:

(i)     Each Guild is granted Adequate Protection Liens and Adequate Protection Superpriority Claims on the same basis as granted to the Prepetition Secured Parties, in proportion and priority relative to the Prepetition Secured Parties, as may be agreed among the Guilds and the Prepetition Secured Parties, or as determined by the Court, with respect to particular collateral.

(ii)     The Debtors shall pay the actual, reasonable, and documented professional fees and expenses of Bush Gottlieb, a Law Corporation, as Guild counsel, in connection with claims of the Guilds that are secured by Guild Liens ("Secured Guild Claims"), in the same manner as applicable to counsel to the Prepetition Secured Parties under paragraph 4(iv) of this Final Order; *provided, however,* that the amount of fees to be paid in respect of any given calendar month will not exceed $60,000 in the aggregate. Any such fees paid by the Debtors will be treated as an advance by the Debtors recoupable on a dollar-for-dollar basis against any distributions that are ultimately payable in respect of any allowed claims of the Guilds

(including, without limitation, any Secured Guild Claims regarding professional fees that may be allowable under Bankruptcy Code section 506(b) or otherwise).

(iii)     The Debtors shall provide access to the Guilds in connection with the Debtors' books, records, and financial affairs on the same terms and conditions as accorded to the Prepetition Secured Parties under paragraph 5 of this Final Order.

(iv)     Automatic perfection of adequate protection liens shall apply to the Guilds as accorded to the Prepetition Secured Parties under paragraph 6 of this Final Order.

(v)     The Approved Budget will be modified to include: (a) $60,000 per month in respect of professional fees and expenses of Guild counsel pursuant to subparagraph (ii) of this paragraph; and (b) $145,000 as a good faith estimated amount to provide for the payment of residuals and pension and health contributions, payable by the Debtors under collective bargaining agreements, that will accrue during the period of September 6-30, 2018, and become due and owing during the budget period ending November 30, 2018. All parties' rights are reserved regarding the effects that any payment made pursuant to clause (b) of the preceding sentence will have concerning the allowable amount of, and any distributions that should be made in respect of, any claims that the Guilds may assert against the estates in the Cases.

(vi)     In furtherance of determining relative priority as among secured creditors, proofs of claim filed by the Guilds, asserting perfected and senior security interests in certain motion picture rights owned or controlled by the Debtors, will include, for each such motion picture: (a) the name of the relevant grantor or debtor; (b) names of the relevant motion picture titles; (c) Volume and Page numbers indicating recordation of security interests with the United States Copyright Office; (d) UCC filing numbers for each state in which a UCC-1 financing statement or continuation statement has been filed; and (e) sample security agreements, reflecting

the standard forms used by the Guilds in normal course. As consideration for the use of Guild cash collateral, unless otherwise agreed by the Guilds or extended by further order of the Court based on a showing of cause, the Debtors or any other party in interest that has standing to object to a proof of claim must initiate any claim objection, adversary proceeding, or other challenge with respect to Guild Secured Claims no later than 75 days after filing of Guild proofs of claim consistent with this subparagraph (vi).

(vii)     Without limitation of all other rights and remedies reserved to the Guilds, the Guilds expressly reserve all rights to challenge: (a) use of Guild cash collateral to investigate or contest the validity or priority of Guild Liens; or (b) any proposed sale, transfer, lease, encumbrance or other disposition of collateral subject to Guild Liens.

**20.**     **19. Effect of Reversal, Etc.** If any or all of the provisions of this ~~Interim~~Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall, unless expressly provided in such relief, not affect (i) the validity, priority or enforceability of the Adequate Protection Provisions incurred prior to the actual receipt of written notice by the Prepetition Secured Parties of the effective date of such reversal, stay, modification, or vacatur or (ii) the validity, priority or enforceability of the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification, or vacatur, any use of Cash Collateral prior to the actual receipt of written notice by the Prepetition Secured Parties of such reversal, stay, modification, or vacatur shall be governed in all respects by the original provisions of this ~~Interim~~Final Order and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges, and benefits granted in ~~section 363(m) of the Bankruptcy Code and~~ this ~~Interim~~Final Order with respect to all uses of Cash Collateral and all Adequate Protection Provisions.

**21.** ~~20.~~ **Survival of Rights**.  Except as expressly provided in this ~~Interim~~Final Order, the Adequate Protection Provisions and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this ~~Interim~~Final Order shall survive, and shall not be modified, impaired, or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Cases, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases.  The terms and provisions of this ~~Interim~~Final Order shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Provisions and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this ~~Interim~~Final Order shall continue in full force and effect until all Diminution Claims and all allowed claims payable in cash arising from the Adequate Protection Provisions are indefeasibly paid in full in cash.

**22.** ~~21.~~ **Reservation of Rights of Prepetition Secured Parties**.  Notwithstanding anything herein to the contrary, this ~~Interim~~Final Order is without prejudice to, and does not constitute a waiver of, any of the Prepetition Secured Parties' rights with respect to any person or entity other than the Debtors or with respect to any other collateral owned or held by any person or entity other than the Debtors.  The rights of the Prepetition Secured Parties are expressly reserved and entry of this ~~Interim~~Final Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of the following: (a) the Prepetition Secured Parties' rights under the Senior Secured Loan Documents; (b) the Prepetition Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors; (c) any of the Prepetition Secured Parties' rights under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay, (ii)

request dismissal of these Cases, conversion of any of these Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with extended powers, and (iii) propose, subject to section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (d) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the Prepetition Secured Parties.

**23.** ~~22.~~ **Binding Effect; Successors and Assigns; No Third Party Rights**. The provisions of this ~~Interim~~Final Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the Prepetition Secured Parties, ~~any~~the Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Secured Parties and the Debtors and their respective successors and assigns. In consenting to the use of the Prepetition Collateral, including Cash Collateral, on the terms described herein, the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. § 9601 et seq., as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to any of the Debtors, their creditors or estates.

**24.** ~~23.~~ **Effectiveness**. This ~~Interim~~Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this ~~Interim~~Final Order.

**25.** ~~24.~~ **Amendments**. ~~No~~Except with respect to paragraphs 19, 26, and 27, no waiver, modification, or amendment of any of the provisions of this ~~Interim~~Final Order shall be

effective, unless set forth in writing, signed by on behalf of all the Debtors, the Prepetition Secured Parties and, except as provided herein, approved by this Court after notice; *provided, however*, that the Debtors and the Prepetition Secured Parties are hereby authorized to implement any non-material modifications without further notice to or action of this Court or any other party and without further Order of this Court.

25.    Final Hearing.  The Final Hearing is scheduled for October 2, 2018 at 2:00 p.m. (ET) before this Court.  The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, to any other party that has filed a request for notices with this Court, and to the Committee after the same has been appointed, or Committee counsel, if the same shall have been retained.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served no later than September 25, 2018 at 4:00 p.m. (ET) upon the Debtors and their counsel, counsel to the Agent, the Committee after the same has been appointed, or Committee counsel, if the same shall have been retained, and the U.S. Trustee.

26.    **Reservation of Rights**.  For the avoidance of doubt, nothing in this Interim Order shall prejudice (i) the rights of any creditor or party in interest to assert it is entitled to adequate protection or an administrative claim of any priority, or (ii) the rights of the Debtors, their estates, any creditor or party-in-interest to object to any relief sought pursuant to clause (i) of this paragraph.**Adequate Protection of Participation Liens**.  As adequate protection regarding any interest in the Cash Collateral, including but not limited to any security interests (the existence or non-existence, validity, perfection, and priority of which are not determined by this Final Order) of the below-listed parties (the "Participation Counterparties"), respectively, in and to (i) any

given film, (ii) the Debtors' distribution rights with respect to any given film, (iii) any other collateral with respect to any applicable Distribution Agreement, Prints and Advertising Financing and Revenue Participation Agreement ("RPA"), or other operative contract, including but not limited to any escrows, deposits, and segregated funds in connection with same, and/or (iv) products, royalties, commissions, and proceeds thereof (collectively, the assets identified in the foregoing clauses (i), (ii), (iii), and (iv) are referred to herein as the "Participation Collateral," and the respective interests of the Participation Counterparties in and to all Participation Collateral are referred to as "Participation Liens") and, in each case, solely to the extent of any decrease in the value of their respective interests in the Participation Collateral (including the Cash Collateral) resulting from the use of Cash Collateral or the use, sale, or lease of any other applicable collateral, the below-listed Participation Counterparties are hereby granted (x) postpetition replacement liens on their respective Participation Collateral, and the products and proceeds thereof, which shall be deemed fully perfected by entry hereof without further action (the "Participation Replacement Liens"), and (y) allowed superpriority claims pursuant to section 507(b) of the Bankruptcy Code against the Debtors (the "Participation Superpriority Claims"):

| Film | Party |
|------|-------|
| *The Grey* | LD Entertainment LLC |
| *Silent House* | LD Entertainment LLC |
| *Justin Bieber – Believe* | Believe Film Partners, LLC |
| *The Nut Job* | Redrover Co., Ltd. |
|  | Endgame Releasing Company, LLC |
| *The Fluffy Movie* | GSP Fluffy Movie, LLC |
| *The Gunman* | Studiocanal |
|  | Endgame Releasing Company, LLC |
| *Spotlight* | Spotlight Film, LLC |

| | |
|---|---|
| *Gleason* | Amazon Content Services LLC |
| *Max Steel* | Dolphin Max Steel Holdings, LLC |
| *Collide* | IM Global Film Fund, LLC |
| *Before I Fall* | Awesomeness Distribution, LLC |
| *Spark* | Redrover Co., Ltd. |
| *The Promise* | Promise Acquisition, LLC (as assignee of Promise Distribution, LLC) |
| *The Nut Job 2* | Redrover Co., Ltd. |
| *All I See Is You* | All I See Partners 2015 L.P. |
| *Midnight Sun* | Midnight Sun, LLC |
| *Show Dogs* | Riverstone Pictures (Show Dogs) Limited |
| *AXL* | Lakeshore Entertainment Productions LLC and Lakeshore Entertainment Group LLC |
| *Homefront*<br>*A Haunted House 2*<br>*Snowden* | Endgame Releasing Company, LLC |

As a matter of relative priority, the seniority of (a) any given Participation Replacement Lien and any given Participation Superpriority Claim to (b) the Adequate Protection Liens and the Adequate Protection Superpriority Claims granted to the Prepetition Secured Parties will be identical to the seniority of (x) the applicable Participation Lien to (y) the Senior Secured Liens. As a further matter of relative priority, the seniority of (a) any given Participation Replacement Lien and any given Participation Superpriority Claim to (b) the Adequate Protection Liens and the Adequate Protection Superpriority Claims granted to the Guilds will be identical to the seniority of (x) the applicable Participation Lien to (y) the Guild Liens. As a further matter of relative priority, the seniority of (a) any given Participation Replacement Lien and any given Participation Superpriority Claim to (b) any other Participation Replacement Lien and any other Participation Superpriority Claim granted hereunder will be identical to the seniority of the applicable Participation Liens *inter se.*

**27.** **Agreed Provisions Regarding AXL Proceeds.** Unless the Court orders otherwise, the Debtors shall process and transfer all proceeds from the feature film known as "*AXL*" pursuant to and in accordance with paragraph 4(e) of that certain *Interparty Agreement* dated as of December 15, 2016 (the "AXL Interparty Agreement"), including, without limitation, the periodic sweep contemplated by paragraph 4(e)(ii)(x) thereof (which sweep, for the avoidance of doubt, will be effectuated after deduction of the Domestic Distribution Fees allocable to the Domestic Theatrical Proceeds (each as defined in the AXL Interparty Agreement)). Unless the Court orders otherwise, all such proceeds (i) will be applied pursuant to and in accordance with the AXL Interparty Agreement and that certain *Amended and Restated Lakeshore/Open Road Production, Financing and Distribution Agreement* dated as of April 6, 2016 (as amended), (ii) will not be used by the Debtors for any other purpose, including prior to the periodic sweep referenced above, and (iii) will remain subject to any valid, binding and perfected security interests related thereto (which interests will not be primed by the Adequate Protection Liens). For the avoidance of doubt, this Final Order shall constitute authorization from the Court pursuant to Bankruptcy Code section 549(a)(2)(B), and thus any and all funds transferred in accordance with this paragraph shall not be susceptible to avoidance or recovery, whether pursuant to Bankruptcy Code section 549 or otherwise. All parties' rights, if any, are reserved regarding the effects, if any, that any application of funds made pursuant to this paragraph will have concerning the allowable amount of, and any distributions that should be made in respect of, any claims that Lakeshore may assert against the estates in the Cases. Provided that the Debtors and the Prepetition Secured Parties comply with the provisions of this paragraph 27, Lakeshore will not file any motion under Bankruptcy Code sections 362(d) or 365(d)(2) or Bankruptcy Rules 4001(a) or 6006(b) with respect to any agreements relating to the

feature film known as "*AXL*" prior to [TBD], 2018.  The Agent agrees to be bound by and abide by the terms and conditions of the Lakeshore Agreements.

**28.**     **Accounting**.  To the extent that one or more of the Debtors is responsible for collecting, accounting for, and/or reporting in accordance with negotiated revenue participation waterfalls set forth in their respective Distribution Agreements, RPAs, or other operative contracts, they shall continue to provide in the ordinary course of business any accounting, participation statements, and/or audit obligations in connection with the Debtors' receipt or disbursement of all proceeds from the applicable films.  To the extent that one or more of the Debtors receive, have received, or are holding any escrows, deposits, and funds deposited in a segregated account in connection with any Distribution Agreements, RPAs, or other operative contracts with any Participation Counterparties, nothing in this Final Order shall modify the Debtors' obligations to hold, segregate, keep safe, and use them only for restricted purposes, as applicable.

**29.**     **Reservation of Rights Regarding Proceeds.**  Nothing in this Final Order determines any party's relative rights in, or the distribution priority of, the proceeds of any films, any Participation Collateral, or any sale proceeds that may result from the Debtors' subsequent disposition of the Debtors' rights in respect of any given film.  Without limiting the generality of the foregoing, nothing in this Final Order is intended to be, nor shall be construed as, a determination or waiver of any party's legal or equitable rights, remedies, claims or interests in any given film or the proceeds therefrom, or any other rights, remedies, or claims by or against the Debtors or any third parties (including the right to seek additional adequate protection).  All rights of the Debtors, the Committee, the Prepetition Secured Parties, the Guilds, and any Participation Counterparty identified in paragraph 26 of this Final Order are fully reserved.

**30. No Assumption or Rejection.** Nothing in this Final Order constitutes an assumption or rejection of any executory contract, nor impairs the rights and obligations of any party under any contract or applicable law or modifies any cure amount in respect thereof.

**31.** ~~27.~~ **Retention of Jurisdiction**. The Court has and will retain jurisdiction and power to enforce this ~~Interim~~Final Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this ~~Interim~~Final Order.

Dated: ~~September 7,~~October ____, 2018
Wilmington, Delaware

_____
LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Approved Budget**