UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>OPEN ROAD FILMS, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case Nos. 18-12012 (LSS), *et seq.*<br>(Jointly Administered)<br><br>**Hearing Date: November 9, 2018, 10:00 A.M.**<br>**Objections due by: November 2, 2018, 4:00 P.M.** |

**REDROVER CO. LTD.'S MOTION FOR ENTRY OF AN ORDER COMPELLING ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS, ADEQUATE PROTECTION, AND RELATED RELIEF**

Redrover Co. Ltd. ("Movant"), by its undersigned attorney, hereby files this Motion For Entry Of An Order Compelling Assumption Or Rejection Of Executory Contracts, Adequate Protection, And Related Relief, and in support hereof states as follows:

JURISDICTION

1. The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

FACTS

2. On September 6, 2018 (the "Petition Date"), Open Road Films, LLC (the "Debtor") and certain of its affiliates (collectively with the Debtor, the

"Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have managed their affairs and remained in possession of their assets as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3.   On the Petition Date, the Debtor was a party to three distribution agreements (collectively, the "Agreements") with Movant, pursuant to which the Debtor agreed to handle the distribution of three licensed films, The Nut Job, Spark, and The Nut Job 2 (collectively, the "Films"). Each of the three Agreements contains slightly different language, but they contain mostly similar provisions. In each case, Movant licenses the Debtor to distribute the respective film and provides for a waterfall of distribution of the proceeds received by the Debtor on account of the license.

4.   Under each of the Agreements, the Debtor has granted, and Movant retains, a lien or security interest in the proceeds of the Films. Movant recorded a UCC-1 financing statement on June 3, 2011 in the Delaware Secretary of State's Division of Corporations to perfect its security interest.

5.   Upon information and belief, the royalties received on account of the Films are not earned directly by the Debtor but are instead sublicensed to other parties, who bring the Films to market and send the proceeds to the Debtor to be divided in accordance with the Agreements. These parties typically have

subdistribution contracts, but Movant is not in privity with them and is often not informed who they are.

6. On the Petition Date, the Debtors filed a Motion for Entry of Interim and Final Orders, Pursuant to Sections 105(a), 361, 362, 363(c), 503(b), and 507(b) of the Bankruptcy Code, (I) Authorizing Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Setting Final Hearing, and (IV) Granting Related Relief (Docket No. 6) (the "Cash Collateral Motion"), and a final order authorizing the Debtors to use cash collateral (the "Cash Collateral Order") was entered by the Court on October 2, 2018 (Docket No. 135).

7. Under the Cash Collateral Order, the Debtors have been authorized to use ongoing revenues to cover certain administrative expenses of the estates, in accordance with a budget attached to the order. Upon information and belief, the budget reflects revenues that include the proceeds from the Agreements but does not reflect payment to Movant for the ongoing use of the Agreements by the estates.

8. The justification offered by the Debtors for this disparity is that they are hopeful to complete a sale process by the first week of November, and to the extent that the Agreements are assumed, any amounts owed to Movant will be paid as part of a cure. Indeed, since entry of the Cash Collateral Order, the record has

shown progress towards achieving the sale-related milestones proposed by the Debtors at the outset of the case.

9. Because of the relatively short timeframe to conduct a sale, Movant did not oppose entry of a final order, even though the budget did not provide for immediate payment to Movant. Both the face of the Cash Collateral Order and the comments made by the parties and the Court at the final cash collateral hearing, however, were clear that "Participation Counterparties" (as defined in the order, a class that includes Movant in its capacity as producer of the Films) were not waiving any rights or conceding any lien positions.

10. The Debtors successfully obtained an order establishing bidding procedures in this case by the date required under the Cash Collateral Order, but as of the date hereof, it does not appear that they have secured a stalking horse. Therefore, it is impossible to predict whether a buyer may seek to acquire the Agreements as part of a purchase of the Debtors' assets—or whether there will be a buyer at all.

11. Movant was willing to allow the Debtors a reasonable, stated time in order to find a buyer to assume the Agreements, which would include curing the defaults. If that buyer materializes, then the relief requested in this motion may become moot. If no buyer materializes, or there is a delay beyond the November 9,

2018 hearing date to approve the sale, Movant does not want to sustain further loss as a result of any delay.

## RELIEF REQUESTED AND BASIS THEREFOR

12. In this motion Movant requests entry of an order containing the following relief:

- a. Directing that each of the Agreements be rejected by the Debtor automatically within 28 days after entry of the order, except to the extension the Debtor files a motion to assume them and tenders the full cure amount in cash;

- b. Directing that, effective at the same time as the rejection of any of the Agreements, any subdistribution agreement(s) between the Debtor and third parties regarding the respective Film(s) should also be rejected;

- c. Requiring the Debtor to turn over to Movant any remaining deposits or escrows relating to P&A expenses under any of the Agreements;

- d. Modifying the Cash Collateral Order so as to prohibit the use of the revenues received on account of the Agreements except as set forth in the Agreements;

- e. Providing adequate protection to Movant of its interest as counterparty to the Agreements by conditioning Movant's ongoing obligations under the Agreements (including but not limited to the licensing of the intellectual property constituting the Films) upon the Debtor's compliance with the terms described above; and

- f. Granting Movant relief from the automatic stay to terminate any of the Agreements that are rejected by the Debtor and to contract directly with other distributors and third parties with respect to distribution of the Films, including but not limited to any of the parties that had or have subdistribution agreements with the Debtor.

I. **EACH OF THE AGREEMENTS SHOULD BE REJECTED BY THE DEBTOR AUTOMATICALLY WITHIN 28 DAYS AFTER ENTRY OF THE ORDER, EXCEPT TO THE EXTENSION THE DEBTOR FILES A MOTION TO ASSUME THEM AND TENDERS THE FULL CURE AMOUNT IN CASH.**

13. Section 365(d)(2) of the Bankruptcy Code provides in relevant part:

> In a case under Chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract . . . at any time before the confirmation of a plan but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2). "In deciding whether to accelerate the debtor's decision, the court must balance the interests of the contracting party against the interests of the debtor and its estate." *In re Physician Health Corp.*, 262 B.R. 290, 292 (Bankr. D.Del. 2001) (citations omitted). "Whether to shorten the time period, (and by how much), is a matter left to the broad discretion of the bankruptcy court." *In re Monroe Well Services, Inc.*, 83 B.R. 317, 323 (Bankr. E.D.Pa. 1988) (citing *Matter of Whitcomb & Keller Mortgage Co., Inc.*, 715 F.2d 375, 379 (7th Cir. 1983); *In re New York Deli, Ltd.*, 41 B.R. 198 (Bankr.D.Hawaii 1984).

14. The equities in this case clearly favor limiting the time within which the Debtor may assume the Agreements. The most obvious reason is that the Debtor is enjoying the benefits of the Agreements without meeting the burdens. Absent intervention by this Court, the Debtor is incentivized *not* to assume or reject the Agreements for as long as possible: they are essentially borrowing

money, interest-free, from Movant with no maturity date and virtually no security. Movant consented to this impairment for a short time under the Cash Collateral Order to enable the Debtors to facilitate a sale process, but if they are unsuccessful in doing so by the stated deadline, Movant's consent is withdrawn.

15. The court in *Monroe* looked to an early New Jersey case for guidance on how to exercise this broad discretion:

> In determining what constitutes a reasonable time within which a debtor should assume or reject a contract, the court should consider a number of factors, including: The nature of the interests at stake, the balance of the hurt to the litigants, the good to be achieved, the safeguards afforded those litigants, and whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary. Above all, the court should interpret reasonable time consistent with the broad purpose of Chapter 11, which is to permit successful rehabilitation of debtors.

*In re Dunes Casino Hotel,* 63 B.R. 939, 949 (D.N.J.1986) (citations omitted) (cited by *Monroe,* 83 B.R. at 323). Most of these factors also militate in favor of limiting the time for the Debtor to assume or reject the Agreements:

- The nature of the interests at stake: Movant owns the underlying intellectual property, which it has granted the Debtor the right to distribute in exchange for the Debtor's division of the proceeds. The language of the Agreements is even worded such as to find that the proceeds belong to Movant and the Debtor is merely a custodial conduit for their division.

- The balance of the hurt to the litigants, and the good to be achieved: At the moment the Debtor and Movant are at a point of imbalance, significantly favoring the Debtor. The Debtor receives cash and gives only a virtually unsecured debt in return with no

      solid indicator about whether it will be collectable. As a concession towards effectuating a robust sale process, Movant consented for a short time to allow the Debtor to use cash collateral in accordance with the budget, but once that time is up, the balance should tip back to center.

- The safeguards afforded those litigants: at the moment, Movant's primary safeguard is the possibility that a sale of the Agreements will both cure any defaults and provide Movant assurance that a more solvent buyer will be in a position to service the balance of the contracts. Once that safeguard is mooted, Movant will be in significant danger of losing every additional dollar that the Debtor receives on account of the Films.

16. "Above all, the court should interpret reasonable time consistent with the broad purpose of Chapter 11, which is to permit successful rehabilitation of debtors." *Dunes, supra.* The Debtor has requested time to accomplish this purpose, but this time cannot be limitless—especially if the Debtor is not paying for the use of the intellectual property from which it continues to draw income.

17. Therefore, Movant believes that the Debtor should be compelled to assume or reject each of the Agreements within four weeks after the current date scheduled for the sale hearing. This will give the Debtor sufficient time to seek approval of a buyer and close the sale of the Agreements if that is going to be the result.

II. **EFFECTIVE AT THE SAME TIME AS THE REJECTION OF ANY OF THE AGREEMENTS, ANY SUBDISTRIBUTION AGREEMENT(S) BETWEEN THE DEBTOR AND THIRD PARTIES REGARDING THE RESPECTIVE FILM(S) SHOULD ALSO BE REJECTED.**

18. To the extent that the Debtor rejects any of the Agreements, the Debtor's rights in any intellectual property thereunder should be terminated. Should the Debtor attempt to continue its relationships under subdistribution agreements, it would violate Movant's interest in that property. It therefore should not be permitted.

19. Therefore, to the extent that the Debtor is party to an executory contract in which it purports to license to a third party the right to sub-distribute any Films in connection with which the Debtor has rejected the Agreements, it would be appropriate to compel rejection of that subdistribution agreement at the same time.

III. **THE DEBTOR SHOULD TURN OVER TO MOVANT ANY REMAINING DEPOSITS OR ESCROWS RELATING TO P&A EXPENSES UNDER ANY OF THE AGREEMENTS.**

20. Each of the Agreements provides for the contributor, manner of payment, and manner of recoupment of certain prints and advertising costs ("P&A") in connection with its respective Film. The Agreement relating to the Film *Spark* required (at ¶ 3) that Movant make an initial deposit of $5 million towards the P&A into a segregated account in the Debtor's name (the "Spark Escrow Account"), in installments governed by the agreement. Under that

Agreement, the Debtor was permitted to use the funds in the Spark Escrow Account for enumerated purposes only (relating to the P&A for that Film) and only in accordance with a mutually agreed budget. The Debtor was not permitted to use the funds in the Spark Escrow Account for any reason or in any other manner or to commingle the funds from that account with the Debtor's own funds, and the Debtor was obligated to provide regular reporting of disbursements from that account.

21. According to the last report produced by the Debtor, there remains a $400,205.64 balance in the Spark Escrow Account. Regardless of whether the Spark Agreement is rejected, the funds from the Spark Escrow Account should be retuned to Movant in the ordinary course of business. Based upon the timing of the release of the Film and the last reports received from the Debtor, no further P&A expenses should be incurred in connection with Spark, so the funds in that account should be returned to Movant.

22. The Debtor has reported that prepaid P&A funds for Movant's other two Films have already been applied to actual expenses and so no balance exists in the Debtor's custody, possession, or control. In the event it is later discovered that some of those funds exist, however, those amounts should be returned to Movant as well.

IV. **THE CASH COLLATERAL ORDER SHOULD BE AMENDED SO AS TO PROHIBIT THE USE OF THE REVENUES RECEIVED ON ACCOUNT OF THE AGREEMENTS EXCEPT AS SET FORTH IN THE AGREEMENTS, AND MOVANT IS ENTITLED TO RELATED RELIEF.**

23. Until rejection of any of the Agreements, the Debtor should be required to pay for the assets it is using, in the form of turnover of the revenues to Movant in accordance with the terms of each respective Agreement. To the extent that the Cash Collateral Order permits the use of cash collateral without payment of such amounts to Movant in the ordinary course of business, that order should be modified. To the extent that any such amounts are not turned over to Movant, that order should be modified to prohibit the Debtor from using any revenues received on account of the Agreements.

24. Movant is also entitled to adequate protection of its interest as counterparty to the Agreements by conditioning Movant's ongoing obligations under the agreements (including but not limited to the licensing of the intellectual property constituting the films) upon the Debtor's compliance with the terms described above.

25. Finally, Movant is entitled to relief from the automatic stay to terminate any of the Agreements that are rejected and/or breached by the Debtor and to contract directly with other distributors and third parties with respect to distribution of the Films, including but not limited to any of the parties that had or have subdistribution agreements with the Debtor.

## CONCLUSION

26. In conclusion, Movant is entitled to the relief described above.

WHEREFORE, Movant respectfully requests that this Court enter an order, substantially in the form appended hereto:

(A) Directing that each of the Agreements be rejected by the Debtor automatically within 28 days after entry of the order, except to the extension the Debtor files a motion to assume them and tenders the full cure amount in cash;

(B) Directing that, effective at the same time as the rejection of any of the Agreements, any subdistribution agreement(s) between the Debtor and third parties regarding the respective Film(s) should also be rejected;

(C) Requiring the Debtor to turn over to Movant any remaining deposits or escrows relating to P&A expenses under any of the Agreements, including but not limited to the Spark Escrow Account;

(D) Modifying the Cash Collateral Order so as to prohibit the use of the revenues received on account of the Agreements except as set forth in the Agreements, and granting the related relief described above; and

(E) Granting Movant such further relief as this Court deems just and proper.

Dated:  October 23, 2018
        Wilmington, Delaware

Respectfully submitted,

HILLER LAW, LLC


 /s/ Adam Hiller
Adam Hiller (DE No. 4105)
1500 North French Street, 2nd Floor
Wilmington, Delaware 19801
(302) 442-7677 telephone
ahiller@adamhillerlaw.com

*Attorney for Redrover Co. Ltd., Movant*