**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al*.,<br><br>Debtors. | Chapter 11<br><br>Case No. 18-12012 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: 11/9/18 at 10:00 a.m**.<br><br>**Re: Docket Nos. 9, 160, 172, 248, 256** |

**OBJECTION OF THE FILM MUSICIANS SECONDARY MARKETS FUND TO DEBTORS' NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AS IT RELATES TO THE FILM *MACHETE KILLS*__**

The Film Musicians Secondary Markets Fund (the "Fund") respectfully submits this Objection ("Cure Objection") to the Notice of Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases as it Relates to the Film *Machete Kills* ("Notice of Assumption and Assignment") and in support thereof, the Fund respectfully states as follows:

**GENERAL BACKGROUND**

1. The Fund is the employee fund created by the industry-wide Collective Bargaining Agreements between the motion picture industry and the American Federation of Musicians of the United States and Canada, AFL-CIO (the "Collective Bargaining Agreements"). At least two of the motion pictures proposed to be sold by the Debtors in these bankruptcy cases - - "*Machete Kills*" and "*Side Effects*" - - were expressly scored under such Collective Bargaining Agreements. The Fund is referenced in Exhibit A to the AFM Basic Theatrical Motion Picture Agreement and the AFM Basic Television Film Agreement.

2. The financial and reporting obligations of the Debtors to the Fund is specified in sections 15 and 16 of the Collective Bargaining Agreements and are defined as residual obligations.

Companies like the Debtors in this consolidated case pay the Fund residuals from ongoing distributions of movies in the world-wide secondary markets, such as videocassette, DVD and free television, in the years and decades after initial release in theaters. The Fund in turn, distributes the residuals to the musicians who worked on the motion pictures and their families. Many of the musicians and their families depend upon such payments for their daily needs as well as retirement.

## *MACHETE KILLS*

3. The company which produced *Machete Kills* -- Machete Productions, LLC-- executed an assumption agreement agreeing to be bound by the aforementioned Collective Bargaining Agreements, including the requirement to independently report film revenues and to pay a percentage thereof to the Fund. See assumption agreement attached as Exhibit A hereto. The execution of "assumption agreements" is required per the terms of AFM Collective Bargaining Agreements, if producers who are not already signatories choose to utilize AFM musicians when creating their films.

4. As is required, the Assumption Agreement attached as Exhibit A states (in the second paragraph):

> "…the rights of any such Producer to exhibit or license the exhibition of such photoplays on free television, shall be subject to and conditioned upon the payment to the [Film Musicians] Secondary Markets Fund as provided in Articles 15 and 16…".

5. The obligation to pay and report residuals applies to successors-in-interest pursuant to the Digital Millennium Copyright Act, 28 USC § 4001(a).

6. Open Road Films, LLC holds the licensing rights to "Machete Kills," as noted on its bankruptcy Schedule G in categories 2.644, 2.892, 2.1435, 2.2017, 2.2092, 2.2097, 2.2231 and 2.2232 (on pages 294, 344, 452, 569, 584, 585 and 612 (of Docket No. 203 in case no. 18-12012). As such, it is a successor-in-interest to Machete Productions, LLC as to all or many of the rights embodied by the film *Machete Kills*, and under the terms of both the Collective Bargaining Agreement and 28 USC § 4001 is

independently obligated to make payment to the Fund. Specifically, the Digital Millennium Copyright Act provides:

> In the case of a transfer of copyright ownership under United States law in a motion picture (as the terms transfer of copyright ownership and motion picture are defined in section 101 of title 17) that is produced subject to 1 or more collective bargaining agreements negotiated under the laws of the United States, if the transfer is executed on or after the effective date of this chapter [effective Oct. 28, 1998] and is not limited to public performance rights, the transfer instrument shall be deemed to incorporate the assumption agreements applicable to the copyright ownership being transferred…and the transferee shall be subject to the obligations under each such assumption agreement to make residual payments and provide related notices, accruing after the effective date of the transfer and applicable to the exploitation of the rights transferred….

28 U.S.C. 4001(a) (1).

7.  17 U.S.C. §101 includes in the in the definition of a transfer of copyright ownership "an assignment, … exclusive license, or any other conveyance, alienation, or hypothecation of a copyright <u>or any of the exclusive rights compromised in a copyright, whether or not it is limited in time or place of effect</u>,…". As disclosed in its bankruptcy schedules, Open Road Films, LLC in fact has the right (and does in fact) license the film *Machete Kills*, and thus is a transferee of said copyright. Open Road Films, LLC was named as the Distributor in correspondence dated June, 2013 from Machete Productions, LLC to the American Federation of Musicians. See Exhibit B attached hereto.

8.  In fact, Open Road Films, LLC has listed the Fund as counter-party to this exact Assumption Agreement in the Schedule of Amended Cure Amounts – Docket No. 248-1, page 5.

9.  Unfortunately, the Debtors have scheduled the amount needed to cure this Assumption Agreement as $0.00. While the Debtors have acknowledged in correspondence with counsel for the Fund that $51,695.69 would be due and owing, they apparently are arguing that Exhibit A is only signed by the producer- and not by the Payroll Company – as a pre-text for ignoring the obligation to the musicians.

10. As of this writing, it is unknown if the Payroll Company actually counter-signed the Assumption Agreement, and the Fund has requested a copy. What is undisputed is that i) the party to be charged, (Machete Productions, LLC) signed the Assumption Agreement binding itself to the Fund to report on and pay residuals to the Fund; ii) the film was scored under the collective bargaining agreement; iii) everyone's understanding – including both Machete Productions, LLC and the Payroll Company- was that the film was covered by the collective bargaining agreement and subject to the residuals rights of the Fund; iv) the musicians performed in reliance on that promise and recorded the music for the movie; and (v) everyone has performed the contract except for Machete Productions, LLC and its successor-in-interest, which continues to withhold residuals.

## ARGUMENT

11. It is the law generally (and in California where all parties to the Agreements are located and the choice of law of the Collective Bargaining Agreement) that:

> "[I]n the absence of a showing that the contract is not intended to be complete until signed by all parties, the parties who did sign will be bound."

Angell v. Rowlands (1978) 85 Cal.App.3d 536, 542.

Further,

> "It is the signatory resisting enforcement of the contract who 'cannot escape liability unless he affirmatively establishes that the signatures of all parties were contemplated as being a condition precedent to the validity of the contract ...' [citation]. (Angell v. Rowlands, at p. 541, 149 Cal.Rptr. 574.) "

Fagelbaum & Heller LLP v. Smylie (2009) 174 Cal.App.4th 1351, 1365 [95 Cal.Rptr.3d 252, 263]

12. Indeed, the California Civil Code expressly authorizes specific performance against a party who signed the contract even if another party has not signed it. Civ. Code §3388 ("A party who

has signed a written contract may be compelled to specifically perform it, though the other party has not signed it, if the later has performed, or offers to perform it on his part, and in the case is otherwise proper for enforcing specific performance.")  See, e.g. *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 177 ("Just as with any written agreement signed by one party, an arbitration agreement can be specifically enforced against the signing party regardless of whether the party seeking enforcement has also signed, provided that the party seeking enforcement has performed or offered to do so."); *Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App4th 149,161 ("it is unreasonable to infer from such lack of signature that [Respondent] did not enter into the contract, considering the undisputed fact that he fully performed it"); *Gelfan v. Bessolo & Gualano, Inc.* (1932) 125 Cal.App.214, 218 ("Appellants' complain that plaintiff failed to sign the agreement is without merit.  The evidence shows that plaintiff was permitted to substantially perform the contract and under the circumstances presented here was entitled to enforce it though he had not signed.").

13. In this case, Machete Productions, LLC sent correspondence to the American Federation of Musicians explicitly requesting permission to use the AFM's low budget agreement (which specifies rates to be charged under the AFM Collective Bargaining Agreements for films which cost less than $45 million to produce).   See correspondence dated June 20, 2013 attached as Exhibit B hereto.  The letter named "Open Road" as the Distributor of the film.  That request was approved via correspondence dated June 25, 2013 and attached as Exhibit C hereto.  Machete Productions, LLC signed the Assumption Agreement (Exhibit A), the musicians accordingly performed the work and the Fund and the musicians they serve are owed payment

## CONCLUSION

14. Having signed the assumption agreement and accepted the benefits thereof- including the hard work of the union musicians who helped to create the film, Machete Productions,

LLC and its successors-in-interest are bound thereto.  It is respectfully requested that the proposed assumption and assignment of the *Machete Kills* film not be approved pending resolution of this issue (and/or payment of the sum of not less than $51,695.69).

WHEREFORE, the Fund respectfully requests that this Honorable Court deny the relief requested in the Notice of Assumption and Assignment (as amended) as set forth herein and grant such other and further relief as is just and proper.

Dated:  November 2, 2018                                                            FERRY JOSEPH, P.A.

/s/ *Theodore J. Tacconelli*
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 1000
Wilmington, DE 19801
(302) 575-1555
Counsel for Film Musicians Secondary
Markets Fund

OF COUNSEL:

Brian L. Cella, Esq.
Cella Lange & Cella LLP
1600 South Main Plaza, Suite 180
Walnut Creek, CA 94596
(925) 974-1112

    -and-

Mark M. Sharf, Esq
Mark M. Sharf, PC.
Howard Hughes Center
6080 Center Drive, 6th Floor
Los Angeles, CA  90045
(818) 961-7170