IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al.*,[1] | ) ) ) | Case No. 18-12012 (LSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) ) | |
| | ) ) | **Hearing Date:** November 9, 2018 at 10:00 a.m. (ET) |
| | ) ) ) ) ) | **Objection Deadline:** November 5, 2018 at 4:00 p.m. (ET) (Extended by Debtors' counsel) |
| | ) ) | **Re: Docket Nos. 9, 166, 256** |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF SHOWTIME NETWORKS INC. TO PROPOSED SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS**

Showtime Networks Inc. ("**Showtime**") respectfully submits the following Limited Objection and Reservation of Rights with respect to the Debtors' Proposed Sale of Substantially All of its Assets Free and Clear of All Liens, Claims, Encumbrances and other Interests ("**the Proposed Sale**"):

**Introduction**

1.  Showtime owns and operates premium television networks and on-demand services, including Showtime and Showtime On Demand. Showtime is a party to several agreements with the Debtor Open Road Films, LLC ("**Open Road Films**"), consisting of an Exclusive Theatrical Output Agreement (a copy of which is attached as **Exhibit A**) and various

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.). The Debtors' address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067.

amendments or related agreements (collectively "**the Showtime Agreements**"),[2] which include the licensing to Showtime of broadcast and/or distribution rights for certain of the Debtors' motion pictures ("**the Showtime Licensed Pictures**"). Showtime has paid the Debtors over $36,000,000 under the Showtime Agreements, including over $1,000,000 since these bankruptcy cases were filed a few months ago.

2. Showtime objects to the Proposed Sale **only** to the extent that the Debtors' assets are sold free and clear of Showtime's rights under 11 U.S.C. §365(n).[3] Ordering a sale free and clear of §365(n) rights is not authorized and would be contrary to applicable law, as discussed below.

3. Showtime is in discussions with the stalking horse bidder and the Debtor in an attempt to agree on language for the sale order providing that the Proposed Sale will not supersede or eliminate licensees' §365(n) rights. Showtime submits this limited objection and reservation of rights to preserve and protect those rights in the event that the parties cannot agree on such language.

4. Showtime also reserves its rights to object to the ultimate purchaser's ability to perform under the Showtime Agreements, because the identify of the purchaser has not yet been determined.

---

[2] Each of the Showtime Agreements is listed in the Debtors' Notice of Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases [Docket No. 172] or Schedule of Contracts with Amended Cure Amounts [Docket No. 248].

[3] Unless otherwise specified, all statutory references herein are to Title 11 of the United States Code (the "**Bankruptcy Code**").

**Background**

5. On September 6, 2018 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On information and belief, the Debtors continue to operate their businesses as a debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

6. On the Petition Date, the Debtors filed their Motion for Orders: (A) (I) Establishing Bid and Sale Procedures Relating to the Sale of Substantially All of the Debtors' Assets, (II) Authorizing the Debtors to Enter Into an Asset Purchase Agreement With Stalking Horse Bidder, (III) Establishing and Approving Procedures Relating to the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts and (IV) Scheduling a Hearing to Consider the Proposed Sale and (B)(I) Approving the Sale of Substantially All of the Debtors' Assets, (II) Authorizing the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases, and (III) Granting Certain Related Relief [Docket No. 9] (the "**Sale Motion**").

7. On October 9, 2018, the Court entered the Order: (1) Approving Bid and Sale Procedures, (2) Approving Assumption, Assignment and Cure Procedures and Related Notices, (3) Establishing Date for Auction and Approving Related Procedures, (4) Scheduling the Sale Hearing and Related Deadlines, and (5) Granting Related Relief [Docket No. 160].

8. On October 31, 2018, the Debtors filed their Notice of Filing of Proposed Stalking Horse Sale Order, Exhibit A to which is the Debtors' revised proposed Order (1) Approving Asset Purchase Agreement Among the Debtors and the Buyer, (2) Approving Sale of Substantially All Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests

Pursuant to Bankruptcy Code Sections 105, 363(b), (f) and (m), etc. (Docket 256-1—herein "**the Proposed Sale Order**").

9. Although the Debtors have selected a stalking horse bidder, the ultimate purchaser will not be determined until an auction, currently scheduled for November 7, 2018.

## Objection

10. Showtime objects to the Proposed Sale, Sale Motion and Proposed Sale Order only to the extent that they seek to sell Debtors' assets free and clear of Showtime's rights under 11 U.S.C. § 365(n) if the Showtime Agreements are ultimately rejected.

11. Under § 365(n), if a debtor-in-possession rejects an executory contract under which it is the licensor of intellectual property, the licensee may elect to retain its rights (including exclusivity rights) in that intellectual property, subject to certain conditions.

12. Section 365(n) was enacted to prevent intellectual property licensees from losing their rights to use licensed intellectual property if the debtor/licensor rejects those licenses. "Through this provision, Congress sought 'to make clear that the rights of an intellectual property licensee to use the licensed property cannot be unilaterally cut off as a result of the rejection of the license pursuant to Section 365 in the event of the licensor's bankruptcy.'" *In re Exide Technologies*, 607 F.3d 957, 965 (3d Cir. 2009), quoting S. Rep. No. 100-505, at 1 (1988). "Congress professed that courts allowing the use of § 365 to strip intellectual property licensees of their rights 'threaten an end to the system of licensing of intellectual property . . . that has evolved over many years to the mutual benefit of both the licensor and the licensee and to the country's indirect benefits.'" *In re Crumbs Bake Shop, Inc.*, 522 B.R. 766, 771–72 (Bankr. D.N.J. 2014), quoting S. Rep. No. 100-505, at 3 (1988).

13. If a debtor or purchaser could eliminate a licensee's statutory rights under § 365(n) simply by conducting a "free and clear" sale under § 363(f), then the congressionally enacted protections of § 365(n) would become virtually meaningless, because its protections could be evaded in every sale of a debtor's property.

14. Accordingly, in *In re Crumbs Bake Shop, Inc.*, *supra*, the court held that unless the licensee consents, a § 363(f) sale does not override the intellectual property licensee's rights under § 365(n) if the licenses are rejected. *Id.* at 777. ("[I]n the absence of consent, nothing in § 363(f) trumps, supersedes, or otherwise overrides the rights granted to Licensees under § 365[n].")

15. In that case, the debtor sold substantially all of its assets, including trademarks,[4] to a purchaser free and clear of all liens, claims, encumbrances, and interests, pursuant to § 363(f). *Id.* at 769. The court then held, over the purchaser's objection, that the debtors' rejection of certain agreements under which those trademarks were licensed to various licensees entitled those licensees to exercise their rights under 11 U.S.C. §365[n] despite the "free and clear" nature of the §363(f) sale.

16. Applying the well-established principle that "the appropriate way to construe a statute is to conclude that the specific governs over the general," the court held that the specific language of §365(n) "granting certain rights to licensees of rejected intellectual property licenses . . . should not be overcome by the broad text of §363(f) [and] accordingly, the general provision of § 363(f) does not wipe away the rights granted to [the licensees] by § 365(n)." *Id.* at 778.

---

[4] The court held that those trademark rights were subject to §365(n). *Id.* at 769–74. Here, the intellectual property consists of copyrights to the Showtime Licensed Pictures, which are explicitly protected by §365(n). See §101(35A, E).

17.     As the *Crumbs* court recognized, this result is also compelled by the case law holding that §363(f) "free and clear" sales do not eliminate the rights granted by §365(h), which protects lessees in a manner similar to §365(n)'s protection of intellectual property licensees. As the court stated, "it would make little sense to permit a general provision, such as §363(f) to override §365's purpose." The court further explained that "the Code is not intended to be read in a vacuum." *Id.*

18.     In addition, as the *Crumbs* court aptly noted, the specifically enacted protections of §365(n) "would be nugatory" if a debtor or purchaser could totally eliminate them by simply conveying the underlying intellectual property in a standard §363(f) sale.

19.     Moreover, in paragraph 27 of the parties' Exclusive Theatrical Output Agreement (Exh. A hereto) the Open Road Films specifically acknowledged that each Showtime Licensed Picture constitutes "intellectual property" within the meaning of §365(n). Obviously, then, the parties contemplated that §365(n) would apply in the event that the Showtime Agreements were rejected.

20.     Provided that Showtime's rights under §365(n) are protected, Showtime does not otherwise object to assumption of the Showtime Agreements, subject to the reservation of rights below. Showtime hopes that the purchaser will elect to assume those agreements and that Showtime and the purchaser will have a fruitful relationship. As noted above, Showtime is currently in discussions with the stalking horse bidder and Open Road Films to attempt to agree on language to be inserted in the Proposed Sale Order providing that the sale will not supersede or eliminate §365(n) rights. If the parties cannot agree on such language by the hearing on the Sale Motion, then Showtime will suggest language that it believes will protect those rights.

**Reservation of Rights Regarding Adequate Assurance of Future Performance**

21.     Showtime reserves all rights to object to assumption and assignment of the Showtime Agreements on the ground that the purchaser/assignee has not provided adequate assurance of future performance (as required by §365[b][1][c]), because the ultimate purchaser/assignee will not be identified until the conclusion of the auction on November 7, 2018.

**Conclusion**

For the foregoing reasons, Showtime respectfully objects to the Sale Motion and Proposed Sale Order to the extent that they provide for a sale free and clear of Showtime's rights under §365(n) and reserves all such rights

Dated: November 5, 2018          MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                 */s/ Derek C. Abbott*
                                 Derek C. Abbott (No. 4204)
                                 1201 North Market Street
                                 16th Floor
                                 P.O. Box 1347
                                 Wilmington, Delaware  19899-1347
                                 Telephone:  (302) 658-9200
                                 Facsimile:  (302_ 658-3989
                                 Email:  DAbbott@mnat.com