**EXHIBIT A**

**EXECUTION COPY**

## Exclusive Theatrical Output Agreement

Showtime Networks Inc.
1633 Broadway
New York, N.Y.  10019

As of August 20, 2013

Open Road Films, LLC
12301 Wilshire Blvd., Suite 600
Los Angeles, CA 90025

Gentlemen and Ladies:

This letter agreement ("Agreement"), including the attached Schedule A, is entered into as of the date set forth above by and between Open Road Films, LLC ("Open Road") and Showtime Networks Inc. ("SNI"). For good and valuable consideration, the receipt and sufficiency of which the parties hereto hereby acknowledge, Open Road hereby grants to SNI the exclusive (except as specified below) right, title, and license to "Distribute" (including in "High Definition" and "Standard Definition," and with or without closed captioning) each "Picture" on "Pay Services" in the English and Spanish languages throughout the "Territory" during such Picture's applicable "Windows" (as such terms are defined below) (the "Rights"), subject to the following terms and conditions:

**1.     TERM:** The "Term" as used herein shall commence on January 1, 2017 and shall continue through December 31, 2020.

**2.     TERRITORY:** The "Territory" shall be the United States, Puerto Rico, and, on a non-exclusive basis, other territories, possessions, and commonwealths of the United States (including U.S. military bases wherever located) and Bermuda. The Territory shall also include airplanes bearing the U.S. flag (where Open Road controls airline rights on a picture by picture basis); provided, however, that a given Picture as to which Open Road controls airline rights may be exhibited on airplanes by or at the direction of SNI hereunder only on a Sequential Basis as part of an SNI Service, it being acknowledged by SNI that such airplane rights with respect to such Picture are non-exclusive as to non-theatrical exploitation by Open Road hereunder.

**3.     VOLUME:** Subject to the provisions of this Agreement, Open Road shall license to SNI, and SNI shall license from Open Road, the Rights in each Picture "Initially Theatrically Released" in the U.S. during the Term, up to a maximum of forty-eight (48) Pictures (the "Aggregate Volume Cap"). Notwithstanding the foregoing, SNI shall be obligated to license hereunder only the first twelve (12) Pictures (but 13 Pictures in any calendar year immediately following a calendar year of the Term in which eleven (11) or fewer Pictures were Initially Theatrically Released) that are Initially Theatrically Released in each calendar year of the Term (as measured by Initial Theatrical Release date) (the "Annual Volume Cap"), and SNI shall have the option, exercisable in its sole and absolute discretion, to license hereunder each Picture Initially Theatrically Released in a given calendar year of the Term which exceeds such Annual Volume Cap ("Excess Picture"). Such option shall be exercisable by SNI on a picture-by-picture basis within fifteen (15) days following SNI's receipt of (X) written notice from Open Road advising SNI of such Excess Picture, (Y) a screener DVD or link of the completed Picture, and (Z) such other information as is reasonably requested by SNI to assist it in deciding whether to exercise its option. As used herein, "Initial Theatrical Release" and its variations (e.g., Initially Theatrically Released) means the first day of U.S. general commercial theatrical release, excluding only preview, sneak and/or Academy Award qualification

1

EXECUTION COPY

exhibitions.  If SNI elects in its sole discretion to license any Excess Picture or non-qualifying picture, the Annual Volume Cap and the Aggregate Volume Cap will be increased by one for each such accepted optional picture.

## 4.   PICTURES:

(a)  To qualify as a "Picture" hereunder, a motion picture must (X) (i) be "produced" in whole or in part by the "Open Road Group" (as defined below) and Initially Theatrically Released by a "major studio" (as then commonly understood in the U.S. motion picture industry) or a "mini-major studio" (as then commonly understood in the U.S. motion picture industry (current examples include The Weinstein Company and Lionsgate)) and/or (ii) Initially Theatrically Released in the U.S. by the Open Road Group; and (Y) have a running time of at least eighty (80) minutes; and (Z) be Initially Theatrically Released in the U.S. during the Term on at least ten (10) screens (including at least one screen in New York or Los Angeles) for at least one (1) week prior to exploitation in any other media now known or hereafter developed.  Notwithstanding the foregoing: (a) no more than two (2) licensed Pictures Initially Theatrically Released in any given calendar year of the Term may be a "Rent-A-Studio Film" (as that term is defined below) provided that, if more than one Rent-A-Studio Film Initially Theatrically Released in any given calendar year of the Term is to qualify as a Picture, then at least one of such two Rent-A-Studio Films must be Initially Theatrically Released in the U.S. on at least one thousand five hundred (1,500) screens for at least one (1) week prior to exploitation in any other media now known or hereafter developed); and (b) aside from the permitted Rent-A-Studio Films, Open Road will not be entitled to license films under this Agreement in which it takes no financial risk and licenses the films for the purpose of arbitrage (commonly known in the industry as "selling slots" or "flipping slots").  The following motion pictures are excluded from the definition of a "Picture":  animated or partially-animated (including traditional, performance capture and computer animation) motion pictures (provided, however, that animated special effects in a predominantly live-action motion picture shall not cause a motion picture to be deemed animated or partially-animated as those terms are used herein); documentary motion pictures; predominantly black and white motion pictures; predominantly non-English language motion pictures; concert, filmed stage play and compilation (*e.g.*, "That's Entertainment") motion pictures; and motion pictures that are unrated or have a rating more restrictive than MPAA "R" (collectively, "Excluded Films").

SNI shall have the option, exercisable in its sole and absolute discretion, to waive any or all of the foregoing requirements set forth in this subparagraph (a) on a picture-by-picture basis (provided that such picture is theatrically released in the U.S. during the Term) (*e.g.*, to include as a Picture licensed hereunder a motion picture produced in whole or in part by the Open Road Group that is Initially Theatrically Released by distributor other than a major studio or mini-major studio).  Such option shall be exercised by SNI within fifteen (15) days following SNI's receipt of (X) written notice from Open Road specifying the way(s) in which a given motion picture fails to meet the foregoing requirements; and (Y) a screener DVD or link of the completed motion picture (or, in the case of an Excluded Film for which Open Road desires to shop the Rights to one or more third parties before such motion picture is complete, a rough cut or other materials that Open Road intends to share with such third parties); and (Z) such other information as is reasonably requested by SNI to assist it in deciding whether to exercise its option.  If SNI exercises its option to waive one or more of the foregoing requirements with respect to a given motion picture, such motion picture shall constitute a "Picture" for all purposes hereunder and the Annual Volume Cap and Aggregate Volume Cap shall be increased as set forth above.

Open Road represents that it is not, and will not be, a business initiative of Open Road to theatrically release motion pictures as to which Open Road does not control the Rights.  Open Road may, however, exclude altogether from this Agreement (including from SNI's option right in the immediately preceding paragraph) one (1) motion picture per calendar year of the Term (and, in no more than one (1) calendar year of the Term, two (2) such motion pictures) that satisfies both of the following criteria:  (X) Open Road does not control, and has at no time controlled, the Rights and/or any television, Home Video,

or Video-On-Demand rights in the motion picture, and (Y) the motion picture is theatrically released by Open Road in the Territory without using the Open Road name and/or logo (except on a purely business-to-business basis).  By way of clarification, ""Committed Pictures" (as defined below) shall not be considered subject to the limitation set forth in the immediately preceding sentence.

(b)  As used herein "Open Road Group" shall include Open Road and:

(i)  each direct or indirect subsidiary, unit, division, group or motion picture label of Open Road, each entity "controlling", "controlled" by, or under common "control" with any of the foregoing entities (where "control" is defined as the ownership of at least 50% of the equity or beneficial interest of such entity or the right to vote for or appoint a majority of the board of directors or other governing body of such entity or otherwise possesses the power to direct the affairs of the entity); provided, however, that neither (x) American Multi-Cinema, Inc. ("AMC") and Regal Distribution Holdings LLC ("Regal") and their respective direct and indirect parent companies (including the shareholders, members, managers or other stakeholders of any of the foregoing) nor (y) as to the entities named in (x) above, any such entities' affiliated, subsidiary or other related companies except for any joint venture or other collaboration formed and controlled by both AMC Entertainment Holdings, Inc. and Regal Entertainment Group (and/or their respective direct or indirect subsidiaries) that acquires and distributes theatrical motion pictures in the Territory, shall be part of the Open Road Group (and in no event shall the motion picture exhibition business in and of itself be treated as or deemed a form of acquisition or distribution for this purpose); and

(ii)  each successor-in-interest to any member of the Open Road Group as defined in (i) above, and each successor's respective successors-in-interest, including but not limited to any successor-in-interest resulting from a transfer or change of control, sale or purchase or assets, merger, consolidation, reorganization or any other transaction or series of transactions.

For clarity, National CineMedia, Fathom Events, technology utilities such as DCIP and DCDC, and similar joint ventures of which Regal and AMC are non-controlling owners shall not be considered part of the Open Road Group.  In the event that 1) Regal and AMC form a joint venture or other collaboration (alone or with other exhibitors and stakeholders) to extend their business to newly created windows or media (e.g., premium at home exhibition or premium early window video on demand exhibition), or 2) Regal or AMC, independent of the other, forms or participates in another production company or other production companies, such entity or entities shall not be treated as part of the Open Road Group and SNI shall not have any rights as a result of this Agreement to any content licensed by such entity or entities for such exhibition purposes.

Notwithstanding the foregoing, (A) in the event that AMC Entertainment Holdings, Inc. and/or Regal Entertainment Group (and/or their direct or indirect subsidiaries) forms or participates in another joint venture or other collaboration, production company, or production companies (each an "Entity") in which Tom Ortenberg serves during the Term in a management role (a "New Ortenberg Entity"), that New Ortenberg Entity shall be deemed to be part of the Open Road Group for all purposes hereunder; and (B) in the event that AMC Entertainment Holdings, Inc. and/or Regal Entertainment Group (and/or their direct or indirect subsidiaries) forms or participates in another Entity which accepts an assignment of Rights in any motion picture assets owned or controlled by Open Road at any stage of development ("Open Road Development Pipeline Projects"), then such Entity shall be deemed part of the Open Road Group solely in connection with such Open Road Development Pipeline Projects and any sequels, prequels, or derivative productions thereof.

(c)  Notwithstanding the foregoing, in the event that Open Road enters into a transaction or series of transactions (a "Transaction") by which it acquires a third party that has an existing pay television output agreement (an "Acquired Party"), or by which it is acquired by, consolidated with, or merged into a third party that has an existing pay television output agreement (an "Acquiring Party"), then such Acquired

EXECUTION COPY

Party or Acquiring Party (as applicable) shall not be required to license to SNI hereunder motion pictures that satisfy all of the following criteria (the "Committed Pictures") (and such Committed Pictures shall not constitute Pictures for purposes of this Agreement): (I) the motion picture progressed through the commencement of principal photography and/or were acquired wholly independently of the creative executives and assets of the Open Road Group prior to the Transaction (it being acknowledged that following the Transaction (e.g., a merger) there could be a mix of personnel from both Open Road and the counterparty working on such films) ; (II) the Open Road Group did not control the Rights and/or any television or home video rights in the motion picture at any time prior to the Transaction; (III) the motion picture is theatrically released without the Open Road name, logo, or other designation (except on a purely business to business basis); and (IV) the Acquired Party or Acquiring Party (as applicable) is contractually required to license, and does license, Rights in the motion picture in the Territory to a third party pursuant to and during the pre-existing term of a pay television output agreement that was already in place prior to, and was neither entered into nor extended or otherwise modified in anticipation of or in connection with, the Transaction.

(d) A motion picture "produced" by the Open Road Group means a theatrical motion picture (X) that the Open Road Group "produces" in whole or in part, as that term is commonly understood in the U.S. motion picture industry; or (Y) with which respect to which the Open Road Group, at the time principal photography of such motion picture commences, controls any U.S. theatrical, television, Internet and/or Home Video distribution rights. The word(s) "produced by", "producing", "produce" and the like, wherever used in the Agreement, shall have the same meaning as "produced" as set forth in this subparagraph.

(e) A "Rent-A-Studio Film" is a motion picture Initially Theatrically Released on a so-called "rent-a-studio" basis (as such term is then commonly understood in the U.S. motion picture industry), provided that a motion picture shall not be deemed a Rent-A-Studio Film if Open Road assumes a meaningful financial risk in the U.S. theatrical distribution of such picture, which risk may be in the form of advancing or guaranteeing losses with respect to the U.S. P&A spend for such picture.

(f) Within ten (10) business days after the commencement of each calendar quarter during the Term, Open Road shall provide to SNI a list of all unreleased motion pictures that the Open Road Group has produced or acquired, is producing, or has committed to produce or acquire and intends to release theatrically in the Territory from the beginning of the Term through the date of such quarterly report (collectively, the "Quarterly List"). Such Quarterly List shall include each motion picture's tentative title, underlying rights, production status (e.g., actual or scheduled commencement of principal photography) and anticipated Initial Theatrical Release date), in each case to the extent known or available to Open Road at the time.

**5.    LICENSE FEES:** The License Fee with respect to each Picture shall be based on the U.S. Box Office for such Picture and shall be calculated as set forth in Exhibit X hereto. SNI shall pay the License Fee for each Picture to Open Road by check or wire transfer as follows: two-thirds sixty (60) days following the commencement of the Picture's First Window (the "First Payment Date"); and the remaining one-third twelve (12) months after the First Payment Date. In the event that Open Road assigns or pledges its rights to receive payments hereunder to Open Road's principal lender and/or financier, SNI will negotiate in good faith a reasonable and customary non-disturbance and direction to pay agreement.

**6.    WINDOWS:**

(a) The "First Window" for each Picture shall be a period of twelve (12) months and shall commence on the date which is the earlier of (X) the first day of the calendar month immediately following the date that is one (1) year following such Picture's Initial Theatrical Release; and (Y) the first day of the calendar month immediately following the date that is six (6) months after the earliest of such

Picture's Home Video, Video-On-Demand and Pay-Per-View release dates.  Open Road may accelerate the commencement date for such First Window to four (4) months after the earliest of such Picture's Home Video, Video-On-Demand and Pay-Per-View release date upon notice to SNI no later than the date of Initial Theatrical Release of such Picture, provided that SNI may veto such acceleration in its discretion.  Premium early window in-home theatrical exhibition shall be treated as a theatrical exploitation for purposes of calculating availability dates.  During the First Window for each Picture, such Picture may be Distributed on a Pay Service (I) on a "Sequential Basis" on up to 35 "Exhibition Days" on each feed of each SNI Service; and/or (II) on a "Consumer-Selected Basis" (as such term is defined below) on or through any  SNI Service (provided, however, that such Picture may be made available by SNI on a Consumer-Selected Basis through Netflix, Hulu, Amazon Instant Video, or a similar third-party service only if branded or co-branded with the name or logo of "Showtime," "The Movie Channel," "FLIX," or another primary SNI brand and substantially all licensed product from other theatrical motion picture licensors of SNI and SNI original programming is also made available on a Consumer-Selected Basis through such third-party service).

(b)  The "Second Window" for each Picture shall be a period of nine (9) months and shall commence on a date determined by Open Road (but in no event earlier than one (1) year and no later than six (6) years and seven (7) days following the end of such Picture's First Window). Open Road shall notify SNI of the commencement date of the Second Window for each Picture no later than the date which is one-hundred-and-twenty (120) days prior to such commencement date.   During the Second Window for such Picture, such Picture may be Distributed on a Pay Service (I) on a Sequential Basis on up to twenty-five (25) Exhibition Days on each feed of each SNI Service; and/or (II) on a Consumer-Selected Basis on or through any SNI Service that is co-branded with a linear channel.

(c)  "Exhibition Day" means, with respect to a given SNI Service, any period of twenty-four (24) consecutive hours, which may span over two calendar days, during which a given Picture is Distributed on a Sequential Basis up to three (3) times; provided, however, that an exhibition of a Picture on multiple "feeds" of a given SNI Service (e.g., an east coast feed of the primary Showtime service ("SHO 1"), a west coast feed of SHO 1, and a high-definition feed of SHO 1) shall constitute a single Distribution for all purposes hereunder.  For the avoidance of doubt, any restrictions on the maximum number of Exhibition Days or exhibitions per Exhibition Day hereunder shall apply only to Distribution of a Picture on a Sequential Basis and shall not apply to (X) Distribution of a Picture on an Consumer-Selected Basis and/or (Y) access to a Picture by means of "Look Back" and/or "Start Over" (as such terms are defined below) functionality.

## 7.   **DEFINITIONS**:

(a)  "Commercial" means a paid advertisement (e.g., a 30-second segment) primarily featuring or describing a third-party product or service; provided, however, that none of the following shall be deemed to be a Commercial:  (1) presentation and sponsorship credits; (2) billboards, signboards, and product placements intrinsic in a given motion picture, television program, or other audiovisual content; (3) trailers and offers to acquire (on a permanent or temporary basis) a download, DVD or other copy(ies) of a given motion picture, television program, or other audiovisual content that is Distributed on the applicable Pay Service; and (4) information or announcements about how and/or where to obtain information about a given product or service (but only if such product or service is directly related to a given motion picture, television program, or other audiovisual content that is Distributed on the applicable Pay Service) (e.g., identification of a website where consumers can obtain more information about the songs appearing in a particular program).

(b)  "Consumer-Selected Basis" means Distribution of Programming whereby a consumer may select the time(s) for viewing given content in such Programming.

(c) "Delivery Methods" means any and all methods, protocols, software applications and technologies now known or hereafter developed, including any and all transmission paths now known or hereafter developed (including but not limited to satellite, cable, copper, Internet (streaming and downloading), microwave, optical fiber, wireless, electrical wire, cellular or any other radio spectrum), to, or for use by or on, any receiving, playback and/or display device now known or hereafter developed (including but not limited to set-top boxes, DVR's, computers, modems, smart phones, handheld and/or portable devices, monitors, televisions, gaming consoles and devices accessing content via any user interface (including but not limited to browsers, websites, apps and guides)).

(d) "High-Definition" or "HD" means any format with a vertical resolution equal to or greater than 720 lines.

(e) "Home Video" distribution means the Distribution of one or more versions of a single motion picture (together, if applicable, with related ancillary materials (e.g., "behind the scenes" footage), but excluding other motion pictures (other than limited-time discount deals offered by retailers like two for one specials and up to two (2) other motion pictures each of which must be "related" to the Picture (i.e., prequel, sequel, remake, same director, and/or principal actor)) (X) on audio-visual cassettes, discs or other form of physical storage media (e.g., a USB stick) to and from retail outlets for the intended purpose of non-commercial viewing of such motion picture by consumers; and/or (Y) electronically to a device under circumstances whereby the recipient purchases title to and ownership of an electronic copy of such motion picture (including the right to view such electronic copy of such motion picture an unlimited number of times) in exchange for the payment of a distinct, material and separate non-recurring fee (which non-recurring fee does not include the receipt by such recipient of any other motion picture(s) (other than such "related" motion picture(s) as described above), program(s), product(s) or service(s)).

(f) "Look Back" means functionality whereby a consumer may access on an Consumer-Selected Basis Content that was Distributed on a Sequential Basis within the preceding seven (7) days.

(g) "Non-Theatrical" exhibition means exhibition of a motion picture (other than by means of theatrical Distribution) for viewing by groups of people in public or in common areas of venues (such as hospital day rooms and auditoriums in educational and institutional facilities and in public or private areas of common carriers, such as airplanes, cruise ships, trains, hotels, motels, military bases, oil rigs, etc.), so long as such exhibition of a motion picture is not part of an exhibition of a collection of motion pictures and/or other programming available to a consumer or end user (excluding customary Video-On-Demand and other customary programming choices offered by common carriers and hotels to customers).

(h) "Pay-Per-View" means the electronic Distribution of a single motion picture on a Sequential Basis for viewing by an individual consumer, whereby a consumer purchases, on a non-de minimus, non-recurring fee-per-individual motion picture basis, the right to view a single exhibition (or multiple exhibitions within a single, continuous period of up to forty-eight (48) hours) of such motion picture in circumstances where such consumer accesses and views such exhibition(s) at a time(s) scheduled by a Pay Per View distributor. If and to the extent that U.S. motion picture industry practice changes such that the right to view such exhibition(s) extends to more than forty eight (48) hours but no more than seventy-two (72) hours, the definition hereunder shall be amended to replace forty-eight (48) hours with such extended period.  SNI will consider in good faith requests by Open Road to permit bundling of a Picture with up to two (2) other motion pictures which are "related" to the Picture (as that concept is described in the definition of "Home Video" above) for purposes of Pay-Per-View Distribution.

(i) "Pay Service" means a service that distributes, delivers, exhibits, performs, displays and/or otherwise exploits (collectively, "Distribute" or "Distribution") Programming for private non-commercial viewing using any one or more Delivery Methods (excluding theatrical exhibition and the rental, purchase or delivery of a videogram or other physical copy) and that satisfies the following requirements: (X) it does

not contain Commercials; and (Y) a consumer (or an institution (*e.g.*, a hotel or motel)) is required to pay on a periodic (no less than monthly) basis a fee to receive such service (or to receive a package of Pay Services and/or other services including such service).

(j) "Programming" means a collection of motion pictures, television programs and/or other audiovisual content, which collection may be fixed or may change in whole or in part over time, that is offered on a Sequential Basis and/or Consumer-Selected Basis.

(k) "Sequential Basis" means Distribution of Programming in a continuous linear transmission (with or without Look Back and/or Start Over functionality) in an order determined by the programmer of the service on which such Programming is Distributed.

(l) "SNI Services" means (X) "Showtime"-branded, "The Movie Channel"-branded and "FLIX"-branded Pay Services (and any and all feeds, services and branded offerings of all of the foregoing); and (Y) any and all other Pay Services owned, operated, managed, controlled (which for purposes of this definition shall mean at least thirty percent (30%) voting control) and/or branded, in whole or in part, by SNI or its affiliates; and (Z) the successors of each of the foregoing Pay Services.

(m) "Standard Definition" or "SD" means any format with a vertical resolution of less than 720 lines.

(n) "Start Over" means functionality whereby a consumer may rewind or restart content that is then in the process of being Distributed on a Sequential Basis.

(o) "Video-On-Demand" means the electronic Distribution of a single motion picture for viewing by an individual consumer, whereby a consumer purchases, on a non-de minimis, non-recurring, fee-per-individual motion picture basis, the right to view a single exhibition (or multiple exhibitions within a single, continuous period of up to forty-eight (48) hours) of such motion picture in circumstances where such consumer accesses and views such exhibition(s) at a time(s) selected by the consumer in such consumer's discretion. If and to the extent that U.S. motion picture industry practice changes such that the right to view such exhibition(s) extends to more than forty eight (48) hours but no more than seventy-two (72) hours, the definition hereunder shall be amended to replace forty-eight (48) hours with such extended period.

**8.    DELIVERY METHODS AND SECURITY REQUIREMENTS:** The SNI Services may be Distributed as a Pay Service via any and all Delivery Methods (excluding theatrical exhibition and the rental, purchase or delivery of a videogram or other physical copy) and may include without limitation the storage, copying, downloading and/or transfer of the Picture on an SNI Service to one or more devices, provided that any authorized viewing of such stored, copied, downloaded or transferred Picture shall be limited to such Picture's First Window or Second Window, as applicable, and shall be limited to the licensed Rights.  SNI shall employ (or cause to be employed) reasonable security methods (including encryption, copy protection and geofiltering) designed to prevent unauthorized access to each Picture Distributed on the SNI Services, which methods shall be no less stringent than those employed by SNI with respect to theatrical motion pictures in the same window being licensed by SNI from the major studio(s) and/or mini-major studio(s) (or, in the event no such pictures are under license, then those employed by SNI with respect to its own original programming).  For clarity, nothing in this Agreement shall entitle SNI to Distribute the Pictures on a fee-per-individual motion picture basis.

**9.    EXCLUSIVITY:** SNI's Rights with respect to each Picture shall be exclusive in the Territory as against any and all media now known or hereafter developed through the end of the Picture's Second Window, except that:

(a) Prior to the commencement of a Picture's First Window, such Picture (including any and all versions thereof) may be exploited solely by means of theatrical, Non-Theatrical, Pay-Per-View, Video-On-Demand and Home Video Distribution.

(b) During such First Window, the Picture (including any and all versions thereof) may be exploited solely by means of theatrical, Non-Theatrical and Home Video Distribution.

(c) During the period between a Picture's First Window and the Second Window (the "Interim Period"), the Picture (including any and all versions thereof) may be exploited by means of any and all media other than on a Pay Service. Notwithstanding the foregoing, a Picture may also be Distributed during the Interim Period by a Pay Service that is made available solely on an "on demand" basis and Distributes content to subscribers exclusively through internet or then-equivalent form of transmission (but in all events excluding cable, satellite and "telco" Distribution), provided, however, that such Pay Service must not be affiliated with or related to the Pay Services currently known as HBO, Cinemax, Starz!, Encore or Epix and must not be operated, managed or controlled by one of SNI's then-existing cable, satellite or telco distributors (e.g., the "Streampix" service). SNI acknowledges that a license of rights to a linear free or basic cable channel such as the DirecTV 101 channel will not be treated as an impermissible license to a Pay Service during the Interim Period. If there is a technological shift such that services such as Netflix, Hulu and Amazon that currently use the internet for delivery to the consumer change their system to a delivery method that is prohibited under this subparagraph (e.g., via satellite, cable or telco) such that Open Road is no longer permitted to license Pictures to such services (or similar alternatives that may come to exist) for the Interim Period, then SNI shall elect to allow Open Road on a prospective basis as to Pictures that have not yet been Initially Theatrically Released to do one of the following: (X) license such Pictures to such services during the Interim Period notwithstanding the change in delivery method; or (Y) schedule the commencement of the Second Window as early as one week following the expiration of the First Window; or (Z) schedule the commencement of the Second Window as early as three months following the expiration of the First Window (provided that, in the event SNI elects (Z), the Second Window for such Picture shall be shortened to a period of six (6) months).

(d) During a Picture's Second Window, the Picture (including any and all versions thereof) may be exploited solely by means of theatrical, Non-Theatrical and Home Video Distribution.

(e) Open Road shall not authorize the Mexican and/or Canadian free or basic television exhibition (or exhibition on another similar service) of any Picture (or any version thereof) in the cities of Toronto, Niagara Falls, Windsor, Vancouver, Tijuana or Juarez, earlier than seven (7) days after end of the First Window for such Picture.

**10.     BLACK-OUT PERIODS:** At the conclusion of each of the First Window and the Second Window with respect to each Picture, there shall be a "Black-Out Period" of seven (7) days during which such Picture (including any and all versions thereof) may be exploited solely by means of theatrical, Non-Theatrical, Video-On-Demand and Home Video Distribution.

**11.     ADVERTISING AND PROMOTION:**

(a) SNI may advertise, promote and publicize (and authorize third parties to do the same) in any and all media, from the date hereof through the end of the Term, the past, present, or future Distribution of each Picture on the SNI Services (the "Advertising Rights"), provided, however, that Open Road shall have a right of prior approval with respect to any consumer-directed Advertising Rights to be exercised with respect to a Picture more than six (6) months before the start of such Picture's First Window. The Advertising Rights include, without limitation, the right to use excerpts of the Picture and the name, image, likeness and voice of, and biographical information relating to, anyone who rendered services in or in connection with the Picture (subject to reasonable contractual restrictions of which Open Road timely

8

notifies SNI in writing). The name of the applicable SNI Service (or feed thereof) and/or its trademark and/or logo may be displayed during the Distribution of the Picture thereon.

(b) SNI may Distribute and authorize the Distribution of each Picture during its Window over the facilities of any SNI Service operator or distributor to persons who are not then currently receiving the SNI Service(s) and/or to stores and showrooms, on a limited and then-customary basis, for the purpose of demonstrating the SNI Services and/or equipment or devices to members of the general public, provided that such Distribution must also include theatrical motion pictures from licensed to SNI by a major studio or mini-major studio in their first windows or second windows, as applicable.

**12.** **DELIVERY**: Not later than 120 days prior to the commencement of the First Window for each Picture, Open Road will deliver or make available to SNI, at Open Road's expense, all items (including Program Elements, Trailer Elements and Ancillary Materials) relating to such Picture set forth in and in accordance with Schedule A hereto.

**13.** **EDITING:** SNI shall not cut, delete or edit any portion of any Picture without the express written consent of Open Road, except that SNI shall have the right to compress, down-convert, scale, up-convert and/or alter the resolution of any Picture provided to SNI by Open Road hereunder.

**14.** **CONFIDENTIALITY:** The parties shall issue a joint press release regarding the parties' entering into this Agreement, the timing and content of which shall be mutually approved. The terms and conditions of this Agreement are strictly confidential, and neither party shall disclose (orally, in writing, by press release or by public disclosure of any kind or otherwise) to any third party (other than the party's respective auditors, consultants, financial advisors, lenders and attorneys, on a need-to-know basis) any information with respect to the terms and conditions of this Agreement except: (a) to the extent necessary to comply with the law, including without limitation S.E.C. or similar disclosure requirements; (b) to the extent necessary to comply with the valid order of an administrative agency or a court of competent jurisdiction; (c) to enforce its rights pursuant to this Agreement; (d) as part of its normal reporting or review procedure, to its parent, subsidiary and other affiliated companies, their banks, auditors, attorneys and similar professionals, provided that such companies, banks, auditors, attorneys and similar professionals, agree to be bound by the provisions of this Paragraph or are otherwise subject to comparable professional confidentiality obligations; (e) to a third party with which it is engaged in bona fide, good faith negotiations concerning a potential acquisition, merger, or consolidation, but only following notice to the other party and provided that such third party agrees to be bound by the provisions of this Paragraph; or (f) if mutually agreed to in writing in advance by the parties hereto. To the extent disclosure is required by law or is made by a party to enforce its rights pursuant to this Agreement in accordance with this Paragraph 14, each party agrees to (X) redact this Agreement to the fullest extent permitted under applicable laws, rules and regulations; (Y) provide the other party at least five (5) business days' prior written notice of such disclosure, unless such party is restricted by law from so notifying the other party; and (Z) submit a request to the court or other governing body that this Agreement receive confidential treatment under the applicable laws, rules and regulations (including, in connection with court proceedings, by being placed under "seal"). Each party acknowledges and agrees that a breach of this Paragraph 14 will result in the substantial likelihood of irreparable harm and injury to the other party for which monetary damages alone would be an inadequate remedy, and for which damages would be difficult to accurately measure. Accordingly, each party agrees that the other party shall be entitled, in addition to any other remedies available to it at law or in equity, to an injunction to prevent any breach or threatened breach of this Paragraph 14.

**15.** **E&O INSURANCE:** Open Road, at its expense and for the duration of the First and Second Windows for each Picture, will secure and maintain producer's and/or distributor's liability (errors and omissions) insurance in the minimum amount of $3,000,000 per claim and $5,000,000 in the aggregate and shall deliver to SNI a certificate of such insurance, in a form reasonably satisfactory to SNI. Such

EXECUTION COPY

certificate must provide that such insurance (a) cannot be modified, terminated or canceled by the carrier without its first notifying SNI of such event, and (b) is not subject to any non-standard exclusions from, restrictions of or limitations in coverage or a deductible greater than $25,000. Such policy shall name as additional insureds SNI, its parent, subsidiary and affiliated companies, successors, licensees and assigns and the respective officers, directors, agents and employees of any and all of the foregoing and shall contain an endorsement that negates the "other insurance" clause in the policy and a statement that the insurance being provided is primary and that any errors and omissions insurance carried by SNI or any other person or entity (other than Open Road) is neither primary nor contributing.

## 16.   OPEN ROAD'S REPRESENTATIONS, WARRANTIES AND COVENANTS:

Open Road represents, warrants and covenants that it has all the rights and authority necessary to enter into this Agreement and perform its obligations hereunder. Open Road further represents and covenants, with respect to each Picture that is licensed to SNI hereunder:

(a)  it has all the rights and authority necessary to grant all rights granted or purported to be granted herein with respect to such Picture (including without limitation the right to use performers' names, images, voices, likenesses and biographies as contemplated herein);

(b)  nothing contained in the Picture, nor the entering into or performing of this Agreement, nor the exercise of any of the rights granted hereunder, will violate any applicable law or governmental rule or regulation or violate or infringe upon any rights whatsoever (including, without limitation, any copyright, trademark, moral right or other proprietary right or interest) of any third persons or entities or result in any other liability;

(c)  it owns or controls, and licenses to SNI hereunder for no additional consideration, all the rights with respect to any music contained in the Picture that are required in connection with the Distribution of the Picture and Advertising Rights in accordance with this Agreement (including without limitation performance rights), except to the extent that the non-dramatic performance rights in musical compositions that are necessary to Distribute the Picture on the SNI Services are controlled by ASCAP or BMI or are in the public domain (it being agreed that, as between Open Road and SNI, SNI shall be responsible for making all payments which may be required to be paid to ASCAP or BMI with respect to non-dramatic performance rights in musical compositions on account of SNI's Distribution of the Picture on the SNI Services hereunder). If and to the extent that music included in the Picture is not licensed for advertising use, Open Road will so advise SNI in writing and SNI will not utilize such music in advertising and promotion;

(d)  the Picture will be protected by copyright in the Territory throughout the duration of this Agreement and timely registered in the United States Copyright Office in Washington, D.C. for copyright protection;

(e)  it has paid or will pay all charges, taxes, license fees, residuals, reuse, rerun, pension and health and welfare fund payments, and payroll tax payments or other payments due to any person (including, without limitation, any union, guild, actor, director, craftsman or performer) by virtue of any authorized use made of the Picture hereunder (including in connection with the Advertising Rights), and other amounts that have been or may become owed in connection with the Picture or SNI's exercise of the rights granted to it hereunder, and there are not pending or threatened any claims, litigations, liens, charges, restrictions or encumbrances on the Picture or on such rights that would (X) interfere with SNI's rights hereunder or (Y) require SNI to make any payments on account of SNI's exercise of such rights (other than the License Fee for the Picture and any payments to ASCAP or BMI that may be required under Paragraph 16(b) above);

(f)   no performer appearing or to appear in any depiction in the Picture of sexually explicit conduct, as that term is defined in 18 U.S.C. § 2256 and incorporated in 18 U.S.C. §§ 2257 and 2257A, was or will be younger than eighteen (18) years of age on the date that such depiction of sexually explicit conduct was or will be originally filmed;

(g)   the Picture does not contain any depiction of "Actual" (i.e., the performer was actually engaged in the applicable act while being filmed) human sexual intercourse (including genital-genital, oral-genital, anal-genital, or oral-anal, whether between those of same or opposite sex), bestiality, masturbation, or sadistic or masochistic abuse (collectively, "Sexually Explicit Conduct"); and

(h)   either (X) the Picture does not contain any depiction of any lascivious exhibition of a performer's genitals or pubic area – including that which may be clothed ("Lascivious Exhibition") or any "Simulated" (i.e., the applicable act is depicted in the Picture in a manner causing a reasonable viewer to believe the performers engaged in such act notwithstanding that they did not actually do so) "Sexually Explicit Conduct" (as defined in Paragraph 2 above); or

(Y)   the Picture may contain depiction(s) of Lascivious Exhibition and/or Simulated Sexually Explicit Conduct.  With respect to each Picture licensed hereunder produced either by Open Road, a U.S. Producer or a non-U.S. Producer that has elected to certify consistent with the provisions of this subparagraph (each such Producer, a "Certifying Producer"), Open Road represents and warrants that it (or such Certifying Producer) has certified or will timely certify to the U.S. Attorney General, pursuant to 18 U.S.C. § 2257A(h), in the form required by 28 C.F.R. § 75.9, that Open Road (or such Certifying Producer) regularly and in the ordinary course of business collects and maintains individually identifiable information regarding all performers (including minor performers) employed by Open Road (or such Certifying Producer) pursuant to Federal and/or State tax, labor, and other laws, labor agreements, or otherwise pursuant to industry standard.  Open Road will deliver a copy of Open Road's certification [promptly following the execution hereof].  Open Road will deliver a copy of each Certifying Producer's certification [in accordance with the Delivery Schedule]; and with respect to each performer (including minor performers) directly employed by Open Road (or by an applicable Certifying Producer), it (or the Certifying Producer) itself collects and maintains individually identifiable information for each such performer (including the performer's name, addresses and date of birth), as necessitated by Federal and/or State tax, labor or other law, or labor or industry standards, in a manner retrievable by performer name, and Open Road will deliver copies of such information collected and maintained by Open Road (or by the Certifying Producer) upon demand; and with respect to each performer (including minor performers) employed by Open Road (or by an applicable Certifying Producer) through a third party (such as, e.g., a payroll or loan-out company), Open Road (or the Certifying Producer) has contractually obligated or will contractually obligate each such third party to (I) confirm that it collects and maintains, pursuant to Federal and/or State tax, labor or other law, or labor or industry standards, individually identifiable information about such performer that includes at a minimum the performer's name, addresses and date of birth; (II) be able to retrieve such individually identifiable information by performer name; and (III) deliver copies of such information upon demand by Open Road (or by the Certifying Producer).  With respect to each Picture licensed hereunder produced outside the U.S. by a non-U.S. Producer that has not elected to be a Certifying Producer, Open Road will so notify SNI as soon as Open Road becomes aware of such fact (but in no event later than the date of such Picture's Initial Theatrical Release) and simultaneously deliver to SNI a screener of such Picture.  In the event Showtime desires additional documents relating to the performers in such Picture, Open Road shall use best efforts to obtain such documents from such Producer.

**17.    SNI'S REPRESENTATIONS, WARRANTIES AND COVENANTS:** SNI represents, warrants and covenants that it has all the rights and authority necessary to enter into this Agreement and perform all of its obligations hereunder.

11

EXECUTION COPY

## 18.   INDEMNIFICATION:

(a)  Open Road shall defend, indemnify and hold harmless SNI, SNI's parent, subsidiary and affiliated companies, and the licensees, shareholders, officers, directors, employees, agents, successors and assigns of each of the foregoing, against and from any and all claims, damages, losses, liabilities, costs and expenses (including, without limitation, reasonable fees and disbursements of outside counsel) (collectively, "Claims") incurred by SNI in or in connection with any action, claim or proceeding between SNI and any third party arising out of the exercise of any rights granted herein or out of any breach or claimed breach by Open Road of any representation, warranty, covenant or other provision hereof.  SNI shall defend, indemnify and hold harmless Open Road, Open Road's parent, subsidiary, and affiliated companies, and the shareholders, officers, directors, employees, agents, successors and assigns of each of the foregoing against and from any and all Claims incurred by Open Road in or in connection with any action, claim or proceeding between Open Road and any third party arising out any breach or claimed breach by SNI of any representation, warranty, covenant or other provision hereof and/or or any claims from consumers or other third parties arising from or related to the SNI Services or acts or omissions of SNI unrelated to the Pictures and/or the acts and omissions of Open Road.

(b)  In order to seek or receive indemnification, the party seeking indemnification (the "indemnitee") shall promptly notify the other party (the "indemnitor") of each Claim and shall afford the indemnitor the opportunity to participate in any compromise, settlement, litigation or other resolution of such Claim, or, at the election of the indemnitee, shall require the indemnitor to assume the defense of any such Claim, with counsel of the indemnitor's own choosing; provided, however, that if the indemnitor is required to assume such defense, the indemnitee shall have the opportunity to participate fully in such defense at the indemnitee's expense.  Neither party shall compromise, settle or otherwise resolve such Claim without the other party's prior written consent, not to be unreasonably withheld.

19.   **NOTICES**: All notices under the Agreement (including Schedule A thereto) shall be in writing and shall be hand delivered, sent by certified or registered mail (return receipt requested), sent by recognized overnight air courier service, or sent by email, in accordance with the provisions of this paragraph. Notices will be deemed delivered on the date of delivery if delivered by hand or by email, on the third business day after the day of deposit in the mail, or on the first business day after the day sent by air courier.  Notices of alleged breach may be sent by email but only if simultaneously delivered by an alternative acceptable method above (and the timing of notice shall be in accordance with the alternative method and not the date of the email).

To Open Road:  Open Road Films, LLC
12301 Wilshire Blvd., Suite 600
Los Angeles, CA 90025
Attn:  General Counsel
Tel:  (310) 571 2220
Email: tortenberg@openroadfilms.com
ekleinberg@openroadfilms.com

To SNI:  Showtime Networks Inc.
1633 Broadway
New York, NY  10019
Attn:  Law Department
Fax:  (212) 708-1391
Tel:  (212) 708-1250
Email: Kent.Sevener@showtime.net

EXECUTION COPY

**20.     WITHDRAWAL:**  Open Road shall have the right to withdraw any given Picture and/or any other content licensed hereunder for legal or actual or potential liability reasons as reasonably determined by Open Road in good faith (provided, however, that Open Road shall not be entitled to exercise such rights solely in order to comply with a license agreement whose exclusivity requirements would preclude the license provided for herein).  If Open Road exercises its right of withdrawal after the commencement of the First Window for a Picture, the parties shall negotiate in good faith a fair adjustment to the License Fee for such withdrawn Picture (which, if such withdrawal occurs before the end of the First Window shall be no less than a proration of the License Fee based on the number of Exhibition Days taken at the time of such withdrawal and the number of Exhibition Days of such Picture authorized hereunder (before taking into account such withdrawal)), and Open Road shall promptly refund any amounts due to SNI (if any) as a result of such adjustment.

**21.     AUDIT RIGHTS:**  SNI shall have customary audit rights with respect to Open Road's books and records for purposes of determining (a) the U.S. Box Office and qualifying criteria with respect to each Picture hereunder; and, in the event the "Ownership Conditions" (as defined in Paragraph 24) cease to be satisfied, following such event, the level of strategic in-theater support provided to Open Road by its exhibitor-owners.  Such audit rights may be exercised by SNI upon sixty (60) days' prior written notice and no more than once in any calendar year (provided that, in the event the Ownership Conditions cease to be satisfied after SNI has exercised its audit rights under subpart (a) in a particular calendar year, SNI may thereafter exercise its audit rights under subpart (b) in that same calendar year).

**22.     ASSIGNMENT:**  Neither party may assign, pledge or transfer this Agreement or any of its rights or obligations under this Agreement without the other party's prior written consent, except that (X) each Party may assign this Agreement to an affiliate of such party, provided that such assignment does not frustrate the purposes and intents of this Agreement, including as set forth in Paragraph 23; and (Y) this Agreement shall be assigned to, and shall be binding upon, any successor-in-interest to Open Road or Showtime, as applicable, as a result of a merger, consolidation, reorganization, or sale of all or substantially all of such party's assets; provided, however that Open Road shall have the right to assign or pledge its rights to receive payments hereunder to Open Road's principal lender and/or financier subject to a reasonable and customary non-disturbance and direction to pay agreement as set forth in Paragraph 5 hereof.  This Agreement and the rights and obligations herein shall be binding upon the parties, their successors and permitted assigns.

**23.     PURPOSES AND INTENTS:**  The parties agree that two of the principal purposes and intents of this Agreement are that (a) SNI have the right to Distribute on the SNI Services motion pictures in which the Open Road Group (including any entity that is managed by Tom Ortenberg and in which AMC and/or Regal participates) controls distribution rights in the Territory during the Term, and (b) SNI pay to Open Road the License Fees due with respect to such motion pictures.  The parties agree that at all times hereunder they will act in good faith in furtherance of such purposes and intents, and in no event will any party, whether directly or indirectly, act or fail to act (or cause or permit any of its respective affiliated persons or entities to act or fail to act) in such a way or use any provision of this Agreement as to frustrate the purposes and intents of this Agreement.

### 24.     KEY MAN/IN-THEATER SUPPORT:

(a)  It is of the essence of this Agreement that Tom Ortenberg ("Ortenberg") have principal decision-making authority for the Open Road Group with respect to the production and distribution of theatrical motion pictures in the U.S. by the Open Road Group during the entire Term, subject to budget limitations and similar restrictions imposed upon Ortenberg in the nature of corporate governance (collectively, "Content Management Authority").  If at any time for any reason, including without limitation by reason of an event of Force Majeure, Ortenberg loses Content Management Authority of the Open Road Group on more than a temporary (no more than three (3) month) basis (e.g., illness and temporary

disability) (the "Key Man Event"), it shall not be a breach of this Agreement but SNI shall have the right to terminate this Agreement with respect to all motion pictures except (a) motion pictures produced by the Open Road Group on which principal photography commenced prior to the date of the Key Man Event; (b) motion pictures acquired by the Open Road Group prior to the date of the Key Man Event; and (c) motion pictures Initially Theatrically Released by the Open Road Group in the U.S. within one (1) year following the date of the Key Man Event, even if such pictures neither commenced principal photography nor were acquired by the Open Road Group prior to the date of the Key Man Event.

(b) Without limiting the foregoing, it is also of the essence of this Agreement that AMC and Regal (and/or their respective affiliates and successors in interest) (X) remain in the theatrical motion picture exhibition business as major exhibitors and (Y) continue to own or exercise (separately, jointly and/or in conjunction with one or more additional exhibitor-owners of Open Road) more than 50% voting control of Open Road in the aggregate (the "Ownership Conditions"). If at any time for any reason, including without limitation by reason of an event of Force Majeure lasting more than one (1) month, the Ownership Conditions are no longer satisfied, it shall not be a breach of this Agreement but SNI shall have the right to terminate this Agreement with respect to all motion pictures Initially Theatrically Released after the first date on which the Ownership Conditions cease to be satisfied unless Regal and/or AMC (or their current successors, affiliates or other then-current exhibitor-owners of Open Road) continue to provide strategic in-theater support to Open Road at least comparable to the level of support they have provided to Open Road through the date hereof (taken in the aggregate or, on average, as opposed to on a picture by picture or special circumstance basis).

**25.    TERMINATION BY OPEN ROAD:** The occurrence of any one or more of the following events shall constitute a default by SNI and give Open Road the right, in addition and without prejudice to any and all other rights it may have under this Agreement, in law or equity, to terminate this Agreement immediately:

(a) if SNI commits a material breach of its obligations under this Agreement that is capable of being cured, and such breach has not been cured within thirty (30) days following written notice from Open Road; or

(b) if SNI or CBS Corporation should:

(i) file a petition, answer or consent seeking relief under Title 11 of the United States Code, as now constituted or hereafter amended, or any other applicable Federal or State bankruptcy law or other similar law ("Any Bankruptcy Law"); or

(ii) consent or become subject to the institution or proceedings under Any Bankruptcy Law or to the filing of any petition thereunder, which proceedings or petition are not dismissed within 60 days, or to the appointment of, or taking possession by, a receiver, liquidator, assignee, trustee, custodian, sequestrator or similar official of it or of any substantial part of its property ("Trustee"); or

(iii) fail or be unable to pay their debts as they come due, or otherwise become insolvent; or

(iv) make an assignment for benefit of creditors ("ABC"); or

(v) take any action in furtherance of any aforesaid action; or

(vi) become the subject of a decree or order by a court having jurisdiction in the premises for relief in respect of it (and such decree or order shall continue unstayed and in effect for a period

14

of sixty (60) consecutive days) (i) under Any Bankruptcy Law, (ii) appointing a Trustee, (iii) making or effecting an ABC or (iv) ordering the winding-up or liquidation of its affairs.

**26.     TERMINATION BY SHOWTIME:** The occurrence of any one or more of the following events shall constitute a default by Open Road and give SNI the right, in addition and without prejudice to any and all other rights it may have under this Agreement, in law or equity, to terminate this Agreement immediately:

(a) if Open Road commits a material breach of its obligations under this Agreement that is capable of being cured, and such breach has not been cured within thirty (30) days following written notice from SNI; or

(b) if Open Road does any of the following and (X) this Agreement is not assumed or assigned pursuant to the second grammatical paragraph of Paragraph 27 within one-hundred and eighty (180) days thereafter, or, (Y) if Open Road is a debtor or debtor-in-possession in a bankruptcy proceeding, this Agreement is not assumed or assigned pursuant to the second grammatical paragraph of Paragraph 27, pursuant to a motion by Open Road or its trustee made within one-hundred and eighty (180) days after the commencement of that bankruptcy proceeding, or such further time as the court may allow upon application by Open Road or its trustee to make an election whether or not to assume or assign pursuant to the standards in 11 U.S.C. 365(d):

(i) files a petition, answer or consent seeking relief under Any Bankruptcy Law; or

(ii) consents or becomes subject to the institution or proceedings under Any Bankruptcy Law or to the filing of any petition thereunder, which proceedings or petition are not dismissed within 60 days, or to the appointment of, or taking possession by, a Trustee; or

(iii) makes an ABC; or

(iv) takes any action in furtherance of any aforesaid action; or

(v) becomes the subject of a decree or order by a court having jurisdiction in the premises for relief in respect of it (and such decree or order shall continue unstayed and in effect for a period of sixty (60) consecutive days) (i) under Any Bankruptcy Law, (ii) appointing a Trustee, (iii) making or effecting an ABC or (iv) ordering the winding-up or liquidation of its affairs; or

(c) If Open Road fails or is unable to pay its debts as they come due, or otherwise becomes insolvent;

(d) If Open Road commits, authorizes or suffers any other act, omission, event or condition which gives Showtime the express right (as set forth elsewhere in this Agreement) to terminate this Agreement immediately (other than a Key Man Event or an Ownership Event, for which SNI's termination rights are as set forth in Paragraph 24 hereof); or

(e) if no Pictures are Initially Theatrically Released in a given calendar year of the Term.

**27.     ASSUMPTION AND FEES IN BANKRUPTCY PROCEEDING:** If either party to this Agreement has its rights hereunder become exercisable by a bankruptcy trustee, debtor-in-possession, assignee of an ABC or other Trustee, who elects to reject this Agreement, then the other party to this Agreement (the "Non-Bankrupt Party") shall, at its option, have the right, but not the obligation, to terminate this Agreement immediately upon the date on which such rejection becomes fully effective (which, in the case of a bankruptcy or other court proceeding shall occur on the date on which the order of the court approving such rejection becomes final and no longer subject to appellate review) by sending written notice of such

termination, whereupon all of the Non-Bankrupt Party's obligations except those previously incurred hereunder shall cease. In that event, notwithstanding its termination of the Agreement, the Non-Bankrupt Party shall retain all of its rights and remedies with respect to any amounts due to the Non-Bankrupt Party under the Agreement, as well as any claim or damages flowing or resulting from such rejection. Open Road acknowledges that each motion picture contemplated under this Agreement is a work of authorship under Title 17 of the U.S. Code and is intended to constitute, and does constitute, "intellectual property" within the meaning of the United States Bankruptcy Code (including under Section 365[n] thereof).

Notwithstanding the provisions of Paragraph 22 of this Agreement, if Open Road is the debtor, debtor-in-possession or otherwise subject to a proceeding under Any Bankruptcy Law, then Open Road as a debtor or debtor-in-possession or Open Road's bankruptcy trustee may assume and/or assign this Agreement provided that Open Road, its bankruptcy trustee (if any) and any assignee of this Agreement continue to be bound by the provisions of Paragraph 24 of this Agreement (i.e., SNI retains its right to terminate the Agreement as set forth therein upon the occurrence of a Key Man Event or if the Ownership Conditions cease to be satisfied). Nothing herein is intended to provide or imply that any such assumption or assignment is excused from or permissible without satisfying all other requirements for assumption and/or assignment under Any Bankruptcy Law or that any other term or provision of this Agreement would not be applicable or enforceable upon such assumption and/or assignment.

In addition to any other rights and remedies available hereunder, if this Agreement is assumed by a bankruptcy trustee, debtor-in-possession, assignee under an ABC or other Trustee, including without limitation an assumption pursuant to Section 365 of the Bankruptcy Code (such assuming party being herein referred to in this Paragraph as the "Bankrupt Party"), then the Non-Bankrupt Party shall be entitled to recover as a part of the default to be cured all reasonable legal fees and expenses paid or incurred by the Non-Bankrupt Party in attempting to remedy a breach by such Bankrupt Party. In such event, the Non-Bankrupt Party shall be deemed and considered the prevailing party for purposes of any applicable statute or other law relating to the award or recovery of attorney's fees and costs.

## 28. MISCELLANEOUS:

This Agreement may not be modified, nor may any provision be waived, except in a writing signed by both parties hereto. No payment under this Agreement shall operate as a waiver of any provision hereof. No waiver of any breach or default under this Agreement shall operate as a waiver of any preceding or subsequent breach or default. THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS EXECUTED AND TO BE PERFORMED ENTIRELY THEREIN. EACH PARTY IRREVOCABLY AGREES THAT THE STATE AND FEDERAL COURTS LOCATED IN NEW YORK CITY SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY SUIT OR OTHER PROCEEDING ARISING OUT OF OR BASED UPON THIS AGREEMENT, AND EACH WAIVES ANY CLAIM THAT IT IS NOT SUBJECT PERSONALLY TO THE JURISDICTION OF SAID COURTS OR THAT ANY SUCH SUIT OR OTHER PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM OR IMPROPER VENUE. It is agreed that the rights granted by Open Road to SNI hereunder are of a special, unique, unusual, extraordinary and intellectual character which gives them a peculiar value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law and that a breach by Open Road of its obligation to license films to SNI in accordance with this Agreement may cause SNI irreparable injury and damage. Open Road expressly agrees that, except as otherwise expressly provided in this Agreement, SNI shall be entitled to injunctive or other equitable relief solely with respect to the licensed rights (including, without limitation, specific performance) to prevent Open Road from licensing the licensed rights in a Picture to a third party in violation of this Agreement . Resort to such equitable relief, however, shall not be construed to be a waiver of any other rights or remedies which SNI may have for damages or otherwise. In no event shall SNI be entitled to injunctive or equitable relief that would interfere with the development or production of any content, the distribution of any Picture outside the Territory or

the distribution of rights in the Picture not licensed to SNI hereunder. Except as otherwise expressly provided in this Agreement, no remedy conferred upon or reserved hereunder at law and/or at equity shall be exclusive of any such other remedy or remedies, and each and every such remedy shall, to the extent permitted by applicable law, be in addition to any such other remedy. The prevailing party in action or other proceeding arising out of or relating to this Agreement shall be entitled to recover its fees and costs, including without limitation attorneys' fees, incurred in connection with such action or proceeding. This Agreement shall be construed without regard to the party or parties responsible for its preparation, and shall be deemed as prepared jointly by the parties hereto. In resolving any ambiguity or uncertainty existing herein, the parties agree that no consideration or weight shall be given to the identity of the drafting party. If any part, term, or provision of this Agreement is held by a court or other tribunal to be invalid, illegal, or otherwise unenforceable, such part, term, or provision shall be inoperative and void insofar as it is in conflict with law, but the validity of the remaining parts, terms, or provisions shall not be affected and the rights and obligations of the parties shall be construed and enforced as if this Agreement did not contain the particular part, term, or provision held to be invalid or unenforceable. The headings and captions used in this Agreement are for convenience only and shall not be deemed to affect in any way the language of the provisions to which they refer. This Agreement may be executed by facsimile and in any number of counterparts, which together shall constitute one instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

SHOWTIME NETWORKS INC.          OPEN ROAD FILMS, LLC

By: _____          By: _____

17

EXECUTION COPY

**EXHIBIT X**



EXECUTION COPY

## SCHEDULE A
## DELIVERY SCHEDULE

I.      Physical Elements:  The Program Elements and Trailer Elements set forth below for each Picture shall be made available to SNI, at Open Road's sole expense, for reproduction (which reproduction shall be at SNI's expense).  Open Road agrees to authorize its duplicating facility or laboratory (as applicable), on a timely basis, to fulfill SNI's requests for reproductions of Physical Elements hereunder.  SNI's right with respect to such Physical Elements is limited to a right of reproduction (including, without limitation, reproductions for Distribution and internal screening purposes); all such Physical Elements shall remain the property of Open Road.

        1.      With respect to each Picture, Open Road shall make available to SNI (via a "Transfer Master Access Letter") for reproduction the following Program Elements:

                a.      an HD 1080i master in 16X9 OAR (original aspect ratio);
                b.      an HD 1080i 16X9 full frame (pan and scan) master;
                c.      an HD 1080p 16x9 OAR (original aspect ratio) master;
                d.      an HD 1080p 16X9 full frame (pan and scan) master;
                e.      an SD 4X3 full frame (pan and scan) master;
                f.      an SD 4X3 letterbox OAR (original aspect ratio) master; and
                g.      a 1080p Pro-Res HD digital file (16x9 OAR) master (or another
        appropriate digital format approved by SNI).

In addition, if any encoded or alternative format(s) (e.g. 3-D) of a Picture is made available or delivered to any other licensee (other than solely for theatrical distribution), then Open Road shall make available to SNI for reproduction such encoded or alternative format(s).

In each of the foregoing cases, the applicable master shall be:

        x.      in stereo English, with separate and discrete, frame accurately conformed audio tracks (on a DVDR 5.1 + Lt/Rt English final ProTools Session or other appropriate media) used to create Dolby Digital 5.1 audio encoding (at the then-current number of audio tracks (but no less than six) utilized in the U.S. pay television industry, e.g. Dolby 7.1) and with closed captioning.  However, if foreign-language motion pictures are licensed hereunder, Open Road shall provide such Pictures with English subtitles and with English dubs (if both subtitles and dubs are available; if not, Open Road shall provide whichever of the two [2] is available); and

        y.      in Spanish, with respect to the masters described above, in all cases with stereo audio (if stereo audio is available).

        In addition, Open Road shall deliver or make available to SNI for reproduction (which reproduction shall be at SNI's expense) any and all existing English-language audio tracks relating to the Picture (e.g. director's commentary) and, as requested by SNI, any and all additional existing foreign-language audio tracks relating to the Picture.

The foregoing are, collectively, the "Transfer Masters".  Open Road agrees that each Transfer Master will be created from 35mm (or higher) film elements, or the native 1080 HD source (and in each case each Transfer Master will be of the highest quality made available to any other licensee (other than solely for theatrical distribution)).  If, after Open Road delivers to SNI the original Transfer Master Access Letter for a given Transfer Master, Open Road elects to move such Transfer Master to another duplicating facility or laboratory, Open Road shall thereafter deliver to SNI a Transfer Master Access

Letter from the duplicating facility or laboratory to which such Transfer Master has been moved (provided that an inadvertent failure to provide such addition Transfer Master Access Letter shall not be a breach of the Agreement). Open Road further agrees that, at all times during the duration of SNI's rights in a given Picture, Open Road will maintain Transfer Masters of the initially released version of such Picture identical to the Transfer Masters to which SNI is initially given access hereunder. In addition to the foregoing, at such time, if ever, as the SNI Services are required (whether directly or indirectly) to Distribute motion pictures with "video description", then commencing at such time and continuing thereafter, Open Road shall make available to SNI, at Open Road's expense, a version of each Picture with video description.

    B.    Trailer Elements:  The following are, collectively, the "Trailer Elements":

        1.    One HD trailer (e.g., HDCam) and/or SD trailer (e.g., Digi-beta) (if available);

        2.    Any HDCam, Digi-beta and/or beta-SP TV spots, if available.

In addition, if any encoded or alternative format(s) (e.g. 3-D) of a trailer(s) with respect to a Picture is made available or delivered to any other licensee (other than solely for theatrical distribution), then Open Road shall make available to SNI for reproduction such encoded or alternative format(s).

    C.    Technical Quality And Format of Physical Elements.  All Transfer Masters hereunder must meet SNI's then-current, reasonable, uniformly applied technical standard requirements.  SNI shall promptly examine each master upon receipt thereof and shall give Open Road written notice within 60 days of receipt if, in SNI's reasonable determination, said master does not meet SNI's technical standard requirements.  If the notification described hereinabove is not received by Open Road within the 60-day period, the applicable master(s) will be deemed accepted by SNI.  Any master not meeting SNI's technical requirements will be returned for replacement (such replacement to be delivered promptly to SNI by Open Road, at Open Road's expense), or corrected by Open Road promptly at Open Road's expense, subject to the following sentence.  Subject to Open Road's express written approval on a case-by-case basis, SNI may make corrections if Open Road fails to make such corrections in time for a scheduled Exhibition Day.

II.    Ancillary Materials:  The following, collectively, are the "Ancillary Materials".  SNI may retain all Ancillary Materials.

    A.    A Transfer Master Access Letter relating to the masters described above.

    B.    One (1) electronic press kit for each Picture, if available (and if not available for a given Picture, key art).

    C.    One (1) master music cue sheet specifying the title of the Picture, each composition contained therein, and, with respect to each composition, the publisher, performer, composer and their affiliated performing rights society.

    D.    A memorandum setting forth all contractual credit obligations and any other restrictions in connection with the Picture (the "Ad Restrictions").

    E.    An E & O Certificate in accordance with the Agreement.

    F.    A statement of the Picture's MPAA rating (which may be included in the Ad Restrictions).

    G.    With respect to each Picture that includes any depiction of Lascivious Exhibition and/or "Simulated" Sexually Explicit Conduct, the following shall be delivered:

    (a)    (i) if the Picture was produced by Open Road, a copy of Open Road's certification to the U.S. Attorney General under 18 U.S.C. § 2257A (h) in the form required by 28 C.F.R. §75.9 (a "Certification") (or, if Open Road has previously delivered a copy of Open Road's Certification to

SNI]hereunder, a statement from Open Road confirming that the applicable Picture was produced by Open Road), or

(ii)  if the Picture was not produced by Open Road, either (x) a copy of the Certification applicable to the Picture from the third-party Producer of the Picture, or (y) a signed and dated statement from Open Road which includes Open Road's representation and warranty to [SNI] that the Picture was produced by a non-U.S. Producer that has not elected to file a Certification and the name and address of such non-U.S. Producer, together with a screener of the Picture.

(iii)  Copies of Producer's and Open Road's Certifications (or Open Road's statement under subparagraph (i) above) applicable to a given Picture shall be delivered no later than such Picture's Initial Theatrical Release date, and the statement and screener under subparagraph (ii)(y) above shall be delivered on the delivery date referred to in Paragraph 16 of the Agreement; and

(b)  Copies of all contracts with third parties (e.g., payroll and loan-out companies) furnishing performers employed by Open Road (or the Picture's Certifying Producer, if applicable) to appear in the Picture, evidencing that Open Road (or the Certifying Producer) has contractually obligated such third parties to perform the actions required by Paragraph 16 of the Agreement; and

(c)  Upon demand of SNI, with respect to any performer employed directly or indirectly by Open Road (or the Picture's Certifying Producer, if applicable) appearing in the Picture, Open Road shall, within two business days of SNI's identifying such performer by name or description, (x) demonstrate that the performer is not "employed by" Open Road or the Certifying Producer, within the meaning of 28 C.F.R. § 75.1(s), or (y) produce copies of individually identifiable information collected and maintained for the performer, regardless whether the performer is employed by Open Road (or the Certifying Producer) directly or indirectly through a third party.

III.  Availability and/or Delivery of Materials

A.  Time.  All Program Elements, Trailer Elements shall be made available to SNI, and all Ancillary Materials shall be delivered to SNI, at least one hundred twenty (120) days prior to the start of the applicable Picture's First Window.

B.  Location.  All Physical Elements will be made available at Open Road's duplicating facility or laboratory (as described above).   Reproductions of Physical Elements for each Picture will be degaussed or otherwise destroyed after such Picture's Window and, upon Open Road's request therefor, SNI shall supply certificates of such destruction to Open Road.  All Ancillary Materials will be delivered at Open Road's expense to SNI's office at 1633 Broadway, 16th Floor, New York, N.Y. 10019, Attn: Wendy Williams.

C.  File-based Delivery.  Open Road and SNI shall discuss making Physical Elements and Ancillary Materials available to SNI via FTP or other online or electronic access.

Showtime Networks Inc.
1633 Broadway
New York, N.Y. 10019

As of August 20, 2013

Regal Entertainment Group
7132 Regal Lane
Knoxville, TN 37918

Gentlemen and Ladies:

We are writing in reference to the Exclusive Theatrical Output Agreement (the "Agreement") dated as of August 20, 2013 between Open Road Films, LLC ("Open Road") and Showtime Networks Inc. ("SNI"). Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement. As an inducement to SNI to enter into the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Regal Entertainment Group ("REG") hereby agrees as follows solely for the benefit of SNI:

In the event that REG (or its direct or indirect subsidiaries) forms or participates in another joint venture or other collaboration, production company, or production companies (each an "Entity") in which Tom Ortenberg serves during the Term in a management role (a "New Ortenberg Entity"), that New Ortenberg Entity shall be deemed to be part of the "Open Road Group" under the Agreement. Further, in the event that REG (and/or its direct or indirect subsidiaries) forms or participates in another Entity which accepts an assignment of "Rights" (as defined in the Agreement) in any motion picture assets owned or controlled by Open Road at any stage of development ("Open Road Development Pipeline Projects"), then such Entity shall be deemed part of the Open Road Group solely in connection with such Open Road Development Pipeline Projects and any sequels, prequels, or derivative productions thereof.

ACCEPTED and AGREED:

Showtime Networks Inc.

By: _____

Its: _____S V P_____

Regal Entertainment Group

By: _____

Its: _____C E O_____

Showtime Networks Inc.
1633 Broadway
New York, N.Y.  10019

As of August 20, 2013

AMC Entertainment Holdings, Inc.
One AMC Way
Leawood, KS 66211

Gentlemen and Ladies:

We are writing in reference to the Exclusive Theatrical Output Agreement (the "Agreement") dated as of August 20, 2013 between Open Road Films, LLC ("Open Road") and Showtime Networks Inc. ("SNI").  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement.  As an inducement to SNI to enter into the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, AMC Entertainment Holdings, Inc. ("AMC") hereby agrees as follows solely for the benefit of SNI:

In the event that AMC (or its direct or indirect subsidiaries) forms or participates in another joint venture or other collaboration, production company, or production companies (each an "Entity") in which Tom Ortenberg serves during the Term in a management role (a "New Ortenberg Entity"), that New Ortenberg Entity shall be deemed to be part of the "Open Road Group" under the Agreement.  Further, in the event that AMC (and/or its direct or indirect subsidiaries) forms or participates in another Entity which accepts an assignment of "Rights" (as defined in the Agreement) in any motion picture assets owned or controlled by Open Road at any stage of development ("Open Road Development Pipeline Projects"), then such Entity shall be deemed part of the Open Road Group solely in connection with such Open Road Development Pipeline Projects and any sequels, prequels, or derivative productions thereof.

ACCEPTED and AGREED:

Showtime Networks Inc.

By: _____

Its: _____

AMC Entertainment Holdings, Inc.

By: _____

Its: _____