**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>OPEN ROADS FILMS, LLC, a Delaware Limited Liability Company, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 18-12012 (LSS)<br>(Jointly Administered) |

**DECLARATION OF JAMES D. STERN IN SUPPORT OF ENDGAME'S OBJECTION
TO DEBTORS' MOTION FOR AN ORDER (I) APPROVING THE SALE
OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND
(II) AUTHORIZING THE ASSUMPTION, ASSIGNMENT AND SALE
OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

I, James D. Stern, declare and state as follows:

1.      I am the Chairman and Chief Executive Officer of Endgame Releasing Co., LLC and Endgame Releasing Funding, LLC (collectively, "Endgame"). Endgame Releasing Co., LLC is a limited liability company organized under the laws of the State of Delaware, and has its principal place of business at 9696 Wilshire Boulevard, Third Floor, Beverly Hills, California 90212. Endgame Releasing Funding, LLC is a limited liability company organized under the laws of California, and has its principal place of business at 9696 Wilshire Boulevard, Third Floor, Beverly Hills, California 90212. I am authorized to make this declaration on behalf of Endgame.

2.      I submit this declaration in support of the *Objection and Reservation of Rights of Endgame Releasing Co., LLC and Endgame Releasing Funding, LLC to Debtors' Motion for an Order (I) Approving the Sale of Substantially All of the Debtors' Assets and (II) Authorizing the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases* (the

"Objection")[1] filed concurrently in the above-captioned bankruptcy cases.  I am over eighteen years of age and competent to testify as a witness.

3.    I am one of the individuals at Endgame responsible for overseeing the P&A Financing transactions described in the Objection, including, but not limited to, the P&A Agreements, Intercreditor Agreements, Interparty Agreements, and related agreements described therein (collectively, the "Endgame Documents").  I am one of the custodians of the books, records and files of Endgame that pertain to the Endgame Documents (the "Business Records").  I have personally worked on and reviewed the books, records and files regarding the Endgame Documents, and as to the following facts, I know them to be true of my own knowledge, or I have gained knowledge of them from the Business Records, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Endgame's business at or near the time of the acts, conditions or events to which they relate.  All such documents were prepared in the ordinary course of business by a person who had personal knowledge of the event being recorded and who had a business duty to accurately record such event.  The Business Records are available for inspection and copies can be submitted to the Court if required.  If called upon to testify to the facts stated herein, I could and would testify competently to the same.

4.    The rights of debtor Open Road Films, LLC ("ORF") to distribute an Endgame Picture (the "Distribution Rights") are granted pursuant to certain Distribution Rights License Agreements (the "Distribution Agreements") entered into between the non-debtor producer of a certain Endgame Picture (each a "Producer", and collectively, the "Producers") as licensor, and ORF as licensee.

---

[1]    All capitalized terms not defined herein shall have the definitions set forth in the Objection.

**ORF Financed Pictures**

5.      ORF was responsible for funding Prints and Advertising expenses ("P&A Expenses") under certain Distribution Agreements with respect to the following films: *Snowden*, *The Nut Job*, *A Haunted House 2*, *The Gunman*, and *Homefront* (each, an "ORF Financed Picture", and collectively, the "ORF Financed Pictures").   The Distribution Agreements contemplated that ORF would finance these P&A Expenses with third party financiers such as Endgame.  In order to fulfill its obligations under the Distribution Agreements, ORF entered into P&A Agreements and Intercreditor Agreements with Endgame and others which, among other things, requires ORF to collect and disburse gross receipts of the ORF Financed Pictures to various parties including Endgame under clearly-defined waterfalls set forth in the Endgame Documents.

**Snowden Documents**

6.      Attached hereto and incorporated herein by this reference are true and correct copies of the following documents related to the ORF Financed Picture entitled "*Snowden*":

a.      *Amended and Restated Financing and Revenue Participation Agreement* dated December 17, 2015; *Amendment #1 to Agreement* dated February 1, 2016; and *Amendment #2 to Agreement* dated September 12, 2016, attached hereto as **Exhibit A**;

b.      *Distribution Rights Acquisition Agreement* dated January 13, 2015; *Amendment #2 to Agreement* dated February 18, 2016; and *Amendment #3 to Agreement* dated April 29, 2016, attached hereto as **Exhibit B**; and

c.      *Intercreditor Agreement* dated December 17, 2015, attached hereto as **Exhibit C**.

**The Nut Job Documents**

7.      Attached hereto and incorporated herein by this reference are true and correct copies of the following documents related to the ORF Financed Picture entitled "*The Nut Job*":

> d.      *Prints and Advertising Financing and Revenue Participation Agreement* dated October 28, 2013, attached hereto as **Exhibit D**;
>
> e.      *Short-Form Amended and Re-Stated Distribution Rights Acquisition and Financing Agreement* dated July 16, 2013; *First Amendment to Short Form Amended and Re-Stated Distribution Rights Acquisition and Financing Agreement* dated October 16, 2013; and *Second Amendment to Short Form Amended and Re-Stated Distribution Rights Acquisition and Financing Agreement* dated October 27, 2013, attached hereto as **Exhibit E**; and
>
> f.      *Intercreditor Agreement* dated December 17, 2013, attached hereto as **Exhibit F**.

**A Haunted House 2 Documents**

8.      Attached hereto and incorporated herein by this reference are true and correct copies of the following documents related to the ORF Financed Picture entitled "*A Haunted House 2*":

> g.      *Prints and Advertising Financing and Revenue Participation Agreement* dated January 15, 2014; and *Amendment to Agreement* dated January 15, 2014, attached hereto as **Exhibit G**;
>
> h.      *Distribution Rights Acquisition and Financing Agreement* dated July 2, 2013, attached hereto as **Exhibit H**; and
>
> i.      *Intercreditor Agreement* dated April 10, 2014, attached hereto as **Exhibit I**.

**The Gunman Documents**

9.      Attached hereto and incorporated herein by this reference are true and correct

copies of the following documents related to the ORF Financed Picture entitled "*The Gunman*":

j.      *Prints and Advertising Financing and Revenue Participation Agreement* dated January 29, 2015, attached hereto as **Exhibit J**;

k.      *Binding Term Sheet* dated July 10, 2013, attached hereto as **Exhibit K**; and

l.      *Intercreditor Agreement* dated March 10, 2015, attached hereto as **Exhibit L**.

**Homefront Documents**

10.      Attached hereto and incorporated herein by this reference are true and correct

copies of the following documents related to the ORF Financed Picture entitled "*Homefront*":

m.      *Prints and Advertising Financing and Revenue Participation Agreement* dated August 27, 2013, attached hereto as **Exhibit M**;

n.      *Short-Form Distribution Rights License Agreement* dated June 7, 2013; and *Side Letter to Short-Form Distribution Rights License Agreement* dated August 26, 2013, attached hereto as **Exhibit N**; and

o.      *Intercreditor Agreement* dated August 26, 2013, attached hereto as **Exhibit O**.

**Producer Financed Pictures**

11.      Endgame also entered into Loan and Security Agreements directly with certain

Producers responsible for funding P&A Expenses with respect to the following films: *Side Effects*,

*Jobs*, and *A Haunted House* (the "Producer Financed Pictures").  In connection with the financing

of the Producer Financed Pictures, the Producers entered into Distribution Agreements with ORF

pursuant to which, among other things, the Producers granted ORF a license to distribute the Producer Financed Pictures.  In connection with the Distribution Agreements, ORF, the Producers and Endgame, among others, entered in various Interparty Agreements which, among other things, incorporated the terms of the Distribution Agreements subject to the terms of the Interparty Agreements, and required ORF to collect and disburse gross receipts of the Producer Financed Pictures under clearly-defined waterfalls.

### Side Effects Documents

12.    Attached hereto and incorporated herein by this reference are true and correct copies of the following documents related to the Producer Financed Picture entitled "*Side Effects*":

      p.     *Loan and Security Agreement* dated May 11, 2012, attached hereto as **Exhibit P**;

      q.     *Distribution Rights Acquisition Agreement* dated April 6, 2012, attached hereto as **Exhibit Q**; and

      r.     *Distribution Interparty Agreement* dated June 19, 2012, attached hereto as **Exhibit R**.

### Jobs Documents

13.    Attached hereto and incorporated herein by this reference are true and correct copies of the following documents related to the Producer Financed Picture entitled "*Jobs*":

      s.     *Loan and Security Agreement* dated June 10, 2013, attached hereto as **Exhibit S**;

      t.     *Amended and Restated Distribution Rights Acquisition and Financing Agreement* dated December 21, 2012, attached hereto as **Exhibit T**; and

u.      *Distributor Interparty Agreement* dated June 10, 2013, attached hereto as

**Exhibit U**.

**A Haunted House Documents**

14.     Attached hereto and incorporated herein by this reference are true and correct

copies of the following documents related to the Producer Financed Picture entitled "*A Haunted*

*House*":

v.      *Loan and Security Agreement* dated September 21, 2012; and *Amendment*

*#1 to Agreement* dated January 14, 2013, attached hereto as **Exhibit V**;

w.      *Distribution Rights Acquisition and Financing Agreement* dated August 21,

2012; and *Amendment #1 to Agreement* dated January 14, 2013, attached

hereto as **Exhibit W**; and

x.      *Distributor Interparty Agreement* dated September 21, 2012, attached

hereto as **Exhibit X**.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.   Executed this 6th day of November, 2018 in Beverly Hills,

California.


James D. Stern