# **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al.*,[1] | Case No. 18-12012 (LSS) |
| | (Jointly Administered) |
| Debtors. | **Ref. Docket Nos. 9, 50 & ____** |

**ORDER (1) APPROVING ASSET PURCHASE AGREEMENT AMONG THE DEBTORS AND THE BUYER, (2) APPROVING SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(b), (f) AND (m), (3) APPROVING ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365, (4) DETERMINING THE AMOUNTS NECESSARY TO CURE SUCH EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (5) GRANTING RELATED RELIEF**

The Court having considered the *Motion for Orders (A)(I) Establishing Bid And Sale Procedures Relating to the Sale of Substantially All of the Debtors' Assets, (II) Authorizing the Debtors to Enter Into an Asset Purchase Agreement with Stalking Horse Bidder, (III) Establishing and Approving Procedures Relating to the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts and (IV) Scheduling a Hearing to Consider the Proposed Sale and (B)(I) Approving the Sale of Substantially All of the Debtors' Assets, (II) Authorizing the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases, and (III) Granting Certain Related Relief* [Docket No. 9] (the "Motion") and the *Motion for Order Authorizing and Approving*

---

[1]    The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.). The Debtors' address is 1800 Century Park East, Suite 600, Los Angeles, CA 90067.

*Certain Bid Protections, Amendments to Bid Procedures Order, and Granting Related Relief*

[Docket No. 217],  filed by Open Road Films, LLC and its affiliated debtors and debtors in

possession (the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"),  seeking,

among other things, entry of an order (i) authorizing the sale (the "Sale Transaction") of certain

of the Debtors' assets (the "Purchased Assets"), free and clear of all liens, claims, interests, and

encumbrances, except for the Permitted Liens, pursuant to that certain Asset Purchase

Agreement, dated as of October 23, 2018 (as amended, supplemented or otherwise modified, the

"APA"),[2] by and among the Debtors and OR Acquisition Co, LLC (the "Buyer"), (ii) authorizing

the assumption, assignment, and sale of certain executory contracts and unexpired leases as set

forth in the APA, and (iii) granting related relief; and this Court having entered orders on

October 9, 2018 [Docket No. 160] (the "Bid Procedures Order")[3] and October 26, 2018 [Docket

No. 239] (the "Bid Protections Order") approving, among other things, the Bid Procedures with

respect to and notice of the Sale Transaction; and an Auction having been set for November 7,

2018 in accordance with the Bid Procedures Order; and Buyer having submitted the sole

Qualified Bid; and hearings having been held on November 20 and 27, 2018 and December 13,

2018 (the "Sale Hearing") to consider approval of the APA and the Sale Transaction; and the

Court having reviewed and considered the Motion, any responsive pleadings filed in connection

with the Motion, the record in the above-captioned Chapter 11 Cases, and the representations of

counsel at the Sale Hearing; and after due deliberation and sufficient cause appearing therefor;

**IT HEREBY IS FOUND AND DETERMINED THAT**:[4]

---

[2]   A true and correct copy of the form of the APA is attached hereto as **Exhibit A**.

[3]    Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion, in the Bid Procedures Order, or in the APA, as applicable.

[4]    All findings of fact and conclusions of law announced by the Court at the Sale Hearing are hereby incorporated herein to the extent not inconsistent herewith.

01:23957429.123
959478.1

A.    **Jurisdiction and Venue.**  This Court has jurisdiction over this matter and over

the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§

157(a) and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M),

(N), and (O).  Venue of these Chapter 11 Cases and the Motion is proper pursuant to 28 U.S.C.

§§ 1408 and 1409.  The statutory and other legal predicates for the relief sought in the Motion

and granted herein are Sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules

2002, 6004, 6006, 9008, 9014 and 9019.

B.    **Notice.**  As evidenced by the affidavits of service on file with the Court, due,

proper, timely, adequate, and sufficient notice and a reasonable opportunity to object or be heard

with respect to the Motion, the Auction, the Sale Hearing, the Sale Transaction, and the

assumption and assignment of the Assumed Contracts has been provided in accordance with the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Bid Procedures Order, and the Bid

Protections Order to all known interested parties, including to (a) all persons known by the

Debtors to have expressed an interest to the Debtors in a transaction with respect to the

Purchased Assets during the past six (6) months; (b) all entities known by the Debtors to have

asserted any lien or interest in the Purchased Assets; (c) all non-debtor parties to the Assumed

Contracts; (d) the U.S. Trustee; (e) the Committee and its counsel; (f) any governmental unit

known to have a claim in the Chapter 11 Cases; (g) all other known creditors and equity security

holders of the Debtors; (h) all persons that have requested special notice in the Chapter 11 Cases;

and (i) all other persons as directed by the Court.  In addition, the Debtors caused the Sale Notice

to be published in the *USA Today* on October 15, 2018 and in *Variety* on October 16, 2018.

Accordingly, except as otherwise set forth herein, no other or further notice of the foregoing or

this Order is necessary or required.

C.     **Compliance with Bid Procedures Order and Bid Protections Order.**  As demonstrated by evidence proffered or adduced and the representations of counsel at the Sale Hearing, the Debtors have conducted an adequate marketing process and a fair and open sale process in compliance with the Bid Procedures Order and Bid Protections Order.  The Bid Procedures were substantively and procedurally fair to all parties, were the result of arm's length negotiations, and afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Purchased Assets.  The Bid Procedures, the Bid Procedures Order, and the Bid Protections Order have been complied with in all material respects by the Debtors and the Buyer.

D.     **Corporate Authority.**  The Debtors and the Buyer (i) have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) have all necessary power and authority to consummate the Sale Transaction, and (iii) have taken all necessary action to authorize and approve the APA and to consummate the Sale Transaction. No consents or approvals, other than those expressly provided for in the APA, are required for the Debtors to consummate the Sale Transaction.

E.     **Business Justification.**  Approval of the APA and consummation of the Sale Transaction is in the best interests of the Debtors, the estates, creditors, and other parties in interest.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the sale of the Purchased Assets to the Buyer pursuant to Section 363(b) of the Bankruptcy Code.

F.     **Highest and Otherwise Best Offer.**  The consideration to be provided by the Buyer pursuant to the APA: (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the Purchased Assets; and (iii) constitutes reasonably equivalent value and fair consideration

for the Purchased Assets under the Bankruptcy Code, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any similar applicable laws of the United States, any state, territory, possession thereof, and the District of Columbia.  The terms and conditions set forth in the APA are fair and reasonable under the circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding any creditor of the Debtors under any of the foregoing federal or state laws or any other applicable laws.

G.    **Good Faith Purchaser.**  The APA and the Sale Transaction were proposed, negotiated, and entered into by and among the Debtors and the Buyer without collusion or fraud, in good faith, and at arm's length.  The Buyer is a good faith purchaser within the meaning of Bankruptcy Code Section 363(m) and is therefore entitled to the full protection of that provision with respect to the APA and the Sale Transaction.  There has been no showing that the Debtors or the Buyer have engaged in any action or inaction that would cause or permit the APA or the Sale Transaction to be avoided or any costs or damages to be imposed under Bankruptcy Code Section 363(n).  The Buyer is not an "insider" of the Debtors as that term is defined in Bankruptcy Code Section 101(31).

H.    **Legal, Valid, and Binding Transfer.**  The Purchased Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of Section 541(a) of the Bankruptcy Code.  The transfer of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets and, except as provided in the APA or this Order, will vest the Buyer with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all liens, claims, interests, and encumbrances, unless specifically

01:~~23957429.1~~23
959478.1

assumed by the Buyer pursuant to the APA.  The APA is a valid and binding contract between the Debtors and the Buyer and shall be enforceable according to its terms.

I.     **Free and Clear.**  The Buyer would not have entered into the APA and would not consummate the Sale Transaction if the transfer of the Purchased Assets to the Buyer and the assumption and assignment of the Assumed Contracts to the Buyer were not free and clear of all liens, claims, interests, and encumbrances as provided for herein.  Subject to the provisions of this Order and except for Permitted Liens as specifically provided in the APA or this Order, the Debtors may sell the Purchased Assets free and clear of all liens, claims, interests, and encumbrances because, in each case, one or more of the standards set forth in Section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied.  Each entity with a lien, claim, interest, or encumbrance in the Purchased Assets to be transferred on the Closing Date:  (i) has, subject to the terms and conditions of this Order, consented to the Sale Transaction or is deemed to have consented; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, interest, or encumbrance; or (iii) otherwise falls within the provisions of Bankruptcy Code Section 363(f).  Those holders of liens, claims, interests, and encumbrances who did not object to the Motion are deemed to have consented to the Sale Transaction and the relief provided for herein pursuant to Bankruptcy Code Section 363(f)(2).

J.     **Not a _Sub Rosa_ Plan.**  The APA and Sale Transaction do not constitute an impermissible _sub rosa_ chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The APA and the Sale Transaction neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate a liquidating plan for the Debtors.

K. **No Successor Liability.** The Buyer (i) is not, and shall not be, considered a successor in interest to the Debtors, (ii) has not, *de facto* or otherwise, merged with or into the Debtors, (iii) is not a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, (iv) is not, and shall not be, considered to have acquired the trade or business of any of the Debtors for any purpose under applicable U.S. federal law (including the Bankruptcy Code and the Internal Revenue Code of 1986, as amended), (v) is not, and shall not be, considered to have acquired the workforce in place (including any of the Debtors' employees) or goodwill or trademarks of the Debtors (other than certain incidental and ancillary rights, which have no value, and are necessary for the ownership of or right to use (including further development of) the other Purchased Assets), and (vi) is not holding itself out to the public as a continuation of the Debtors or the Debtors' trade or business. Except as otherwise specifically provided in the APA, the transfer of the Purchased Assets to the Buyer and assumption by the Debtors and assignment to the Buyer of the Assumed Contracts do not and will not subject the Buyer to any liability whatsoever with respect to the operation of the Debtors' businesses before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of antitrust, successor, transferee, or assignee liability.

L. **Personally Identifiable Information.** Notwithstanding anything to the contrary in the APA, personally identifiable information will not be considered Purchased Assets.

M. **Assumption of Executory Contracts and Unexpired Leases.** Notice of the Debtors' assumption and assignment to the Buyer of the Assumed Contracts has been provided to each non-debtor counterparty to an Assumed Contract, together with the amount, if any, to be

paid to such non-debtor counterparty to cure any defaults under, and to otherwise comply with the requirements of Section 365(b) of the Bankruptcy Code with respect to each Assumed Contract (the "**Cure Amounts**").  As to each Assumed Contract, payment of the Cure Amounts set forth on **Exhibit B** hereto (or such other Cure Amounts as agreed, in writing, by the Debtors, the Buyer and the counterparty to the applicable Assumed Contract or ordered by this Court) is sufficient for the Debtors to comply fully with the requirements of Section 365(b) of the Bankruptcy Code.  In addition, the Buyer has provided adequate assurance of its ability to perform its obligations under each of the Assumed Contracts within the meaning of Section 365 of the Bankruptcy Code.  All other requirements and conditions under the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assumed Contracts have been satisfied.  Therefore, the Assumed Contracts may be assumed by the Debtors and assigned to the Buyer.

N.    **Prompt Consummation.**  The Sale Transaction must be approved and consummated promptly in order to maximize value for the Debtors' estates.  Time is of the essence in consummating the Sale Transaction.  The Debtors have demonstrated compelling circumstances and good and sufficient cause for the immediate approval and consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, prior to, and outside of, a chapter 11 plan.

**THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT**:

1.    The Motion is GRANTED as set forth herein.

2.    Any objections filed or asserted in response to the Motion and the relief granted herein, to the extent not resolved as set forth herein or on the record at the Sale Hearing, are

01:23957429.123
959478.1

hereby overruled on the merits in their entirety, except to the extent that such objection is on

account of a Cure Amount that is presently subject to the cure resolution process contemplated by Section 2.8(c) of the APA.

3.     The APA with the Buyer, including all of its terms and conditions, and the Sale Transaction are hereby approved.

4.     Pursuant to Sections 363 and 365 of the Bankruptcy Code, the Debtors are authorized to (i) execute, deliver, perform under, consummate, and implement the APA and the Sale Transaction together with all additional documents as may be reasonably necessary or desirable to implement the APA and the Sale Transaction and (ii) take any and all actions as they deem necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA and the Sale Transaction, including, without limitation, any and all actions reasonably requested by the Buyer which are consistent with the APA and the Sale Transaction.

5.     Pursuant to Sections 105(a), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing of the Sale Transaction:  (a) the transfer of the Purchased Assets to the Buyer pursuant to the APA shall constitute a legal, valid, and effective transfer of the Purchased Assets and shall vest the Buyer with all right, title, and interest in and to the Purchased Assets; and (b) except those specifically assumed by the Buyer pursuant to the APA and for Permitted Liens as specifically provided in the APA, the Purchased Assets shall be transferred to the Buyer free and clear of all liens, claims, interests, and encumbrances—including, without limitation, (i) any infringement claims arising before the Closing Date, (ii) liabilities for any Seller Party Employees except liabilities arising for Buyer Employees arising after the Closing Date; and (iii) any and all Liabilities for Taxes (y) of or imposed on the Seller Parties (or any member or

Affiliate of the Seller Parties) or (z) related or attributable to the Purchased Assets or the

Business for any pre-Closing tax period—with any such liens, claims, interests, and

encumbrances of which the Purchased Assets are sold free and clear to attach to the proceeds of

the Sale Transaction, in the order of their priority, with the same validity, force, and effect which

they had against the Purchased Assets prior to the entry of this Order, subject to any rights,

claims, and defenses the Debtors, their estates, and all interested parties may possess with

respect thereto; and all persons are forever prohibited and enjoined from commencing or

continuing in any manner any action or other proceeding, whether in law or equity, against

Buyer with respect to any such liens, claims, interests, and encumbrances.

6.      Any obligations related to Guild Residuals for the period prior to September 5,

2018 shall not be subject to further claim, dispute or audit, including, without limitation, any

claim, dispute or audit based on performance of the Purchased Titles prior to the Closing Date,

except to the extent provided for in Section 2.8 of the APA.

7.      Any obligations related to Participations for the period prior to September 5, 2018

shall not be subject to further claim, dispute or audit, including, without limitation, any claim,

dispute or audit based on performance of the Purchased Titles prior to the Petition Date.  For the

avoidance of doubt, except as may otherwise be expressly set forth herein, this Order shall not

cut off or be deemed to waive audit rights, if any, based on performance of the Purchased Titles

for the time period between the Petition Date and the Closing Date.

8.      On the Closing Date, this Order shall be construed and shall constitute for any

and all purposes a full and complete general assignment, conveyance, and transfer of the

Debtors' interests in the Purchased Assets or a bill of sale transferring good and marketable title

in the Purchased Assets.

9.      This Order is and shall be effective as a determination that all liens, claims, interests, and encumbrances (other than those expressly assumed by the Buyer or permitted to survive under the APA) shall be and are, without further action by any person or entity, unconditionally released, discharged, and terminated with respect to the Purchased Assets as of the Closing Date, except as may otherwise be set forth in the APA or this Order.  The provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of all liens, claims, interests, and encumbrances shall be self-executing, and notwithstanding the failure of the Debtors, the Buyer, or any other party to execute, file, or obtain releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and/or implement the provisions hereof, all liens, claims, interests, and encumbrances (other than those expressly assumed by the Buyer or permitted to survive under the APA) on or against such Purchased Assets, if any, shall be deemed released, discharged, and terminated.

10.      Except as otherwise provided herein or in the APA, on the Closing Date, the Debtors' creditors are authorized to execute such documents and instruments and to take all other actions as may be reasonably necessary to document and effectuate the release of their liens, claims, interests, entitlements, and encumbrances in the Purchased Assets (other than those expressly assumed by the Buyer or permitted to survive under the APA), if any, as such liens, claims, interests, and encumbrances may have been recorded or may otherwise exist.  If any such creditor fails to execute any such documents or instruments or take any such actions, the Buyer is authorized to execute such documents and instruments and to take such actions on behalf of the creditor so as to document and effectuate the release of such liens, claims, interests, entitlements and encumbrances.

11.     The Buyer and its successors and assigns shall not be deemed, as a result of any action taken in connection with the transfer of the Purchased Assets, to (i) be a successor to the Debtors or their estates, (ii) have, de facto or otherwise, merged or consolidated with or into the Debtors or their estates, (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, (iv) to have acquired the trade or business of any of the Debtors for any purpose under applicable U.S. federal law (including the Bankruptcy Code and the Internal Revenue Code of 1986, as amended), (v) to have acquired the workforce in place (including any of the Debtors' employees) or goodwill or trademarks of the Debtors (other than certain incidental and ancillary rights, which have no value, and are necessary for the ownership of or right to use (including further development of) the Purchased Assets, or (vi) be held out to the public as a continuation of the Debtors or the Debtors' trade or business, and the Buyer shall have no successor, transferee, or vicarious liability of any kind or character, including, but not limited to, under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee, or transferee liability, labor, product liability, employment, de facto merger, substantial continuity, or other law, rule, or regulation, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date.  Except as otherwise provided herein or in the APA, the transfer of the Purchased Assets to the Buyer pursuant to the APA shall not result in the Buyer or the Purchased Assets having any liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any claim against the Debtors or against any insider of the Debtors or any liens, claims, interests, or encumbrances.

12.     All payments owed to Buyer under Section 2.11(d)(ii) of the APA shall be deemed administrative expenses under Bankruptcy Code §§ 503, 507.

13.     Upon the Closing, and except as otherwise expressly provided in the APA with respect to Assumed Liabilities, the Buyer shall not be liable for any claims against, and liabilities of, the Debtors or any of the Debtors' predecessors or affiliates.

14.     Pursuant to Section 365 of the Bankruptcy Code, the Debtors are authorized to assume the Assumed Contracts designated in the APA and this Order, make or cause to be made the Cure Amounts set forth on **Exhibit B** hereto (or such other Cure Amounts as agreed, in writing, by the Debtors, the Buyer and the counterparty to the applicable Assumed Contract or ordered by this Court), and assign the Assumed Contracts to the Buyer.  Without limiting the foregoing, the Material Contracts that are scheduled to be assumed shall be in full in full force and effect and not in default, notwithstanding the Buyer not assuming any other Material Contract or any contract listed on Schedule 10.3.  The Buyer shall pay the undisputed portion of the Cure Amounts set forth on **Exhibit B** hereto (or such other Cure Amounts as agreed, in writing, by the Debtors, the Buyer and the counterparty to the applicable Assumed Contract or ordered by this Court) within one (1) business day of the Closing, or reasonably promptly thereafter.  Additionally, with respect to Awesomeness Distribution, LLC and Fox 2000 Pictures, a division of Twentieth Century Fox Film Corporation; Redrover Co, Ltd.; The Film Musicians Secondary Markets Fund; the Guilds; and Studiocanal S.A.S, unless otherwise agreed to between the Buyer and the respective counterparty, Buyer shall pay to counterparties to Assumed Contracts the difference between the estimated Cure Amounts for the period between September 6, 2018 through and including November 30, 2018 (the "Relevant Period") listed in the Cure Notice [Dkt No. 172, as amended by Dkt. No. 248] and the actual Cure Amounts due and owing

01:23957429.123
959478.1

for the Relevant Period.  For the period from December 1, 2018 through and including the

Closing Date, the Buyer shall pay in the ordinary course those Participations and Residuals that

come due post-Closing on account of Assumed Contracts.

15**.**     The Buyer has provided adequate assurance of future performance under the

Assumed Contracts within the meaning of section 365 of the Bankruptcy Code.

16**.**     The Assumed Contracts, consistent with the provisions contained herein, shall be

transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with

their respective terms, notwithstanding any provision in any such Assumed Contract (including

those of the type described in Section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts,

or conditions such assignment or transfer and, pursuant to Section 365(k) of the Bankruptcy

Code, following payment of the Cure Amounts set forth on **Exhibit B** hereto (or such other Cure

Amounts as agreed, in writing, by the Debtors, the Buyer and the counterparty to the applicable

Assumed Contract or ordered by this Court), the Debtors shall be relieved from any further

liability with respect to the Assumed Contracts after such assignment and sale to the Buyer.

17**.**     All defaults or other obligations of the Debtors under the Assumed Contracts

arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any

default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code) shall be

deemed cured, upon payment of the Cure Amounts set forth on **Exhibit B** hereto (or such other

Cure Amounts as agreed, in writing, by the Debtors, the Buyer and the counterparty to the

applicable Assumed Contract or ordered by this Court), and the Buyer shall have no liability

arising or accruing under the Assumed Contracts on or prior to the Closing, except as otherwise

expressly provided in the APA or this Order.  The non-debtor counterparties to the Assumed

Contracts are barred from asserting against the Debtors, their estates, the Buyer, and their

respective successors and assigns, any default or unpaid obligation allegedly arising or occurring

before the Closing, any pecuniary loss resulting from such default, or any other obligation under

the Assumed Contracts arising or incurred prior to the Closing, other than the Cure Amounts set

forth on **Exhibit B** hereto (or such other Cure Amounts as agreed, in writing, by the Debtors, the

Buyer and the counterparty to the applicable Assumed Contract or ordered by this Court).

18.    The failure of the Debtors or the Buyer to enforce at any time one or more terms

or conditions of any Assumed Contract shall not be a waiver of such terms or conditions or of

the right of the Debtors or the Buyer, as the case may be, to enforce every term and condition of

the Assumed Contracts.  The validity of the assumption, assignment and sale of the Assumed

Contracts to the Buyer shall not be affected by any existing dispute between any of the Debtors

and any non-debtor counterparty to such Assumed Contract.  Any party that may have had the

right to consent to the assignment of any Assumed Contract is deemed to have consented for the

purposes of Section 365 of the Bankruptcy Code.

19.    To the extent a non-debtor counterparty to an Assumed Contract failed to timely

object to a Cure Amount set forth on **Exhibit B** hereto, such Cure Amount shall be deemed to be

finally determined and any such counterparty shall be prohibited from challenging, objecting to,

or denying the validity and finality of the Cure Amount at any time.

20.    The consideration provided by the Buyer under the APA constitutes (i)

reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act,

and the Uniform Voidable Transactions Act, (ii) fair consideration under the Uniform Fraudulent

Conveyance Act and (iii) reasonably equivalent value, fair consideration and fair value under

any other applicable Laws of the United States, any state, territory or possession thereof, or the

District of Columbia.  The consideration provided by the Buyer for the Purchased Assets under

01:23957429.123
959478.1

the APA is fair and reasonable and may not be avoided under Section 363(n) of the Bankruptcy Code.

21.    The APA and the Sale Transaction are undertaken by the Buyer without collusion and in good faith, as that term is used in Section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the APA and the Sale Transaction shall not affect the validity of the sale of the Purchased Assets to the Buyer, unless this Order is duly stayed pending such appeal.  The Buyer is a good faith Buyer of the Purchased Assets and is entitled to all of the benefits and protections afforded by Section 363(m) of the Bankruptcy Code.

22.    All persons that are in possession of some or all of the Purchased Assets as of or after the Closing are hereby directed to surrender possession of such Purchased Assets to the Buyer as of the Closing or at such time thereafter as the Buyer may request.  The Debtors agree to exercise commercially reasonable efforts to assist the Buyer in assuring that all persons that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets in which the Debtors hold an interest will surrender possession of the Purchased Assets either to (i) the Debtors before the Closing Date, or (ii) the Buyer on or after the Closing Date.

23.    This Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Purchased Assets free and clear of all liens, claims,

interests, and encumbrances (other than those expressly assumed by the Buyer or permitted to survive under the APA) (all such entities being referred to as "Recording Officers").  All Recording Officers are authorized to strike recorded liens, mortgages, claims, interests, collateral assignments and encumbrances against the Purchased Assets recorded prior to the date of this Order unless the APA expressly provides that the Buyer is acquiring the Purchased Assets subject to such liens, mortgages, claims, interests, collateral assignments and encumbrances.

24.    Following the Closing, no holder of any liens, mortgage, claims, interests, entitlements or encumbrances on or arising from the Purchased Assets (other than those expressly assumed by the Buyer or permitted to survive under the APA) or other party in interest may interfere with the Buyer's use and enjoyment of the Purchased Assets based on or related to such liens, claims, interests, entitlements and encumbrances, or any actions that the Debtors may take in their Chapter 11 Cases, and no party may take any action to prevent, interfere with, or otherwise enjoin consummation of the Sale Transaction.  Without limiting the foregoing, all Notices of Consent and Irrevocable Assignments, Notices of Assignment, Interparty Agreements, payment direction letters, and collection account management agreements and any similar or analogous documents, instruments or agreements that direct any proceeds of the Purchased Assets to any accounts maintained at Bank of America, N.A. or to any party or person other than the Buyer or its designees that are not expressly assumed shall be deemed rejected and all payment instructions, consent rights, approval rights and benefits of any nature arising thereunder in favor of Bank of America, N.A. and/or any such parties or persons (other than Buyer) shall be immediately inoperative and ineffective immediately and automatically upon the Closing without further notice or consent by  any third party; provided that rights in favor of the other parties to such assumed agreements shall remain in full force and effect.  Bank of America,

N.A. has consented to the Buyer's delivery of notice to counterparties to all such agreements and documents to direct proceeds on account of the Purchased Assets to an account designated by Buyer and has agreed to execute and deliver to the relevant account debtors, collection account managers and other third parties, any notices reasonably requested by Buyer to advise and confirm to such relevant account debtors, collection account managers and other third parties that all proceeds on account of the Purchased Assets shall be directed to an account designated by Buyer instead of an account maintained at Bank of America, N.A.  If Bank of America, N.A. fails to execute any such documents or notices or take any such actions, the Buyer is authorized to execute such documents and notices and to take such actions on behalf of Bank of America, N.A. so as to document and effectuate the termination of its interests, entitlements to receipt of such proceeds and to redirect such proceeds to an account designated by Buyer.  Further, parties to assumed Notices of Consent and Irrevocable Assignments, Notices of Assignment, Interparty Agreements, payment direction letters, collection account management agreements and any similar or analogous documents, instruments or agreements that reflect a payment to a counterparty to a rejected contract shall not be permitted to make such payment.

25.    If, after the Closing Date, the Debtors receive any proceeds of the Purchased Assets (including, without limitation, payments that are cash proceeds of Assumed Contracts credited or deposited to any of Debtors' bank accounts maintained at Bank of America, N.A.), the Debtors will (i) hold such proceeds in constructive trust for the benefit of the Buyer, (ii) immediately notify the Buyer of such receipt, (iii) immediately (and not more than two (2) business days after receipt) transfer, convey and pay over such proceeds to an account designated by Buyer, and (iv) take any and all actions reasonably requested by the Buyer in

order to change the payment instructions with respect to such Assumed Contract such that proceeds therefrom are payable solely to the account designated by Buyer.

26.      No account debtor, licensee, bank, collection account manager or other person or entity honoring a notice or direction given by the Debtors, the Buyer and/or Bank of America, N.A. to pay the proceeds of any Purchased Asset (including any Assumed Contract) to an account designated by the Buyer shall be liable for any claim for double payment of such sum due to such person being a party to any Notices of Consent and Irrevocable Assignments, Notices of Assignment, Interparty Agreements, payment direction letters, collection account management agreements, or any similar or analogous documents, instruments or agreements that direct any proceeds of the Purchased Assets to any accounts maintained at Bank of America, N.A. or to any party or person other than the Buyer or its designees that are not expressly assumed by Buyer.

27.      No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the APA and the Sale Transaction.

28.      Notwithstanding any provision in this Order or the APA to the contrary, the assumption and assignment to the Buyer of any Assumed Contracts to which Entertainment One Films Canada, Inc. ("eOne Canada"), Entertainment One UK Limited ("eOne UK"), and/or Entertainment One Benelux BV ("eOne Benelux" and together with eOne Canada and eOne UK, "eOne") are a party (collectively, the "eOne Agreements"), shall in each case be conditioned upon, and subject to, all of the terms of the eOne Agreements, including (i) eOne's exclusive distribution rights in the motion pictures that are the subject thereof and (ii) eOne's rights to adjustments and refunds of minimum guarantees or other recoupable amounts from the Buyer, in

01:23957429.123
959478.1

each case as provided for under the eOne Agreements, and all such rights are, and will remain, governed by the specific terms of the applicable eOne Agreement.

29.     This Order shall be binding in all respects upon and the terms and provisions of the APA and this Order shall inure to the benefit of the Debtors, their estates, all creditors, all account debtors, all licensors and licensees of rights in Purchased Assets, all holders of equity interest in the Debtors, any holders of liens, claims, interests, or encumbrances against or on all or any portion of the Purchased Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Buyer and its affiliates, successors, and assigns, and any subsequently appointed estate representative in the Chapter 11 Cases.  The APA, the Sale Transaction and this Order shall be enforceable against and binding upon, and shall not be subject to rejection or avoidance by, any chapter 7 or chapter 11 trustee appointed in the Chapter 11 Cases.  Further, nothing contained in any plan of reorganization (or liquidation) confirmed in these Chapter 11 Cases or any order confirming any plan of reorganization (or liquidation) or any other order entered in these Chapter 11 Cases shall conflict with or derogate from the provisions of the APA or the terms of this Order.

30.     The APA and any related agreements, documents, or other instruments contemplated thereby may be amended by the Debtors and the Buyer in a writing signed by such parties without further order of the Court, provided that any such amendment does not have a material adverse effect on the Debtors or the Debtors' estates.

31.     **[TBI:  Sale Order Para for All I See]**_Spark_.  Pursuant to that certain Distribution Rights Acquisition and Financing Agreement, dated as of August 1, 2016 (as amended, the "Spark Acquisition Agreement") between Redrover Co., Ltd. ("Redrover") and Debtor, Open Road Films, LLC ("ORF"), Redrover licensed to ORF certain rights and interests

01:23957429.123
959478.1

in the motion picture, *Spark* (the "Licensed Rights").  Redrover has agreed to amend the Spark Acquisition Agreement for consideration as agreed to between the Parties.  The definitive documentation necessary to implement this Paragraph will be finalized prior to the Closing.  At Closing, (i) provided that the definitive documentation is in a form reasonably acceptable to the Purchaser, Redrover and the Debtors, ORF will assume the Spark Acquisition Agreement (as amended) and assign it to the Purchaser pursuant to Section 365 of the Bankruptcy Code, and (ii) the Debtors will turn over to Redrover (and the Purchaser will assert no rights in) all funds in the account held by ORF in Bank of America Account No. 1453419017 (the "Spark P&A Funds"), provided that such turnover shall be net of a $670.73 payment to be made by the Debtors from the Spark P&A Funds to a third party P&A vendor.  In the event that definitive documentation is not finalized and executed, then (i) the Purchaser may, in its discretion, remove from the schedule of Assumed Contracts any contract related to the Exploitation of *Spark*, and upon removal such contract shall be deemed an Excluded Asset, and/or (ii) Redrover may condition assumption and assignment of the Spark Acquisition Agreement upon payment in full of the cure amounts set forth in its objection (or as otherwise determined by the Court). The Parties shall work in good faith to consummate the transactions contemplated by this Paragraph.

32.     **[TBI:  Sale Order Para. for Spark]***Silent House*.  Pursuant to that certain Distribution Rights Acquisition Agreement, dated as of July 15, 2011 (as amended, the "Silent House Acquisition Agreement") between LD Entertainment, LLC ("LDE") and Debtor, Open Road Films, LLC ("ORF"), LDE licensed to ORF certain rights and interests in the motion picture, *Silent House* (the "Licensed Rights").  LDE has agreed to amend the Silent House Acquisition Agreement for consideration as agreed to between the Parties.  The definitive documentation necessary to implement this Paragraph will be finalized prior to the Closing.  At

Closing, provided that the definitive documentation is in a form reasonably acceptable to the Debtors, ORF will assume the Silent House Acquisition Agreement and assign it to the Purchaser pursuant to Section 365 of the Bankruptcy Code.  This Court will retain jurisdiction over disputes related to the finalization of the definitive documentation.  In the event that definitive documentation is not finalized, the Purchaser may, in its discretion, remove from the schedule of Assumed Contracts any contract related to the Exploitation of *Silent House*, and upon removal such contract shall be deemed an Excluded Asset. The Parties shall work in good faith to consummate the transactions contemplated by this Paragraph.

33.    **[TBI:  Sale Order Para. for Film Musicians Secondary Markets Fund]***The Promise*.  Pursuant to that certain Distribution Rights Acquisition Agreement, dated as of December 9, 2016 (as amended, "The Promise Acquisition Agreement") between Promise Acquisition, LLC ("PALLC"), as successor by assignment from Promise Distribution, LLC, and Debtor, Open Road Films, LLC ("ORF"), PALLC licensed to ORF certain rights and interests in the motion picture, *The Promise* (the "Licensed Rights"). PALLC has agreed to amend The Promise Acquisition Agreement for consideration as agreed to between the Parties. As part of this consideration and a partial cure payment, the Free TV Rights granted to ORF pursuant to The Promise Acquisition Agreement are assigned by ORF, free of any and all liens, to PALLC upon the Closing pursuant to Section 365 of the Bankruptcy Code, and The Promise Acquisition Agreement shall be amended to exclude the Free TV Rights. Comerica Bank, a Texas banking association ("Comerica") made a loan to PALLC (the "Loan") that is secured, in part, by the Licensed Rights, a portion of which remains outstanding. At Closing, Purchaser will pay the Guilds the Cure Amount owing on account of Guild Residuals for *The Promise*, and a lump sum payment to Comerica for application to the obligations owing by PALLC with respect to the

Loan.  The definitive documentation necessary to implement this Paragraph will be finalized prior to the Closing.  At Closing, provided that the definitive documentation is in a form reasonably acceptable to Debtors, ORF will assume The Promise Acquisition Agreement and assign it, as amended to exclude the Free TV Rights, to the Purchaser pursuant to Section 365 of the Bankruptcy Code.  This Court will retain jurisdiction over disputes related to the finalization of the definitive documentation.  In the event that definitive documentation is not finalized, the Purchaser may, in its discretion, remove from the schedule of Assumed Contracts any contract related to the Exploitation of *The Promise*, and upon removal such contract shall be deemed an Excluded Asset. The Parties shall work in good faith to consummate the transactions contemplated by this Paragraph.

34.    **[TBI:  Sale Order Para. for Loft International]***Collide*.  Pursuant to that certain Distribution Rights Acquisition Agreement, dated as of September 16, 2016 (as amended, the "Collide Acquisition Agreement") between IM Global Film Fund, LLC ("IMG") and Debtor, Open Road Films, LLC ("ORF"), IMG licensed to ORF certain rights and interests in the motion picture, *Collide* (the "Licensed Rights").  East West Bank ("EWB") made a production loan to IMG (the "Loan") that is secured by the Licensed Rights, a portion of which remains outstanding.  EWB has agreed to sell/assign its right, title and interests in and to the Loan and all related documents to Purchaser (or its designee) for consideration as agreed to between the Parties, payable as follows: (i) Purchaser shall pay to the Guilds the Cure Amount owing on account of Guild Residuals for *Collide*, and (ii) Purchaser shall make a lump sum payment to EWB in consideration of the purchase of the Loan.  The definitive documentation necessary to implement this Paragraph will be finalized prior to the Closing in a form acceptable to EWB and Purchaser.  At Closing, provided that the definitive documentation is in a form reasonably

acceptable to Debtors, ORF will assume the Collide Acquisition Agreement and assign it to the Purchaser pursuant to Section 365 of the Bankruptcy Code.  In the event that definitive documentation is not finalized, the Purchaser may, in its discretion, remove from the schedule of Assumed Contracts any contract related to the Exploitation of *Collide*, and upon removal such contract shall be deemed an Excluded Asset. The Parties shall work in good faith to consummate the transactions contemplated by this Paragraph.

35.     **[TBI:  Sale Order Para. for Showtime Network, Inc.]***Max Steel*.  Pursuant to that certain Distribution Rights Acquisition Agreement, dated as of August 12, 2016 (as amended, the "Max Steel Acquisition Agreement") and that certain Distribution Rights Acquisition Agreement Side Letter, dated as of August 22, 2016 (as amended, the "Max Steel Acquisition Agreement Side Letter"), in each case, between Dolphin Max Steel Holdings, LLC ("DMSH") and Debtor, Open Road Films, LLC ("ORF"), DMSH licensed to ORF certain rights and interests in the motion picture, *Max Steel* (the "Licensed Rights").  Comerica Bank, a Texas banking association ("Comerica") made a loan to DMSH (the "Loan") that is secured by the Licensed Rights, a portion of which remains outstanding. Comerica has agreed to sell/assign its right, title and interests in and to the Loan and all related documents to Purchaser (or its designee) for a mutually agreed upon lump sum payment. The definitive documentation necessary to implement this Paragraph will be finalized prior to the Closing.  At Closing, provided that the definitive documentation is in a form reasonably acceptable to Debtors, ORF will assume the Max Steel Acquisition Agreement and Max Steel Acquisition Agreement Side Letter and assign each of them to the Purchaser pursuant to Section 365 of the Bankruptcy Code.  This Court will retain jurisdiction over disputes related to the finalization of the definitive documentation.  In the event that definitive documentation is not finalized, the Purchaser may, in

its discretion, remove from the schedule of Assumed Contracts any contract related to the Exploitation of *Max Steel*, and upon removal such contract shall be deemed an Excluded Asset. The Parties shall work in good faith to consummate the transactions contemplated by this Paragraph.

36.    **[TBI:  Sale Order Para. for LD Entertainment Re: Silent House.]***Killer Elite.* Pursuant to that certain Distribution Rights Acquisition Agreement, dated as of August 5, 2011 (as amended, the "Killer Elite Acquisition Agreement") between Omnilab Media Pty. Ltd. ("Omnilab") and Debtor, Open Road Films, LLC ("ORF"), Omnilab licensed to ORF certain rights and interests in the motion picture, *Killer Elite* (the "Licensed Rights"). Omnilab has agreed to amend the Killer Elite Acquisition Agreement for consideration as agreed to between the Parties, payable as follows: (i) Purchaser shall pay to the Guilds the Cure Amount owing on account of Guild Residuals for *Killer Elite*, and (ii) Purchaser shall make a lump sum payment to Omnilab for the amount agreed to by the Parties. The definitive documentation necessary to implement this Paragraph will be finalized prior to the Closing.  At Closing, provided that the definitive documentation is in a form reasonably acceptable to the Debtors, ORF will assume the Killer Elite Acquisition Agreement and assign it to the Purchaser pursuant to Section 365 of the Bankruptcy Code.  This Court will retain jurisdiction over disputes related to the finalization of the definitive documentation.  In the event that definitive documentation is not finalized, the Purchaser may, in its discretion, remove from the schedule of Assumed Contracts any contract related to the Exploitation of the *Killer Elite*, and upon removal such contract shall be deemed an Excluded Asset. The Parties shall work in good faith to consummate the transactions contemplated by this Paragraph.

37.     **[TBI:  Sale Order Para. for Promise Acquisition]**_Home Again_.  Pursuant to that certain Distribution Rights Acquisition Agreement, dated as of September 20, 2016 (as amended, the "Home Again Acquisition Agreement") between BBG Home Again LLC ("BBG") and Debtor, Open Road Films, LLC ("ORF"), BBG licensed to ORF certain rights and interests in the film, Home Again (the "Licensed Rights").  BBG has agreed to amend the Home Again Acquisition Agreement for consideration as agreed to between BBG and Purchaser, payable as follows:  (i) Purchaser shall pay to the Guilds, on behalf of BBG as an advance under the Home Again Acquisition Agreement, the Cure Amount owing on account of Guild Residuals for _Home Again_, and (ii) Purchaser shall pay to BBG such amounts as may be due and payable to BBG under the Home Again Acquisition Agreement, if any, pursuant to an amended allocation of future gross receipts as agreed to between the Parties. The definitive documentation necessary to implement this Paragraph will be finalized prior to the Closing.  At Closing, provided that the definitive documentation is in a form reasonably acceptable to Debtors, ORF will assume the Home Again Acquisition Agreement (as amended) and assign it to the Purchaser pursuant to Section 365 of the Bankruptcy Code.  This Court will retain jurisdiction over disputes related to the finalization of the definitive documentation.  In the event that definitive documentation is not finalized, the Purchaser may, in its discretion, remove from the schedule of Assumed Contracts any contract related to the Exploitation of _Home Again_, and upon removal such contract shall be deemed an Excluded Asset. The Parties shall work in good faith to consummate the transactions contemplated by this Paragraph.

38.     **[TBI:  Sale Order Para. for Collide]**_Film Musicians Secondary Markets Fund_.  The Assumption Agreements in favor of the Film Musicians Secondary Markets Fund in connection with the films Machete Kills and Side Effects shall be Assumed Contracts (on a go

01:23957429.123
959478.1

26

forward basis) and are being assumed and assigned hereunder subject to payment of the cure amounts referenced on **Exhibit B** and as provided in this Order.

39.    **[TBI:  Sale Order Para. for Max Steel.]***Showtime.* Pursuant to that certain Exclusive Theatrical Output Agreement between Showtime Networks, Inc. ("Showtime") and Debtor Open Road Films, LLC ("ORF"), dated as of August 2013 (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, and including all Exhibits and Schedules thereto, the "Showtime Output Agreement"), ORF licensed to Showtime certain of its rights and interests to certain films.  In resolution of Showtime's limited objection and reservation of rights to the Sale Motion and supplement thereto [Docket Nos. 305, 347], Showtime and Buyer have agreed to an amendment to the Showtime Output Agreement (the "Showtime Amendment").   The Showtime Amendment will be finalized prior to the Closing.  At Closing, provided that the Showtime Amendment in a form reasonably acceptable to the Debtors, Buyer, and Showtime, is executed, ORF will assume the Showtime Output Agreement (as amended) and assign it to the Buyer pursuant to Section 365 of the Bankruptcy Code.  This Court will retain jurisdiction over disputes related to the finalization of the definitive documentation, and over resolution of Showtime's objections and the Debtors' responses thereto, all of which are reserved pending such finalization.  Assumption and assignment of the Showtime Output Agreement shall be effective only upon the execution by all parties of the Showtime Amendment. The Parties shall work in good faith to consummate the transactions contemplated by this Paragraph.

40.    **[TBI:  Sale Order Para. for Omnilab Media Pty. Ltd Re: Killer Elite.]***Redrover.* The following agreements between ORF and Redrover Co. Ltd. ("Redrover") relating to the films *The Nut Job* and *The Nut Job 2,* shall be assumed by ORF and assigned to

01:23957429.1 23959478.1

the Purchaser at the Closing pursuant to Section 365 of the Bankruptcy Code (collectively, "Redrover-Nut Job Agreements"): (i) Short Form Amended and Re-stated Distribution Rights Acquisition and Financing Agreement dated July 16, 2013, (ii) First Amendment to Short Form Amended and Re-stated Distribution Rights Acquisition and Financing Agreement dated October 16, 2013, (iii) Second Amendment to Short Form Amended and Re-stated Distribution Rights Acquisition and Financing Agreement dated October 27, 2013, (iv) Distribution Rights Acquisition and Financing Agreement dated August 11, 2016, and (v) Amendment No. 1 to Distribution Rights Acquisition and Financing Agreement dated March 15, 2017. The Purchaser shall pay the Proposed Cure Amounts for the Redrover-Nut Job Agreements within one (1) business day of the Closing. Redrover withdraws its Limited Objection To Sale Motion And Notice Of Proposed Assumption And Assignment Of Executory Contracts And Unexpired Leases (Docket No. 344).

41.    **[TBI:  Sale Order Para.** ~~for Redrover's Objection on Nut Job/Nut Job 2]~~ **for Loft International]**

42.    **[TBI:  Sale Order Para.** for ~~Home Again~~Silver Reel**]**

43.    **[TBI:  Sale Order Para.** for Spotlight**]**

44.    **[TBI: Sale Order Para for All I See]**

45.    **[TBI: Sale Order Para.** for ~~Silver Reel/Host~~Endgame**]**

46.    ~~45.~~ Notwithstanding any other provision in this Order, non-Debtor licensees that are parties to executory contracts not being assumed shall maintain their rights pursuant to section 365(n) of the Bankruptcy Code (if any), provided however that, except for payments that were already paid to Debtors prior to the Closing Date pursuant to the terms of such rejected contracts, any payments due and payable on account of the Exploitation of any of the Purchased

Titles under any such rejected contracts, including royalty payments under section 365(n)(2)(B) of the Bankruptcy Code, shall be deemed Purchased Assets and such payments shall be due and payable directly to the Buyer.

47. ~~46.~~ The failure to include specifically any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

48. ~~47.~~ To the extent of any inconsistency between the provisions of this Order, the APA, and any documents executed in connection therewith, the provisions contained in the Order, the APA, and any documents executed in connection therewith shall govern, in that order.

49. ~~48.~~ Notwithstanding the provisions of Bankruptcy Rule 6004(g) and 6006(d), this Order shall be effective and enforceable immediately and shall not be stayed.

50. ~~49.~~ This Court shall retain exclusive jurisdiction and power to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the Sale Transaction, and the APA, all amendments thereto and any waivers and consents thereunder, and each of the agreements executed in connection therewith and the transactions contemplated thereby.

Dated: December ____, 2018
       Wilmington, Delaware

                                                          _____

                                                     Laurie Selber Silverstein
                                                     United States Bankruptcy Judge

**<u>EXHIBIT A</u>**

APA

**EXHIBIT B**

Cure Amounts