**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al.*,[1]<br><br>　　　　　　　　Debtors. | Chapter 11<br><br>Case No.: 18-12012 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: TBD**<br>**Obj. Deadline: February 21, 2019 at 4:00 p.m. EST** |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO BANKRUPTCY CODE SECTION 105(a) AND BANKRUPTCY RULE 9019, APPROVING SETTLEMENT WITH BANK LEUMI, USA

Open Road Films, LLC ("Open Road") and its affiliated debtors and debtors in possession (the "Debtors") in the above-captioned jointly administered chapter 11 cases (the "Cases") hereby move the Court (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit B** (the "Proposed Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the settlement agreement (the "Settlement Agreement") entered into by and among (i) Bank Leumi, USA ("Bank Leumi") and (ii) the Debtors (together with Bank Leumi, the "Parties"). In support of the Motion, the Debtors rely on the *Declaration of Amir Agam in Support of Debtors' Motion for Entry of an Order, Pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 9019, Approving Settlement with Bank Leumi USA* attached hereto as **Exhibit A** (the "Agam Declaration") and respectfully represent as follows:

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435 Del.); Open Road Releasing, LLC (4736 Del.); OR Productions LLC (5873 Del.); Briarcliff LLC (7304 Del.); Open Road International LLC (4109 Del.); and Empire Productions LLC (9375 Del.). The Debtors' address is 1800 Century Park East, Suite 600, Los Angeles, CA 90067.

01:24154365.1

## I.     JURISDICTION

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Rule 9013-1(f) of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The statutory and legal predicates for the relief requested herein are Bankruptcy Code section 105(a) and Bankruptcy Rule 9019.

## II.     BACKGROUND

**A.     General Background**

4. On September 6, 2018 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

5. The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, no trustee or examiner has been requested or appointed in these Cases.  On September 14, 2018, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in these Cases.  *See* Docket Nos. 72 & 527.  Bank Leumi is a member of the Committee.  *Id.*

6. Prior to the Petition Date, the Debtors distributed motion pictures in the United States and licensed motion pictures in ancillary markets, principally to home entertainment, pay television, subscription, and transactional video-on-demand, free television, and other non-theatrical entertainment distribution markets. The Debtors' films have generated over $1.3 billion in worldwide theatrical box office receipts, have been nominated for 49 Academy Awards, and have won 13 Academy Awards.

7. Following a Court-approved marketing and sale process, the Debtors sold certain of their assets to OR Acquisition Co, LLC (the "Buyer"). *See* Docket No. 483. The sale to the Buyer closed on December 21, 2018. *See* Docket No. 507.

8. The detailed factual background relating to the Debtors and the commencement of these Cases is set forth in the *Declaration of Amir Agam in Support of First Day Motions* [Docket No. 7].

**B.    The Distribution and Interparty Agreement and the Parties' Dispute**

9. Good Films Enterprises, LLC ("Good Films"), Miramax Distribution Services, LLC ("Miramax"), and Open Road are party to a Production Financing and Distribution Agreement, dated as of November 4, 2016 (the "Distribution Agreement"), pursuant to which Miramax and Open Road agreed to distribute a feature-length theatrical motion picture entitled *City of Lies* (the "Picture") being produced by Good Films.[2] Agam Decl. ¶ 3. As part of the financing for the production of the Picture, Good Films obtained a loan (the "Production Loan") from Bank Leumi pursuant to a Loan and Security Agreement, dated as of December 16, 2016 (the "Loan Agreement"). *Id.* In connection with the Loan Agreement, Bank Leumi, Good Films, Miramax, and Open Road (among other parties) entered into a Distributor Interparty

---

[2]    The Picture was not among the assets sold to the Buyer.

Agreement, dated as of December 16, 2016 (the "IPA").  *Id.*  Pursuant to the IPA, Miramax and Open Road agreed to make certain minimum guarantee payments provided for under the Distribution Agreement directly to Bank Leumi if and when such payments came due under the terms of the Distribution Agreement.  *Id.*

10. Thereafter, a dispute developed among Bank Leumi, Miramax, and Open Road with respect to whether delivery of the "Mandatory Delivery Materials" and the "Complete Delivery Materials" (as those terms are defined under the IPA) had been effected in accordance with the IPA.  *Id.* ¶ 4.  As a consequence of this dispute, the parties also disagreed about whether the minimum guarantee payment obligations of Miramax and Open Road had in fact come due under the IPA and the Distribution Agreement and whether Open Road was required to theatrically release the Picture.  *Id.*  Specifically, Bank Leumi asserts in the District Court Action described below that Open Road was required to pay Bank Leumi a total minimum guarantee of $5,400,000 and was required to theatrically release the Picture with an expenditure of no less than $10,000,000 for marketing and distribution expenses.  *Id.*  The Picture was never theatrically released.  *Id.*

11. On August 29, 2018, Bank Leumi filed a lawsuit styled *Bank Leumi, USA v. Open Road Films, LLC, et al.*, Case No. 2:18-cv-7573 (the "District Court Action") against Open Road, Global Road Entertainment, LLC, Tang Media Partners, LLC,[3] and Does 1–10, in the United States District Court for the Central District of California (the "District Court").[4]  *Id.* ¶ 5. The District Court Action asserts five causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference with contract, trade libel,

---

[3] Global Road Entertainment, LLC and Tang Media Partners, LLC are non-debtor affiliates of the Debtors and are not parties to the Settlement Agreement.

[4] Bank Leumi filed a separate lawsuit against Miramax in the District Court styled *Bank Leumi, USA v. Miramax Distribution Services, et al.*, Case No. 2:18-cv-7574.  Miramax is not a party to the Settlement Agreement.

4

and declaratory relief. *Id.* On September 14, 2018, the District Court stayed the District Court Action as to Open Road only, and the District Court Action is proceeding with respect to the non-debtor defendants. *Id.*

12. On or about January 25, 2019, Bank Leumi filed a proof of claim against Debtor Open Road, which proof of claim has been identified by the Debtors' claims agent as Claim Number 319, in the amount of $18,537,089.80, plus further interest, legal fees and costs and other expenses allegedly due under the IPA (the "<u>Bank Leumi Filed Claim</u>"). *Id.* ¶ 6. The Debtors dispute the amounts asserted in the Bank Leumi Filed Claim. *Id.*

13. In order to resolve the foregoing disputes as among Bank Leumi and the Debtors, the Parties have agreed as follows: (i) the Debtors forever and finally release and relinquish any and all right, title, and interest in and to the Picture, (ii) the Bank Leumi Filed Claim is deemed allowed as a general unsecured claim against Debtor Open Road in the amount of $2,500,000.00, (iii) Bank Leumi shall dismiss all pending claims against Open Road in the District Court Action with prejudice, and without an award of costs to either party, and (iv) the Parties exchange mutual releases. *Id.* ¶ 7. After careful consideration of the facts and circumstances, and with the support and consent of the Committee, the Debtors and Bank Leumi have agreed to enter into the Settlement Agreement, the terms of which are described in greater detail below.

C.   **The Settlement Agreement**

14. A copy of the Settlement Agreement is appended as **<u>Exhibit 1</u>** to the Proposed Order. As qualified in its entirety by the full text of the Settlement Agreement, the following is a summary of the material terms of the Settlement Agreement:[5]

---

[5] The description of the Settlement Agreement contained herein is for convenience of reference only and does not supplement or alter the terms or conditions of the Settlement Agreement.

5

a) The Settlement Agreement shall be effective immediately upon the date (the "Settlement Effective Date") upon which an order entered by the Court approving the Settlement Agreement (the "Approval Order") becomes final and no longer is subject to appeal. Settlement Agreement ¶ 2.

b) Upon the Settlement Effective Date, the Bank Leumi Filed Claim shall be deemed allowed as a general unsecured claim not entitled to any priority under 11 U.S.C. § 507(a) in the reduced amount of $2,500,000.00 (the "Allowed Claim"). The Debtors, or any disbursing agent, plan trust, or other successor in interest or other entity making distributions on account of general unsecured claims as part of the Cases will make distributions to Bank Leumi on account of the Allowed Claim pursuant to any chapter 11 plan, trust agreement, or other plan of distribution approved by the Court. The Allowed Claim shall not be subject to offset, recoupment, reduction, disallowance, defense, or objection for any reason. The Allowed Claim will be Bank Leumi's sole and exclusive right to receive payment, distribution, or other recovery from the Debtors' bankruptcy estates; *provided, however*, that Bank Leumi shall not hereby be prevented from seeking and obtaining reimbursement in respect of expenses related to its membership on the Committee. *Id.* ¶ 3.

c) Debtors agree and confirm that, upon the Settlement Effective Date, Debtors shall be deemed to: (a) have forever and finally released and relinquished any and all right, title, and interest, if any, that Debtors may have or may have had in, to, or related to the Picture; and (b) represent and warrant that all right, title, and interest in and to the Picture is free and clear of any right, title, interest, claim, lien, or other encumbrance that is held by or in favor of any of the Debtors. *Id.* ¶ 4.

d) Within seven (7) calendar days following the Settlement Effective Date, Bank Leumi will dismiss all claims pending only against Open Road in the District Court Action, with prejudice, and without any award of costs to any party. If a stipulation of dismissal is necessary, Bank Leumi and Open Road will cooperate in the preparation of a stipulation. *Id.* ¶ 5.

e) Upon the Settlement Effective Date, each of the Debtors, for itself, its estate, and its successors and assigns (collectively, the "Debtor Released Parties") will be deemed to have, and will have, forever released and discharged Bank Leumi and its employees, attorneys and professionals, successors, and assigns (collectively, the "Bank Leumi Released Parties") from any and all losses, claims, debts, liabilities, demands, charges, complaints, acts, omissions, costs, expenses, damages, injuries, offsets, billing disputes, deposits, attorneys' fees, suits, actions, and causes of action (including, but not limited to, any and all claims and causes of action under Chapter 5 of the Bankruptcy Code and any state law equivalent), of whatever kind or nature, whether matured or unmatured, at law or in equity, known or unknown, suspected or unsuspected, contingent or fixed, liquidated or unliquidated, which any or all of the Debtor Released Parties has or had or may claim to have against any and all of the Bank Leumi Released Parties from the beginning of time through and including the Settlement Effective Date

(collectively, the "Debtor Released Claims"); *provided, however*, that the releases set forth in Section 6 of the Settlement Agreement will not in any manner release or discharge the Bank Leumi Released Parties from their obligations, covenants, and agreements set forth in the Settlement Agreement. For the avoidance of doubt, no claims against any of the Bank Leumi Released Parties will be (a) retained or enforced pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code or (b) assigned or transferred to any trust, successor in interest, or third party, under any plan. For the avoidance of doubt, the Debtor Released Parties shall not include the defendants in the District Court Action other than Open Road. *Id.* ¶ 6.

f) Upon the Settlement Effective Date, the Bank Leumi Released Parties will be deemed to have, and will have, forever released and discharged the Debtor Released Parties and their respective employees, attorneys, and professionals from any and all losses, claims, debts, liabilities, demands, charges, complaints, acts, omissions, costs, expenses, damages, injuries, offsets, billing disputes, deposits, attorneys' fees, suits, actions, and causes of action, of whatever kind or nature, whether matured or unmatured, at law or in equity, known or unknown, suspected or unsuspected, contingent or fixed, liquidated or unliquidated, based on or relating to or arising from the Picture, the IPA, the Distribution Agreement, or the Production Loan which any or all of the Bank Leumi Released Parties has or had or may claim to have against any and all of the Debtor Released Parties from the beginning of time through and including the Settlement Effective Date (the "Bank Leumi Released Claims"); *provided, however*, that the releases set forth in Section 7 of the Settlement Agreement will not in any manner release or discharge any of the Debtor Released Parties from their obligations, covenants, and agreements set forth in the Settlement Agreement. *Id.* ¶ 7.

### III. RELIEF REQUESTED

15. By the Motion, the Debtors request that the Court enter the Proposed Order authorizing the Debtors to enter into, and approving the terms of, the Settlement Agreement.

### IV. BASIS FOR RELIEF

16. The Debtors respectfully submit that, in their business judgment, the terms of the Settlement Agreement are fair and reasonable and that approval of the Settlement Agreement is in the best interests of the Debtors, their creditors, and the estates.

A.     **The Settlement Agreement Should be Approved Pursuant to Section 105(a) and Bankruptcy Rule 9019(a)**

17.     Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides, in pertinent part, that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bank. P. 9019.

18.     "The federal courts have a well-established policy of encouraging settlement to promote judicial economy and limit the waste of judicial resources." *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 384 (S.D.N.Y. 2007); *see also, e.g.*, *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 27–28 (1994) (discussing the utility of settlement vis-à-vis judicial economy). The force of this established federal policy is particularly acute in the bankruptcy context, where compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Indeed, in order to "minimize litigation and expedite the administration of the bankruptcy estate 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. rev. 1993)); *see also, e.g.*, *In re Penn. Cent. Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979); *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *In re Culmtech, Ltd.*, 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990).

19.     Whether to approve a proposed settlement is committed to the discretion of the bankruptcy court, "which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). In exercising that discretion, the Third Circuit has stated that courts should consider "(1) the probability of success

in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393; *see also, e.g.*, *Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006); *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243 (D. Del. 1998). The proponent of a settlement is not required to demonstrate "that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'" *World Health*, 344 B.R. at 296 (internal citations and some quotation marks omitted); *see also, e.g.*, *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[T]he court does not have to be convinced that the settlement is the best possible compromise.").

20. Here, the Debtors have determined, in an exercise of their sound business judgment, that the terms of the Settlement Agreement are fair and reasonable and that the best interests of the Debtors' estates and creditors will be served by entry of the Proposed Order. Agam Decl. ¶ 8. The Debtors and Bank Leumi negotiated the Settlement Agreement, with the assistance of the Committee, in good faith and at arm's length. *Id.* The Settlement Agreement resolves the disputes among the Debtors and Bank Leumi arising with respect to the Distribution Agreement, the IPA, the District Court Action, and the Bank Leumi Filed Claim in an efficient and consensual manner that will avoid litigation costs to the estates and the inherent risk and uncertainty related to such litigation. *Id.* Moreover, the Settlement Agreement fixes the amount of the Bank Leumi Filed Claim as an allowed general unsecured claim in the amount of $2,500,000.00, which is significantly less than the amount Bank Leumi initially sought. *Id.* The Debtors have reasonably determined that allowing Bank Leumi a general unsecured claim in this amount is in the best interests of the estates and, together with dismissal of Open Road from the

District Court Action and the exchange of mutual releases, reflects a fair and reasonable compromise of the rights to the Picture that the Debtors are disclaiming. *Id.* Furthermore, the Committee was actively involved in the negotiation of the Settlement Agreement and supports the Debtors' entry into the Settlement Agreement on these terms. *Id.*

21. In short, the Settlement Agreement provides for a fair and practical resolution of the Parties' disputes. If the Debtors were required to litigate the issues resolved by the Settlement Agreement, such efforts would distract from these Cases and consume the Debtors' limited resources, to the detriment of creditors. By contrast, the Settlement Agreement resolves these issues in an efficient and consensual manner. Accordingly, the Debtors respectfully submit that the Settlement Agreement is fair, reasonable, and in the best interests of the estates and should therefore be approved under Bankruptcy Rule 9019 and Bankruptcy Code section 105(a).

## V. RESERVATION OF RIGHTS

22. Nothing contained herein is intended or should be construed as (i) an admission as to the validity of any proof of claim filed against the Debtors or a waiver of the Debtors' or any subsequently appointed estate representative's rights to dispute any such proof of claim or (ii) an admission as to the executory nature of any contract or a waiver of the Debtors' or any subsequently appointed estate representative's right to dispute the nature of any such contract.

## VI. NOTICE

23. The Debtors will provide notice of the Motion to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) Bank Leumi; (iv) Good Films; (v) Miramax; (vi) Global Road Entertainment, LLC; (vii) Tang Media Partners, LLC; and (viii) all parties who, as of the filing of the Motion, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## VII. CONCLUSION

WHEREFORE, for the reasons set forth herein and in the Agam Declaration, the Debtors respectfully request that this Court enter the Proposed Order granting the relief requested in the Motion and such other and further relief as is just and proper.

Dated: February 7, 2019                     */s/ Ian J. Bambrick*
                                            Michael R. Nestor, Esq. (Bar No. 3526)
                                            Robert F. Poppiti, Jr., Esq. (Bar No. 5052)
                                            Ian J. Bambrick, Esq. (Bar No. 5455)
                                            YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                            Rodney Square
                                            1000 North King Street
                                            Wilmington, Delaware 19801
                                            Tel:    (302) 571-6600
                                            Fax:    (302) 571-1253

                                            and

                                            Michael L. Tuchin, Esq.
                                            Whitman L. Holt, Esq.
                                            Jonathan M. Weiss, Esq.
                                            Sasha M. Gurvitz, Esq.
                                            KLEE, TUCHIN, BOGDANOFF & STERN LLP
                                            1999 Avenue of the Stars, 39th Floor
                                            Los Angeles, CA 90067
                                            Tel:    (310) 407-4000
                                            Fax:    (310) 407-9090

                                            *Counsel to Debtors and Debtors in Possession*