**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al*.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 18-12012 (LSS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: April 9, 2019 at 4:00 p.m. (ET)**<br>**Hearing Date: April 30, 2019 at 10:00 a.m. (ET)** |

**DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE, EXTENDING THE EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND THE SOLICITATION AND ACCEPTANCE THEREOF**

Open Road Films, LLC and its affiliated debtors and debtors in possession (the "Debtors") in the above-captioned jointly administered chapter 11 cases (the "Cases"), hereby move the Court (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), further extending the Debtors' exclusive periods for the filing of a chapter 11 plan and the solicitation of acceptances thereof. In support of this Motion, the Debtors respectfully represent as follows:

**I. JURISDICTION**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding within the meaning

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.). The Debtors' address is 1800 Century Park East, Suite 600, Los Angeles, CA 90067.

of 28 U.S.C. § 157(b)(2). Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.  The statutory and legal predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code, Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9006-2.

## II.  BACKGROUND

4.  On September 6, 2018 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

5.  The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, no trustee or examiner has been requested or appointed in these Cases. On September 14, 2018, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in these Cases.

6.  The detailed factual background relating to the Debtors and the commencement of these Cases is set forth in the *Declaration of Amir Agam in Support of First Day Motions* [Docket No. 7] (the "First Day Declaration").[2]

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the First Day Declarations.

01:24305622.3

7.      On December 19, 2018, the Court entered an order [Docket No. 483] (the "Sale Order") approving the sale of certain of the Debtors' assets (the "Sale") to OR Acquisition Co, LLC (the "Buyer"). The Sale closed on December 21, 2018.

### III.  RELIEF REQUESTED

8.      By this Motion, the Debtors request, pursuant to section 1121(d)(1) of the Bankruptcy Code, entry of an order further extending, by approximately three months, the periods within which only the Debtors may file a chapter 11 plan and solicit acceptances thereof through and including July 10, 2019 and September 6, 2019, respectively, without prejudice to the Debtors' right to seek further extensions of both periods, as may be appropriate under the circumstances. This is the Debtors' second request for an extension of the Exclusive Periods (as defined below).

### IV.  BASIS FOR RELIEF

9.      Section 1121(b) of the Bankruptcy Code provides for an initial period of one hundred and twenty (120) days after commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a chapter 11 plan (the "Plan Period"). 11 U.S.C. § 1121(b). Section 1121(c)(3) provides that, if a debtor has not filed a plan that has been accepted by each class of claims or interests that is impaired under the plan before one hundred and eighty (180) days after commencement of a chapter 11 case (the "Solicitation Period" and, together with the Plan Period, the "Exclusive Periods"), any party in interest may file a plan. 11 U.S.C. § 1121(c)(3). On January 24, 2019, the Court entered an order extending the Debtors' Plan Period through and including April 4, 2019 and the Debtors' Solicitation Period through and including June 5, 2019.[3] See Docket No. 537.

---

[3]  By operation of Local Rule 9006-2, the Plan Period and Solicitation Period are automatically extended until such time as the Court has had an opportunity to consider and act upon the relief requested herein.

01:24305622.3

3

A. **Section 1121(d) of the Bankruptcy Code Permits the Court to Extend the Exclusive Periods for "Cause"**

10. The Exclusive Periods are designed to afford a debtor a full and fair opportunity to propose a plan and solicit acceptances of such plan, without the disruption that may result from the filing of competing plans by non-debtor parties. To this end, when the Exclusive Periods prove to be an unrealistic timeframe for filing and soliciting acceptances of a chapter 11 plan that would garner support from parties in interest, section 1121(d) of the Bankruptcy Code allows the Court to extend such Exclusive Periods for "cause." 11 U.S.C. § 1121(d). Although the Bankruptcy Code does not define the term "cause," the legislative history indicates that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231–32 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

11. Congress built flexibility into section 1121 of the Bankruptcy Code to give the debtor a sufficient opportunity to stabilize its business operations at the outset of its chapter 11 case and to negotiate an effective plan with its creditors. *See In re Newark Airport/Hotel Ltd. P'ship*, 156 B.R. 444, 451 (Bankr. D.N.J.), *aff'd*, 155 B.R. 93 (D.N.J. 1993) (noting that Congress designed chapter 11 provisions to enable a debtor to remain in control for some period of time, thereby making chapter 11 an attractive alternative to financially troubled companies); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297–98 (W.D. Tenn. 1987) (explaining that Congress designed section 1121 to give the debtor time to reach an agreement with its creditors regarding a chapter 11 plan); *see also First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986) ("The central purpose of section 1121(c) is

01:24305622.3

to allow the debtor an exclusive period of time within which to file a reorganization plan without pressure from creditors.").

12. It is well established that the decision to extend the Exclusive Periods is left to the sound discretion of the Court and should be based upon the facts and circumstances of a particular case.[4] *See First Am. Bank of N.Y.*, 64 B.R. at 965; *In re Borders Grp., Inc.*, 460 B.R. 818, 821–22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity."). In making the determination to affirm or deny a request to extend the Exclusive Periods for "cause," courts have considered a variety of factors, including the following:

(i) The size and complexity of the debtor's case;

(ii) The necessity of sufficient time to negotiate and prepare adequate information;

(iii) The existence of good-faith progress towards reorganization;

(iv) Whether the debtor is paying its debts as they become due;

(v) Whether the debtor has made progress negotiating with creditors;

(vi) The length of time a case has been pending;

(vii) Whether the debtor is seeking an extension to pressure creditors; and

(viii) Whether or not unresolved contingencies exist.

*In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002) (citations omitted); *In re Borders Grp.*, 460 B.R. at 822; *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (applying certain of the above cited factors and concluding that the debtor

---

[4] Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended section 1121(d) by prohibiting extensions of the Exclusive Periods beyond 18 and 20 months, respectively, of the date of the order for relief, there was no revision to the standards for obtaining interim extensions. Accordingly, pre-BAPCPA case law continues to apply and must be examined in the context of these Cases.

01:24305622.3

demonstrated cause to extend its exclusivity period); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (same).

13.    Not all of the above factors are necessary or relevant in determining whether to grant an extension of the Exclusive Periods.  *See, e.g.*, *In re Express One Int'l, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (identifying only four of the factors as relevant in determining whether cause exists to support an extension); *In re United Press Int'l, Inc.*, 60 B.R. at 269 (finding cause to extend exclusivity based on three of the factors).  Here, however, nearly all of the factors are relevant and weigh in favor of extending the Exclusive Periods.  Accordingly, and as explained more fully below, sufficient cause exists to extend the Debtors' Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

**B.    Cause Exists for an Extension of the Exclusive Periods in these Chapter 11 Cases**

14.    The Debtors require additional time to negotiate a plan with the other major constituencies in these Cases.  The Debtors submit that cause exists for an extension of the Exclusive Periods as the requested extensions are both appropriate and necessary under the facts and circumstances of these Cases.

**(1)    The Size, Complexity, and Short Duration of the Chapter 11 Cases**

15.    The complexity and relatively short duration of these Cases (less than seven months) warrant an extension of the Exclusive Periods.  Following the Petition Date, the Debtors' management and professionals focused on transitioning the Debtors' business into bankruptcy and conducting a robust marketing and Sale process of the Debtors' assets.  The Debtors devoted significant time and attention to the Sale process.

16.    Among other things, the Debtors' management and professionals worked extensively with the Buyer and its professionals to negotiate and document an asset purchase agreement, which the Debtors filed on October 23, 2018, and subsequently amended thereafter.

01:24305622.3

*See* Docket Nos. 216, 425 & 487. The Debtors also spent time preparing related disclosure schedules, conducting additional diligence, preparing forecasts and projections, and negotiating a form of order approving the Sale. Furthermore, the Debtors spent time communicating with counsel to the Committee, counsel to the Debtors' lenders, the U.S. Trustee, counsel to certain guilds, contract counterparties, and other parties in interest regarding the form of sale order, the asset purchase agreement with the Buyer, and the Sale. During the same time period, the Debtors also spent significant time with the Buyer identifying the contracts that the Debtors may assume and assign in connection with the Sale, as well as the amounts the Debtors believe would be required to cure defaults under such contracts. *See* Docket Nos. 172 & 248.

17.     The Debtors received approximately thirty objections and responses in connection with cure amounts and the Sale. Thereafter, the Debtors spent a significant amount of time negotiating with contract counterparties and other parties in interest regarding cure amounts, other assumption and assignment issues, and the Sale. In that regard, the Debtors also agreed to expedited audits where requested by certain guilds and counterparties, which audits required a substantial amount of time and effort on a very short timeframe. Ultimately, the Debtors and the Buyer were able to consensually resolve these objections and, on December 19, 2018, the Court entered the Sale Order approving the Sale to the Buyer. The Sale closed on December 21, 2018.

18.     In addition, in the early stages of these Cases, the Debtors spent substantial time negotiating with their lenders and numerous contract counterparties in connection with the use of cash collateral, which use was approved both on an interim and final basis. The Debtors also spent time in the first few months of the Cases, among other things, responding to diligence requests from the Committee and inquiries from contract counterparties

and vendors, pursuing various potential ordinary course transactions, addressing setoff disputes with certain contract counterparties and negotiating stipulations authorizing setoffs, and documenting and obtaining this Court's approval of a key employee retention plan.

19. More recently, the Debtors obtained an order establishing a deadline for the filing of proofs of claim and requests for payment of initial administrative expenses in these Cases, *see* Docket No. 458, and, since that deadline, the Debtors' management and professionals have spent time analyzing the nature and status of claims and potential claims against the estates, including claims asserted by alleged holders of participation and residual rights in the Debtors' films. In connection therewith, the Debtors spent significant time negotiating agreements with Lakeshore Entertainment and Bank Leumi USA, both of which agreements have been approved by the Court. *See* Docket Nos. 595 & 580. The Debtors have also spent time discussing the numerous claims filed by the Guilds with the Guilds' counsel. In addition, the Debtors have engaged in productive, ongoing discussions with the Committee regarding post-Sale case strategy and case resolution issues generally, and regarding the form and substance of a chapter 11 plan for these Cases. In connection therewith, the Debtors have devoted time and attention to drafting and revising a chapter 11 plan and an accompanying disclosure statement and other related materials.

20. Given the foregoing considerable progress in a short period of time, the Debtors submit that the complexity and relatively short duration of these Cases warrant the extension of the Exclusive Periods, so that the Debtors can focus on the plan process.

(2) **The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information**

21. As described above, during the earlier periods of these Cases, the Debtors and their professionals focused the vast majority of their time and efforts in these Cases on the

01:24305622.3

8

Sale process and other aspects of the administration of these estates, such as the resolution of claims and the disposition of assets not sold to the Buyer.  Having closed the Sale and made significant progress on these other case administration fronts, the Debtors are now engaged in the process of negotiating and preparing adequate information in connection with a chapter 11 plan.  However, the Debtors have not yet had sufficient time to complete that process.  Accordingly, the Debtors submit that this factor supports the relief requested.

### (3)     Good-Faith Progress Made in These Chapter 11 Cases

22.    The Debtors have made significant and material progress in these Cases, including progress negotiating with creditors.  The Debtors have complied with their reporting and disclosure requirements under the Bankruptcy Code, including the preparation and filing of the schedules of assets and liabilities and the filing of monthly operating reports.  As noted above, the Debtors worked extensively with the Buyer, the Committee, the U.S. Trustee, contract counterparties, and other parties in interest to effectuate the Sale and the assumption and assignment of certain contracts to the Buyer.  In addition, the Debtors and their professionals have also been communicating with the other case constituents regarding post-sale case strategy, budgeting, and case resolution issues.  The Debtors are now working with those parties to bring these Cases to an orderly and efficient conclusion.  Accordingly, the Debtors submit that they have made good-faith progress in these Cases, which weighs in favor of extending the Exclusive Periods.

### (4)     The Debtors Are Paying Their Debts as They Come Due

23.    As the Debtors' undisputed postpetition obligations continue to be timely paid as they come due, the requested extension of the Exclusive Periods will not prejudice the legitimate interests of postpetition creditors.  As such, the Debtors submit that consideration of this factor also weighs in favor of extending the Exclusive Periods.

**(5)    The Debtors Are Not Seeking an Extension to Pressure Creditors**

24.    The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods.  To the contrary—the Debtors have worked diligently over the past few months, in good faith and with their creditors, to maximize value for all stakeholders, and require the extension sought by this Motion in order to negotiate and document a chapter 11 plan and related materials that can garner broad creditor support.

**(6)    Termination of the Exclusive Periods Could Adversely Impact These Chapter 11 Cases**

25.    Termination of the Exclusive Periods could adversely impact the Debtors' efforts to preserve and maximize the value of these estates.  If this Court were to deny the Debtors' request for an extension of the Exclusive Periods, at the expiration of the Exclusive Periods any party in interest would be free to propose a chapter 11 plan for the Debtors.  Such a ruling could cause substantial harm to the Debtors' efforts to preserve and maximize the value of their estates through a consensual process.  The introduction of competing plans at this juncture would introduce an adversarial process that could consume significant estate resources.  Moreover, the Debtors believe that they are well positioned to propose a plan that will garner the support of their creditors.

*    *    *

26.    Based on the foregoing, the Debtors respectfully submit that cause exists to further extend the Debtors' Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.  Specifically, the Debtors request that the Plan Period and Solicitation Period be extended through and including July 10, 2019 and September 6, 2019, respectively, without prejudice to

the Debtors' right to seek further extensions of the Exclusive Periods, as may be appropriate under the circumstances.

## V.  NOTICE

27. Notice of this Motion will be provided to the following parties: (a) the U.S. Trustee; (b) counsel for the Committee; (c) the Agent; and (d) all parties that, as of the filing of this Motion, have filed a request for service of filings in these the Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

[*Remainder of page intentionally left blank*]

## VI. CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) extending the Plan Period through and including July 10, 2019, (ii) extending the Solicitation Period through and including September 6, 2019, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: March 26, 2019
Wilmington, Delaware

*/s/ Ian J. Bambrick*
Michael R. Nestor, Esq. (DE Bar No. 3526)
Robert F. Poppiti, Jr., Esq. (DE Bar No. 5052)
Ian J. Bambrick, Esq. (DE Bar No. 5455)
Shane M. Reil, Esq. (DE Bar No. 6195)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:   (302) 571-6600
Fax:   (302) 571-1253

and

Michael L. Tuchin, Esq.
Jonathan M. Weiss, Esq.
Sasha M. Gurvitz, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:   (310) 407-4000
Fax:   (310) 407-9090

*Counsel to Debtors and Debtors in Possession*