**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 18-12012-LLS |
| OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al.*[1] | (Jointly Administered) |
| Debtors. | Hearing;  July 1, 2020<br>                2:00 p.m. EST |

## RESPONSE BY MATT CREEM, HOLDER OF CLAIM NUMBER 46, TO PLAN ADMINISTRATOR'S FIFTH (SUBSTANTIVE) OBJECTION TO CERTAIN (A) NO LIABILITY CLAIMS AND (B) REDUCE AND ALLOW CLAIMS

Matt Creem ("Claimant"), holder of Claim 46 ("Claim") hereby responds to the Plan Administrator's Fifth (Substantive) Objection to Certain (A) No Liability Claims and (B) Reduce and Allow Claims ("Objection") filed on May 29, 2020 as docket 980 as set forth below.

### A.    STATEMENT OF FACTS

Claimant's Claim was filed on September 27, 2018 as claim number 46 (labelled 41 by the court).   The Claim amount is for $112,150 as a general unsecured claim and $12,850 as a priority claim for wages salaries or commissions earned within 180 days before the bankruptcy was filed per 11 USC Section 507(a)(4).

The Objection states the following as to Claimant's Claim at page 8 of docket 980-2 (Exhibit 1 to proposed order): "Claim has no basis in the Debtors' books and records. Supporting documents filed with the proof of claim show that the employment agreement upon which the claim is based is signed by non-debtor IMG Global LLC.  Claim does not establish

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435 Del.); Open Road Releasing, LLC (4736 Del.); OR Productions LLC (5873 Del.); Briarcliff LLC (7304 Del.); Open Road International LLC (4109 Del.); and Empire Productions LLC (9375 Del.). The Debtors' address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067.

CHEKIAN LAW OFFICE
445 SOUTH FIGUEROA STREET, 31ST FLOOR
LOS ANGELES, CA 90071

that the release that was a condition precedent for severance was signed within the requisite twenty days or that claimant mitigated his damages as required by the agreement.  Debtors have no liability for this claim."

Claimant's employment contract with Debtors, Global Road and IM Global began on January 29, 2018 and ran through January 28, 2020.   Claimant was Senior Vice President, Digital Marketing, earning $250,000 during his first year of employment and $260,000 per year in his second.  He was entitled to healthcare benefits and 401(k) matching through the length of the contract.  The contract called for a severance payment to Claimant for termination without cause equal to the lesser of six months of salary plus half of his remaining contractual wages. Claimant's employment was terminated without cause on August 28, 2018. Nonetheless, he has not received the $125,000 he is owed in severance or the $354,794.52 in wages owed through the end date of his contract. He is similarly entitled to $27,741.31 in lost health benefits and $27,526 in employer 401(k) contributions.

Claimant's employment agreement was with Global Road Entertainment LLC, together with its affiliates, including Debtors.   Although Claimant may have signed a release as to Debtors, he did not receive the separation package which was supposed to have been provided for the release to be effective.

**B.    ARGUMENT**

   **1.    Time For Claimant To Respond Is Not Reasonable.**

Due process requires that a creditor receive notice of any bankruptcy proceeding which is to be accorded finality. *In re Toth,* 61 B.R. 160, 165 (Bankr.N.D.Ill. 1986). Such notice must be "reasonably calculated" to apprise interested parties of the pendency of an action and to afford them an opportunity to present objections. *Mullane v. Central Hanover Bank Trust Co.,* 339 U.S.

306, 314 (1950).  *See also Reliable Electric Co., Inc. v. Olson Construction Co.,* 726 F.2d 620, 622 (10th Cir. 1984).

In this case, the Objection was served by mail on May 29, 2020 and this response is due by June 12, 2020.   Bankruptcy Rule 9014 provides that in all contested matters, such as objections to claims, "relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."  The provided time to respond is not the reasonable notice required under the Rules.

**2.      Validity of the Claim.**

The Claim complies with the requirements of Rule 3001 and presents prima facie evidence of the validity and amount of the debt, so the burden shifts to the Debtors to refute the Claim.  *In re Allegheny Int'l, Inc.* 954 F.2d 167, 173 (3rd Cir. 1992).  *In re Umstead*, 490 B.R. 186 (Bankr.E.D.Pa. 2013).   The Objection includes no evidence other than the conclusions of the plan administrator in his declaration.

Claimant's within declaration actually states he is owed far more than listed in the Claim.

Claimant's employment agreement included Debtors as subsidiaries of Global Road Entertainment LLC.

A large portion of the Claim is for severance pay.  Claimant's severance pay was for $125,000 and he was employed since January 29, 2018.  Eligibility for severance arises immediately upon signing of an employment agreement.  *See, In re M Group, Inc.,* 268 B.R. 896, 901 (Bankr. D.Del. 2001), relying, in part, upon *In re My-Pak, Inc.,* 128 B.R. 763 (Bankr. S.D. Ill. 1991); *In re General Information Services,* 68 B.R. 419 (Bankr. E.D. Pa. 1986).

*In re Ellipsat, Inc.*, 480 B.R. 1, 10 (Bankr. D. D.C. 2012) (discussing that traditionally courts have concluded that an employee "earns" his severance pay over time under the severance

CHEXIAN LAW OFFICE
445 SOUTH FIGUEROA STREET, 31ST FLOOR
LOS ANGELES, CA 90071

CHEKIAN LAW OFFICE
445 SOUTH FIGUEROA STREET, 31ST FLOOR
LOS ANGELES, CA 90071

policy) (citing *In re Russell Cave Co., Inc.*, 248 B.R. 301, 304–05 (Bankr.E.D.Ky. 2000), *In re Yarn Liquidation, Inc.*, 217 B.R. 544, 546 (Bankr.E.D.Tenn. 1997); *In re Old Electralloy Corp.*, 167 B.R. 786, 796 (Bankr.W.D.Pa. 1994); *In re Jeannette Corp.*, 118 B.R. [327, 330 (Bankr.W.D. Pa. 1990) ], and *In re N.W. Eng'g Co.*, 43 B.R. 603, 605 (Bankr.E.D.Wis. 1984) ).

Claimant's severance benefit claim is entitled to priority treatment under Section 507(a)(4).  Claimant earned his severance payment within "180 days of the date of the filing of the petition," and the amount of the severance is within the $12,850 statutory cap; therefore, it is a priority claim.

## C.    CONCLUSION

Therefore, it is respectfully requested that the Objection be overruled and that Claimant's Claim be allowed in full as filed.

Dated:  June 11, 2020                    Respectfully submitted,

                                         /s/ Michael F. Chekian__

                                         Michael F. Chekian, Esq.
                                         Chekian Law Office
                                         445 South Figueroa Street, 31st Floor
                                         Los Angeles, CA 90071
                                         Voice:  (310) 390-5529
                                         Facsimile:  (310) 451-0739
                                         Email:  mike@cheklaw.com
                                         Attorneys for Claimant

### DECLARATION OF MATT CREEM

I, Matt Creem, do hereby declare under the penalty of perjury that the following is true and correct to the best of my personal knowledge and belief, and if called upon as a witness, I could and would personally testify under oath in a court of law to the truthfulness of each of the below facts.

1.      I am the holder of bankruptcy claim in this proceeding ("Claim") and a true and correct copy of the Claim is attached hereto as Exhibit A.

2.      My Claim was filed on September 27, 2018 as claim number 46 (labelled 41 by the court).   The Claim amount is for $112,150 as a general unsecured claim and $12,850 as a priority claim for wages salaries or commissions earned within 180 days before the bankruptcy was filed per 11 USC Section 507(a)(4).

3.      The Objection states the following as to my Claim at page 8 of docket 980-2 (Exhibit 1 to proposed order): "Claim has no basis in the Debtors' books and records. Supporting documents filed with the proof of claim show that the employment agreement upon which the claim is based is signed by non-debtor IMG Global LLC.  Claim does not establish that the release that was a condition precedent for severance was signed within the requisite twenty days or that claimant mitigated his damages as required by the agreement.  Debtors have no liability for this claim."

4.      My employment contract with debtors Open Road Films LLC, et al. ("Debtors"), Global Road and IM Global began on January 29, 2018 and ran through January 28, 2020.   I was Senior Vice President, Digital Marketing, earning $250,000 during his first year of employment and $260,000 per year in my second year.   I was entitled to healthcare benefits and 401(k) matching through the length of the contract.  The contract called for a severance payment to me for termination without cause equal to the lesser of six months of salary plus half of my remaining contractual wages.  My employment was terminated without cause on August 28, 2018.  Nonetheless, I have not received the $125,000 he is owed in severance or the $354,794.52

in wages owed through the end date of my contract.   I am similarly entitled to $27,741.31 in lost health benefits and $27,526 in employer 401(k) contributions.

5.    My employment agreement was with Global Road Entertainment LLC, together with its affiliates, including Debtors.   Although I may have signed a release as to Debtors, I did not receive the separation package which was supposed to have been provided for the release to be effective.


I do hereby declare under the penalty of perjury and pursuant to the laws of the United States of America that the foregoing is true and correct and that this declaration is executed this 11th day of June, 2020, at _____Los Angeles_____, California.

Name: Matt Creem

CHEKIAN LAW OFFICE
445 SOUTH FIGUEROA STREET, 31ST FLOOR
LOS ANGELES, CA 90071

3256-46

**Fill in this information to identify the case:**

Debtor 1    Open Road Films, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    United States Bankruptcy Court -
District of Delaware

Case number    18-12012

**RECEIVED**
**9/27/2018 12:21:18 PM (Eastern Time)**
**US BANKRUPTCY COURT-DRC**
**Claim No. ECN-41**

Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
|---|---|

| | |
|---|---|
| 1. **Who is the current creditor?** | Matt Creem <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes.  From whom? _____ |
| 3. **Where should notices and payments to the creditor be sent?** <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> Matt <br> Creem <br> 1050 S Grand Ave <br> Unit 1610 <br> Los Angeles CA 90015 <br> USA <br> 6174167940 <br> Mattcreem@gmail.com <br><br><br> Uniform claim identifier for electronic payments in chapter 13 (if you use one): <br><br> __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ | **Where should payments to the creditor be sent?** (if different) |
| 4. **Does this claim amend one already filed?** | ☑ No <br> ☐ Yes.  Claim number on court claims registry (if known) _____    Filed on _____ <br>                                                    MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes.  Who made the earlier filing? _____ |

1

**EXHIBIT A**

**Claim: 41-1 Dated: 9/27/2018**          3256-46

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6.** **Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __4435__

**7.** **How much is the claim?**   $ __$125,000.00__ . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

__Employment Contract__

**9.** **Is all or part of the claim secured?**

☑ No

☐ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**                $_____

**Amount of the claim that is secured:**    $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10.** **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

**11.** **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**EXHIBIT A**

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ No

☑ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☑ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ $12,850.00 |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   9/27/2018_____
                MM / DD / YYYY

*/s/ Matt Creem*_____
Signature

**Print the name of the person who is completing and signing this claim:**

Matt Creem
SVP, Digital Marketing
Global Road Entertainment
1050 S Grand Ave
Unit 1610
Los Angeles CA 90015
USA
6174167940
Mattcreem@gmail.com

---

As of January 29, 2018

Dear Matt:

I'm pleased to confirm the terms of your employment with Open Road Films, LLC (together with its affiliates and subsidiary entities, including Global Road Entertainment LLC and IM Global, LLC, *"Company"*), subject to the conditions stated in this agreement (this *"Agreement"*). The terms and conditions of your employment by Company are set forth in this Agreement, which includes the Standard Terms and Conditions (the *"ST&C"*) attached hereto and hereby incorporated into this Agreement. In the event of any conflict between the ST&C and any express term or condition provided below in the main body of this Agreement, the express terms and conditions provided in the main body of this Agreement shall prevail.

1.    **Effective Date of Employment; Term.**

(a)    Effective Date of Employment. Company hereby agrees to employ you and you hereby agree to accept employment with Company, upon the terms and subject to the conditions set forth herein, commencing on January 29, 2018 (the *"Effective Date"*).

(b)    Term. Subject to the provisions of Paragraph 9 of this Agreement, you shall be employed by Company under this Agreement for a period commencing on the Effective Date and expiring January 28 2020 (the *"Employment Term"*), on the terms and subject to the conditions set forth in this Agreement. The Company shall have the option to extend the Employment Term for a period of one year, to January 28, 2021, which option may be exercised in writing by the Company and delivered to you no later than three (3) calendar months prior to the expiration of the Employment Term, or October 28, 2019. If you remain employed by Company past January 28, 2020 without Company having exercised its option to extend the Employment Term pursuant to the foregoing sentence, or without a new written agreement having been reached by you and Company, then you shall be employed thereafter on an at-will basis, with either party having the ability to end the employment relationship upon two (2) weeks written notice at any time, for any reason, with or without cause; during the at-will period, all of the obligations and rights in Paragraph 9 shall terminate and be of no further force and effect and all other rights and obligations under this Agreement shall continue. If your employment ends during an at-will period, upon termination, you shall only be entitled to Accrued Obligations, as that term is defined in Paragraph 9(b)(1).

2.    **Title, Duties and Responsibilities.**

(a)    Title. During your employment, you shall serve as Senior Vice President, Digital Marketing (*"SVP"*) for the Company and Global Road Entertainment, the entity, division or business unit resulting from the reorganization, realignment or similar change in corporate organization and/or administration related to the integration of the Company, IM Global, LLC, Open Road Films, Global Road Entertainment, LLC, and/or their respective parents or affiliates (the *"Global Road Restructure"*). In addition, these duties may include, at the Company's request, your serving as a senior officer and/or marketing

1

executive of certain of the Company's divisions, subsidiaries and/or affiliates.

(b)    Reporting. In your capacity as SVP, you shall report to the Company's President of Marketing (the *"President"*), currently Jack Pan; to the extent that you act as a senior officer and/or acquisitions executive for other divisions, subsidiaries and affiliates as described in Paragraph 2(a) above, you shall continue to report as above, but may have reasonable and customary "dotted line" reporting responsibilities.

(c)    Duties and Responsibilities.    You shall have such authority, powers, responsibilities, and privileges as the Company and the President may from time to time assign or delegate to you, consistent with your title and position as SVP and the Company's policies and procedures in effect from time to time, including without limitation: conceiving, supervising, directing and managing the online, social media and digital marketing and promotional aspects of the Company's content offerings and activities, including the Company's digital advertising, promotion, and related market research, analytics, marketing strategies, social media and digital marketing, integrations, strategic and promotional alliances, and public relations; preparing and implementing the Company's domestic and international digital marketing, advertising and promotional budgets and business plans;  and, rendering such other services as are customarily performed by a SVP in the motion picture and entertainment industry. You shall perform the functions and duties and furnish the services to Company in connection with and related to your position in a manner that is customary for persons with the same or similar positions in like companies and at all times diligently, competently, and in good faith.

(d)    Place of Employment. Your principal place of employment shall be the Los Angeles metropolitan area. You agree to travel for business purposes to the extent necessary or appropriate in the performance of your duties hereunder.

(e)    Full Time Basis. You shall perform and discharge conscientiously and faithfully all duties and responsibilities set forth in Paragraph 2(c) above, and you shall devote all of your business time thereto, subject to the Permitted Outside Activities (as defined in Paragraph 2(g) below). You also shall devote your best talents, efforts and abilities to the performance of your duties and responsibilities and to promoting the interests of Company and its affiliates on an exclusive basis (excluding Permitted Outside Activities).

(f)    No Conflicts. You represent and warrant to Company that you are not a party to any agreement, whether written or oral, preventing or interfering with the execution by you of this Agreement, or which will prevent or interfere with your rendering full time exclusive services to Company or the fulfillment by you of all obligations under this Agreement.

(g)    Permitted Outside Activities. Subject at all times to the terms of this Agreement, you shall devote your full working time and attention exclusively to the business and affairs of Company; provided, however, that you shall not be restricted from pursuing the following activities on your own account: (i) personal investing or trading in stocks, bonds, commodities or other forms of investment, including real property, so long as you do not "participate" (within the meaning of Treas. Reg. §§1.469-5(f) and 1.469-5T(f)) in such investments, and that any such investment(s) within the motion picture, television, digital content and entertainment businesses shall consist of purely passive investments in the equity securities of publicly traded companies with a market capitalization in excess of $250 million, comprising less than 1% of the outstanding equity securities of such company;

2

**EXHIBIT A**

and (ii) participating in civic, religious, political, and/or charitable or philanthropic activities (collectively, the *"Permitted Outside Activities"*). In no event shall you accept any management role, directorship or advisory board position for any entity which competes in any way with any existing or proposed business or activity of Company or any of its affiliates. Notwithstanding the foregoing, you may only engage in Permitted Outside Activities that (A) do not (either individually or collectively) materially conflict or interfere with your services hereunder, as reasonably determined by the Company; (B) are rendered primarily and substantially outside of normal business hours; and, (C) are in no way materially competitive with any existing or proposed business or activity of Company or any of its affiliates).

3.      **Base Salary**. Provided that you are then an employee of Company, Company shall pay you, in accordance with its customary payroll practices, a base salary (*"Base Salary"*), less standard income tax and related withholdings and deductions, at an annual rate of $250,000. Your Base Salary shall be paid pursuant to Company's payroll schedule, currently bi-monthly.

4.      **Base Salary Increases**. Your Base Salary shall increase on the first anniversary of this Agreement (January 29, 2019) to $260,000; if the Company exercises its option to extend the Employment Term as set forth in Paragraph 1(b), then, upon the second anniversary of this Agreement (January 29, 2020), your Base Salary shall increase to $275,000.

5.      **Bonus**. During each calendar year during the Employment Term, you shall be entitled to a discretionary bonus (*"Potential Incentive Bonus"*), at such times as the Company pays discretionary bonuses, if any, to other similarly situated executives. The amount of any Potential Incentive Bonus shall be subject to the Company's discretion and may take into account, among other things, the nature, extent and/or timeliness of achievement of defined performance benchmarks, overall Company profitability, division profitability, and your individual contributions thereto. During the Employment Term, you may earn a Potential Incentive Bonus of up to 30% of your Base Salary per year. The Potential Incentive Bonus, if any, shall be prorated for the portion of each calendar year during which you were employed by the Company.

6.      **Benefits**.

        (a)     During the Employment Term, you shall be entitled to participate in such generally applicable medical, dental, vision, insurance, benefit, and 401k retirement plans or programs established for the benefit of the Company's employees with comparable title, subject always to the terms of any such plan or program, including length of service and other eligibility requirements as defined by the applicable plan documents (individually and collectively, the *"Benefit Plans"*). Whether in connection with a Global Road Restructure or otherwise, Company reserves the right to amend, modify, suspend, terminate or otherwise change any or all of the Benefit Plans, or any aspect or particular benefit thereof, at any time, at its sole discretion, to the extent permitted by applicable law, with no recourse by you; provided such amendment, modification, termination or other change is applicable to similarly situated employees of Company. You shall be entitled to take paid time off without a reduction in salary, subject to the demands and requirements of your duties and responsibilities under this Agreement and subject to the President's prior approval. You shall not accrue any vacation, but shall be entitled to a reasonable amount

3

of personal and sick days in accordance with the policies of Company and California employment regulations.

7.    **Business Expenses.** During your employment, Company shall pay or reimburse you for all reasonable travel and other business expenses actually incurred and paid by you during your employment in the performance of your services hereunder if properly substantiated and in accordance with Company's generally applicable policies and procedures (as such policies may be amended from time to time).

8.    **Withholdings and Deductions.** All payments hereunder shall be subject to such income tax and related withholdings and deductions as are standard in the particular instance, or as otherwise required by applicable law, and shall be payable in accordance with the customary practices of Company.

9.    **Termination.**

(a)    This Agreement and your employment hereunder may be terminated at any time as provided below in this Paragraph 9.

(1)    Death or Disability. Termination shall occur in the event of your death or your Disability. For purposes of this Agreement, you shall be deemed to have a *"Disability,"* or be "**Disabled**," if, because of a physical or mental condition, Company is unable to reasonably accommodate your Disability in a manner that permits you to perform your essential job functions without causing "undue hardship" to the business operations of Company as defined by applicable state and federal law. In the event you are deemed Disabled as defined herein, your employment shall terminate upon at least ten (10) days' prior written notice by Company. In case of such termination, you shall be entitled to receive salary, benefits, and reimbursable expenses owing to you through the date of termination; provided, however, that any Base Salary paid to you during the period you are not working due to a medical condition but before you are deemed Disabled shall be reduced by amounts payable to you under any insurance plan sponsored by Company and by any governmental disability payments.  You agree and acknowledge that, subsequent to a Global Road Restructure, "Disability" and/or "Disabled" may be defined in the Company's (or its successor's) written employee handbook or manual which is distributed to all employees; to the extent that such definition(s) apply to the termination of employment, they shall be incorporated into this subparagraph as applicable.

(2)    For Cause. Company shall have the right to terminate your employment for Cause upon written notice to you. *"Cause"* shall mean that Company, using its good faith business discretion based upon the information then known to Company or that Company should have known in the exercise of reasonable diligence, determines that you have engaged in or committed (i) a breach of any material term of this Agreement; (ii) any felony or crime involving moral turpitude for which you are convicted or for which you have entered into a plea of nolo contendere (except in connection with a traffic violation in which there were no third party injuries); (iii) any action or behavior that persists following written notice from Company to cease with such action or behavior, that is fundamentally inconsistent with your duties and responsibilities to Company, including a failure to perform those duties or to comply with a lawful directive given hereunder; (iv) a material breach of Company's code of ethics or code of conduct, including without limitation sexually inappropriate conduct toward an employee, consultant, advisor, vendor or other individual

4

**EXHIBIT A**

involved in the business of the Company; (v) an act or omission that involves financial impropriety, fraud or deceit; and/or (viii) any conduct that materially discredits Company or any subsidiary or affiliate thereof or is materially detrimental to the reputation, character and standing of Company or any subsidiary thereof, as determined in Company's good faith business discretion. Company shall provide Employee with written notice of any alleged breach hereunder within thirty (30) days of such event and Employee shall have five (5) business days to cure such alleged breach (provided that such breach is curable, it being agreed and acknowledged that many of the actions or omissions which constitute Cause hereunder are not reasonably susceptible of cure).

(3)   Termination by Company Without Cause. Company shall have the right to terminate your employment at any time, for any reason or no reason, with or without advance notice. Such termination shall be effective upon your receipt of written notice from Company.

(4)   Termination by Employee. Employee may terminate this Agreement for "Good Reason". "Good Reason" shall mean any material breach of this Agreement by Company or any act or omission by Company that materially limits or constrains Employee's ability to perform or carry out the material intended duties and obligations as SVP, provided, however, Employee must first provide written notice to Company of the event alleged to constitute "Good Reason" within thirty (30) days of such event and Company shall have thirty (30) days in which to cure such event. If Company fails to cure such event within such cure period, termination for Good Reason shall be effective on the last day of such cure period.

(b)  Obligations of the Parties Upon Termination.

(1)   Death or Disability. If your employment is terminated by reason of your death or Disability (and provided your employment is not otherwise terminated pursuant to another provision of this Paragraph 9 prior to your death or the Disability period, as set forth above), your employment shall terminate without further obligations to you under this Agreement or otherwise, other than (A) payment of any accrued and payable portion of your Base Salary through the date of termination to the extent not theretofore paid, which shall be paid to you or your estate or beneficiary, as applicable, in a lump sum in cash, less standard withholdings and authorized deductions; and (B) payment of any properly substantiated unpaid expense reimbursements payable to you pursuant to Paragraph 7 of this Agreement (collectively the "Accrued Obligations"). If and to the extent that you have already been awarded any Potential Incentive Bonus that has not been paid, you shall be entitled to payment of such Potential Incentive Bonus, which shall be paid to you or your estate or beneficiary.

(2)   Termination by Company for Cause. If your employment is terminated by Company for Cause, your employment shall terminate with no further obligations to you other than the payment of the Accrued Obligations. For the avoidance of doubt, any termination for Cause by Company pursuant to Paragraph 9(a)(2) of this Agreement shall not be deemed to be a waiver by Company of any of Company's rights or remedies otherwise available to Company at law, in equity, or otherwise.

(3)   Termination by Company Without Cause. If Company exercises its right to terminate your employment without Cause under Paragraph 9(a)(3) of this

3198411.3

**EXHIBIT A**

Agreement, or you terminate for Good Reason as provided in Paragraph 9(a)(4), you shall be entitled to receive payment of any Accrued Obligations. If and to the extent that you have already been awarded any Potential Incentive Bonus that has not been paid, you shall be entitled to payment of such Potential Incentive Bonus. In addition, you will be entitled to a severance payment equal to the *lesser of* (i) the amount of your Base Salary for the period beginning on the date of termination by Company without Cause extending through the balance of the Employment Term (including any extension thereof) and (ii) your Base Salary for six (6) months (the *"Extended Payment Period"*); provided, however, that the Company shall be credited with the gross amount of any compensation earned by you during the Extended Payment Period from any employment or consulting activities which require twenty (20) or more hours per week. In addition, the Company shall pay or reimburse you for the cost of continued medical, dental and health benefits from the date of termination by Company without Cause through the earlier of (x) the expiration of the Extended Payment Period, and (y) the date upon which you become eligible to participate in such benefits from a subsequent employer or entity.

(4)   Additional Separation Provisions.

(A)       All payments to be made to you pursuant to Paragraph 9(b)(3) of this Agreement, if and to the extent applicable and in excess of the Accrued Obligations (each, a *"Separation Package"*), or any portion thereof, are expressly conditioned upon your compliance with this Paragraph 9(b)(4) including your execution and non-revocation of the Release substantially in the form attached hereto, and any and all provisions of this Agreement which survive its termination.

(B)       The severance payment referred to in Paragraph 9(b)(3) of this Agreement shall be payable in accordance with Company's standard payroll practices over the Extended Payment Period, commencing in the month following the month in which your Separation from Service (as defined below) occurs. The Potential Incentive Bonus (if any) referred to in Paragraph 9(b)(1) of this Agreement shall be payable to you or your beneficiary or estate, as applicable, following the end of the calendar year in which your Separation from Service occurs on the date upon which Company pays its other employees' annual incentive bonuses for that year. As used herein, a *"Separation from Service"* occurs when you die, retire, or otherwise have a termination of employment with Company that constitutes a "separation from service" within the meaning of Treasury Regulation Section 1.409A-1(h)(1), without regard to the optional alternative definitions available thereunder. All payments of a Separation Package, or any portion thereof, are expressly conditioned upon your compliance with this Paragraph 9(b)(4) and any and all provisions of this Agreement which survive its termination.

(C)       In consideration for Company's agreement to pay you a Separation Package, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, if you wish to receive the Separation Package, you shall execute and deliver to Company a release in substantially the form attached hereto as Exhibit A (the *"Release"*). Notwithstanding anything to the contrary contained in this Agreement, if you fail to execute and deliver such Release within twenty one (21) calendar days of the effective date of the termination of your employment or if you revoke such Release within seven (7) days of execution and delivery, Company shall have no further obligations to you insofar as the Separation Package is concerned, other than the payment of the Accrued Obligations through the date of termination to the extent not

6

theretofore paid and you shall not be entitled to receive any other portion of the applicable Separation Package (other than the Accrued Obligations).

(D)     Your receipt of a Separation Package, or any component thereof, is expressly conditioned on your continued compliance with Paragraph 9 (to the degree applicable) of this Agreement and Paragraphs 2(a) and (b), 3, 4, 5, 6 and 7 of the ST&C.

(E)     The intent of the parties is that payments and benefits under this Agreement comply with, or be exempt from, Internal Revenue Code Section 409A and the regulations and guidance promulgated thereunder (collectively *"Code Section 409A"*) and, accordingly, to the maximum extent permitted, this Agreement shall be interpreted to be in compliance therewith. A termination of employment shall not be deemed to have occurred for purposes of any provision of this Agreement providing for the payment of any amounts or benefits upon or following a termination of employment unless such termination is also a "separation from service" within the meaning of Code Section 409A and, for purposes of any such provision of this Agreement, references to a "termination,", "termination of employment" or like terms shall mean "separation from service." For purposes of Code Section 409A, the Executive's right to receive any installment payments pursuant to this Agreement shall be treated as a right to receive a series of separate and distinct payments. Whenever a payment under this Agreement specifies a payment period with reference to a number of days, the actual date of payment within the specified period shall be within the sole discretion of the Company. Notwithstanding any other provision of this Agreement, to the extent that (i) any amount paid pursuant to Paragraph 9 of the Agreement is treated as nonqualified deferred compensation pursuant to Code Section 409A and (ii) the Executive is a "specified employee" pursuant to Section 409A(2)(B) of the Code, then such payments shall be made on the date which is six (6) months after the date of the Executive's separation from service.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first above written.

**IM GLOBAL, LLC**

By: _____

Its: CHAIRMAN & CEO

Agreed to and Accepted:

_____

Matt Creem

## STANDARD TERMS AND CONDITIONS

1.    **Company's Policies and Procedures**. You agree to comply with all lawful policies and procedures of Company as in effect from time to time of which you are advised, including, without limitation, policies with respect to conflict of interest, confidentiality, equal employment opportunity, sexual harassment, drug or alcohol abuse and software.

2.    **Covenants**. You acknowledge that the nature of the services furnished hereunder requires that you at all times perform your services under the Agreement without divided loyalties or obligations to any other competing person (including, without limitation, loyalty or obligation to any person who may become your employer following the termination of your employment with Company). You expressly covenant and agree that:

(a)    No Interest in or with Competitors. Except as may be set forth in Paragraph 2(g) of your Employment Agreement, during your employment, you shall not knowingly engage in any conduct that is in conflict with the enterprise-related interests of Company or any of its affiliates. Without limiting the generality of the foregoing, you will not, at any time during your employment hereunder knowingly, (i) be or become interested or engaged in any manner, directly or indirectly, either alone or with any person, firm, corporation or other entity now existing or hereafter created, in any business which is or may be competitive with the business of Company or any of its affiliates or (ii) be or become directly or indirectly a stockholder or investor or officer, director, agent, consultant or employee of, or in any manner otherwise associated with, give information or financial assistance to, or otherwise aid or abet, any such business. The provisions of this paragraph shall not be deemed to prohibit your purchase or ownership, as a passive investment, of not more than one percent (1%) of the outstanding capital stock of (i) any corporation the stock of which is publicly traded; or (ii) any privately held company, provided that (A) such company is not engaged in any business which competes with any business or activity of Company or any of its affiliates and (B) you disclose such investment in writing to the President.

(b)    No Solicitation of Employees. During your employment, and for a period of twelve (12) months following the termination of your employment, you shall not, directly or indirectly solicit, entice, persuade or induce, on your own behalf or on behalf of any other person or entity, any employee of Company or any of its affiliates to leave such employment or enter your employment or the employment of any person or entity with which you are then associated; provided, however, that if your employment is terminated without cause by the Company, or if you terminate your employment for Good Reason, or if the term of your employment contract expires and is not renewed, then you may solicit your former administrative assistant at the Company to enter your employment or the employment of any person or entity with which you are then associated.

3.    **Covenants Following Termination**.

(a)    Cooperation. Following the termination of your employment, subject to the final sentence of this Paragraph 3(a), you agree to use commercially reasonable efforts to cooperate with Company in connection with any present or future actual or threatened litigation or administrative proceeding involving Company and any person, firm or corporation with whom it may have dealt that relates to events, occurrences or conduct occurring during your employment. In this connection, you agree to use commercially reasonable efforts to furnish your services in depositions, in court and in

1

arbitration proceedings as may be reasonably required by Company, subject to your professional commitments and obligations. You also agree to travel as may be reasonably required (at Company's request) in connection therewith. Company shall use all reasonable efforts to minimize any inconvenience to you, shall endeavor to schedule such cooperation and/or travel at times not conflicting with the requirements of any employer of yours or the requirements of any third party with whom you have a business relationship that provides for remuneration to you, and shall reimburse you for your reasonable and properly substantiated costs, including air fare, ground transportation, meals and hotel accommodations if you are required to travel out of town at Company's request (with any such travel and accommodations being provided at levels comparable to that provided to you during your employment), and attorney's fees and other legal expenses.

(b)     Non-Disparagement. You agree not to make any material disparaging remarks about Company or its affiliates at any time, including following the termination of your employment; provided, however, the aforementioned shall not prohibit you from (i) truthfully and honestly responding to inquiries made of you pursuant to a valid order of a court or governmental agency of competent jurisdiction or (ii) exercising your rights and remedies under the Agreement. At any time, including following the termination of your employment, Company shall not make public material disparaging comments about you; provided, however, the aforementioned shall not prohibit Company from: (i) truthfully and honestly responding to inquiries made of Company pursuant to a valid order of a court or governmental agency of competent jurisdiction or (ii) exercising Company's rights and remedies under the Agreement.

## 4.    Proprietary Rights/Confidentiality

(a)     Proprietary Rights. Company shall be the sole and exclusive owner, throughout the universe and in perpetuity, of any and all rights of whatsoever nature, whether now or hereafter known, in the products, results and proceeds of your services hereunder, including, without limitation, all literary, graphic, dramatic, musical, audiovisual, electronic, or mechanical material, or any form of plans, representations, projections, themes, ideas, creations, products, compositions, materials, concepts, formats, suggestions, developments, programs, software, technologies and other intellectual properties (including all patents, trademarks, copyrights and extensions and renewals thereof) that you may acquire, obtain, develop, invent, create, conceive, produce, write, record, contribute to or submit to Company or its affiliates in connection with the Agreement and/or your employment hereunder (collectively, *"Work Product"*), free and clear of any claims by you (or anyone claiming under you) of any kind or character whatsoever (other than your right to compensation hereunder). All of your services during your employment with Company and all Work Product shall be subject in all respects to the supervision, control and direction of Company. To the extent applicable, all Work Product shall be considered "work made for hire" under the Copyright Law of the United States and you recognize that Company is the author and copyright holder of all such work. If, for any reason, any Work Product is not legally a "work made for hire," and/or there are any rights that do not accrue to Company under the immediately preceding sentence, you hereby unconditionally and irrevocably assign any and all of your right, title and interest thereto to Company. To the extent you have any rights in the results and proceeds of your services that cannot be assigned in the manner described above, you unconditionally and irrevocably waive such rights and the enforcement thereof. This assignment of rights does not apply to any invention which fully qualifies under Section 2870 of the California Labor Code. For the avoidance of the doubt, it is not contemplated that Work Product shall include, nor is it required that you shall assign to the Company, any rights (including copyright or any other intellectual property

2

rights) relating to your personally created works of a literary, artistic or musical nature which are unrelated to your duties to the Company and were created on your own time and with your own materials and resources. Any agreements between you and Company regarding such literary, artistic and/or musical works shall be contained in a separate written agreement; provided, however, that prior to entering into any agreement to sell or option the rights to any dramatic pitch, treatment or screenplay to any third party, you will provide the Company with a right of first refusal to acquire such rights on the proposed terms.

## 5.    Confidentiality

(a)    You expressly covenant and agree that you shall not at any time mechanically copy or otherwise reproduce, publish, sell, use, make any commercial use of, exploit, disclose or divulge any Confidential Information, as defined below, of Company or any of its affiliates, to any person or entity (other than Company or any of its affiliates), except (i) in order to properly carry out your duties under the Agreement in the normal course of business in accordance with Company's instructions, (ii) to the extent necessary to comply with law or the valid order of a court or governmental agency of competent jurisdiction, in which event you shall notify Company as promptly as practicable (and prior to making such disclosure) and shall seek confidential treatment of such information, (iii) with regard to the Agreement and its terms, to your accountants, financial advisors and attorneys as part of your normal reporting or review procedures, <u>provided</u> such accountants, financial advisors, and attorneys agree to be bound by this Paragraph 4. You further agree that such Confidential Information shall at all times remain the property of Company or any of its affiliates and that you shall take all necessary and appropriate precautions to avoid the unauthorized disclosure of Confidential Information. *"Confidential Information"* means any and all knowledge, information or data, whether written or oral, and if written, however produced or reproduced, whether or not denoted or marked confidential, which is information of Company or any of its affiliates of a secret, competitively sensitive, proprietary or confidential nature including, without limitation, the terms of the Agreement, any summaries, reports, charts, descriptions, strategic plans, business plans, programming plans, marketing plans, financial data and models, distribution plans, technology plans, production plans, budgets, salary information, contractual arrangements, negotiations, any intellectual property (including, without limitation, any ideas, concepts, literary material, designs, drawings, illustrations and photographs), discoveries, trade secrets solely or jointly used or conceived, designed, developed or created by Company or any of its affiliates at any time. Confidential Information does not include information which becomes freely and generally available to the public through no wrongful act of yours, that is known to you before it is disclosed by Company, that is disclosed to you by a person not obligated to maintain confidentiality, that is independently developed by you, or that required to be disclosed by applicable law, regulation or court order.

(b)    Ownership and Return of Property. All equipment, Confidential Information, Work Product, memoranda, notebooks and notes, records, diaries, calendars, and other documents, materials or data made or compiled by you, or made available to you during your employment concerning the business of Company or any of its clients, partners, associates or affiliates, whether printed, typed, written or on any source of computer media (collectively, *"Company Property"*), shall, as between you and Company, be Company's property. You expressly covenant and agree that, in the event your employment with Company terminates, you shall return to Company all property of Company or any of its affiliates in your possession or under your direct or indirect control, including, without limitation, all Company Property. Company Property shall exclude Employee's physical "Rolodex" and professional and personal contacts, which Employee may retain; Employee

3

may direct the Company to provide a copy of any digital or electronic "contacts" maintained by Employee on the Company's servers or otherwise within the Company's information technology platform, whether gmail, outlook or otherwise constituted; notwithstanding the foregoing, Employee shall not destroy, delete or otherwise modify such data, which is acknowledged and agreed to be Company Property.

        (c)    <u>Communications</u>. You expressly covenant and agree not to communicate with anyone other than at the direction of Company (or with your legal counsel) with respect to the facts or subject matter of any pending or known potential litigation in any way related to Company or any of its affiliates in the absence of Company's counsel except at the direction of Company's counsel or as otherwise required by law. In the event that you are aware that any other party attempts to interview you with respect to matters possibly related to such litigation, whether during your employment or at any time thereafter, whether or not you are then an employee of Company, you shall promptly so notify Company. This provision shall not apply with respect to your communication with your counsel regarding any claims arising under the Agreement or regarding any defense that you may be required to mount.

        (d)    <u>Further Assurances</u>. You agree to execute, acknowledge and promptly deliver any document consistent herewith requested by Company, and to take any other action so requested, at any time in order to evidence, perfect, effectuate and/or carry out your obligations under and to further the intention of this Paragraph 4, including if so requested by Company, signing a separate proprietary information and inventions agreement.

### 6.    Unique Nature of Services

The services to be rendered by you hereunder are of a special, unique, unusual, extraordinary and intellectual character which gives them a peculiar value for the loss of which Company cannot be reasonably or adequately compensated in damages, and a breach by you may cause Company irreparable injury and damage. You therefore hereby expressly agree that Company or any of its affiliates shall be entitled to seek injunctive and other relief to prevent a breach of the Agreement by you and to secure its enforcement including, without limitation, the enforcement of any provisions which survive termination of the Agreement. Company's resort to such equitable relief, however, shall not be construed to be a waiver of any other rights or remedies which Company may have.

### 7.    Arbitration

        (a)    Any controversy, claim or dispute between you, on the one hand, and Company, its parents, subsidiaries and affiliates, and its and their officers, directors, members, partners, shareholders, employees and/or agents, on the other hand, in any way arising out of, relating in any way to, or connected with the Agreement, its enforcement or interpretation, or because of an alleged breach, default, or misrepresentation in connection with any of its provisions, or arising out of, relating in any way to, or connected with your employment or termination of the same (including, but in no way limited to, claims of discrimination or sexual or other forms of harassment), shall be resolved through final and binding arbitration before a single neutral arbitrator, in Los Angeles, California pursuant to the applicable rules of JAMS in effect at the time the arbitration demand is filed. The current JAMS rules can be found at http://www.jamsadr.com/rules-employment-arbitration/. The arbitrator shall be selected by mutual agreement of the parties or, if the parties cannot agree, then by striking from a list of arbitrators supplied by JAMS in accordance with JAMS procedures and applicable law.

4

Final resolution of any dispute through arbitration may include any remedy or relief which the arbitrator deems just and equitable, including any and all remedies provided by applicable state or federal statutes. At the conclusion of the arbitration, the arbitrator shall issue a written decision that sets forth the essential findings and conclusions upon which the arbitrator's award or decision is based. Any award or relief granted by the arbitrator hereunder shall be final and binding on the parties hereto and may be confirmed, and judgment entered and enforced by any court of competent jurisdiction. The parties acknowledge and agree that they are hereby waiving any rights to trial by jury in any action, proceeding or counterclaim brought by either of the parties against the other in connection with any matter whatsoever arising out of or in any way connected with the Agreement or the provision of services under the Agreement. Company will advance the arbitrator's fees and arbitration expenses and any other costs associated with the arbitration or arbitration hearing that are unique to arbitration (recognizing that each side bears its own deposition, witness, expert and attorneys' fees and other expenses as and to the same extent as if the matter were being heard in court). To the extent permitted by applicable law, the arbitrator shall award the "prevailing party" reasonable fees and costs (including outside attorney's fees) including in connection with any claim for breach of contract.

(b) To the extent permitted by applicable law, and except as may be necessary to enter judgment upon the award, all claims, defenses and proceedings (including, without limiting the generality of the foregoing, the existence of the controversy and the fact that there is an arbitration proceeding) shall be treated in a confidential manner by the arbitrator, the parties and their counsel, and each of their agents, and employees and all others acting on behalf of or in concert with them. Without limiting the generality of the foregoing, no one shall divulge to any third party or person not directly involved in the arbitration the contents of the pleadings, papers, orders, hearings, trials, or awards in the arbitration, except as may be necessary to enter judgment upon an award as required by applicable law. Any court proceedings relating to the arbitration hereunder, including, without limiting the generality of the foregoing, to prevent or compel arbitration or to confirm, correct, vacate or otherwise enforce an arbitration award, shall be filed under seal with the court, to the extent permitted by applicable law.

(c) Notwithstanding the foregoing, the parties agree to participate in non-binding mediation with a mutually selected mediator prior to initiation of any arbitration process, except that either party may file any formal arbitration demand as necessary to preserve their legal rights.

8.   **Miscellaneous**.

(a) _Indemnification_. Company will indemnify, defend and hold you harmless for all reasonably necessary expenditures or losses incurred or sustained by you in direct consequence of the discharge of your duties or because you followed the directions of Company, or otherwise arising in connection with your services for Company to the extent permitted by applicable law.

(b) _Press Release_. Company may issue a mutually approved press release announcing your engagement hereunder.

(c) _Notices_. All notices shall be sufficiently given if in writing, sent by email or electronic means, registered or certified mail, by facsimile, or delivered, in person, if to you to the address you shall designate by notice to the Company duly given as set forth

5

herein, and if to Company at the address set forth above or at such other address as Company shall designate by notice to you from time to time.

(d) <u>Entire Agreement</u>. The Agreement (including these ST&C) constitutes and contains the entire agreement and final understanding concerning your employment with Company and the other subject matters addressed therein between the parties and may only be amended by mutual written agreement of the parties. It is intended by the parties as a complete and exclusive statement of the terms of their agreement. It supersedes and replaces all prior arrangements, negotiations and all agreements proposed or otherwise, whether written or oral, relating to the subject matter of the Agreement. You acknowledge that Company has not made any representations, other than those set forth in the Agreement, regarding the kind, character, nature, existence, or duration of your employment with Company or the compensation to be paid to you. Any representation, promise or agreement not specifically included in the Agreement shall not be binding upon or enforceable against either party and neither party has relied upon any representation, promise or agreement not included herein. This is a fully integrated agreement.

(e) <u>No Waiver</u>. The failure of either party at any time or times to require performance of any provision of the Agreement, or to exercise any right, shall in no manner affect the right at a later time to enforce the same. No waiver by either party of the breach of any term or covenant contained in the Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be, or construed as, a further or continuing waiver of any such breach, or a waiver of the breach of any other term or covenant contained in the Agreement.

(f) <u>Assignment</u>. The Agreement may not be assigned by you. The Agreement and the ST&C will be binding upon and inure to the benefit of Company and any successor of or to Company, any successor through merger, reorganization or other business combination, as well as any person or entity acquiring, directly or indirectly, all or substantially all of the business and/or assets of the Company whether by purchase, merger, consolidation, reorganization or otherwise, provided such person or entity assumes the Company's obligations under the Agreement.

(g) <u>Governing Law</u>. The Agreement shall be governed and construed in accordance with the laws of the State of California applicable to contracts entered into and fully performed therein without regard to principles of conflicts of law.

(h) <u>Severability</u>. The invalidity or unenforceability of any provision or provisions of the Agreement shall not affect the validity or enforceability of any other provision of the Agreement, all of which shall remain in full force and effect.

(i) <u>Surviving Paragraphs</u>. Paragraph 9 (to the extent applicable) of the Agreement and Paragraphs 2(a) and (b), 3, 4, 5, 6 and 7 hereof expressly shall survive the termination of the Agreement for any reason. Further, the respective rights of the parties hereunder shall survive any termination of the Agreement to the extent necessary to carry out the intended preservation of such rights.

(j) <u>Full Understanding</u>. You have read the Agreement, fully understand its contents and terms, and have had the opportunity to ask Company about any questions, concerns or issues you may have in connection with the Agreement or the terms of the Agreement. You also have had the opportunity to consult legal counsel or any other

advisers of your choice in connection with the Agreement.

(k) <u>Authority to Execute Agreements</u>. Each party hereto represents and warrants that (i) it has full power and authority to execute and deliver the Agreement and perform fully its obligations thereunder, and (ii) the Agreement has been duly executed and delivered and is the valid and binding obligation of such party, enforceable in accordance with its terms.

(l) <u>Execution</u>. The Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile and electronic copies of the Agreement (and such signed counterparts) may be used in lieu of the originals for any purpose.

(m) <u>Taxes</u>. To the extent that any benefits payable pursuant to Paragraph 6 or 7 of the Agreement are taxable to you, any reimbursement payment due to you pursuant to any such provision shall be paid to you on or before the last day of your taxable year following the taxable year in which the related expense was incurred. The benefits and reimbursements pursuant to such provisions are not subject to liquidation or exchange for another benefit and the amount of such benefits and reimbursements that you receive in one taxable year shall not affect the amount of such benefits or reimbursements that you receive in any other taxable year.

### *END OF STANDARD TERMS AND CONDITIONS*

3198411.3

**EXHIBIT A**

Exhibit A

FORM OF RELEASE AGREEMENT

Pursuant to the terms of the agreement ("*Agreement*") entered into as of December 1, 2017 between Open Road Films, LLC, a Delaware limited liability company (together with its parents and affiliated entities, including without limitation IM Global, LLC and Global Road Entertainment LLC, "*Company*") and Matt Creem ("*Employee*"), and in consideration of the payments made to Employee and other benefits to be received by Employee pursuant thereto (including the Separation Package as defined therein), Employee hereby agrees as follows:

1.    **Release by Employee**. Employee, on Employee's own behalf and on behalf of Employee's descendants, dependents, heirs, executors, administrators, assigns and successors, and each of them, hereby acknowledges full and complete satisfaction of and releases and discharges and covenants not to sue Company, its divisions, subsidiaries, parents, or affiliated entities, past and present, and each of them, as well as its and their assignees, successors, directors, officers, members, stockholders, partners, representatives, attorneys, agents or employees, past or present, or any of them (individually and collectively, "*Releasees*"), from and with respect to any and all claims, agreements, obligations, demands and causes of action, known or unknown, suspected or unsuspected, arising out of or in any way connected with Employee's employment or any other relationship with or interest in Company or the termination thereof, including without limiting the generality of the foregoing, any claim for severance pay, profit sharing, bonus or similar benefit, pension, retirement, life insurance, health or medical insurance or any other fringe benefit, or disability, or any other claims, agreements, obligations, demands and causes of action, known or unknown, suspected or unsuspected resulting from any act or omission by or on the part of Releases committed or omitted prior to the date of this Release Agreement (this "*Release*") set forth below, including, without limiting the generality of the foregoing, any claim under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the California Fair Employment and Housing Act, California Labor Code Section 132a, the California Family Rights Act, or any other federal, state or local law, regulation or ordinance (collectively, the "*Claims*"); provided, however, that this release does not cover: (a) any Claim that cannot be so released as a matter of applicable law; (b) any Claim by Employee for breach of the terms, provisions or covenants of this Release; (c) any Claim by Employee for the payment of the Separation Package (or any constituent component thereof); (d) any Claim by Employee under an award agreement, incentive plan or other similar governing document; or, (e) arising under Paragraph 7(a) of the ST&C.

2.    **Acknowledgement of Payment of Wages**. Employee acknowledges that Employee has received all amounts owed for Employee's regular and usual salary (including, but not limited to, any bonus, or other wages), and usual benefits through the date of this Release.

3.    **Waiver of Civil Code Section 1542**. This Release is intended to be effective as a general release of and bar to each and every claim, agreement, obligation, demand and cause of action hereinabove specified. Accordingly, Employee hereby expressly waives any rights and benefits conferred by Section 1542 of the California Civil Code and any similar provision of any other applicable state law as to the Claims. Section 1542 of the California Civil Code provides:

1

3198411.3

"A GENERAL RELEASE DOES NOT EXTEND TO A CLAIM WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Employee acknowledges that Employee later may discover claims, demands, causes of action or facts in addition to or different from those which Employee now knows or believes to exist with respect to the subject matter of this Release and which, if known or suspected at the time of executing this Release, may have materially affected its terms. Nevertheless, Employee hereby waives, as to the Claims, any claims, demands, and causes of action that might arise as a result of such different or additional claims, demands, causes of action or facts.

4.     **ADEA Waiver**. Employee expressly acknowledges and agrees that by entering into this Release, Employee is waiving any and all rights or claims that Employee may have arising under the Age Discrimination in Employment Act of 1967, as amended ("*ADEA*"), which have arisen on or before the date of execution of this Release. Employee further expressly acknowledges and agrees that:

(a)     In return for this Release, Employee will receive consideration beyond that which Employee was already entitled to receive before entering into this Release;

(b)     Employee is hereby advised in writing by this Release to consult with an attorney before signing this Release;

(c)     Employee was given a copy of this Release on_____and was informed that Employee had twenty-one (21) days within which to consider this Release and that if Employee wished to execute this Release prior to expiration of such 21-day period, Employee should execute the Acknowledgement and Waiver attached hereto as Schedule A-1;

(d)     Nothing in this Release prevents or precludes Employee from challenging or seeking a determination in good faith of the validity of this waiver under the ADEA, nor does it impose any condition precedent, penalties or costs from doing so, unless specifically authorized by federal law; and

(e)     Employee was informed that Employee has seven (7) days following the date of execution of this Release in which to revoke this Release, and this Release will become null and void if Employee elects revocation during that time. Any revocation must be in writing and must be received by Company by hand delivery to Company's CEO during the seven-day revocation period. In the event that Employee exercises Employee's right of revocation, neither Company nor Employee will have any obligations under this Release.

5.     **No Transferred Claims**. Employee represents and warrants to Company that Employee has not heretofore assigned or transferred to any person not a party to this Release any released matter or any part or portion thereof.

6.     **Miscellaneous**. The following provisions shall apply for purposes of this Release:

(a)     Number and Gender. Where the context requires, the singular shall include the plural, the plural shall include the singular, and any gender shall include all other genders.

2

(b)    Section Headings. The section headings contained in this Release are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Release.

(c)    Governing Law. This Release shall be deemed to have been executed and delivered within the State of California, and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of California without regard to principles of conflict of laws.

(d)    Severability. If any provision of this Release or the application thereof is held invalid, the invalidity shall not affect other provisions or applications of this Release which can be given effect without the invalid provisions or applications and to this end the provisions of this Release are declared to be severable.

(e)    Modifications. This Release may not be amended or modified other than by a written agreement executed by Employee (or Employee's designee) and the CEO of Company.

(f)    Waiver. No waiver of any breach of any term or provision of this Release shall be construed to be, nor shall be, a waiver of any other breach of this Release. No waiver shall be binding unless in writing and signed by the party waiving the breach.

(g)    Arbitration. Any controversy arising out of or relating to this Release shall be submitted to arbitration in accordance with the arbitration provisions of the Agreement.

(h)    Counterparts. This Release may be executed in counterparts, and each counterpart, when executed, shall have the efficacy of a signed original. Photographic and electronic copies of such signed counterparts may be used in lieu of the originals for any purpose.

The undersigned have read and understand the consequences of this Release Agreement and voluntarily sign it. The undersigned declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

EXECUTED this _16_ day of _January_ 2018, at _LA_ County, _CA_.

Employee

By: _____
    Matt Creem

Open Road Films, LLC

By: _____
Its: CHAIRMAN & CEO

3

3198411.3

**20**                                                              **EXHIBIT A**

SCHEDULE A-1

## FORM OF ACKNOWLEDGMENT AND WAIVER

I, Matt Creem, hereby acknowledge that I was given 21 days to consider the foregoing Release Agreement and voluntarily chose to sign the Release Agreement prior to the expiration of the 21-day period.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

EXECUTED this 16 day of January 201 8 , at L A County, C A .

Matt Creem

3198411.3

4

**21**

**EXHIBIT A**

### <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing Response has been served electronically via the Court's CM/ECF system upon all parties designated to receive electronic service on June 12, 2020 and, at my direction, via email as follows (to counsel for Plan Administrator):

    Robert J. Feinstein, Esq.:  rfeinstein@pszjlaw.com
    Scott L. Hazan, Esq.:  shazan@pszjlaw.com
    Colin R. Robinson, Esq.:  crobinson@pszjlaw.com
    .

                /s/ <u>Michael F. Chekian</u>
                Michael F. Chekian, Esq.